**WILMERHALE**

**Mark C. Fleming**

+1 617 526 6909 (t)
+1 617 526 5000 (f)
mark.fleming@wilmerhale.com

January 30, 2025

**VIA CM/ECF**
Hon. Jarrett B. Perlow
Circuit Executive and Clerk of Court
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, DC  20439

Re:  *Centripetal Networks, LLC v. Palo Alto Networks, Inc.*, No. 2023-2027 (oral argument
scheduled for February 6, 2025)
Letter pursuant to Fed. R. App. P. 28(j)

Dear Mr. Perlow,

Appellees respectfully advise the Court of revised versions of 5 C.F.R. §§ 2635.501, 2635.502, which the Office of Government Ethics (OGE) proposed for notice and comment on February 21, 2023, and promulgated after the conclusion of briefing in this appeal by final rule dated May 17, 2024, with an effective date of August 15, 2024.  *See Modernization Updates to Standards of Ethical Conduct for Employees of the Executive Branch*, 89 Fed. Reg. 43,686 (May 17, 2024) (Attachment 1); 88 Fed. Reg. 10,774 (Feb. 21, 2023) (Attachment 2).

As relevant here, the final rule added § 2635.501(b)(3), which provides:

An applicable waiver or exemption under part 2640 of this chapter ***also
authorizes an employee's participation*** in particular matters that would otherwise
be restricted by § 2635.502.  Specifically, if an employee meets all prerequisites
for the application of one of the regulatory exemptions set forth in part 2640,
subpart B, of this chapter, ***that constitutes a determination*** that the interest of the
Government in the employee's participation in a particular matter ***outweighs the
concern that a reasonable person may question the integrity*** of agency programs
and operations.

5 C.F.R. § 2635.501(b)(3), 89 Fed. Reg. at 43,712-43,713 (emphases added).

As OGE stated in proposing the new language, § 2635.501 was "restructure[d] … to organize the current text and the text of the current Note into new paragraphs," and "[n]o substantive change is intended."  88 Fed. Reg. at 10,776.  Indeed, similar language previously appeared in the "Note" to the prior version of § 2635.501 (2022), which is reproduced in the Addendum to Centripetal's Opening Brief at B0004.

WilmerHale

January 30, 2025
Page 2


     The reorganized language confirms that, under both the prior and current versions of § 2635.501, a regulatory exemption in "part 2640, subpart B"—including the *de minimis* exemption of § 2640.202(a)—is not only a safe harbor from criminal prosecution under 18 U.S.C. § 208(a), but "also authorizes an employee's participation in particular matters that would otherwise be restricted by [5 C.F.R.] § 2635.502." 5 C.F.R. § 2635.501(b)(3), 89 Fed. Reg. at 43712.

     The revisions to § 2635.501 support the arguments on pages 34-40 of Appellees' brief.


Respectfully submitted,

*/s/ Mark C. Fleming*
Mark C. Fleming

Attachments


cc:    Counsel of Record (via ECF)

# ATTACHMENT 1

## OFFICE OF GOVERNMENT ETHICS

### 5 CFR Part 2635

RIN 3209–AA43

## Modernization Updates to Standards of Ethical Conduct for Employees of the Executive Branch

**AGENCY:** Office of Government Ethics.

**ACTION:** Final rule.

**SUMMARY:** The U.S. Office of Government Ethics (OGE) is issuing this final rule updating the Standards of Ethical Conduct for Employees of the Executive Branch (Standards). The final rule updates the Standards based on OGE's experience gained from application of the regulation since its inception. The final rule also incorporates past interpretive guidance, adds and updates regulatory examples, improves clarity, updates citations, and makes technical corrections.

**DATES:** This final rule is effective August 15, 2024.

**FOR FURTHER INFORMATION CONTACT:** Kimberly L. Sikora Panza, Senior Associate Counsel, or Christie Chung, Assistant Counsel, U.S. Office of Government Ethics, 250 E Street SW, Suite 750, Washington, DC 20024–3249; Telephone: 202–482–9300; TTY: 800–877–8339; FAX: 202–482–9237.

**SUPPLEMENTARY INFORMATION:**

### I. Rulemaking History

Pursuant to a provision of the Ethics in Government Act of 1978, 5 U.S.C. 13122, the Director of the U.S. Office of Government Ethics (OGE) is responsible for periodically reviewing, evaluating, and updating the rules and regulations that pertain to ethics in the executive branch. On February 21, 2023 (88 FR 10774), OGE published for public comment a proposed rule setting forth various modernization updates to the Standards of Ethical Conduct for Employees of the Executive Branch (Standards), which serve as the primary regulatory guidance on the standards of ethical conduct for officers and employees of the executive branch of the Federal Government (Government). Prior to publishing the proposed rule, OGE consulted with the Department of Justice and the Office of Personnel Management pursuant to section 201(a) of Executive Order 12674, as modified by Executive Order 12731, and the authorities contained in 5 U.S.C. chapter 131, subchapter II. Additionally, OGE solicited and considered the views of executive branch agency ethics officials. OGE's proposed updates pertained only to subparts A through I

of the Standards; separate from the present rulemaking, OGE engaged in a comprehensive rulemaking that added to the Standards new subpart J, which relates to the creation and operation of legal expense funds, and the acceptance of pro bono legal services for certain legal matters. See 88 FR 33799 (May 25, 2023).

The proposed rule provided for a 60-day comment period, which ended on April 24, 2023. During this period, OGE received nineteen responsive comment submissions regarding the proposed rule: fourteen from the public and five from Federal agencies. OGE also received two comment submissions from the public that do not relate to the proposed rule and address unrelated matters. After carefully considering all comments and making appropriate modifications, and for the reasons set forth below and in the preamble to the proposed rule at *https://www.govinfo.gov/content/pkg/FR-2023-02-21/pdf/2023-02440.pdf*, OGE is publishing this final rule.

### II. Discussion of Comments and Changes to Proposed Rule

The twenty-one comments that OGE received during the comment period are publicly accessible on OGE's website at this address: *https://www.oge.gov/web/OGE.nsf/All+docs+By+Cat/08C3B547690B7675852589AA00556758*. OGE has reviewed and considered all comments submitted by each commenter. OGE is not addressing the two comments that pertain to matters unrelated to the rulemaking. The following discussion addresses all other comments in the context of the specific subparts or sections to which they relate.

#### A. General Provisions (Subpart A)

OGE received nine comments from individuals who expressed concerns about the proposed revisions to §§ 2635.101(b)(13) and 2635.106. In §§ 2635.101(b)(13) and 2635.106, OGE proposed to add the words "(including pregnancy, gender identity, and sexual orientation)" after "sex" to reflect protected characteristics identified by the Equal Employment Opportunity Commission (EEOC) as covered by Federal employment discrimination laws. Towards this same end, OGE also proposed adding "genetic information" in these two sections and updating the word "handicap" to "disability." These commenters specifically criticized the inclusion of "gender identity" and "sexual orientation" in §§ 2635.101(b)(13) and 2635.106; no commenter referenced or objected to the other updates to these provisions

relating to pregnancy, genetic information, or disability. Commenters perceived that the inclusion of "gender identity" and "sexual orientation" would result in an expansion of civil rights, and objected to the revisions either categorically or without observance of appropriate protections for religious organizations and religious conscience.

The revisions to §§ 2635.101(b)(13) and 2635.106 do not effectuate any expansion of, or other change to, civil rights laws. Significantly, OGE does not have the authority to promulgate regulations expounding on the scope of categories protected by equal employment laws and regulations, or other civil rights laws and regulations. The updated language merely modernizes the regulatory text to include characteristics that the EEOC already recognizes as protected under the laws enforced by the Commission. *See, e.g., Employees & Applicants,* U.S. Equal Emp. Opportunity Comm'n, *https://www.eeoc.gov/employees* (last visited May 17, 2023). It is both necessary and appropriate that provisions in the Standards that refer to "laws and regulations that provide equal opportunity" list the characteristics protected by Federal laws prohibiting employment discrimination and enforced by the EEOC.

Additionally, OGE received one comment from an individual who expressed concern that the addition of "gender identity" and "sexual orientation" infringes on executive branch employees' First Amendment and other constitutional rights. As noted above, these revisions are merely technical updates referencing types of discrimination already recognized by the EEOC. Acknowledgement of the fact that sex-based discrimination includes gender identity and sexual orientation in §§ 2635.101(b)(13) and 2635.106 neither results in any change to existent equal opportunity laws or regulations, nor impacts the interaction between such laws and the constitutional rights of employees.

For the above reasons and for the reasons stated in the preamble to the proposed rule, OGE therefore is adopting the proposed updates to subpart A without further revisions.

#### B. Gifts From Outside Sources (Subpart B)

##### Subpart B Examples

OGE received four suggestions regarding additional examples or clarifications that could be made in subpart B. Specifically, one agency

commenter suggested that OGE add an example of a "non-traditional" prohibited source, such as an entity that enters into a cooperative research and development agreement with a Federal agency, as well as an example involving a lottery ticket as a gift; the same agency suggested that OGE add an example to § 2635.204(d) involving a Department of Defense or other Federal school; and a member of the public suggested that OGE clarify gift acceptance limits and issues relating to entities like the Kennedy Center where events might be hosted by a corporate donor.

The examples requested by these commenters involve illustration of fairly specific situations. It would not be feasible for OGE to provide examples addressing application of the regulation in all of the scenarios that may give rise to subpart B considerations. In light of the extensive revisions made to subpart B in 2016, which included modernization changes and examples, and OGE's determination that the current rule provides appropriate guidance, OGE declines these suggestions.

Gift Exclusion and Exception for "Opportunities and Benefits"

One individual commenter requested that OGE reconcile the difference between the opportunities and benefits excluded from the definition of "gift" in § 2635.203(b)(4) and the opportunities and benefits excepted from the gift prohibitions by § 2635.204(c)(2). Specifically, the commenter noted that the opportunities and benefits excluded from the "gift" definition by § 2635.203(b)(4) include "favorable rates and commercial discounts," while the opportunities and benefits excepted from the subpart B gift prohibitions by § 2635.204(c)(2) include "favorable rates, commercial discounts, and free attendance or participation." The "free attendance or participation" language that distinguishes these two provisions was added to § 2635.204(c)(2) when OGE substantially revised subpart B in 2016. *See* 81 FR 81641 (Nov. 18, 2016).

OGE notes that the "opportunities and benefits" listed in the § 2635.203(b)(4) gift exclusion are preceded by the word "including," indicating that the list is not intended to be exhaustive. As such, one could consider free attendance or participation under the gift exclusion, if the appropriate facts presented themselves. However, to clear up any confusion, OGE will add the words "free attendance or participation" to § 2635.203(b)(4) to harmonize the language in §§ 2635.203(b)(4) and 2635.204(c)(2).

Free Attendance Gift Exclusion

Section 2635.203(b)(8) excludes from the definition of "gift" free attendance to an event provided by the sponsor of the event to certain individuals, including an employee who is assigned to present information on behalf of the agency at the event (on any day when the employee is presenting), and "[a]n employee whose presence on any day of the event is deemed to be essential by the agency to the presenting employee's participation in the event," if the employee is accompanying the presenting employee. One agency opined that it is unclear whether multiple personnel supporting a presenting employee may accept free attendance pursuant to this exclusion. Specifically, the commenter requested that "an employee" in the above-quoted language in § 2635.203(b)(8)(ii) be changed to "any employee" to clarify that multiple supporting personnel may accept free attendance under this exclusion.

OGE notes that it has previously issued guidance making clear that § 2635.203(b)(8)(ii) can be applied to multiple agency personnel. *See* OGE DAEOgram DO–10–003, at 2 (Feb. 18, 2010) ("The number and types of personnel necessary, if any, to the speaker's participation will vary depending upon who the speaker is and the nature of the event."). Nonetheless, to further address the commenter's concern, OGE is updating example 2 to paragraph (b)(8) to reflect that guidance and eliminate any doubt that multiple supporting personnel may accept free attendance under this exclusion. Specifically, OGE is changing "another employee" to "other employees" and "accompanying employee" to "accompanying employees" in the example.

De Minimis Gift Exception

Three commenters—two individuals and one agency—recommended that OGE increase the monetary thresholds for the *de minimis* gift exception at § 2635.204(a), noting the effects of inflation in the intervening years since the exception was first adopted. Two other commenters made a similar suggestion in 2016 as part of OGE's comprehensive rulemaking revising portions of subpart B.

After carefully considering this recommendation in 2016, OGE noted its concern that "raising the *de minimis* would encourage employees to accept, and private citizens to give, more expensive and more frequent gifts than employees are currently able to accept." 81 FR 81641, 81645 (Nov. 18, 2016).

Although OGE acknowledged at that time—and continues to acknowledge—the effect of inflation on the relative value of the *de minimis* threshold, OGE continues to believe that $20 is a workable amount that serves the narrow purpose of the exception, which is to permit only the infrequent acceptance of inexpensive and innocuous gifts. *Id.; see also* 57 FR 35006, 35016 (Aug. 7, 1992). It also continues to be the fact that "no compelling argument has been made to support a conclusion that raising the cap on the blanket *de minimis* exception, in order to allow employees to accept more expensive and more frequent gifts, would strengthen the integrity of the executive branch's operations." 81 FR 81645.

Independent of these substantive reasons, OGE also declines to adopt the suggestion to increase the *de minimis* threshold in this particular rulemaking, the primary focus of which is on technical, non-substantive updates. OGE does not think it would be appropriate to adjust the § 2635.204(a) dollar value in this final rule without having announced in the proposed rule that it was contemplating such an increase, thereby providing the public an opportunity to reflect on such a proposal and share their input regarding the same.

Widely Attended Gatherings Exception

To improve readability, OGE is making a technical amendment to the structure of § 2635.204(g)(2), which defines when a gathering is widely attended for purposes of the widely attended gathering (WAG) exception. Specifically, OGE is organizing the components of the WAG definition at § 2635.204(g)(2) into new separate paragraphs (g)(2)(i) through (iii). This update involves no substantive changes to the WAG exception.

In response to the proposed rule, one agency recommended removing the requirement in the WAG exception in § 2635.204(g) that an employee attend the event on their own time in their personal capacity rather than in their official capacity. Section 2635.204(g) provides that an employee could attend a qualifying event either on their own time or, if authorized by their agency, on excused absence pursuant to applicable guidelines for granting such absence, or otherwise without charge to the employee's leave account. The commenter questioned the rationale for this requirement that the employee attend on their own time, noting that an agency determination that attendance is in the agency's interest would suggest the event is related to the employee's official duties.

OGE notes that the requirement that the employee attend in their personal capacity is based on appropriations considerations that OGE documented in the preamble to the final rule for 5 CFR part 2635. *See* 57 FR 35006, 35019–20 (Aug. 7, 1992). The 1992 preamble explains that the WAG exception was designed to allow agencies that do not have agency gift acceptance authority to permit their employees to accept a gift of free attendance at events in which the agency has an interest in the employee attending. However, due to appropriations requirements, in order for the gift to be accepted by an employee rather than by the agency, the employee must attend the event in their personal capacity "off the clock." Specifically, this requirement "is imposed of necessity to ensure that the gift is made to the employee rather than to the agency and, thus, that it does not improperly augment agency appropriations available for payment of expenses of attendance at training, meetings or similar events." *Id.* at 35019. For these reasons, OGE declines to follow the agency's recommendation.

*C. Gifts Between Employees (Subpart C)*

Gifts to Superiors

One individual commented that the proposed new language in § 2635.302(a)(1), which clarifies that "an official superior may not knowingly accept" an improper gift from a subordinate, is inconsistent with the controlling statutory authority at 5 U.S.C. 7351. The commenter also suggested that the knowledge element in this provision is unclear.

As discussed in the preamble to the proposed rule, the premise that official superiors have a responsibility to not knowingly accept improper gifts from a subordinate is logically consistent with and complements the restrictions articulated in 5 U.S.C. 7351 governing gift giving from a subordinate to a superior. The proposed changes to § 2635.302(a)(1) appropriately emphasize that superiors should not knowingly accept gifts that are improper for employees to give.

Regarding the knowledge element relating to a superior's acceptance of a gift, it is included in recognition of the fact that the regulation covers gifts given "indirectly" by an employee—*e.g.*, ones given by an employee's parent, sibling, spouse, child, or dependent relative with the employee's knowledge and acquiescence. *See* § 2635.303(b)(1). Section 2635.302(a) is structured in such a way that knowledge is required on the part of both the giver and receiver for indirect gifts. For example,

an employee will not be in violation of the rule if their sibling gives a gift to the employee's superior without the employee's knowledge and acquiescence. Similarly, a superior will not be in violation of the rule if they accept a gift that unbeknownst to them was given by the sibling of an employee with the employee's knowledge and acquiescence.

For the reasons explained in the preamble to the proposed rule, OGE declines the commenter's suggestions, and will adopt the revisions to § 2635.302(a)(1) as set forth in the proposed rule.

Gifts From Employees Receiving Less Pay

One individual commenter requested clarification regarding the meaning of "less pay" in 2635.302(b) and suggested that the rule be amended to specify "base pay." OGE is unable to adopt this change. The language in § 2635.302(b), referring to "employees receiving less pay" incorporates the language of the underlying statute. *See* 5 U.S.C. 7351 (referring to "an employee receiving less pay"). Given this statutory basis, OGE is constrained in its ability to revise the regulation to specify "base pay" or "rate of basic pay."

Another individual commenter opposed the new language OGE proposed to add to § 2635.302(b)(2), which clarifies that the restriction on accepting a gift from an employee receiving less pay does not apply when the employee giving the gift is the official superior of the employee receiving the gift. The commenter expressed concern that this rule could provide for unequal treatment among the higher paid employees who are now allowed to receive gifts from their superiors, although the commenter also recognized that gifts from superiors to subordinates are not generally restricted by subpart C.

OGE disagrees with the commenter that the updated language is ripe for "favoritism and impropriety." As a threshold matter, OGE notes that in the status quo, subpart C does not restrict most gifts from superiors to their employees because superiors do not typically receive less pay than their employees. This structure does not seem to have elicited much concern among ethics officials. Furthermore, as OGE noted in the proposed rule, "OGE does not believe that 5 U.S.C. 7351, the statute underlying the restriction articulated in § 2635.302(b), either contemplated or intended that subordinate employees would be restricted from accepting a gift from an official superior who, because of the

nature of modern compensation systems, receives less pay." 88 FR 10774, 10775 (Feb. 21, 2023). Accordingly, this updated language that permits all employees to receive gifts from their superiors in the same manner is necessary to modernize and equalize the rule given the situations in the current Federal pay system in which a subordinate may earn more than their official superior. However, it does not encourage the provision of such gifts in an unfair or inequitable manner.

De Minimis Gift Exception

Similar to the related suggestions regarding the subpart B *de minimis* exception, two agency commenters recommended that OGE increase the monetary threshold in the gift exception at § 2635.304(a). As is the case with the *de minimis* exception in § 2635.204(a), OGE believes that the current value of the *de minimis* exception in subpart C should remain unchanged. As OGE noted when issuing the Standards, while it is "appropriate to permit modest exchanges of gifts between coworkers," it is important to remain mindful of "subtle pressures to give gifts to superiors" in an environment "where superiors and subordinates interact daily and where subordinates compete for advancement." 57 FR 35006, 35022 (Aug. 7, 1992). Notwithstanding inflation, OGE believes that the $10 amount remains adequate to permit an exchange of a modest token between employees and is "low enough generally to discourage employees from purchasing gifts for their superiors." *Id.* OGE further echoes its concern noted above about adjusting a *de minimis* value in this final rule when the public was not apprised of such a potential change or given the opportunity to comment on it.

Special Infrequent Occasions Exception

One agency commenter suggested that OGE add a new example to the exception for special, infrequently occurring occasions to illustrate that a superior's promotion is not an occasion of personal significance. OGE declines to adopt this suggestion. Example 3 to the exception for voluntary contributions in 2635.304(c) sufficiently illustrates that a superior's promotion within the supervisory chain is not an appropriate time for subordinates to take up a collection for a gift to that official superior because the occasion does not "mark the termination of the subordinate-official superior relationship, nor [is it an] event[ ] of personal significance within the meaning of [§ 2635.304(b)]."

An individual commenter suggested that OGE consider adding "divorce" to the non-exhaustive list of special, infrequent occasions covered by the exception at § 2635.304(b)(1), and also suggested that OGE could add further detail in the regulation regarding the application of this exception in other contexts, such as traditional religious or cultural rites of passage.

OGE notes that the statute authorizing OGE to issue regulations exempting certain gifts contemplates that OGE may exempt gifts in circumstances "in which gifts are traditionally given or exchanged." 5 U.S.C. 7351(c). The list of special, infrequent occasions provided in the regulation is not exhaustive, as it is preceded by the phrase "such as." OGE does not endeavor to attempt to list all occasions that may be covered in the regulation, nor does it believe it would be prudent or practicable to articulate every such occasion. The language of the exception makes clear that the exception allows for gifts that are "infrequently occurring occasions of personal significance," and this language should be applied when considering occasions not included in the non-exhaustive list.

Regarding this same exception, a different individual commenter agreed that adding "bereavement" to § 2635.304(b) is a beneficial change; the individual suggested, however, that there are issues in practice with OGE's inclusion of this term without limitation. Specifically, the commenter recommended that OGE establish "limitations as to which family members the exception applies." OGE declines to adopt language qualifying which bereavements constitute an infrequently occurring occasion of personal significance, believing that it is neither appropriate nor wise to make a categorical determination about which losses justify expressions of sympathy. OGE notes that a gift in recognition of bereavement must still be "appropriate to the occasion," which is a sufficient limiting factor that appropriately curtails gift giving and acceptance in the bereavement context and addresses any potential for misuse of the narrow exception at § 2635.304(b).

This same commenter recommended that OGE add birthdays ending in zero to the non-exhaustive list of special, infrequent occasions covered by § 2635.304(b)(1). Drawing parallels between birthdays ending in zero and occasions enumerated in the regulation, the individual commented that exclusion of milestone birthdays is arbitrary. OGE believes that it would be inappropriate to except gifts in connection with birthdays, which includes milestone birthdays, from the general rules governing gifts between employees, and thus did not revise the regulation to indicate otherwise. As noted in the preamble accompanying the proposed rule, OGE does not consider milestone birthdays to be infrequently occurring occasions of the sort warranting exception under § 2635.304(b). Of course, it may be possible to give a gift in recognition of any birthday under another exception, such as the exception for gifts with a value of $10 or less and the exception for food and refreshments shared in the office among several employees. *See* § 2635.304(a)(1) and (2).

### Exception for Voluntary Contributions of Nominal Amounts

One individual commenter suggested that OGE define the term "nominal" as it is used in the exception at § 2635.304(c) for "voluntary contributions of nominal amounts from fellow employees for an appropriate gift to an official superior." OGE appreciates this suggestion, but has not made a change to the regulation. What constitutes a "nominal" amount is necessarily context-specific, for example, depending on whether the contribution is for items like food and refreshments, or for a gift in recognition of a special, infrequent occasion. In response to a similar comment when first issuing the Standards, OGE explained that it chose to not impose a specific dollar limit, even though collections for gifts generally involve individual contributions less than five dollars. In doing so, OGE noted that "[w]here contributions meet the regulatory requirement that they be entirely voluntary, higher amounts may appropriately be contributed in some cases, as when several senior members of an office provide an additional contribution to subsidize a collection that has come up short of sufficient funds to purchase a desired gift." 57 FR 35006, 35023 (Aug. 7, 1992). The regulation makes clear that the contributions must be for "an appropriate gift," which OGE believes provides a suitable, non-monetary limit on the use of this exception.

### Disposition of Prohibited Gifts

One agency commenter suggested that OGE add a section in this subpart that addresses what an employee should do if they inadvertently accept a gift that is not permissible under this subpart. In response to agency inquiries regarding the disposition of gifts prohibited by subpart C, OGE has advised that agencies are free to look to the subpart B disposition provisions for guidance regarding how to handle such gifts. To provide greater clarity to employees and ethics officials, OGE will add a new § 2635.305 to subpart C that is consistent with that guidance.

### D. Conflicting Financial Interests (Subpart D)

Analyzing Imputed Interests and Multi-Entity Organizations

One agency commenter requested that OGE add an example in § 2635.402 illustrating the application of 18 U.S.C. 208 where an employee has an imputed financial interest by virtue of their outside employment or position with an organization, and there is a particular matter that could affect one of the entity's campuses, or a parent, affiliate, or subsidiary organization. OGE declines to add such an example. As a threshold matter, OGE notes that the Standards already provide clear guidance regarding how imputed relationships are analyzed. Specifically, § 2635.402(b)(2) explains that "[f]or purposes of 18 U.S.C. 208(a) and this subpart, the financial interests of [certain imputed persons, including an organization or entity with which an employee serves as officer, director, trustee, general partner or employee] will require the recusal of an employee *to the same extent as if they were the employee's own interests.*" (Emphasis added.) Regarding related entities such as parents, subsidiaries, affiliates, etc., the Standards generally acknowledge the potential conflicts that may arise with respect to the same. *See* note 2 to § 2635.402(b)(1) (recognizing that a party matter may have a direct and predictable effect on an employee's financial interest in an affiliate, parent, or subsidiary of that party). Ultimately, however, OGE is wary of potential misinterpretation and misapplication were it to include an example of the sort requested by this commenter, and believes that a Legal Advisory is a more suitable means through which to provide guidance on the appropriate analysis.

Example 1 to § 2635.403(b)

One individual commenter questioned OGE's proposed inclusion of a dollar amount in example 1 to § 2635.403(b) and suggested that the value should be removed because it "is not . . . important for the rule's applicability." OGE intends to retain the dollar amount in this example. As explained in the preamble to the proposed rule, OGE proposed adding a specific dollar figure to the amount of stock owned by the employee in the example "to make clear that the *de*

minimis regulatory exemption in 5 CFR 2640.202 does not apply in this scenario." Accordingly, as noted in the example, the agency could determine that "the employee could not, by virtue of 18 U.S.C. 208(a), perform these significant duties of the position while retaining stock in the company."

Definition of Financial Interest

The same individual commenter questioned OGE's proposed update to the definition of "financial interest" in 5 CFR 2635.403(c)(1), which replaces the word "dependent child" with "minor child," and expressed a preference for retaining "dependent child." As stated in the language of § 2635.401 that this rulemaking will adopt, subpart D "summarizes the relevant statutory restrictions [of 18 U.S.C. 208] and some of the regulatory guidance found" in 5 CFR part 2640, the part interpreting and implementing 18 U.S.C. 208. The updated language referencing "minor child" brings § 2635.403(c)(1) into alignment with the language used throughout subpart D, and reflects the terminology of the statute proper and its implementing regulation. Therefore, OGE declines to retain the "dependent child" language in § 2635.403(c)(1) or otherwise integrate the concept of "dependent child" in this subpart.

*E. Impartiality in Performing Official Duties (Subpart E)*

Subpart E Examples

OGE received one comment from an individual concerning the application of § 2635.502 to particular matters of general applicability and requesting the addition of an example illustrating that application. As proposed, reorganized § 2635.502 articulates the operation of the regulation with respect to particular matters involving specific parties in which a household member has a financial interest, and particular matters involving specific parties in which someone with whom one has a covered relationship is or represents a party. Section 2635.502(a)(3) makes clear that employees who are concerned about impartiality questions arising from circumstances other than the party matters described in the preceding sentence—which could include particular matters of general applicability—should utilize the process detailed in the regulation, including in paragraph (d), to determine whether their participation is appropriate. In 1991, OGE addressed this "catch-all" provision in the preamble to the proposed rulemaking for the Standards, explaining that although the section

focused on specified relationships and party matters, questions about an employee's impartiality could arise from any number of interests or relationships they might have, and in connection with their participation in matters that do not necessarily involve specific parties. 56 FR 33778, 33786 (July 23, 1991). For this reason, § 2635.502 "therefore provides that an employee should use the process set forth in that section when circumstances other than those specifically described raise questions about [their] impartiality in the performance of official duties." Id. Given this guidance, OGE declines to add an example illustrating the specific application of § 2635.502 to particular matters of general applicability.

For similar reasons, OGE declines to add a very fact-specific example suggested by a different individual regarding how previous litigation history between an employee and party to a matter might give rise to impartiality concerns.

Employee Work Assignments

OGE received two comments from the public expressing concern that the new note at § 2635.501 could be viewed as being in conflict with, or causing confusion regarding, regulatory language in §§ 2635.105(a) and 2638.602 regarding how supplemental agency ethics regulations require OGE's concurrence, with co-signature and publication by the agency and OGE. One commenter questioned whether the intent of the note was to indicate that agencies have unfettered authority to assign work as they see fit, and whether a manager's delegation of work based on ethics considerations would be contrary to § 2635.105 if not subject to OGE review. The second commenter asked OGE to make clear what triggers the requirement to memorialize an ethics requirement in a supplemental regulation versus merely issuing an agency policy.

As discussed in the preamble to the proposed rule, the note is not an independent source of authority; it simply reminds agency ethics officials that supervisors generally have broad discretion when assigning work to employees and that there may be a multitude of factors considered by a supervisor in doing so, including appearance or impartiality concerns that do not fit squarely within the Standards. OGE has no intention to alter the requirements relating to supplemental ethics regulations, nor could it do so in this rulemaking, as those general requirements are established by Executive order. *See* E.O. 12731, sec. 301(a) (Oct. 17, 1990). Agencies wishing

to supplement the Standards with additional ethics obligations still must follow the requirements of § 2635.105, as referenced in § 2638.602, and may rely on prior OGE guidance regarding what agency ethics policies belong in a supplemental regulation. *See, e.g.,* OGE Legal Advisory LA–11–07 (Oct. 31, 2011).

Covered Relationship Stemming From Certain Familial Relations

One individual commenter stated their support for the removal of the "dependent" qualifier when discussing covered relationships relating to certain business activities of children, noting that "[a] non-dependent child is more likely to have relationships that implicate impartiality concerns than dependent children, who, being dependents as defined at 26 U.S.C. 152 (*e.g.,* minors or students), are relatively unlikely to have the sorts of business relationships raising those concerns." An agency commenter disagreed with OGE's proposal to remove the "dependent" qualifier, suggesting that the financial co-dependence of parents and dependent children is more likely to raise concerns regarding impartiality.

OGE will adopt as final the change removing the "dependent" qualifier before "child" in § 2635.502(b)(1)(iii). This change appropriately reflects that there are potential impartiality concerns relating to certain business relations of a child regardless of that child's dependency, just as long-established language in § 2635.502(b)(1)(iii) acknowledges impartiality concerns relating to certain business relations of a parent, without any dependency predicate. The updated language harmonizes the treatment of parents and children for purposes of the scope of certain covered relationships because both familial relations may raise similar ethics concerns, irrespective of any financial connection or perceived financial impact. In that regard, OGE notes that nothing in subpart E contemplates that there need be a perceived impact on an employee's financial interests for there to be concerns about their impartiality, and that many of the long-established covered relationships articulated in § 2635.502(b) would not seem to involve such a perceived impact. Of course, we note that § 2635.502 does not demand a specific outcome regarding participation when an appearance concern arises; it merely requires that employees engage in the appropriate analysis under this subpart before participating. As we stated in the 1992 preamble to the final rule for the Standards, "the importance of relevant facts must be emphasized."

57 FR 35006, 35027 (Aug. 7, 1992). To highlight this point as applied to the revised covered relationship provision, OGE is updating new example 6 to § 2635.502(b) so that the scenario described involves the employment relationship of an adult child. This example now illustrates a situation where a covered relationship described in paragraph (b)(1)(iii) exists—a covered relationship with the employer of an employee's adult child—but the employee could justifiably conclude that a reasonable person would not be likely to question their impartiality in participating in a party matter involving the child's employer.

Covered Payments and Qualifying Programs

OGE received one comment from an agency regarding the proposed update to the definition of a "qualifying program" at § 2635.503(b)(2), which requires that the written program "not treat individuals entering Government service more favorably than other individuals." The commenter noted that this language covers the types of commonly written policies that permit for the acceleration of benefits or lump sum payouts for individuals entering Government service, which can expedite the transition to Government service, and expressed concern that this change would cause unnecessary delays and conflicts in that transition.

OGE notes that the updated language in § 2635.503(b)(2) does not affect OGE's position that "when the ownership of the interest has already vested[,] an employee may receive an earlier payment to remediate a conflict of interest without running afoul of either 18 U.S.C. 209 or 5 CFR 2635.503. This is because the employee is entitled to receive the payment and only the timing is being altered, not the entitlement to the payment itself." U.S. Off. of Gov't Ethics, Conflicts of Interest Considerations: Corporate Employment 5 (2021), *https://www.oge.gov/web/ OGE.nsf/0/EC83872D932E6DCE8525 85B6005A1F8C/$FILE/Corporate% 20Employment.pdf.* Accordingly, if an employee receives accelerated payment of an already vested equity interest, that payment still would not implicate § 2635.503.

Regarding the revisions to the definition of "qualifying program," which OGE will adopt as proposed, OGE has noted an increase in written policies and programs favoring Government employees, which OGE did not anticipate when it first promulgated § 2635.503. OGE therefore intentionally updated the definition of "qualifying program" to exclude written plans and

programs that provide favorable treatment to employees entering Government service, such as accelerated vesting of employment-related interests. This approach is consistent with how OGE has viewed unwritten practices of treating employees entering Government more favorably. Whether made pursuant to a program or a practice, a covered payment received from a former employer raises "a legitimate concern, and thus an appearance, that the employee may not act impartially in particular matters to which the former employer is a party or represents a party." 56 FR 33778, 33786 (July 23, 1991). OGE does not have any indication that this modernized regulation, which is focused on an employee's recusal obligation once serving the Government, would cause unnecessary delays and conflicts during the transition into Federal service.

Inclusion of Former Clients in the Former Employer Definition

The same agency requested that OGE revise note 1 to paragraph (b)(3) in § 2635.503 to "clarify that former clients are those for whom the individual personally provided services, and not all clients of a larger firm." Note 1 states that the "former employer" definition "includes former clients *for whom an employee may have served* as an agent, attorney, consultant, or contractor." (Emphasis added.) OGE believes that the Note is clear on its face that the term "former clients" refers to those for whom the employee personally provided services, and thus will adopt the proposed language without amendment.

*F. Seeking Other Employment (Subpart F)*

Subpart F Examples

OGE received one comment from an individual requesting an additional example in subpart F to clarify whether an employee may rely on third-party information to conclude that a prospective employer has rejected the possibility of hiring the employee. Specifically, the commenter suggested an example where an employee learns from a third party that they are no longer under consideration—for example, because the position has been filled by someone else. OGE declines to make this change for several reasons. First, OGE in 2016 published substantive updates to subpart F, which included several new examples to illustrate the application of subpart F to modern job searches. This rulemaking is only proposing global technical changes throughout subpart F, which is

consistent with the purpose of the modernization project. Second, OGE notes that the legitimacy of the information received from third parties is likely to vary significantly on a case-by-case basis. As such, an example involving information from a third party would be unlikely to provide helpful insight—and worse, could be misconstrued to imply that all third-party information can be relied upon in the same way. Finally, OGE believes the current structure of subpart F provides sufficient guidance to assess scenarios where the employee receives credible information that the prospective employer has rejected the possibility of employment.

Seeking Employment Definition

This same individual asserted that the definitions in subpart F do not take into consideration the possibility that an employee might seek employment by posting their interest on social media or meeting with a recruiter who will communicate with multiple, potentially unknown, companies. OGE disagrees with this commenter. As part of the 2016 updates to subpart F, OGE modernized the rule and added three new examples of seeking employment involving social media. OGE added these examples to "clarify that the rules in this subpart apply regardless of the method the employee uses when seeking employment." 81 FR 8008, 8009 (Feb. 17, 2016). As further discussed in the 2016 preamble, the examples illustrate that the posting of a profile, resume, or other employment information that is not targeted to a specific person is not considered an unsolicited communication with an entity regarding possible employment; instead such a posting is akin to posting a resume on a bulletin board. Moreover, if the employee is using an agent or other intermediary when seeking employment, the definition of "prospective employer" is met only "if the agent identifies the prospective employer to the employee." 5 CFR 2635.603(c)(1) and (2) and example 2 to paragraph (c) (discussing a scenario involving an online resume distribution service that sends resumes to recruiters). Accordingly, OGE is declining to make further updates.

This individual also suggested that OGE shorten the two-month timeframe in § 2635.603(b)(2)(ii), which provides that, in the absence of a response from a prospective employer indicating interest, an employee is no longer seeking employment—and thus no longer has a recusal requirement under subpart F—after two months have elapsed from their dispatch of an

unsolicited resume or job proposal. The commenter recommended truncating this timeframe given changes in the mechanisms through which individuals search for jobs, and potentially quicker responses from prospective employers than was the case in years past.

The provision about which this commenter is providing input was substantively unchanged by the proposed rule, which noted that OGE endeavors to make only global technical changes to subpart F that are proposed throughout the Standards. OGE does not believe that the two-month period prescribed in § 2635.603(b)(2)(ii) is an unreasonably excessive period of time in the modern job market. Even with the technologies of current day, OGE continues to view two months as a realistic period of time within which an individual may expect a response to an unsolicited resume or job proposal. Subpart F addresses lack of impartiality concerns warranting recusal from particular matters affecting the financial interests of a prospective employer with whom the employee is seeking employment. In weighing this comment against the concerns underpinning subpart F, OGE is not inclined to relax the recusal requirement in the manner suggested. Moreover, we note, as we did in 1992 when issuing the final rule establishing the Standards, "that the two-month period establishes an outside limit. An earlier response from the recipient indicating no interest in pursuing the matter further will terminate the employee's disqualification at that time." 57 FR 35006, 35029 (Aug. 7, 1992). Thus, to the extent that the timeframe in "which an applicant will hear back from a prospective employer" is shorter, as suggested by the commenter, an employee who receives a negative response will be relieved of their subpart F recusal obligation at that point.

### G. Misuse of Position (Subpart G)

Letters of Recommendation

OGE received multiple comments relating to § 2635.702(b), a section in which OGE did not propose any substantive changes. One agency commenter recommended that OGE add an additional example to § 2635.702(b) to illustrate that an employee may use their official title in connection with providing a recommendation for an individual with whom they have dealt in the course of Federal employment outside of the executive branch—for example, an individual with whom the employee worked while assigned to a Congressional office. OGE declines to

adopt this suggestion, as it considers the language in § 2635.702(b) to be sufficiently clear in its broad phrasing that an employee's official title may be used in connection with a reference for an individual with whom the employee has dealt not just in connection with executive branch employment, but "in the course of Federal employment."

A different agency requested that the last sentence of § 2635.702(b) be updated such that employees may recommend individuals using their official title not just for Federal employment, but also for other opportunities such as Federal internships or educational programs. OGE believes that § 2635.702(b) appropriately permits recommendations for Federal employment, and declines to expand the regulatory language as suggested by the commenter to cover other Federally associated opportunities. As a point of clarification, however, OGE notes that some internships and positions associated with a Federal entity may qualify as "Federal employment," *see, e.g.,* OGE Legal Advisory LA–17–09 (Aug. 14, 2017) (discussing different hiring authorities for employment status of student interns), such that it would be permissible under § 2635.702(b) for an employee to use their official title to recommend an individual for the same.

The same agency expressed concern that example 1 to § 2635.702(b) suggests that "it is entirely acceptable for an employee to recommend a person for Federal employment (including use of the employee's title and official letterhead) solely because the person is a personal friend." As a threshold matter, OGE notes it did not propose to substantively update this example in this rulemaking. Furthermore, the example is consistent with § 2635.702(b), which specifically permits an employee to use their official title to recommend individuals for Federal employment, including personal friends. As explained in the preamble to the final rule establishing the Standards, OGE believes that recommending an individual for Federal employment serves an "official purpose" that justifies the use of official title. *See* 57 FR 35006, 35031 (Aug. 7, 1992).

Personal Social Media and Use of Official Photographs

As discussed in the proposed rulemaking, OGE is adding a new example of an appearance of governmental sanction following § 2635.702(b), which involves the use of personal social media by an

Environmental Protection Agency (EPA) employee. The example is consistent with OGE's Legal Advisory on personal social media use and illustrates the factual determination that agency ethics officials must make in evaluating whether a reference to an employee's official title or position on social media violates the Standards. *See* OGE Legal Advisory LA–15–03 (Apr. 9, 2015). In particular, the example notes that while certain facts alone—such as listing the employee's Government title under the "occupation" section of their personal social media account—would not reasonably be construed as implying governmental sanction or endorsement, it would be problematic if the EPA employee prominently featured the agency's seal on their social media account and made statements asserting or implying that their opinions on environmental topics are sanctioned or endorsed by the Government.

One agency commenter recommended updating this example to address the use of an official Government photograph on personal social media. Official photographs, displays including official uniform or insignia, and use of agency seals must be consistent with all applicable statutes, regulations, and agency policies, including the Standards. Employees who choose to display official pictures or include photographs of themselves wearing agency uniform or insignia should be mindful that doing so can increase the possibility of confusion as to whether their social media account and content on that account are official or personal; a prominent disclaimer clarifying that all content is personal can help obviate such confusion. However, OGE declines to update the example to discuss the use of an official photograph on a personal social media account. Although the new example provides an illustration of how personal social media use might implicate ethics rules regarding misuse of position, it is not intended to be exhaustive of the myriad ways that employees might engage or post on their personal social media accounts. Given the nuance of these issues, OGE believes that this topic is best addressed through interpretive guidance, and notes that it recently issued a Legal Advisory discussing the application of ethics rules to employees' activities on personal social media accounts, including the use of official photographs. *See* OGE Legal Advisory LA–23–13, at 2–3 (Sept. 28, 2023) (discussing the question "Can I use my official picture or a picture of me at a work event as my profile picture [on social media]?").

Acceptable Personal Use of Government Resources

As explained in the preamble to the proposed rule, OGE proposed replacing example 1 following § 2635.704(b)—which discussed a General Services Administration (GSA) regulation that no longer exists—with an example that references an agency's *de minimis* policy relating to the personal use of a Government email account. In response to this change, one individual commenter requested that OGE provide more guidance on acceptable personal use of Government resources, given the absence of a GSA regulation and significant technological changes in recent years. OGE believes the Standards and examples set forth and revised in § 2635.704 are sufficiently clear and can be applied to Government property as it continues to evolve with technological advances. Furthermore, more specific guidelines about current technology than what is already in § 2635.704 and its examples would run the risk of quickly becoming outdated. Finally, OGE notes that agencies have established more specific policies regarding acceptable limited personal use of Government resources by their employees, and employees' adherence to these policies would constitute an authorized use of Government resources. *See* OGE Inf. Adv. Op. 97x3 (Mar. 21, 1997). OGE defers to agencies to interpret such policies and to determine whether specific instances of personal use would amount to a misuse of Government resources.

*H. Outside Activities (Subpart H)*

Teaching, Speaking, and Writing

One individual provided comments regarding OGE's proposed ministerial change to § 2635.807(a), which emphasizes the timing aspect that an employee "may not receive compensation from any source other than the Government for teaching, speaking, or writing that occurs *while the person is a Government employee and that relates to the employee's official duties.*" (Emphasis added.) The commenter incorrectly suggests that the updated language provides for a "looser standard" than set forth in the original rule; specifically, the commenter stated that before this change, § 2635.807 had a "broader application . . . [that] prevents former employees from gaining, after the fact from" their official duties and that the new language would "lessen the broad application and lift the restrictions as they would apply to former employees."

As a threshold matter, OGE reiterates that the Standards, including subpart H, apply only to current executive branch employees. More specifically regarding teaching, speaking, and writing covered by § 2635.807, OGE has been unequivocal in its guidance that "ethics rules do not restrict receipt of compensation unless the writing occurs during Government service." OGE DAEOgram DO–08–006, pt. I, at 8 (Mar. 6, 2008); *see also id.* ("Section 2635.807 applies to an individual while [they] serve[] as a Government employee. Therefore, each provision contained in section 2635.807 restricts compensation only for writing that occurs while an individual is in Government service. If the writing is done either before or after Government service, none of these provisions will apply."). Accordingly, OGE declines the commenter's suggestion that § 2635.807(a) be phrased disjunctively, such that compensation for teaching, speaking, or writing would be restricted if the writing occurs while the person is a Government employee or if the writing relates to an employee's official duties.

One agency commenter characterized § 2635.807 as addressing teaching, speaking, or writing "on 'official time' and on personal time,'" and suggested that the section be divided into off-duty and official duty paragraphs "rather than housing it all under Outside Activities." OGE disagrees with the commenter's characterization. As noted in § 2635.801(a), subpart H "contains provisions relating to outside employment, [and] outside activities"; § 2635.807 addresses teaching, speaking, and writing that an employee does as outside employment or an outside activity, and is not intended to address official duty teaching, speaking, or writing. To the extent that this section refers to official capacity teaching, speaking, and writing, it does so for limited purposes. First, it refers to official capacity activities in certain examples to distinguish between the scenarios where the requirements of § 2635.807 do and do not apply. *See, e.g.,* § 2635.807(a)(2)(iii), example 4 (describing a scenario where payments are not prohibited under the rule restricting compensation for speaking relating to official duties because the employee is speaking officially); *see also* § 2635.807(b), example 1 (noting that the restrictions on reference to official position would not apply to an employee who is authorized to speak in their official capacity). Second, it notes that "[t]eaching, speaking, or writing relates to the employee's official duties"—and thus is covered by § 2635.807(a)—if "[t]he activity is undertaken as part of the employee's official duties." This language simply "incorporates the . . . prohibition on supplementation of salary contained in 18 U.S.C. 209," DO–08–006, pt. I, at 19 n.18, and is not intended to provide any specific guidance regarding official duty speaking. For these reasons, OGE declines the commenter's suggested reorganization.

The same commenter asked OGE to address various scenarios relating to the extent to which an employee could choose or refuse who they present agency information to as part of an outside activity if the presentation otherwise meets the requirements of § 2635.807(a). The scenarios posed by the commenter are very fact-specific, and unfortunately it is not feasible for OGE to include exhaustive examples in the regulation discussing the application of § 2635.807 and other ethics rules. OGE notes, however, that even if § 2635.807 would not restrict an employee's teaching, speaking, or writing, the employee may not conduct the activity in a way that violates other ethics requirements. *See, e.g.,* OGE Inf. Adv. Op. 94x1 (Jan. 10, 1994) ("If an employee does not receive any compensation for [their] participation in the conference, the speech will not be prohibited by section 2635.807. In such an instance, the primary consideration the employee should keep in mind is [their] responsibility not to misuse [their] position, title, Government property, or nonpublic information.").

Finally, OGE declines this commenter's suggestion to impose a disclaimer requirement for official teaching, speaking, or writing. To the extent that agencies authorize or require the use of disclaimers in official speeches to make clear that the speaker is sharing their personal views rather than the views of the agency, OGE defers to agencies on whether the use of such a disclaimer is appropriate.

A different agency expressed concern regarding a minor update OGE proposed to make to the existing note to 5 CFR 2635.807(a)(2)(iii). Specifically, OGE proposed to delete the reference to 18 U.S.C. 209 in the reminder that other authorities in some circumstances may limit or preclude an employee's acceptance of travel expenses. OGE's intention in deleting the reference was not to make a substantive change but rather "to avoid unnecessary focus on a single statute to the potential exclusion of other applicable authorities." 88 FR 10774, 10780 (Feb. 21, 2023). The commenter requested that OGE keep the reference to 18 U.S.C. 209 because "[i]t is helpful to employees and legal practitioners to be reminded in this

context that a criminal statute in particular may be triggered.''

Based on this feedback, OGE will add back in the reference to 18 U.S.C. 209 in the referenced note. However, OGE reiterates that other authorities may limit or preclude an employee's acceptance of travel expenses, so to emphasize that section 209 is one of several potentially applicable authorities, OGE has updated the phrase to read ''other authorities, including but not limited to 18 U.S.C. 209.''

One agency commenter asked that OGE add new language to § 2635.807(b) permitting ethics officials to apply a fact-based, ''totality of circumstances'' test to determine whether an employee serving as faculty at Federal universities and schools may include their title or position in connection with outside academic or scientific editorial board service, and for listings of professional society committee membership. The commenter's request for a ''totality of circumstances'' test appears to be based on the commenter's assertion that, in the context of Federal employees serving as faculty at Federal universities and schools, disclaimers and biographical sketches required for teaching, speaking, and writing activities under § 2635.807(b) ''are not commonly used by publishers'' and professional societies.

As OGE has previously explained, ''[t]he foundation in the Standards underlying the limitations on use of official title is 5 CFR 2635.702(b), which provides 'an employee shall not use or permit the use of [their] Government position or title or any authority associated with [their] public office in a manner that could reasonably be construed to imply that [their] agency or the [G]overnment sanctions or endorses [their] personal activities or those of another.''' OGE Inf. Adv. Op. 10x1, at 1 (Mar. 19, 2010). Employees engaged in outside teaching, speaking, and writing must also meet the use of title requirements of § 2635.807(b). OGE has advised that ''[t]he purpose of section 807(b)(1) and (b)(2), in conjunction with section 702(b), is to ensure that public is not misled as to whether the views expressed by an Executive Branch employee in uncompensated teaching, writing, or speaking are those of the employee or those of the Government.'' *Id.* at 2.

OGE believes that the guidance it has previously issued regarding use of title in outside activities sufficiently addresses the commenter's practical concerns. *See, e.g., id.* (emphasizing the importance of an employee providing relevant biographical details other than official title and position in connection

with teaching, speaking, and writing, as required by § 2635.807(b)(1), and discussing how to evaluate whether an employee has complied in good faith with this provision); *see also* OGE Legal Advisory LA–14–08, at 2 (Nov. 19, 2014) (stressing the importance of considering the totality of circumstances in connection with use of title in other outside activities, such as involvement with a professional society, to determine whether a reasonable person could construe the reference to imply sanction or endorsement of the organization or the employee's personal activities). Because OGE believes that subparts G and H and the further guidance on those provisions provide appropriate flexibility regarding use of title and sufficiently address the commenter's concerns, OGE declines to make the commenter's recommended change.

Fundraising

The same agency recommended that OGE amend the definition of ''participation in the conduct of an event'' at § 2635.808(a)(2) to clarify that the term includes presenting awards and being present on stage during the presentation of awards. OGE declines to adopt these changes given that the list of examples to which the commenter suggests adding is not intended to be exhaustive. Additionally, it is OGE's belief that the current language provides sufficient guidance for practical application of the regulation by ethics officials and employees, without being unnecessarily proscriptive regarding the necessarily fact-specific application of this provision.

The same agency also requested certain clarifications in the new social media examples added to § 2635.808(c) relating to fundraising in a personal capacity. In particular, the commenter suggested updating example 5 to note that the employee's ''personal solicitation'' could be sent by either official or personal email, and suggested updating example 6 to note that ''any person'' includes subordinates. OGE believes that the cited examples are appropriately specific, and therefore declines to incorporate these changes. Specifically, the general reference to an email transmission in example 5 does not suggest that such a transmission need be sent by either a personal or an official email to be problematic. Similarly, the reference to ''any person'' in example 6 is appropriately broad such that it could include a subordinate.

*I. Other*

Incorporation of Obligations From Ethics Pledges

One individual commenter recommended that OGE implement certain core provisions of recent Presidential ethics pledges that impose additional obligations on certain noncareer employees. *See, e.g.,* E.O. 13490 (Jan. 21, 2009); E.O. 13770 (Jan. 28, 2017); E.O. 13989 (Jan. 20, 2021). OGE declines to make such a change, which is outside the scope of the modernization updates contemplated by this rulemaking, and about which public input was requested. OGE further notes that it is the prerogative of each Presidential administration to determine what, if any, additional ethics obligations it wishes to impose on its appointees, and that it would not be appropriate for OGE to implement such obligations in a regulation that by design is intended to extend across multiple administrations.

Subpart J

As discussed above, OGE recently engaged in a separate rulemaking process that culminated in the addition of subpart J to the Standards. This rulemaking makes no changes to subpart J, and revises and republishes only subparts A through I of the Standards.

**III. Matters of Regulatory Procedure**

*Regulatory Flexibility Act*

As Acting Director of the Office of Government Ethics, I certify under the Regulatory Flexibility Act (5 U.S.C. chapter 6) that this final rule will not have a significant economic impact on a substantial number of small entities because it primarily affects current Federal executive branch employees.

*Paperwork Reduction Act*

The Paperwork Reduction Act (44 U.S.C. chapter 35) does not apply because this regulation does not contain information collection requirements that require approval of the Office of Management and Budget.

*Unfunded Mandates Reform Act*

For purposes of the Unfunded Mandates Reform Act of 1995 (2 U.S.C. chapter 25, subchapter II), this final rule will not significantly or uniquely affect small governments and will not result in increased expenditures by State, local, and Tribal governments, in the aggregate, or by the private sector, of $100 million or more (as adjusted for inflation) in any one year.

*Executive Orders 12866, 13563, and 14094*

In promulgating this rule, the Office of Government Ethics has adhered to the regulatory philosophy and the applicable principles of regulation set forth in Executive Order 12866, Regulatory Planning and Review (58 FR 51735, Oct. 4, 1993); Executive Order 13563, Improving Regulation and Regulatory Review (76 FR 3821, Jan. 21, 2011); and Executive Order 14094, Modernizing Regulatory Review (88 FR 21879, Apr. 11, 2023). Executive Orders 13563 and 12866 direct agencies to assess all costs and benefits of available regulatory alternatives and, if regulation is necessary, to select the regulatory approaches that maximize net benefits (including economic, environmental, public health and safety effects, distributive impacts, and equity). Executive Order 13563 emphasizes the importance of quantifying both costs and benefits, of reducing costs, of harmonizing rules, and of promoting flexibility.

Although the number of substantive changes to the regulation is not extensive, the benefits of implementing these changes are significant. The existing regulation is not insufficient, but it has not been significantly updated since its issuance in 1992. OGE's revisions address common questions received from ethics officials, incorporate OGE's experience gained from applying the regulation since its inception, modernize existing examples and add new examples for more useful reference, provide updated citations where regulatory provisions or statutes have changed, and make technical corrections. These revisions will provide greater clarity for executive branch employees and ethics officials. Further, OGE anticipates that this additional clarity will increase compliance and reduce the number of inadvertent violations.

OGE does not anticipate any significant increased costs associated with these changes. However, OGE notes that there may be an increase in the time burden during the first year in which the regulatory updates become effective, particularly for ethics officials, due to necessary updates to training materials and other related ethics briefings, questions regarding the interpretation of revised regulatory provisions, and review of additional OGE guidance.

This rule has been designated as a "significant regulatory action" under Executive Order 12866, although not significant under section 3(f)(1) of Executive Order 12866. Accordingly, this rule has been reviewed by the Office of Management and Budget.

*Executive Order 12988*

As Acting Director of the Office of Government Ethics, I have reviewed this rule in light of section 3 of Executive Order 12988, Civil Justice Reform, and certify that it meets the applicable standards provided therein.

*Executive Order 13175*

The Office of Government Ethics has evaluated this final rule under the criteria set forth in Executive Order 13175 and determined that Tribal consultation is not required as this final rule has no substantial direct effect on one or more Indian tribes, on the relationship between the Federal Government and Indian tribes, or on the distribution of power and responsibilities between the Federal Government and Indian tribes.

**List of Subjects in 5 CFR Part 2635**

Conflict of interests, Executive branch standards of ethical conduct, Government employees.

Approved: May 8, 2024

**Shelley K. Finlayson,**
*Acting Director, U.S. Office of Government Ethics.*

For the reasons set forth in the preamble, the U.S. Office of Government Ethics amends 5 CFR part 2635 as follows:

## PART 2635—STANDARDS OF ETHICAL CONDUCT FOR EMPLOYEES OF THE EXECUTIVE BRANCH

■ 1. The authority citation for part 2635 is revised to read as follows:

**Authority:** 5 U.S.C. 7301, 7351, 7353; 5 U.S.C. ch. 131; E.O. 12674, 54 FR 15159, 3 CFR, 1989 Comp., p. 215, as modified by E.O. 12731, 55 FR 42547, 3 CFR, 1990 Comp., p. 306.

■ 2. Revise and republish subparts A through I to read as follows:

**Subpart A—General Provisions**

Sec.
2635.101  Basic obligation of public service.
2635.102  Definitions.
2635.103  Applicability to enlisted members of the uniformed services.
2635.104  Applicability to employees on detail.
2635.105  Supplemental agency regulations.
2635.106  Disciplinary and corrective action.
2635.107  Ethics advice.

**Subpart B—Gifts From Outside Sources**

2635.201  Overview and considerations for declining otherwise permissible gifts.
2635.202  General prohibition on solicitation or acceptance of gifts.
2635.203  Definitions.
2635.204  Exceptions to the prohibition for acceptance of certain gifts.
2635.205  Limitations on use of exceptions.
2635.206  Proper disposition of prohibited gifts.

**Subpart C—Gifts Between Employees**

2635.301  Overview.
2635.302  General standards.
2635.303  Definitions.
2635.304  Exceptions.
2635.305  Disposition of prohibited gifts.

**Subpart D—Conflicting Financial Interests**

2635.401  Overview.
2635.402  Disqualifying financial interests.
2635.403  Prohibited financial interests.

**Subpart E—Impartiality in Performing Official Duties**

2635.501  Overview.
2635.502  Personal and business relationships.
2635.503  Covered payments from former employers.

**Subpart F—Seeking Other Employment**

2635.601  Overview.
2635.602  Applicability and related considerations.
2635.603  Definitions.
2635.604  Recusal while seeking employment.
2635.605  Waiver or authorization permitting participation while seeking employment.
2635.606  Recusal based on an arrangement concerning prospective employment or otherwise after negotiations.
2635.607  Notification requirements for public financial disclosure report filers regarding negotiations for or agreement of future employment or compensation.

**Subpart G—Misuse of Position**

2635.701  Overview.
2635.702  Use of public office for private gain.
2635.703  Use of nonpublic information.
2635.704  Use of Government property.
2635.705  Use of official time.

**Subpart H—Outside Activities**

2635.801  Overview.
2635.802  Conflicting outside employment and activities.
2635.803  Prior approval for outside employment and activities.
2635.804  Outside earned income limitations applicable to certain Presidential appointees.
2635.805  Service as an expert witness.
2635.806  [Reserved]
2635.807  Teaching, speaking, and writing.
2635.808  Fundraising activities.
2635.809  Just financial obligations.

**Subpart I—Related Statutory Authorities**

2635.901  General.
2635.902  Related statutes.

## Subpart A—General Provisions

### § 2635.101   Basic obligation of public service.

(a) *Public service is a public trust.* Each employee has a responsibility to the United States Government and its citizens to place loyalty to the Constitution, laws, and ethical principles above private gain. To ensure that every citizen can have complete confidence in the integrity of the Federal Government, each employee must respect and adhere to the principles of ethical conduct set forth in this section, as well as the implementing standards contained in this part and in supplemental agency regulations.

(b) *General principles.* The following general principles apply to every employee and may form the basis for the standards contained in this part. When a situation is not covered by the standards set forth in this part, employees must apply the principles set forth in this section in determining whether their conduct is proper.

(1) Public service is a public trust, requiring employees to place loyalty to the Constitution, the laws, and ethical principles above private gain.

(2) Employees shall not hold financial interests that conflict with the conscientious performance of duty.

(3) Employees shall not engage in financial transactions using nonpublic Government information or allow the improper use of such information to further any private interest.

(4) An employee shall not, except as permitted by subpart B of this part, solicit or accept any gift or other item of monetary value from any person or entity seeking official action from, doing business with, or conducting activities regulated by the employee's agency, or whose interests may be substantially affected by the performance or nonperformance of the employee's duties.

(5) Employees shall put forth honest effort in the performance of their duties.

(6) Employees shall not knowingly make unauthorized commitments or promises of any kind purporting to bind the Government.

(7) Employees shall not use public office for private gain.

(8) Employees shall act impartially and not give preferential treatment to any private organization or individual.

(9) Employees shall protect and conserve Federal property and shall not use it for other than authorized activities.

(10) Employees shall not engage in outside employment or activities, including seeking or negotiating for employment, that conflict with official Government duties and responsibilities.

(11) Employees shall disclose waste, fraud, abuse, and corruption to appropriate authorities.

(12) Employees shall satisfy in good faith their obligations as citizens, including all just financial obligations, especially those—such as Federal, State, or local taxes—that are imposed by law.

(13) Employees shall adhere to all laws and regulations that provide equal opportunity for all Americans regardless of, for example, race, color, religion, sex (including pregnancy, gender identity, and sexual orientation), national origin, age, genetic information, or disability.

(14) Employees shall endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards set forth in this part. Whether particular circumstances create an appearance that the law or these standards have been violated shall be determined from the perspective of a reasonable person with knowledge of the relevant facts.

(c) *Related statutes.* In addition to the standards of ethical conduct set forth in this part, there are conflict of interest statutes that prohibit certain conduct. Criminal conflict of interest statutes of general applicability to all employees, 18 U.S.C. 201, 203, 205, 208, and 209, are summarized in the appropriate subparts of this part and must be taken into consideration in determining whether conduct is proper. Citations to other generally applicable statutes relating to employee conduct are set forth in subpart I of this part, and employees are further cautioned that there may be additional statutory and regulatory restrictions applicable to them generally or as employees of their specific agencies. Because an employee is considered to be on notice of the requirements of any statute, an employee should not rely upon any description or synopsis of a statutory restriction, but should refer to the statute itself and obtain the advice of an agency ethics official as needed.

### § 2635.102   Definitions.

The definitions listed in this section are used throughout this part. Additional definitions appear in the subparts or sections of subparts to which they apply. For purposes of this part:

(a) *Agency* means an executive agency as defined in 5 U.S.C. 105 and the Postal Service and the Postal Regulatory Commission. It does not include the Government Accountability Office or the government of the District of Columbia.

(b) *Agency designee* refers to any employee who, by agency regulation, instruction, or other issuance, has been delegated authority to make any determination, give any approval, or take any other action required or permitted by this part with respect to another employee. An agency may delegate these authorities to any number of agency designees necessary to ensure that determinations are made, approvals are given, and other actions are taken in a timely and responsible manner. Any provision that requires a determination, approval, or other action by the agency designee will, when the conduct in issue is that of the head of the agency, be deemed to require that such determination, approval, or action be made or taken by the head of the agency in consultation with the designated agency ethics official.

(c) *Agency ethics official* refers to the designated agency ethics official, the alternate designated agency ethics official, any deputy ethics official, and any additional ethics official who has been delegated authority to assist in carrying out the responsibilities of an agency's ethics program. The responsibilities of agency ethics officials are described in § 2638.104 of this chapter.

(d) *Agency programs or operations* refers to any program or function carried out or performed by an agency, whether pursuant to statute, Executive order, or regulation.

(e) *Corrective action* includes any action necessary to remedy a past violation or prevent a continuing violation of this part, including but not limited to restitution, change of assignment, recusal, divestiture, termination of an activity, waiver, the creation of a qualified diversified or blind trust, or counseling.

(f) *Designated agency ethics official* refers to the official designated under § 2638.104(a) of this chapter.

(g) *Disciplinary action* includes those disciplinary actions referred to in Office of Personnel Management regulations at 5 CFR chapter I and instructions implementing provisions of title 5 of the United States Code or provided for in comparable provisions applicable to employees not subject to title 5, including but not limited to reprimand, suspension, demotion, and removal. In the case of a military officer, comparable provisions may include those in the Uniform Code of Military Justice.

(h) *Employee* means any officer or employee of an agency, including a special Government employee. It includes officers but not enlisted members of the uniformed services. It includes employees of a State or local

government or other organization who are serving on detail to an agency, pursuant to 5 U.S.C. 3371, *et seq.* For purposes other than subparts B and C of this part, it does not include the President or Vice President. Status as an employee is unaffected by pay or leave status or, in the case of a special Government employee, by the fact that the individual does not perform official duties on a given day.

(i) *Head of an agency* means, in the case of an agency headed by more than one person, the chair or comparable member of such agency.

(j) *Person* means an individual, corporation and subsidiaries it controls, company, association, firm, partnership, society, joint stock company, or any other organization or institution, including any officer, employee, or agent of such person or entity. For purposes of this part, a corporation will be deemed to control a subsidiary if it owns 50 percent or more of the subsidiary's voting securities. The term is all-inclusive and applies to commercial ventures and nonprofit organizations as well as to foreign, State, and local governments, including the government of the District of Columbia. It does not include any agency or other entity of the Federal Government or any officer or employee thereof when acting in an official capacity on behalf of that agency or entity.

(k) *Special Government employee* means those executive branch officers or employees specified in 18 U.S.C. 202(a). A special Government employee is retained, designated, appointed, or employed to perform temporary duties either on a full-time or intermittent basis, with or without compensation, for a period not to exceed 130 days during any consecutive 365-day period.

(l) *Supplemental agency regulation* means a regulation issued pursuant to § 2635.105.

### § 2635.103  Applicability to enlisted members of the uniformed services.

The provisions of this part are not applicable to enlisted members of the uniformed services. However, each agency with jurisdiction over enlisted members of the uniformed services may issue regulations defining the ethical conduct obligations of enlisted members under its jurisdiction. Such regulations or policies, if issued, should be consistent with Executive Order 12674, April 12, 1989, as modified, and may prescribe the full range of statutory and regulatory sanctions, including those available under the Uniform Code of Military Justice, for failure to comply with such regulations.

### § 2635.104  Applicability to employees on detail.

(a) *Details to other agencies.* Except as provided in paragraph (d) of this section, employees on detail, including uniformed officers on assignment, from their employing agencies to another agency for a period in excess of 30 calendar days will be subject to any supplemental agency regulations of the agency to which they are detailed rather than to any supplemental agency regulations of their employing agencies.

(b) *Details to the legislative or judicial branch.* Employees on detail, including uniformed officers on assignment, from their employing agencies to the legislative or judicial branch for a period in excess of 30 calendar days will be subject to the ethical standards of the branch or entity to which detailed. For the duration of any such detail or assignment, employees will not be subject to the provisions of this part, except this section, or, except as provided in paragraph (d) of this section, to any supplemental agency regulations of their employing agencies, but will remain subject to the conflict of interest prohibitions in title 18 of the United States Code.

(c) *Details to non-Federal entities.* Except to the extent exempted in writing pursuant to this paragraph (c), an employee detailed to a non-Federal entity remains subject to this part and to any supplemental agency regulation of their employing agency. When an employee is detailed pursuant to statutory authority to an international organization or to a State or local government for a period in excess of six months, the designated agency ethics official may grant a written exemption from subpart B of this part based on their determination that the entity has adopted written ethical standards covering solicitation and acceptance of gifts which will apply to the employee during the detail and which will be appropriate given the purpose of the detail.

(d) *Applicability of special agency statutes.* Notwithstanding paragraphs (a) and (b) of this section, employees who are subject to an agency statute which restricts their activities or financial holdings specifically because of their status as an employee of that agency will continue to be subject to any provisions in the supplemental agency regulations of the employing agency that implement that statute.

### § 2635.105  Supplemental agency regulations.

In addition to the regulations set forth in this part, employees must comply with any supplemental agency regulations issued by their employing agencies under this section.

(a) An agency that wishes to supplement this part must prepare and submit to the Office of Government Ethics, for its concurrence and joint issuance, any agency regulations that supplement the regulations contained in this part. Supplemental agency regulations which the agency determines are necessary and appropriate, in view of its programs and operations, to fulfill the purposes of this part must be:

(1) In the form of a supplement to the regulations in this part; and

(2) In addition to the substantive provisions of this part.

(b) After concurrence and co-signature by the Office of Government Ethics, the agency must submit its supplemental agency regulations to the **Federal Register** for publication and codification at the expense of the agency in this title. Supplemental agency regulations issued under this section are effective only after concurrence and co-signature by the Office of Government Ethics and publication in the **Federal Register**.

(c) This section applies to any supplemental agency regulations or amendments thereof issued under this part. It does not apply to:

(1) A handbook or other issuance intended merely as an explanation of the standards contained in this part or in supplemental agency regulations;

(2) An instruction or other issuance the purpose of which is to:

(i) Delegate to an agency designee authority to make any determination, give any approval or take any other action required or permitted by this part or by supplemental agency regulations; or

(ii) Establish internal agency procedures for documenting or processing any determination, approval or other action required or permitted by this part or by supplemental agency regulations, or for retaining any such documentation; or

(3) Regulations or instructions that an agency has authority, independent of this part, to issue, such as regulations implementing an agency's gift acceptance statute, protecting categories of nonpublic information, or establishing standards for use of Government vehicles.

(d) Employees of a State or local government or other organization who are serving on detail to an agency, pursuant to 5 U.S.C. 3371, *et seq.,* are subject to any requirements, in addition to those in this part, established by a supplemental agency regulation issued under this section to the extent that such regulation expressly provides.

**§ 2635.106 Disciplinary and corrective action.**

(a) Except as provided in § 2635.107, a violation of this part or of supplemental agency regulations may be cause for appropriate corrective or disciplinary action to be taken under applicable Governmentwide regulations or agency procedures. Such action may be in addition to any action or penalty prescribed by law.

(b) It is the responsibility of the employing agency to initiate appropriate disciplinary or corrective action in individual cases. However, corrective action may be ordered or disciplinary action recommended by the Director of the Office of Government Ethics under the procedures at part 2638 of this chapter.

(c) A violation of this part or of supplemental agency regulations, as such, does not create any right or benefit, substantive or procedural, enforceable at law by any person against the United States, its agencies, its officers or employees, or any other person. Thus, for example, an individual who alleges that an employee has failed to adhere to laws and regulations that provide equal opportunity regardless of race, color, religion, sex (including pregnancy, gender identity, and sexual orientation), national origin, age, genetic information, or disability is required to follow applicable statutory and regulatory procedures, including those of the Equal Employment Opportunity Commission.

**§ 2635.107 Ethics advice.**

(a) As required by § 2638.104(a) and (d) of this chapter, each agency has a designated agency ethics official and an alternate designated agency ethics official; these are the employees who have the primary responsibility for directing the daily activities of an agency's ethics program. Acting directly or through other officials, the designated agency ethics official is responsible for providing ethics advice and counseling regarding the application of this part.

(b) Employees who have questions about the application of this part or any supplemental agency regulations to particular situations should seek advice from an agency ethics official. Disciplinary action for violating this part or any supplemental agency regulations will not be taken against an employee who has engaged in conduct in good faith reliance upon the advice of an agency ethics official, provided that the employee, in seeking such advice, has made full disclosure of all relevant circumstances. When the employee's conduct violates a criminal statute, reliance on the advice of an

agency ethics official cannot ensure that the employee will not be prosecuted under that statute. However, good faith reliance on the advice of an agency ethics official is a factor that may be taken into account by the Department of Justice in the selection of cases for prosecution. Disclosures made by an employee to an agency ethics official are not protected by an attorney-client privilege. Agency ethics officials are required by 28 U.S.C. 535 to report any information they receive relating to a violation of the criminal code, title 18 of the United States Code.

## Subpart B—Gifts From Outside Sources

**§ 2635.201 Overview and considerations for declining otherwise permissible gifts.**

(a) *Overview.* This subpart contains standards that prohibit an employee from soliciting or accepting any gift from a prohibited source or any gift given because of the employee's official position, unless the item is excluded from the definition of a *gift* (see § 2635.203(b)) or falls within one of the exceptions set forth in this subpart.

(b) *Considerations for declining otherwise permissible gifts.* (1) Every employee has a fundamental responsibility to the United States and its citizens to place loyalty to the Constitution, laws, and ethical principles above private gain. An employee's actions should promote the public's trust that this responsibility is being met. For this reason, employees should consider declining otherwise permissible gifts if they believe that a reasonable person with knowledge of the relevant facts would question the employee's integrity or impartiality as a result of accepting the gift.

(2) Employees who are considering whether acceptance of a gift would lead a reasonable person with knowledge of the relevant facts to question their integrity or impartiality may consider, among other relevant factors, whether:

(i) The gift has a high market value;

(ii) The timing of the gift creates the appearance that the donor is seeking to influence an official action;

(iii) The gift was provided by a person who has interests that may be substantially affected by the performance or nonperformance of the employee's official duties; and

(iv) Acceptance of the gift would provide the donor with significantly disproportionate access.

(3) Notwithstanding paragraph (b)(1) of this section, an employee who accepts a gift that qualifies for an exception under § 2635.204 does not violate this subpart or the Principles of

Ethical Conduct set forth in § 2635.101(b).

(4) Employees who have questions regarding this subpart, including whether the employee should decline a gift that would otherwise be permitted under an exception found in § 2635.204, should seek advice from an agency ethics official.

*Example 1 to paragraph (b):* An employee of the Peace Corps is in charge of making routine purchases of office supplies. After a promotional presentation to highlight several new products, a vendor offers to buy the employee lunch, which costs less than $20. The employee is concerned that a reasonable person may question their impartiality by accepting the free lunch, as the timing of the offer indicates that the donor may be seeking to influence an official action and the company has interests that may be substantially affected by the performance or nonperformance of the employee's duties. The employee concludes that appearance considerations weigh against accepting the gift.

**§ 2635.202 General prohibition on solicitation or acceptance of gifts.**

(a) *Prohibition on soliciting gifts.* Except as provided in this subpart, an employee may not, directly or indirectly:

(1) Solicit a gift from a prohibited source; or

(2) Solicit a gift to be given because of the employee's official position.

(b) *Prohibition on accepting gifts.* Except as provided in this subpart, an employee may not, directly or indirectly:

(1) Accept a gift from a prohibited source; or

(2) Accept a gift given because of the employee's official position.

(c) *Relationship to illegal gratuities statute.* A gift accepted pursuant to an exception found in this subpart will not constitute an illegal gratuity otherwise prohibited by 18 U.S.C. 201(c)(1)(B), unless it is accepted in return for being influenced in the performance of an official act. As more fully described in § 2635.205(d)(1), an employee may not solicit or accept a gift if to do so would be prohibited by the Federal bribery statute, 18 U.S.C. 201(b).

*Example 1 to paragraph (c):* A Government contractor who specializes in information technology software has offered an employee of the Department of Energy's information technology acquisition division a $15 gift card to a local restaurant if the employee will recommend to the agency's contracting officer that the agency select the contractor's products during the next

acquisition. Even though the gift card is less than $20, the employee may not accept the gift under § 2635.204(a) because it is conditional upon official action by the employee. Pursuant to this paragraph (c) and § 2635.205(a), notwithstanding any exception to the rules in this part, an employee may not accept a gift in return for being influenced in the performance of an official act.

### § 2635.203  Definitions.

For purposes of this subpart, the following definitions apply:

(a) *Agency* has the meaning set forth in § 2635.102(a). However, for purposes of this subpart, an executive department, as defined in 5 U.S.C. 101, may, by supplemental agency regulation, designate as a separate agency any component of that department which the department determines exercises distinct and separate functions.

(b) *Gift* includes any gratuity, favor, discount, entertainment, hospitality, loan, forbearance, or other item having monetary value. It includes services as well as gifts of training, transportation, local travel, lodgings, and meals, whether provided in-kind, by purchase of a ticket, payment in advance, or reimbursement after the expense has been incurred. The term excludes the following:

(1) Modest items of food and non-alcoholic refreshments, such as soft drinks, coffee, and donuts, offered other than as part of a meal;

(2) Greeting cards and items with little intrinsic value, such as plaques, certificates, and trophies, which are intended primarily for presentation;

*Example 1 to paragraph (b)(2):* After giving a speech at the facility of a pharmaceutical company, a Government employee is presented with a glass paperweight in the shape of a pill capsule with the name of the company's latest drug and the date of the speech imprinted on the side. The employee may accept the paperweight because it is an item with little intrinsic value which is intended primarily for presentation.

*Example 2 to paragraph (b)(2):* After participating in a panel discussion hosted by an international media company, a Government employee is presented with an inexpensive portable music player emblazoned with the media company's logo. The portable music player has a market value of $25. The employee may not accept the portable music player as it has a significant independent use as a music player rather than being intended primarily for presentation;

*Example 3 to paragraph (b)(2):* After giving a speech at a conference held by a national association of miners, a Department of Commerce employee is presented with a block of granite that is engraved with the association's logo, a picture of the Appalachian Mountains, the date of the speech, and the employee's name. The employee may accept this item because it is similar to a plaque, is designed primarily for presentation, and has little intrinsic value.

(3) Loans from banks and other financial institutions on terms generally available to the public;

(4) Opportunities and benefits, including favorable rates, commercial discounts, and free attendance or participation available to the public or to a class consisting of all Government employees or all uniformed military personnel, whether or not restricted on the basis of geographic considerations;

(5) Rewards and prizes given to competitors in contests or events, including random drawings, open to the public unless the employee's entry into the contest or event is required as part of the employee's official duties;

*Example 1 to paragraph (b)(5):* A Government employee is attending a free trade show on official time. The trade show is held in a public shopping area adjacent to the employee's office building. The employee voluntarily enters a drawing at an individual vendor's booth, which is open to the public, by filling in an entry form on the vendor's display table and dropping it into the contest box. The employee may accept the resulting prize because entry into the contest was not required by or related to their official duties.

*Example 2 to paragraph (b)(5):* Attendees at a conference, which is not open to the public, are entered in a drawing for a weekend getaway to Bermuda as a result of being registered for the conference. A Government employee who attends the conference in an official capacity could not accept the prize under paragraph (b)(5) of this section, as the event is not open to the public.

(6) Pension and other benefits resulting from continued participation in an employee welfare and benefits plan maintained by a current or former employer;

(7) Anything which is paid for by the Government or secured by the Government under Government contract;

*Example 1 to paragraph (b)(7):* An employee at the Occupational Safety and Health Administration is assigned to travel away from their duty station to conduct an investigation of a collapse at a construction site. The employee's agency is paying for relevant travel expenses, including airfare. The employee may accept and retain travel promotional items, such as frequent flyer miles, received as a result of this official travel, to the extent permitted by 5 U.S.C. 5702 note and 41 CFR part 301–53.

(8) Free attendance to an event provided by the sponsor of the event to:

(i) An employee who is assigned to present information on behalf of the agency at the event on any day when the employee is presenting;

(ii) An employee whose presence on any day of the event is deemed to be essential by the agency to the presenting employee's participation in the event, provided that the employee is accompanying the presenting employee; and

(iii) One guest of the presenting employee on any day when the employee is presenting, provided that others in attendance will generally be accompanied by a guest, the offer of free attendance for the guest is unsolicited, and the agency designee, orally or in writing, has authorized the presenting employee to accept;

*Example 1 to paragraph (b)(8):* An employee of the Department of the Treasury who is assigned to participate in a panel discussion of economic issues as part of a one-day conference may accept the sponsor's waiver of the conference fee. Under the separate authority of § 2635.204(a), the employee may accept a token of appreciation that has a market value of $20 or less.

*Example 2 to paragraph (b)(8):* An employee of the Securities and Exchange Commission is assigned to present the agency's views at a roundtable discussion of an ongoing working group. The employee may accept free attendance to the meeting under paragraph (b)(8) of this section because the employee has been assigned to present information at the meeting on behalf of the agency. If it is determined by the agency that it is essential that other employees accompany the presenting employee to the roundtable discussion, the accompanying employees may also accept free attendance to the meeting under paragraph (b)(8)(ii) of this section.

*Example 3 to paragraph (b)(8):* An employee of the United States Trade and Development Agency is invited to attend a cocktail party hosted by a prohibited source. The employee believes that there will be an opportunity to discuss official matters with other attendees while at the event. Although the employee may voluntarily discuss official matters with other

attendees, the employee has not been assigned to present information on behalf of the agency. The employee may not accept free attendance to the event under paragraph (b)(8) of this section.

(9) Any gift accepted by the Government under specific statutory authority, including:

(i) Travel, subsistence, and related expenses accepted by an agency under the authority of 31 U.S.C. 1353 in connection with an employee's attendance at a meeting or similar function relating to the employee's official duties which take place away from the employee's duty station, provided that the agency's acceptance is in accordance with the implementing regulations at 41 CFR chapter 304; and

(ii) Other gifts provided in-kind which have been accepted by an agency under its agency gift acceptance statute; and

(10) Anything for which market value is paid by the employee.

(c) *Market value* means the cost that a member of the general public would reasonably expect to incur to purchase the gift. An employee who cannot ascertain the market value of a gift may estimate its market value by reference to the retail cost of similar items of like quality. The market value of a gift of a ticket entitling the holder to food, refreshments, entertainment, or any other benefit is deemed to be the face value of the ticket.

*Example 1 to paragraph (c):* An employee who has been given a watch inscribed with the corporate logo of a prohibited source may determine its market value based on the observation that a comparable watch, not inscribed with a logo, generally sells for about $50.

*Example 2 to paragraph (c):* During an official visit to a factory operated by a well-known athletic footwear manufacturer, an employee of the Department of Labor is offered a commemorative pair of athletic shoes manufactured at the factory. Although the cost incurred by the donor to manufacture the shoes was $17, the market value of the shoes would be the $100 that the employee would have to pay for the shoes on the open market.

*Example 3 to paragraph (c):* A prohibited source has offered a Government employee a ticket to a charitable event consisting of a cocktail reception to be followed by an evening of chamber music. Even though the food, refreshments, and entertainment provided at the event may be worth only $20, the market value of the ticket is its $250 face value.

*Example 4 to paragraph (c):* A company offers an employee of the Federal Communication Commission (FCC) free attendance for two to a private skybox at a ballpark to watch a major league baseball game. The skybox is leased annually by the company, which has business pending before the FCC. The skybox tickets provided to the employee do not have a face value. To determine the market value of the tickets, the employee must add the face value of two of the most expensive publicly available tickets to the game and the market value of any food, parking, or other tangible benefits provided in connection with the gift of attendance that are not already included in the cost of the most expensive publicly available tickets.

*Example 5 to paragraph (c):* An employee of the Department of Agriculture is invited to a reception held by a prohibited source. There is no entrance fee to the reception event or to the venue. To determine the market value of the gift, the employee must add the market value of any entertainment, food, beverages, or other tangible benefit provided to attendees in connection with the reception, but need not consider the cost incurred by the sponsor to rent or maintain the venue where the event is held. The employee may rely on a per-person cost estimate provided by the sponsor of the event, unless the employee or an agency designee has determined that a reasonable person would find that the estimate is clearly implausible.

(d) *Prohibited source* means any person who:

(1) Is seeking official action by the employee's agency;

(2) Does business or seeks to do business with the employee's agency;

(3) Conducts activities regulated by the employee's agency;

(4) Has interests that may be substantially affected by the performance or nonperformance of the employee's official duties; or

(5) Is an organization a majority of whose members are described in paragraphs (d)(1) through (4) of this section.

(e) A gift is *given because of the employee's official position* if the gift is from a person other than an employee and would not have been given had the employee not held the status, authority, or duties associated with the employee's Federal position.

**Note 1 to paragraph (e):** Gifts between employees are subject to the limitations set forth in subpart C of this part.

*Example 1 to paragraph (e):* When free season tickets are offered by an opera guild to all members of the Cabinet, the gift is offered because of their official positions.

*Example 2 to paragraph (e):* Employees at a regional office of the Department of Justice (DOJ) work in Government-leased space at a private office building, along with various private business tenants. A major fire in the building during normal office hours causes a traumatic experience for all occupants of the building in making their escape, and it is the subject of widespread news coverage. A corporate hotel chain, which does not meet the definition of a *prohibited source* for DOJ, seizes the moment and announces that it will give a free night's lodging to all building occupants and their families, as a public goodwill gesture. Employees of DOJ may accept, as this gift is not being given because of their Government positions. The donor's motivation for offering this gift is unrelated to the DOJ employees' status, authority, or duties associated with their Federal positions, but instead is based on their mere presence in the building as occupants at the time of the fire.

(f) A gift which is *solicited or accepted indirectly* includes a gift:

(1) Given with the employee's knowledge and acquiescence to the employee's parent, sibling, spouse, child, dependent relative, or a member of the employee's household because of that person's relationship to the employee; or

(2) Given to any other person, including any charitable organization, on the basis of designation, recommendation, or other specification by the employee, except the employee has not indirectly solicited or accepted a gift by the raising of funds or other support for a charitable organization if done in accordance with § 2635.808.

*Example 1 to paragraph (f)(2):* An employee who must decline a gift of a personal computer pursuant to this subpart may not suggest that the gift be given instead to one of five charitable organizations whose names are provided by the employee.

(g) *Free attendance* includes waiver of all or part of the fee for an event or the provision of food, refreshments, entertainment, instruction, or materials furnished to all attendees as an integral part of the event. It does not include travel expenses, lodgings, or entertainment collateral to the event. It does not include meals taken other than in a group setting with all other attendees, unless the employee is a presenter at the event and is invited to a separate meal for participating presenters that is hosted by the sponsor of the event. When the offer of free attendance has been extended to an accompanying guest, the market value of the gift of free attendance includes

the market value of free attendance by both the employee and the guest.

(h) *Legal expense fund* has the meaning set forth in § 2635.1003.

(i) *Pro bono legal services* has the meaning set forth in § 2635.1003.

### § 2635.204  Exceptions to the prohibition for acceptance of certain gifts.

Subject to the limitations in § 2635.205, this section establishes exceptions to the prohibitions set forth in § 2635.202(a) and (b). Even though acceptance of a gift may be permitted by one of the exceptions contained in this section, it is never inappropriate and frequently prudent for an employee to decline a gift if acceptance would cause a reasonable person to question the employee's integrity or impartiality. Section 2635.201(b) identifies considerations for declining otherwise permissible gifts.

(a) *Gifts of $20 or less.* An employee may accept unsolicited gifts having an aggregate market value of $20 or less per source per occasion, provided that the aggregate market value of individual gifts received from any one person under the authority of this paragraph (a) does not exceed $50 in a calendar year. The exception in this paragraph (a) does not apply to gifts of cash or of investment interests such as stock, bonds, or certificates of deposit. When the market value of a gift or the aggregate market value of gifts offered on any single occasion exceeds $20, the employee may not pay the excess value over $20 in order to accept that portion of the gift or those gifts worth $20. When the aggregate value of tangible items offered on a single occasion exceeds $20, the employee may decline any distinct and separate item in order to accept those items aggregating $20 or less.

*Example 1 to paragraph (a):* An employee of the Securities and Exchange Commission and their spouse have been invited by a representative of a regulated entity to a community theater production, tickets to which have a face value of $30 each. The aggregate market value of the gifts offered on this single occasion is $60, $40 more than the $20 amount that may be accepted for a single event or presentation. The employee may not accept the gift of the evening of entertainment. The couple may attend the play only if the employee pays the full $60 value of the two tickets.

*Example 2 to paragraph (a):* An employee of the National Geospatial-Intelligence Agency has been invited by an association of cartographers to speak about the agency's role in the evolution of missile technology. At the conclusion of the speech, the association presents the employee a framed map with a market value of $18 and a ceramic mug that has a market value of $15. The employee may accept the map or the mug, but not both, because the aggregate value of these two tangible items exceeds $20.

*Example 3 to paragraph (a):* On four occasions during the calendar year, an employee of the Defense Logistics Agency (DLA) was given gifts worth $10 each by four employees of a corporation that is a DLA contractor. For purposes of applying the yearly $50 limitation on gifts of $20 or less from any one person, the four gifts must be aggregated because a person is defined at § 2635.102(k) to mean not only the corporate entity, but its officers and employees as well. However, for purposes of applying the $50 aggregate limitation, the employee would not have to include the value of a birthday present received from a cousin, who is employed by the same corporation, if the cousin's birthday present can be accepted under the exception at paragraph (b) of this section for gifts based on a personal relationship.

*Example 4 to paragraph (a):* Under the authority of 31 U.S.C. 1353 for agencies to accept payments from non-Federal sources in connection with attendance at certain meetings or similar functions, the Environmental Protection Agency (EPA) has accepted an association's gift of travel expenses and conference fees for an employee to attend a conference on the long-term effect of radon exposure. While at the conference, the employee may accept a gift basket of $20 or less from one of the companies underwriting the event even though it was not approved in advance by the EPA. Although 31 U.S.C. 1353 is the authority under which the EPA accepted the gift to the agency of travel expenses and conference fees, the gift basket is a gift to the employee rather than to the EPA.

*Example 5 to paragraph (a):* During off-duty time, an employee of the Department of Defense (DoD) attends a trade show involving companies that are DoD contractors. The employee is offered software worth $15 at X Company's booth, a calendar worth $12 at Y Company's booth, and a deli lunch worth $8 from Z Company. The employee may accept all three of these items because they do not exceed $20 per source, even though they total more than $20 at this single occasion.

*Example 6 to paragraph (a):* An employee of the Department of Defense (DoD) is being promoted to a higher level position in another DoD office. Six individuals, each employed by a different defense contractor, who have worked with the DoD employee over the years, decide to act in concert to pool their resources to buy the employee a nicer gift than each could buy separately. Each defense contractor employee contributes $20 to buy a desk clock for the DoD employee that has a market value of $120. Although each of the contributions does not exceed the $20 limit, the employee may not accept the $120 gift because it is a single gift that has a market value in excess of $20.

*Example 7 to paragraph (a):* During a holiday party, an employee of the Department of State is given a $15 store gift card to a national coffee chain by an agency contractor. The employee may accept the card as the market value is less than $20. The employee could not, however, accept a gift card that is issued by a credit card company or other financial institution, because such a card is equivalent to a gift of cash.

(b) *Gifts based on a personal relationship.* An employee may accept a gift given by an individual under circumstances which make it clear that the gift is motivated by a family relationship or personal friendship rather than the position of the employee. Relevant factors in making such a determination include the history and nature of the relationship and whether the family member or friend personally pays for the gift.

*Example 1 to paragraph (b):* An employee of the Federal Deposit Insurance Corporation (FDIC) has been dating an accountant employed by a member bank. As part of its "Work-Life Balance" program, the bank has given each employee in the accountant's division two tickets to a professional basketball game and has urged each to invite a family member or friend to share the evening of entertainment. Under the circumstances, the FDIC employee may accept the invitation to attend the game. Even though the tickets were initially purchased by the member bank, they were given without reservation to the accountant to use as desired, and the invitation to the employee was motivated by their personal friendship.

*Example 2 to paragraph (b):* Three partners in a law firm that handles corporate mergers have invited an employee of the Federal Trade Commission (FTC) to join them in a golf tournament at a private club at the firm's expense. The entry fee is $500 per foursome. The employee cannot accept the gift of one-quarter of the entry fee even though the employee has developed an amicable relationship with the three partners as a result of the firm's dealings with the FTC. As

evidenced in part by the fact that the fees are to be paid by the firm, it is not a personal friendship but a business relationship that is the motivation behind the partners' gift.

*Example 3 to paragraph (b):* A Peace Corps employee enjoys using a social media site on the internet in a personal capacity outside of work. The employee has used the site to keep in touch with friends, neighbors, coworkers, professional contacts, and other individuals they have met over the years through both work and personal activities. One of these individuals works for a contractor that provides language services to the Peace Corps. The employee was acting in an official capacity when they met the individual at a meeting to discuss a matter related to the contract between their respective employers. Thereafter, the two communicated occasionally regarding contract matters, and later also granted one another access to join their social media networks through their respective social media accounts. However, the pair did not communicate further in their personal capacities, carry on extensive personal interactions, or meet socially outside of work. One day, the individual, whose employer continues to serve as a Peace Corps contractor, contacts the employee to offer a pair of concert tickets worth $30 apiece. Although the employee and the individual are connected through social media, the circumstances do not demonstrate that the gift was clearly motivated by a personal relationship, rather than the position of the employee, and therefore the employee may not accept the gift pursuant to paragraph (b) of this section.

(c) *Discounts and similar benefits.* In addition to those opportunities and benefits excluded from the definition of a *gift* by § 2635.203(b)(4), an employee may accept:

(1) A reduction or waiver of the fees for membership or other fees for participation in organization activities offered to all Government employees or all uniformed military personnel by professional organizations if the only restrictions on membership relate to professional qualifications; and

(2) Opportunities and benefits, including favorable rates, commercial discounts, and free attendance or participation not precluded by paragraph (c)(3) of this section:

(i) Offered to members of a group or class in which membership is unrelated to Government employment;

(ii) Offered to members of an organization, such as an employees' association or agency credit union, in which membership is related to

Government employment if the same offer is broadly available to large segments of the public through organizations of similar size;

(iii) Offered by a person who is not a prohibited source to any group or class that is not defined in a manner that specifically discriminates among Government employees on the basis of type of official responsibility or on a basis that favors those of higher rank or rate of pay; or

(iv) Offered to employees by an established employee organization, such as an association composed of Federal employees or a nonprofit employee welfare organization, because of the employees' Government employment, so long as the employee is part of the class of individuals eligible for assistance from the employee organization as set forth in the organization's governing documents.

*Example 1 to paragraph (c)(2):* A computer company offers a discount on the purchase of computer equipment to all public and private sector computer procurement officials who work in organizations with over 300 employees. An employee who works as the computer procurement official for a Government agency could not accept the discount to purchase the personal computer under the exception in paragraph (c)(2)(i) of this section. The employee's membership in the group to which the discount is offered is related to Government employment because membership is based on the employee's status as a procurement official with the Government.

*Example 2 to paragraph (c)(2):* An employee of the Consumer Product Safety Commission (CPSC) may accept a discount of $50 on a microwave oven offered by the manufacturer to all members of the CPSC employees' association. Even though the CPSC is currently conducting studies on the safety of microwave ovens, the $50 discount is a standard offer that the manufacturer has made broadly available through a number of employee associations and similar organizations to large segments of the public.

*Example 3 to paragraph (c)(2):* An Assistant Secretary may not accept a local country club's offer of membership to all members of Department Secretariats which includes a waiver of its $5,000 membership initiation fee. Even though the country club is not a prohibited source, the offer discriminates in favor of higher-ranking officials.

*Example 4 to paragraph (c)(2):* A nonprofit military relief society provides access to financial counseling services, loans, and grants to all sailors

and Marines. A service member may accept financial benefits from the relief society, including to cover legal expenses, because the benefits are offered by an employee organization that was established before the legal matter arose, and because the benefits are being offered because of the employees' Government employment, as set forth in the relief society's governing documents.

(3) An employee may not accept for personal use any benefit to which the Government is entitled as the result of an expenditure of Government funds, unless authorized by statute or regulation (*e.g.,* 5 U.S.C. 5702 note, regarding frequent flyer miles).

*Example 1 to paragraph (c)(3):* The administrative officer for a field office of U.S. Immigration and Customs Enforcement (ICE) has signed an order to purchase 50 boxes of photocopy paper from a supplier whose literature advertises that it will give a free briefcase to anyone who purchases 50 or more boxes. Because the paper was purchased with ICE funds, the administrative officer cannot keep the briefcase which, if claimed and received, is Government property.

(d) *Awards and honorary degrees*—(1) *Awards.* An employee may accept a bona fide award for meritorious public service or achievement and any item incident to the award, provided that:

(i) The award and any item incident to the award are not from a person who has interests that may be substantially affected by the performance or nonperformance of the employee's official duties, or from an association or other organization if a majority of its members have such interests; and

(ii) If the award or any item incident to the award is in the form of cash or an investment interest, or if the aggregate value of the award and any item incident to the award, other than free attendance to the event provided to the employee and to members of the employee's family by the sponsor of the event, exceeds $200, the agency ethics official has made a written determination that the award is made as part of an established program of recognition.

*Example 1 to paragraph (d)(1):* Based on a written determination by an agency ethics official that the prize meets the criteria set forth in paragraph (d)(2) of this section, an employee of the National Institutes of Health (NIH) may accept the Nobel Prize for Medicine, including the cash award which accompanies the prize, even though the prize was conferred on the basis of laboratory work performed at NIH.

*Example 2 to paragraph (d)(1):* A defense contractor, ABC Systems, has an annual award program for the outstanding public employee of the year. The award includes a cash payment of $1,000. The award program is wholly funded to ensure its continuation on a regular basis for the next twenty years and selection of award recipients is made pursuant to written standards. An employee of the Department of the Air Force, who has duties that include overseeing contract performance by ABC Systems, is selected to receive the award. The employee may not accept the cash award because ABC Systems has interests that may be substantially affected by the performance or nonperformance of the employee's official duties.

*Example 3 to paragraph (d)(1):* An ambassador selected by a nonprofit organization as a recipient of its annual award for distinguished service in the interest of world peace may, together with their spouse and children, attend the awards ceremony dinner and accept a crystal bowl worth $200 presented during the ceremony. However, if the organization has also offered airline tickets for the ambassador and the family to travel to the city where the awards ceremony is to be held, the aggregate value of the tickets and the crystal bowl exceeds $200, and the ambassador may accept only upon a written determination by the agency ethics official that the award is made as part of an established program of recognition.

(2) *Established program of recognition.* An award and an item incident to the award are made pursuant to an established program of recognition if:

(i) Awards have been made on a regular basis or, if the program is new, there is a reasonable basis for concluding that awards will be made on a regular basis based on funding or funding commitments; and

(ii) Selection of award recipients is made pursuant to written standards.

(3) *Honorary degrees.* An employee may accept an honorary degree from an institution of higher education, as defined at 20 U.S.C. 1001, or from a similar foreign institution of higher education, based on a written determination by an agency ethics official that the timing of the award of the degree would not cause a reasonable person to question the employee's impartiality in a matter affecting the institution.

**Note 1 to paragraph (d)(3):** When the honorary degree is offered by a foreign institution of higher education, the agency may need to make a separate determination as to whether the institution of higher education is a foreign government for purposes of the Emoluments Clause of the U.S. Constitution (U.S. Const., art. I, sec. 9, cl. 8), which forbids employees from accepting emoluments, presents, offices, or titles from foreign governments, without the consent of Congress. The Foreign Gifts and Decorations Act, 5 U.S.C. 7342, however, may permit the acceptance of honorary degrees in some circumstances.

*Example 1 to paragraph (d)(3):* A well-known university located in the United States wishes to give an honorary degree to the Secretary of Labor. The Secretary may accept the honorary degree only if an agency ethics official determines in writing that the timing of the award of the degree would not cause a reasonable person to question the Secretary's impartiality in a matter affecting the university.

(4) *Presentation events.* An employee who may accept an award or honorary degree pursuant to paragraph (d)(1) or (3) of this section may also accept free attendance to the event provided to the employee and to members of the employee's family by the sponsor of an event. In addition, the employee may also accept unsolicited offers of travel to and from the event provided to the employee and to members of the employee's family by the sponsor of the event. Travel expenses accepted under this paragraph (d)(4) must be added to the value of the award for purposes of determining whether the aggregate value of the award exceeds $200.

(e) *Gifts based on outside business or employment relationships.* An employee may accept meals, lodgings, transportation, and other benefits:

(1) Resulting from the business or employment activities of an employee's spouse when it is clear that such benefits have not been offered or enhanced because of the employee's official position;

*Example 1 to paragraph (e)(1):* A Department of Agriculture employee whose spouse is a computer programmer employed by a Department of Agriculture contractor may attend the company's annual retreat for all of its employees and their families held at a resort facility. However, under §2635.502, the employee may need to recuse from performing official duties affecting the spouse's employer.

*Example 2 to paragraph (e)(1):* When the spouses of other clerical personnel have not been invited, an employee of the Defense Contract Audit Agency whose spouse is a clerical worker at a defense contractor may not attend the contractor's annual retreat in Hawaii for corporate officers and members of the board of directors, even though the spouse received a special invitation from the company for them to attend as a couple.

(2) Resulting from the employee's outside business or employment activities when it is clear that such benefits are based on the outside business or employment activities and have not been offered or enhanced because of the employee's official status;

*Example 1 to paragraph (e)(2):* The members of an Army Corps of Engineers environmental advisory committee that meets six times per year are special Government employees. A member who has a consulting business may accept an invitation to a $50 dinner from a corporate client, an Army construction contractor, unless, for example, the invitation was extended in order to discuss the activities of the advisory committee.

(3) Customarily provided by a prospective employer in connection with bona fide employment discussions. If the prospective employer has interests that could be affected by performance or nonperformance of the employee's duties, acceptance is permitted only if the employee first has complied with the recusal requirements of subpart F of this part applicable when seeking employment; or

*Example 1 to paragraph (e)(3):* An employee of the Federal Communications Commission with responsibility for drafting regulations affecting all cable television companies wishes to apply for a job opening with a cable television holding company. Once the employee has properly recused from further work on the regulations as required by subpart F of this part, the employee may enter into employment discussions with the company and may accept the company's offer to pay for airfare, hotel, and meals in connection with an interview trip.

(4) Provided by a former employer to attend a reception or similar event when other former employees have been invited to attend, the invitation and benefits are based on the former employment relationship, and it is clear that such benefits have not been offered or enhanced because of the employee's official position.

*Example 1 to paragraph (e)(4):* An employee of the Department of the Army is invited by a former employer, an Army contractor, to attend its annual holiday dinner party. The former employer traditionally invites both its current and former employees to the holiday dinner regardless of their current employment activities. Under these circumstances, the employee may attend the dinner because the dinner

invitation is a result of the employee's former outside employment activities, other former employees have been asked to attend, and the gift is not offered because of the employee's official position.

(5) For purposes of paragraphs (e)(1) through (4) of this section, *employment* means any form of non-Federal employment or business relationship involving the provision of personal services.

(f) *Gifts in connection with political activities permitted by the Hatch Act Reform Amendments.* An employee who, in accordance with the Hatch Act Reform Amendments of 1993, at 5 U.S.C. 7323, may take an active part in political management or in political campaigns, may accept meals, lodgings, transportation, and other benefits, including free attendance at events, for the employee and an accompanying guest, when provided, in connection with such active participation, by a political organization described in 26 U.S.C. 527(e). Any other employees, such as a security officers, whose official duties require them to accompany an employee to a political event, may accept meals, free attendance, and entertainment provided at the event by such an organization.

*Example 1 to paragraph (f):* The Secretary of the Department of Health and Human Services may accept an airline ticket and hotel accommodations furnished by the campaign committee of a candidate for the United States Senate in order to give a speech in support of the candidate.

(g) *Gifts of free attendance at widely attended gatherings*—(1) *Authorization.* When authorized in writing by the agency designee pursuant to paragraph (g)(3) of this section, an employee may accept an unsolicited gift of free attendance at all or appropriate parts of a widely attended gathering. For an employee who is subject to a leave system, attendance at the event will be on the employee's own time or, if authorized by the employee's agency, on excused absence pursuant to applicable guidelines for granting such absence, or otherwise without charge to the employee's leave account.

(2) *Widely attended gatherings.* A gathering is widely attended if it is expected that:

(i) A large number of persons will attend;

(ii) Persons with a diversity of views or interests will be present, for example, if it is open to members from throughout the interested industry or profession or if those in attendance represent a range of persons interested in a given matter; and

(iii) There will be an opportunity to exchange ideas and views among invited persons.

(3) *Written authorization by the agency designee.* The agency designee may authorize an employee or employees to accept a gift of free attendance at all or appropriate parts of a widely attended gathering only if the agency designee issues a written determination after finding that:

(i) The event is a widely attended gathering, as set forth in paragraph (g)(2) of this section;

(ii) The employee's attendance at the event is in the agency's interest because it will further agency programs or operations;

(iii) The agency's interest in the employee's attendance outweighs the concern that the employee may be, or may appear to be, improperly influenced in the performance of official duties; and

(iv) If a person other than the sponsor of the event invites or designates the employee as the recipient of the gift of free attendance and bears the cost of that gift, the event is expected to be attended by more than 100 persons, and the value of the gift of free attendance does not exceed $480.

(4) *Determination of agency interest.* In determining whether the agency's interest in the employee's attendance outweighs the concern that the employee may be, or may appear to be, improperly influenced in the performance of official duties, the agency designee may consider relevant factors including:

(i) The importance of the event to the agency;

(ii) The nature and sensitivity of any pending matter affecting the interests of the person who extended the invitation and the significance of the employee's role in any such matter;

(iii) The purpose of the event;

(iv) The identity of other expected participants;

(v) Whether acceptance would reasonably create the appearance that the donor is receiving preferential treatment;

(vi) Whether the Government is also providing persons with views or interests that differ from those of the donor with access to the Government; and

(vii) The market value of the gift of free attendance.

(5) *Cost provided by person other than the sponsor of the event.* The cost of the employee's attendance will be considered to be provided by a person other than the sponsor of the event when such person designates the employee to be invited and bears the

cost of the employee's attendance through a contribution or other payment intended to facilitate the employee's attendance. Payment of dues or a similar assessment to a sponsoring organization does not constitute a payment intended to facilitate a particular employee's attendance.

(6) *Accompanying guest.* When others in attendance will generally be accompanied by a guest of their choice, and when the invitation is from the same person who has invited the employee, the agency designee may authorize an employee to accept an unsolicited invitation of free attendance to one accompanying guest to participate in all or a portion of the event at which the employee's free attendance is permitted under paragraph (g)(1) of this section. The authorization required by this paragraph (g)(6) must be provided in writing.

*Example 1 to paragraph (g):* An aerospace industry association that is a prohibited source sponsors an industry-wide, two-day seminar for which it charges a fee of $800 and anticipates attendance of approximately 400. An Air Force contractor pays $4,000 to the association so that the association can extend free invitations to five Air Force officials designated by the contractor. The Air Force officials may not accept the gifts of free attendance because the contractor, rather than the association, provided the cost of their attendance; the contractor designated the specific employees to receive the gift of free attendance; and the value of the gift exceeds $480 per employee.

*Example 2 to paragraph (g):* An aerospace industry association that is a prohibited source sponsors an industry-wide, two-day seminar for which it charges a fee of $25 and anticipates attendance of approximately 50. An Air Force contractor pays $125 to the association so that the association can extend free invitations to five Air Force officials designated by the contractor. The Air Force officials may not accept the gifts of free attendance because the contractor, rather than the association, provided the cost of their attendance; the contractor designated the specific employees to receive the gift of free attendance; and the event was not expected to be attended by more than 100 persons.

*Example 3 to paragraph (g):* An aerospace industry association that is a prohibited source sponsors an industry-wide, two-day seminar for which it charges a fee of $800 and anticipates attendance of approximately 400. An Air Force contractor pays $4,000 in order that the association might invite any five Federal employees. An Air

Force official to whom the sponsoring association, rather than the contractor, extended one of the five invitations could attend if the employee's participation were determined to be in the interest of the agency and the employee received a written authorization.

*Example 4 to paragraph (g):* An employee of the Department of Transportation is invited by a news organization to an annual press dinner sponsored by an association of press organizations. Tickets for the event cost $480 per person and attendance is limited to 400 representatives of press organizations and their guests. If the employee's attendance is determined to be in the interest of the agency and the agency designee provides a written authorization, the employee may accept the invitation from the news organization because more than 100 persons will attend and the cost of the ticket does not exceed $480. However, if the invitation were extended to the employee and an accompanying guest, the employee's guest could not be authorized to attend for free because the market value of the gift of free attendance would exceed $480.

*Example 5 to paragraph (g):* An employee of the Department of Energy (DOE) and their spouse have been invited by a major utility executive to a small dinner party. A few other officials of the utility and their spouses or other guests are also invited, as is a representative of a consumer group concerned with utility rates and their spouse. The DOE official believes the dinner party will provide an opportunity to socialize with and get to know those in attendance. The employee may not accept the free invitation under this exception, even if attendance could be determined to be in the interest of the agency. The small dinner party is not a widely attended gathering. Nor could the employee be authorized to accept even if the event were instead a corporate banquet to which forty company officials and their spouses or other guests were invited. In this second case, notwithstanding the larger number of persons expected (as opposed to the small dinner party just noted) and despite the presence of the consumer group representative and spouse who are not officials of the utility, those in attendance would still not represent a diversity of views or interests. Thus, the company banquet would not qualify as a widely attended gathering under those circumstances either.

*Example 6 to paragraph (g):* An Assistant U.S. Attorney is invited to attend a luncheon meeting of a local bar association to hear a distinguished judge lecture on cross-examining expert witnesses. Although members of the bar association are assessed a $15 fee for the meeting, the Assistant U.S. Attorney may accept the bar association's offer to attend for free, even without a determination of agency interest. The gift can be accepted under the $20 gift exception at paragraph (a) of this section.

*Example 7 to paragraph (g):* An employee of the Department of the Interior authorized to speak on the first day of a four-day conference on endangered species may accept the sponsor's waiver of the conference fee for the first day of the conference under § 2635.203(b)(8). If the conference is widely attended, the employee may be authorized to accept the sponsor's offer to waive the attendance fee for the remainder of the conference if the agency designee has made a written determination that attendance is in the agency's interest.

*Example 8 to paragraph (g):* A military officer has been approved to attend a widely attended gathering, pursuant to paragraph (g) of this section, that will be held in the same city as the officer's duty station. The defense contractor sponsoring the event has offered to transport the officer in a limousine to the event. The officer may not accept the offer of transportation because the definition of *free attendance* set forth in § 2635.203(g) excludes travel, and the market value of the transportation would exceed $20.

(h) *Social invitations.* An employee may accept food, refreshments, and entertainment, not including travel or lodgings, for the employee and an accompanying guest, at a social event attended by several persons if:

(1) The invitation is unsolicited and is from a person who is not a prohibited source;

(2) No fee is charged to any person in attendance; and

(3) If either the sponsor of the event or the person extending the invitation to the employee is not an individual, the agency designee has made a written determination after finding that the employee's attendance would not cause a reasonable person with knowledge of the relevant facts to question the employee's integrity or impartiality, consistent with § 2635.201(b).

*Example 1 to paragraph (h):* An employee of the White House Press Office has been invited to a social dinner for current and former White House Press Officers at the home of an individual who is not a prohibited source. The employee may attend even if the invitation is because of the employee's official position.

(i) *Meals, refreshments, and entertainment in foreign areas.* An employee assigned to duty in, or on official travel to, a foreign area as defined in 41 CFR 300–3.1 may accept unsolicited food, refreshments, or entertainment in the course of a breakfast, luncheon, dinner, or other meeting or event provided:

(1) The market value in the foreign area of the food, refreshments, or entertainment provided at the meeting or event, as converted to U.S. dollars, does not exceed the per diem rate for the foreign area specified in the U.S. Department of State's Maximum Rates of Per Diem Allowances for Travel in Foreign Areas, Per Diem Supplement, section 925 to the Standardized Regulations (GC–FA), available at *www.state.gov;*

(2) There is participation in the meeting or event by non-U.S. citizens or by representatives of foreign governments or other foreign entities;

(3) Attendance at the meeting or event is part of the employee's official duties to obtain information, disseminate information, promote the export of U.S. goods and services, represent the United States, or otherwise further programs or operations of the agency or the U.S. mission in the foreign area; and

(4) The gift of meals, refreshments, or entertainment is from a person other than a foreign government as defined in 5 U.S.C. 7342(a)(2).

*Example 1 to paragraph (i):* A number of local business owners in a developing country are eager for a U.S. company to locate a manufacturing facility in their province. An official of the U.S. International Development Finance Corporation may accompany the visiting vice president of the U.S. company to a dinner meeting hosted by the business owners at a province restaurant when the market value of the food and refreshments does not exceed the per diem rate for that country.

(j) *Gifts to the President or Vice President.* Because of considerations relating to the conduct of their offices, including those of protocol and etiquette, the President or the Vice President may accept any gift on their own behalf or on behalf of any family member, provided that such acceptance does not violate § 2635.205(a) or (b), 18 U.S.C. 201(b) or 201(c)(3), or the Constitution of the United States.

(k) *Gifts authorized by supplemental agency regulation.* An employee may accept any gift when acceptance of the gift is specifically authorized by a supplemental agency regulation issued with the concurrence of the Office of

Government Ethics, pursuant to § 2635.105.

(l) *Gifts accepted under specific statutory authority.* The prohibitions on acceptance of gifts from outside sources contained in this subpart do not apply to any item which a statute specifically authorizes an employee to accept. Gifts which may be accepted by an employee under the authority of specific statutes include, but are not limited to:

(1) Free attendance, course or meeting materials, transportation, lodgings, food and refreshments, or reimbursements therefor incident to training or meetings when accepted by the employee under the authority of 5 U.S.C. 4111. The employee's acceptance must be approved by the agency in accordance with part 410 of this title; or

(2) Gifts from a foreign government or international or multinational organization, or its representative, when accepted by the employee under the authority of the Foreign Gifts and Decorations Act, 5 U.S.C. 7342. As a condition of acceptance, an employee must comply with requirements imposed by the agency's regulations or procedures implementing that Act.

(m) *Gifts of informational materials.* (1) An employee may accept unsolicited gifts of informational materials, provided that:

(i) The aggregate market value of all informational materials received from any one person does not exceed $100 in a calendar year; or

(ii) If the aggregate market value of all informational materials from the same person exceeds $100 in a calendar year, an agency designee has made a written determination after finding that acceptance by the employee would not be inconsistent with the standard set forth in § 2635.201(b).

(2) *Informational materials* are writings, recordings, documents, records, or other items that:

(i) Are educational or instructive in nature;

(ii) Are not primarily created for entertainment, display, or decoration; and

(iii) Contain information that relates in whole or in part to the following categories:

(A) The employee's official duties or position, profession, or field of study;

(B) A general subject matter area, industry, or economic sector affected by or involved in the programs or operations of the agency; or

(C) Another topic of interest to the agency or its mission.

*Example 1 to paragraph (m):* An analyst at the Agricultural Research Service receives an edition of an agricultural research journal in the mail

from a consortium of private farming operations concerned with soil toxicity. The journal edition has a market value of $75. The analyst may accept the gift.

*Example 2 to paragraph (m):* An inspector at the Mine Safety and Health Administration receives a popular novel with a market value of $25 from a mine operator. Because the novel is primarily for entertainment purposes, the inspector may not accept the gift.

*Example 3 to paragraph (m):* An employee at the Department of the Army is offered an encyclopedia on cyberwarfare from a prohibited source. The cost of the encyclopedia is far in excess of $100. The agency designee determines that acceptance of the gift would be inconsistent with the standard set out in § 2635.201(b). The employee may not accept the gift under paragraph (m) of this section.

(n) *Legal expense funds and pro bono legal services.* An employee who seeks legal representation for a matter arising in connection with the employee's past or current official position, the employee's prior position on a campaign of a candidate for President or Vice President, or the employee's prior position on a Presidential Transition Team may accept:

(1) Payments for legal expenses paid out of a legal expense fund that is established and operated in accordance with subpart J of this part; and

(2) *Pro bono* legal services provided in accordance with subpart J of this part.

## § 2635.205   Limitations on use of exceptions.

Notwithstanding any exception provided in this subpart, other than § 2635.204(j), an employee may not:

(a) Accept a gift in return for being influenced in the performance of an official act;

(b) Use, or permit the use of, the employee's Government position, or any authority associated with public office, to solicit or coerce the offering of a gift;

(c) Accept gifts from the same or different sources on a basis so frequent that a reasonable person would be led to believe the employee is using the employee's public office for private gain;

*Example 1 to paragraph (c):* A purchasing agent for a Department of Veterans Affairs medical center routinely deals with representatives of pharmaceutical manufacturers who provide information about new company products. Because of a crowded calendar, the purchasing agent has offered to meet with manufacturer representatives during lunch hours Tuesdays through Thursdays, and the representatives routinely arrive at the

employee's office bringing a sandwich and a soft drink for the employee. Even though the market value of each of the lunches is less than $6 and the aggregate value from any one manufacturer does not exceed the $50 aggregate limitation in § 2635.204(a) on gifts of $20 or less, the practice of accepting even these modest gifts on a recurring basis is improper.

(d) Accept a gift in violation of any statute; relevant statutes applicable to all employees include, but are not limited to:

(1) 18 U.S.C. 201(b), which prohibits public officials from, directly or indirectly, corruptly demanding, seeking, receiving, accepting, or agreeing to receive or accept anything of value personally or for any other person or entity in return for being influenced in the performance of an official act; being influenced to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or for being induced to do or omit to do any action in violation of their official duties. As used in 18 U.S.C. 201(b), the term ''public official'' is broadly construed and includes regular and special Government employees as well as all other Government officials; and

(2) 18 U.S.C. 209, which prohibits employees, other than special Government employees, from receiving any salary or any contribution to or supplementation of salary from any source other than the United States as compensation for services as a Government employee. The statute contains several specific exceptions to this general prohibition, including an exception for contributions made from the treasury of a State, county, or municipality;

(e) Accept a gift in violation of any Executive order; or

(f) Accept any gift when acceptance of the gift is specifically prohibited by a supplemental agency regulation issued with the concurrence of the Office of Government Ethics, pursuant to § 2635.105.

## § 2635.206   Proper disposition of prohibited gifts.

(a) Unless a gift is accepted by an agency acting under specific statutory authority, an employee who has received a gift that cannot be accepted under this subpart must dispose of the gift in accordance with the procedures set forth in this section. The employee must promptly complete the authorized disposition of the gift. The obligation to dispose of a gift that cannot be accepted under this subpart is independent of an

agency's decision regarding corrective or disciplinary action under § 2635.106.

(1) *Gifts of tangible items.* The employee must promptly return any tangible item to the donor or pay the donor its market value; or, in the case of a tangible item with a market value of $100 or less, the employee may destroy the item. An employee who cannot ascertain the actual market value of an item may estimate its market value by reference to the retail cost of similar items of like quality.

*Example 1 to paragraph (a)(1):* A Department of Commerce employee received a $25 T-shirt from a prohibited source after providing training at a conference. Because the gift would not be permissible under an exception to this subpart, the employee must either return or destroy the T-shirt or promptly reimburse the donor $25. Destruction may be carried out by physical destruction or by permanently discarding the T-shirt by placing it in the trash.

*Example 2 to paragraph (a)(1):* To avoid public embarrassment to the seminar sponsor, an employee of the National Park Service did not decline a barometer worth $200 given at the conclusion of a speech on Federal lands policy. To comply with this section, the employee must either promptly return the barometer or pay the donor the market value of the gift. Alternatively, the National Park Service may choose to accept the gift if permitted under specific statutory gift acceptance authority. The employee may not destroy this gift, as the market value is in excess of $100.

(2) *Gifts of perishable items.* When it is not practical to return a tangible item in accordance with paragraph (a)(1) of this section because the item is perishable, the employee may, at the discretion of the employee's supervisor or the agency designee, give the item to an appropriate charity, share the item within the recipient's office, or destroy the item.

*Example 1 to paragraph (a)(2):* With approval by the recipient's supervisor, a floral arrangement sent by a disability claimant to a helpful employee of the Social Security Administration may be placed in the office's reception area.

(3) *Gifts of intangibles.* The employee must promptly reimburse the donor the market value for any entertainment, favor, service, benefit, or other intangible. Subsequent reciprocation by the employee does not constitute reimbursement.

*Example 1 to paragraph (a)(3):* A Department of Defense employee wishes to attend a charitable event for which they were offered a $300 ticket by a prohibited source. Although attendance is not in the interest of the agency under § 2635.204(g), the employee may attend if they reimburse the donor the $300 face value of the ticket.

(4) *Gifts from foreign governments or international organizations.* The employee must dispose of gifts from foreign governments or international organizations in accordance with 41 CFR part 102–42.

(b) An agency may authorize disposition or return of gifts at Government expense. Employees may use penalty mail to forward reimbursements required or permitted by this section.

(c) Employees who, on their own initiative, promptly comply with the requirements of this section will not be deemed to have improperly accepted an unsolicited gift. Employees who promptly consult their agency ethics official to determine whether acceptance of an unsolicited gift is proper and who, upon the advice of the ethics official, return the gift or otherwise dispose of the gift in accordance with this section, will be considered to have complied with the requirements of this section on the employee's own initiative.

(d) Employees are encouraged to record any actions they have taken to properly dispose of gifts that cannot be accepted under this subpart, such as by sending an electronic mail message to the appropriate agency ethics official or the employee's supervisor.

## Subpart C—Gifts Between Employees

### § 2635.301   Overview.

This subpart contains standards that prohibit an employee from giving or contributing to a gift to an official superior, and official superiors are prohibited from knowingly accepting such a gift. Employees also are prohibited from soliciting a contribution from another employee for a gift to an official superior. In addition, employees are prohibited from accepting a gift from an employee who receives less pay. The prohibitions in this subpart apply unless the item is excluded from the definition of a *gift* (see § 2635.303(a)) or falls within one of the exceptions set forth in this subpart. Gifts from outside sources are subject to the limitations set forth in subpart B of this part.

### § 2635.302   General standards.

(a) *Gifts to superiors.* Except as provided in this subpart, employees may not:

(1) Directly or indirectly, give a gift to or make a contribution toward a gift for an official superior, and an official superior may not knowingly accept such a gift; or

(2) Solicit a contribution from another employee for a gift to either their own or the other employee's official superior.

(b) *Gifts from employees receiving less pay.* Except as provided in this subpart, employees may not, directly or indirectly, accept a gift from an employee who receives less pay unless:

(1) There is a personal relationship between the two employees that would justify the gift and the employee receiving the gift is not the official superior of the employee giving the gift; or

(2) The employee giving the gift is the official superior of the employee receiving the gift.

*Example 1 to paragraph (b):* A GS–13 Department of Homeland Security (DHS) employee has been close personal friends with a neighbor, a GS–15 employee in another government agency, for many years. During their friendship, the GS–13 employee has often allowed the neighbor's family to use their vacation house rent-free. The GS–15 employee recently accepted a position at DHS, and in the new position will be the direct supervisor of the GS–13 employee. Although the personal relationship between the two employees justified the gift of rent-free use of the vacation home before they were both employed at DHS, for the duration of their supervisor-subordinate relationship the GS–13 employee may not allow the GS–15 neighbor to use the vacation house rent-free or give other gifts, except as permitted by the exceptions contained in this subpart.

(c) *Limitation on use of exceptions.* Notwithstanding any exception provided in this subpart, an official superior may not coerce the offering of a gift from a subordinate.

### § 2635.303   Definitions.

For purposes of this subpart, the following definitions apply:

(a) *Gift* has the meaning set forth in § 2635.203(b). For purposes of § 2635.203(b) and this paragraph (a) an employee will be deemed to have paid market value for any benefit received as a result of participating in a carpool or other such mutual arrangement between employees if the employee bears a fair proportion of the expense or effort involved.

(b) *Indirectly,* for purposes of § 2635.302(b), has the meaning set forth in § 2635.203(f). For purposes of § 2635.302(a), it includes a gift:

(1) Given with the employee's knowledge and acquiescence by the employee's parent, sibling, spouse, child, or dependent relative; or

(2) Given by a person other than the employee when circumstances indicate that the employee has promised or agreed to reimburse that person or to give that person something of value in exchange for giving the gift.

(c) *Market value* has the meaning set forth in § 2635.203(c), subject to paragraph (a) of this section.

(d) *Official superior* means any other employee, other than the President and the Vice President, including but not limited to an immediate supervisor, whose official responsibilities include directing or evaluating the performance of the employee's official duties or those of any other official superior of the employee. For purposes of this subpart, employees are considered to be the subordinates of any of their official superiors.

(e) *Solicit* means to request contributions by personal communication or by general announcement.

(f) *Voluntary contribution* means a contribution given freely, without pressure or coercion. A contribution is not voluntary unless it is made in an amount determined by the contributing employee, except that when an amount for a gift is included in the cost for a luncheon, reception, or similar event, an employee who freely chooses to pay a proportionate share of the total cost in order to attend will be deemed to have made a voluntary contribution. Except in the case of contributions for a gift included in the cost of a luncheon, reception, or similar event, a statement that an employee may choose to contribute less or not at all must accompany any recommendation of an amount to be contributed for a gift to an official superior.

*Example 1 to paragraph (f):* A supervisory employee of the Agency for International Development has just been reassigned from Washington, DC, to a foreign duty location. As a farewell party, 12 subordinates have decided to take the supervisory employee out to lunch at a restaurant. It is understood that the employees will pay for their own meals and that the cost of the supervisor's lunch will be divided equally among the 12. Even though the amount they will contribute is not determined until the supervisor orders lunch, the contribution made by those who choose to participate in the farewell lunch is voluntary.

## § 2635.304  Exceptions.

The prohibitions set forth in § 2635.302(a) and (b) do not apply to a gift given or accepted under the circumstances described in paragraph (a) or (b) of this section. A contribution or the solicitation of a contribution that would otherwise violate the prohibitions set forth in § 2635.302(a) and (b) may only be made in accordance with paragraph (c) of this section.

(a) *General exceptions.* On an occasional basis, including any occasion on which gifts are traditionally given or exchanged, the following may be given to an official superior or accepted from a subordinate or an employee receiving less pay:

(1) Items, other than cash, with an aggregate market value of $10 or less per occasion;

(2) Items such as food and refreshments to be shared in the office among several employees;

(3) Personal hospitality provided at a residence which is of a type and value customarily provided by the employee to personal friends;

(4) Items given in connection with the receipt of personal hospitality if of a type and value customarily given on such occasions; and

(5) Unless obtained in violation of § 630.912 of this title, leave transferred under subpart I of part 630 of this title to an employee who is not an immediate supervisor.

*Example 1 to paragraph (a):* Upon returning to work following a vacation at the beach, a claims examiner with the Department of Veterans Affairs may give their supervisor, and the supervisor may accept, a bag of saltwater taffy purchased on the boardwalk for $8.

*Example 2 to paragraph (a):* An employee of the Federal Deposit Insurance Corporation whose bank examination responsibilities require frequent travel may not bring their supervisor, and the supervisor may not accept, souvenir coffee mugs from each of the cities the employee visits in the course of performing examination duties, even though each of the mugs costs less than $5. Gifts given on this basis are not occasional.

*Example 3 to paragraph (a):* The Secretary of Labor has invited the agency's General Counsel to a home dinner party. The General Counsel may bring a $15 bottle of wine to the dinner party and the Secretary may accept this customary gift from the subordinate, even though its cost is in excess of $10.

*Example 4 to paragraph (a):* For the holidays, an assistant may give their supervisor, and the supervisor may accept, a small succulent plant purchased for $10 or less. The assistant may also invite the supervisor to a New Year's Eve party in their home and the supervisor may attend.

(b) *Special, infrequent occasions.* A gift appropriate to the occasion may be given to an official superior or accepted from a subordinate or other employee receiving less pay:

(1) In recognition of infrequently occurring occasions of personal significance such as marriage, illness, bereavement, or the birth or adoption of a child; or

(2) Upon occasions that terminate a subordinate-official superior relationship, such as retirement, resignation, or transfer.

*Example 1 to paragraph (b):* The administrative assistant to the personnel director of the Tennessee Valley Authority may send a $30 floral arrangement to the personnel director who is in the hospital recovering from surgery. The personnel director may accept the gift.

*Example 2 to paragraph (b):* A chemist employed by the Food and Drug Administration has been invited to the wedding of the lab director who is an official superior. The chemist may give the lab director and the lab director's spouse, and the couple may accept, a place setting in the couple's selected china pattern purchased for $70.

*Example 3 to paragraph (b):* Upon the occasion of the supervisor's retirement from Federal service, an employee of the Fish and Wildlife Service may give the supervisor a book of wildlife photographs purchased for $19. The retiring supervisor may accept the book.

*Example 4 to paragraph (b):* An economist at the Consumer Financial Protection Bureau overhears their supervisor talking about their upcoming 50th birthday. Although a 50th birthday may be conventionally seen as a unique "milestone" worthy of additional celebration, the employee may not give their supervisor a $25 bottle of wine as a present because a birthday is not an infrequently occurring occasion.

(c) *Voluntary contributions.* (1) An employee may solicit voluntary contributions of nominal amounts from fellow employees for an appropriate gift to an official superior and an employee may make a voluntary contribution of a nominal amount to an appropriate gift to an official superior:

(i) On a special, infrequent occasion as described in paragraph (b) of this section; or

(ii) On an occasional basis, for items such as food and refreshments to be shared in the office among several employees.

(2) An employee may accept such gifts to which a subordinate or an employee receiving less pay has voluntarily contributed pursuant to paragraph (c)(1) of this section.

*Example 1 to paragraph (c):* To mark the occasion of retirement, members of the immediate staff of the Under

Secretary of the Army would like to throw a party and provide the Under Secretary with a gift certificate. They may distribute an announcement of the party and list a nominal amount for a retirement gift as a suggested voluntary contribution for the party.

*Example 2 to paragraph (c):* An employee of the National Endowment for the Arts may not collect contributions for a Christmas gift for the Chairman. Christmas occurs annually and is not an occasion of personal significance.

*Example 3 to paragraph (c):* Subordinates may not take up a collection for a gift to an official superior on the occasion of the superior's swearing in or promotion to a higher-grade position within the supervisory chain of that organization. These are not events that mark the termination of the subordinate-official superior relationship, nor are they events of personal significance within the meaning of paragraph (b) of this section. However, subordinates may take up a collection and employees may contribute a nominal amount to buy refreshments to be consumed by everyone in the immediate office to mark either such occasion.

*Example 4 to paragraph (c):* Subordinates may each contribute a nominal amount to a fund to give a gift to an official superior upon the occasion of that superior's transfer or promotion to a position outside the organization.

*Example 5 to paragraph (c):* An Assistant Secretary at the Department of the Interior is getting married. The Assistant Secretary's assistant has decided that a microwave oven would be a nice gift from the staff and has informed each of the Assistant Secretary's subordinates that they should contribute $5 for the gift. The assistant's method of collection is improper. Although it is permissible to recommend a $5 contribution, the recommendation must be coupled with a statement that the employee whose contribution is solicited is free to contribute less or nothing at all.

### § 2635.305   Disposition of prohibited gifts.

Section 2635.206(a)(1) through (3) may be referenced when determining an appropriate disposition of a gift that may not be accepted under this subpart.

## Subpart D—Conflicting Financial Interests

### § 2635.401   Overview.

Part 2640 of this chapter interprets and is the implementing regulation for 18 U.S.C. 208. This subpart summarizes the relevant statutory restrictions and some of the regulatory guidance found there. Specifically, this subpart contains two provisions relating to financial interests. One is a recusal requirement and the other is a prohibition on acquiring or continuing to hold specific financial interests. An employee may acquire or hold any financial interest not prohibited by § 2635.403. Notwithstanding that the acquisition or holding of a particular interest is proper, an employee is prohibited in accordance with § 2635.402 from participating in an official capacity in any particular matter in which, to the employee's knowledge, the employee or any person whose interests are imputed to the employee has a financial interest, if the particular matter will have a direct and predictable effect on that interest.

### § 2635.402   Disqualifying financial interests.

(a) *Statutory prohibition.* An employee is prohibited by criminal statute, 18 U.S.C. 208(a), from participating personally and substantially in an official capacity in any particular matter in which, to the employee's knowledge, the employee or any person whose interests are imputed to the employee under this statute has a financial interest, if the particular matter will have a direct and predictable effect on that interest.

**Note 1 to paragraph (a):** Standards applicable when seeking non-Federal employment are contained in subpart F of this part and, if followed, will ensure that an employee does not violate 18 U.S.C. 208(a) or this section when the employee is negotiating for or has an arrangement concerning future employment. In all other cases when the employee's participation would violate 18 U.S.C. 208(a), an employee must recuse from participating in the particular matter in accordance with paragraph (c) of this section or obtain a waiver or determine that an exemption applies, as described in paragraph (d) of this section.

(b) *Definitions.* For purposes of this section, the following definitions apply:

(1) *Direct and predictable effect.* (i) A particular matter will have a direct effect on a financial interest if there is a close causal link between any decision or action to be taken in the matter and any expected effect of the matter on the financial interest. An effect may be direct even though it does not occur immediately. A particular matter will not have a direct effect on a financial interest, however, if the chain of causation is attenuated or is contingent upon the occurrence of events that are speculative or that are independent of, and unrelated to, the matter. A particular matter that has an effect on a financial interest only as a consequence of its effects on the general economy does not have a direct effect within the meaning of this subpart.

(ii) A particular matter will have a predictable effect if there is a real, as opposed to a speculative possibility that the matter will affect the financial interest. It is not necessary, however, that the magnitude of the gain or loss be known, and the dollar amount of the gain or loss is immaterial.

**Note 2 to paragraph (b)(1):** If a particular matter involves a specific party or parties, generally the matter will at most only have a direct and predictable effect, for purposes of this subpart, on a financial interest of the employee in or with a party, such as the employee's interest by virtue of owning stock. There may, however, be some situations in which, under the standards of this paragraph (b)(1), a particular matter will have a direct and predictable effect on an employee's financial interests in or with a nonparty. For example, if a party is a corporation, a particular matter may also have a direct and predictable effect on an employee's financial interests through ownership of stock in an affiliate, parent, or subsidiary of that party. Similarly, the disposition of a protest against the award of a contract to a particular company may also have a direct and predictable effect on an employee's financial interest in another company listed as a subcontractor in the proposal of one of the competing offerors.

*Example 1 to paragraph (b)(1):* An employee of the National Library of Medicine at the National Institutes of Health has just been asked to serve on the technical evaluation panel to review proposals for a new library computer search system. DEF Computer Corporation, a closely held company in which the employee and their spouse own a majority of the stock, has submitted a proposal. Because award of the systems contract to DEF or to any other offeror will have a direct and predictable effect on the financial interests of both the employee and the spouse, the employee cannot participate on the technical evaluation team unless this disqualification has been waived.

*Example 2 to paragraph (b)(1):* Upon assignment to the technical evaluation panel, the employee in example 1 to this paragraph (b)(1) finds that DEF Computer Corporation has not submitted a proposal. Rather, LMN Corp., with which DEF competes for private sector business, is one of the six offerors. The employee need not recuse from serving on the technical evaluation panel. Any effect on the employee's financial interests as a result of the agency's decision to award or not award the systems contract to LMN would be at most indirect and speculative.

(2) *Imputed interests.* For purposes of 18 U.S.C. 208(a) and this subpart, the financial interests of the following

persons will require the recusal of an employee to the same extent as if they were the employee's own interests:

(i) The employee's spouse;

(ii) The employee's minor child;

(iii) The employee's general partner;

(iv) An organization or entity which the employee serves as officer, director, trustee, general partner, or employee; and

(v) A person with whom the employee is negotiating for or has an arrangement concerning prospective employment. (Employees who are seeking other employment should refer to and comply with the standards in subpart F of this part.)

*Example 1 to paragraph (b)(2):* An employee of the Department of Education serves without compensation on the board of directors of Kinder World, Inc., a nonprofit corporation that engages in good works. Even though the employee's personal financial interests will not be affected, the employee must recuse from participating in the review of a grant application submitted by Kinder World. Award or denial of the grant will affect the financial interests of Kinder World and its financial interests are imputed to the employee as a member of its board of directors.

*Example 2 to paragraph (b)(2):* The spouse of an employee of the Food and Drug Administration has obtained a position with a well-established biomedical research company. The company has developed an artificial limb for which it is seeking FDA approval and the employee would ordinarily be asked to participate in the FDA's review and approval process. The spouse is a salaried employee of the company and has no stock or other direct or indirect ownership interest in the company. The spouse's position with the company is such that the granting or withholding of FDA approval will not have a direct and predictable effect on their salary or continued employment with the company. Because the FDA approval process will not affect the spouse's financial interests, this section does not require the employee to recuse from participating in that process. Nevertheless, because the impartiality principle is implicated as a result of the employee's covered relationship with the spouse's employer, as identified at § 2635.502(b)(1)(iii), the employee must follow the procedures established in § 2635.502 before participating in the FDA's review and approval process.

(3) *Particular matter.* The term particular matter encompasses only matters that involve deliberation, decision, or action that is focused upon the interests of specific persons, or a discrete and identifiable class of persons. Such a matter is covered by this subpart even if it does not involve formal parties and may include governmental action such as legislation or policy-making that is narrowly focused on the interests of such a discrete and identifiable class of persons. The term particular matter, however, does not extend to the consideration or adoption of broad policy options that are directed to the interests of a large and diverse group of persons. The particular matters covered by this subpart include a judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, or arrest.

*Example 1 to paragraph (b)(3):* The Internal Revenue Service's amendment of its regulations to change the manner in which depreciation is calculated is not a particular matter, nor is the Social Security Administration's consideration of changes to its appeal procedures for disability claimants.

*Example 2 to paragraph (b)(3):* Consideration by the Surface Transportation Board of regulations establishing safety standards for trucks on interstate highways involves a particular matter.

(4) *Personal and substantial.* To participate personally means to participate directly. It includes the direct and active supervision of the participation of a subordinate in the matter. To participate substantially means that the employee's involvement is of significance to the matter. Participation may be substantial even though it is not determinative of the outcome of a particular matter. However, it requires more than official responsibility, knowledge, perfunctory involvement, or involvement on an administrative or peripheral issue. A finding of substantiality should be based not only on the effort devoted to a matter, but also on the importance of the effort. While a series of peripheral involvements may be insubstantial, the single act of approving or participating in a critical step may be substantial. Personal and substantial participation may occur when, for example, an employee participates through decision, approval, disapproval, recommendation, investigation, or the rendering of advice in a particular matter.

(c) *Recusal.* Unless the employee is authorized to participate in the particular matter by virtue of a waiver or exemption described in paragraph (d) of this section or because the interest has been divested in accordance with paragraph (e) of this section, an employee must recuse from participating in a particular matter in which, to the employee's knowledge, the employee or a person whose interests are imputed to the employee has a financial interest, if the particular matter will have a direct and predictable effect on that interest. Recusal is accomplished by not participating in the particular matter.

(1) *Notification.* Employees who become aware of the need to recuse from participating in a particular matter to which they have been assigned must take whatever steps are necessary to ensure that they do not participate in the matter. Appropriate oral or written notification of their recusal may be made to an agency ethics official, coworkers, or a supervisor to document and help effectuate the recusal. Public filers as defined in subpart F of this part must comply with additional notification requirements set forth in § 2635.607 regarding negotiations for or agreement of future employment or compensation.

(2) *Documentation.* Employees need not file written recusal statements unless they are required by part 2634 of this chapter to follow written evidence of compliance with an ethics agreement with the Office of Government Ethics or a designated agency ethics official, or are specifically directed by an agency ethics official or the person responsible for their assignments to file written recusal statements. However, it is often prudent for employees to create a record of their actions by providing written notice to an agency ethics official, a supervisor, or other appropriate official. In addition, public filers as defined in subpart F of this part must comply with the documentation requirements set forth in § 2635.607 regarding negotiations for or agreement of future employment or compensation.

*Example 1 to paragraph (c):* An Assistant Secretary of the Department of the Interior owns recreational property that borders on land which is being considered for annexation to a national park. Annexation would directly and predictably increase the value of the Assistant Secretary's vacation property and, thus, the Assistant Secretary must recuse from participating in any way in the Department's deliberations or decisions regarding the annexation. Because the Assistant Secretary is responsible for determining their own work assignments, they may accomplish their recusal merely by ensuring that they do not participate in the particular matter. Because of the level of their position, however, the Assistant Secretary might be wise to establish a record that they have acted properly by providing a written recusal statement to

an official superior and by providing written notification of the recusal to subordinates to ensure that they do not raise or discuss any issues related to the annexation with the Assistant Secretary.

(d) *Waiver of or exemptions from recusal requirement.* An employee who would otherwise be required to recuse under 18 U.S.C. 208(a) may be permitted to participate in a particular matter if the financial interest that would otherwise require recusal is the subject of a regulatory exemption or individual waiver described in this paragraph (d), or results from certain Indian birthrights as described in 18 U.S.C. 208(b)(4).

(1) *Regulatory exemptions.* Under 18 U.S.C. 208(b)(2), regulatory exemptions of general applicability have been issued by the Office of Government Ethics, based on its determination that particular interests are too remote or too inconsequential to affect the integrity of the services of employees to whom those exemptions apply. See part 2640, subpart B of this chapter.

(2) *Individual waivers.* An individual waiver enabling the employee to participate in one or more particular matters may be issued under 18 U.S.C. 208(b)(1) if, in advance of the employee's participation:

(i) The employee:

(A) Advises the Government official responsible for the employee's appointment (or other Government official to whom authority to issue such a waiver for the employee has been delegated) about the nature and circumstances of the particular matter or matters; and

(B) Makes full disclosure to such official of the nature and extent of the relevant financial interest; and

(ii) Such official determines, in writing, that the employee's financial interest in the particular matter or matters is not so substantial as to be deemed likely to affect the integrity of the services which the Government may expect from such employee. See part 2640, subpart C of this chapter (providing additional guidance).

(3) *Federal advisory committee member waivers.* An individual waiver may be issued under 18 U.S.C. 208(b)(3) to a special Government employee serving on, or under consideration for appointment to, an advisory committee within the meaning of the Federal Advisory Committee Act if the Government official responsible for the employee's appointment (or other Government official to whom authority to issue such a waiver for the employee has been delegated):

(i) Reviews the financial disclosure report filed by the special Government employee pursuant to 5 U.S.C. chapter 131; and

(ii) Certifies in writing that the need for the individual's services outweighs the potential for a conflict of interest created by the relevant financial interest. See part 2640, subpart C, of this chapter (providing additional guidance).

(4) *Consultation and notification regarding waivers.* When practicable, an official is required to consult formally or informally with the Office of Government Ethics prior to granting a waiver referred to in paragraph (d)(2) or (3) of this section. A copy of each such waiver is to be forwarded to the Director of the Office of Government Ethics.

(e) *Divestiture of a disqualifying financial interest.* Upon sale or other divestiture of the asset or other interest that would otherwise require the employee to recuse from participating in a particular matter, 18 U.S.C. 208(a) and paragraph (c) of this section will no longer prohibit the employee's participation in the matter.

(1) *Voluntary divestiture.* An employee who would otherwise be required to recuse from participating in a particular matter may voluntarily sell or otherwise divest the interest that create the recusal requirement.

(2) *Directed divestiture.* An employee may be required to sell or otherwise divest the disqualifying financial interest if the continued holding of that interest is prohibited by statute or by agency supplemental regulation issued in accordance with § 2635.403(a), or if the agency determines in accordance with § 2635.403(b) that a substantial conflict exists between the financial interest and the employee's duties or accomplishment of the agency's mission.

(3) *Eligibility for special tax treatment.* An employee who is directed to divest an interest may be eligible to defer the tax consequences of divestiture under part 2634, subpart J, of this chapter. An employee who divests before obtaining a certificate of divestiture will not be eligible for this special tax treatment.

(f) *Official duties that give rise to potential conflicts.* When their official duties create a substantial likelihood that they may be assigned to a particular matter from which they would be required to recuse, employees should advise their supervisors or other persons responsible for their assignments of that potential so that conflicting assignments can be avoided, consistent with the agency's needs.

**§ 2635.403  Prohibited financial interests.**

An employee may not acquire or hold any financial interest that agency employees are prohibited from acquiring or holding by statute, by agency regulation issued in accordance with paragraph (a) of this section, or by reason of an agency determination of substantial conflict under paragraph (b) of this section.

(a) *Agency regulation prohibiting certain financial interests.* An agency may, by supplemental agency regulation, prohibit or restrict the acquisition or holding of a financial interest or a class of financial interests by agency employees, or any category of agency employees, and the spouses and minor children of those employees, based on the agency's determination that the acquisition or holding of such financial interests would cause a reasonable person to question the impartiality and objectivity with which agency programs are administered. When the agency restricts or prohibits the holding of certain financial interests by its employees' spouses or minor children, any such prohibition or restriction must be based on a determination that there is a direct and appropriate nexus between the prohibition or restriction as applied to spouses and minor children and the efficiency of the service.

**Note 1 to paragraph (a):** There is no statute of Governmentwide applicability prohibiting employees from holding or acquiring any financial interest. Statutory restrictions, if any, are contained in agency statutes which, in some cases, may be implemented by agency regulations issued independent of this part.

(b) *Agency determination of substantial conflict.* An agency may prohibit or restrict an individual employee from acquiring or holding a financial interest or a class of financial interests based upon the agency designee's determination that the holding of such interest or interests will:

(1) Require the employee to recuse from particular matters so central or critical to the performance of the employee's official duties that their ability to perform the duties of their position would be materially impaired; or

(2) Adversely affect the efficient accomplishment of the agency's mission because another employee cannot be readily assigned to perform work from which the employee would be recused by reason of the financial interest.

*Example 1 to paragraph (b):* An Air Force employee who owns $33,778 of stock in a major aircraft engine manufacturer is being considered for promotion to a position that involves responsibility for development of a new fighter airplane. If the agency determined that engineering and other

decisions about the Air Force's requirements for the fighter would directly and predictably affect the employee's financial interests, the employee could not, by virtue of 18 U.S.C. 208(a), perform these significant duties of the position while retaining stock in the company. The agency can require the employee to sell the stock as a condition of being selected for the position rather than allowing the employee to recuse from particular matters.

(c) *Definition of financial interest.* For purposes of this section:

(1) Except as provided in paragraph (c)(2) of this section, the term financial interest is limited to financial interests that are owned by the employee or by the employee's spouse or minor children. However, the term is not limited to only those financial interests that would require the employee to recuse under 18 U.S.C. 208(a) and § 2635.402. The term includes any current or contingent ownership, equity, or security interest in real or personal property or a business, and may include an indebtedness or compensated employment relationship. It thus includes, for example, interests in the nature of stocks, bonds, partnership interests, fee and leasehold interests, mineral and other property rights, deeds of trust, and liens, and extends to any right to purchase or acquire any such interest, such as a stock option or commodity future. It does not include a future interest created by someone other than the employee, the employee's spouse, or minor child, or any right as a beneficiary of an estate that has not been settled.

*Example 1 to paragraph (c)(1):* A regulatory agency has concluded that ownership by its employees of stock in entities regulated by the agency would significantly diminish public confidence in the agency's performance of its regulatory functions and thereby interfere with the accomplishment of its mission. In its supplemental agency regulations, the agency may prohibit its employees from acquiring or continuing to hold stock in regulated entities.

*Example 2 to paragraph (c)(1):* An agency that insures bank deposits may, by supplemental agency regulation, prohibit its employees who are bank examiners from obtaining loans from banks they examine. Examination of a member bank could have no effect on an employee's fixed obligation to repay a loan from that bank and, thus, would not affect an employee's financial interests so as to require recusal under § 2635.402. Nevertheless, a loan from a member bank is a discrete financial interest within the meaning of

paragraph (c) of this section that may, when appropriate, be prohibited by supplemental agency regulation.

(2) The term financial interest includes service, with or without compensation, as an officer, director, trustee, general partner, or employee of any person, including a nonprofit entity, whose financial interests are imputed to the employee under § 2635.402(b)(2)(iii) or (iv).

*Example 1 to paragraph (c)(2):* The Foundation for the Preservation of Wild Horses maintains herds of horses that graze on public and private lands. Because its costs are affected by Federal policies regarding grazing permits, the Foundation routinely comments on all proposed rules issued by the Bureau of Land Management (BLM). BLM may require an employee to resign from their uncompensated position as Vice President of the Foundation as a condition of a promotion to a policy-level position within the Bureau rather than allowing the employee to rely on recusal in particular cases.

(d) *Reasonable period to divest or terminate.* Whenever an agency directs divestiture of a financial interest under paragraph (a) or (b) of this section, the employee will be given a reasonable period of time, considering the nature of their particular duties and the nature and marketability of the interest, within which to comply with the agency's direction. Except in cases of unusual hardship, as determined by the agency, a reasonable period must not exceed 90 days from the date divestiture is first directed. However, as long as the employee continues to hold the financial interest, all restrictions imposed by this subpart remain applicable.

(e) *Eligibility for special tax treatment.* Employees required to sell or otherwise divest a financial interest may be eligible to defer the tax consequences of divestiture under part 2634, subpart J, of this chapter.

## Subpart E—Impartiality in Performing Official Duties

### § 2635.501   Overview.

(a) *Scope.* This subpart is intended to ensure that employees take appropriate steps to avoid an appearance of loss of impartiality in the performance of their official duties in circumstances other than those covered by the criminal conflict of interest statute, 18 U.S.C. 208(a).

(1) The provisions of § 2635.502 are designed to help employees identify and take appropriate steps regarding their participation in particular matters

involving specific parties that may cause a reasonable person with knowledge of the relevant facts to question their impartiality. Employees and agencies should analyze such appearance issues, and employees may receive authorization to participate in such matters, using the procedures in this subpart.

(2) Under § 2635.503, an employee who has received a covered payment from a former employer is subject, in the absence of a waiver pursuant to § 2635.503(c), to a two-year period of recusal from participating in particular matters in which that former employer is or represents a party.

(3) An employee is prohibited by 18 U.S.C. 208(a) from participating personally and substantially in an official capacity in any particular matter in which, to the employee's knowledge, the employee has a personal or imputed financial interest, if the particular matter will have a direct and predictable effect on that interest. Section 208(a), its interpreting and implementing regulations under part 2640 of this chapter, and the regulations at subparts D and F of this part, apply when the particular matter would affect the financial interests of one of these persons.

(b) *Distinction between authorizations under this subpart and waivers and exemptions under the criminal conflict of interest law.* (1) When an employee's participation in a particular matter involving specific parties would raise a question in the mind of a reasonable person about the employee's impartiality, but would not violate 18 U.S.C. 208(a), the agency designee may make a determination, as explained in § 2635.502(d), and authorize the employee to participate in the matter.

(2) When the employee's participation in a particular matter would affect any one of the financial interests described in 18 U.S.C. 208(a), only a statutory waiver or exemption, as described in §§ 2635.402(d) and 2635.605(a), will enable the employee to participate in that matter. The specific requirements for regulatory exemptions and statutory waivers are contained in part 2640, subparts B and C, of this chapter.

(3) An applicable waiver or exemption under part 2640 of this chapter also authorizes an employee's participation in particular matters that would otherwise be restricted by § 2635.502. Specifically, if an employee meets all prerequisites for the application of one of the regulatory exemptions set forth in part 2640, subpart B, of this chapter, that constitutes a determination that the interest of the Government in the

employee's participation in a particular matter outweighs the concern that a reasonable person may question the integrity of agency programs and operations. Similarly, if the employee complies with all terms of a statutory waiver granted pursuant to part 2640, subpart C, of this chapter, that also constitutes a determination that the interest of the Government in the employee's participation in a particular matter outweighs the concern that a reasonable person may question the integrity of agency programs and operations. In such cases, the employee is not required to recuse under § 2635.502(e) or request authorization to participate under § 2635.502(d).

**Note 1 to § 2635.501:** Even if the employee or agency designee determines that this subpart is not applicable, the employee's supervisor or other individuals responsible for assigning work to the employee may decide not to assign certain work to the employee for other reasons, including to address appearance and impartiality concerns not covered by this subpart.

### § 2635.502 Personal and business relationships.

(a) *Consideration of appearances by the employee.* In considering whether any of the following would cause a reasonable person to question their impartiality, employees may seek the assistance of their supervisor, an agency ethics official, or the agency designee.

(1) When an employee knows that a particular matter involving specific parties is likely to have a direct and predictable effect on the financial interest of a member of the employee's household, and the employee determines that the circumstances would cause a reasonable person with knowledge of the relevant facts to question the employee's impartiality in the matter, the employee should not participate in the matter unless the employee has received a determination from the agency designee regarding the appearance problem in accordance with paragraph (c) of this section or received an authorization from the agency designee in accordance with paragraph (d) of this section.

(2) When an employee knows that a person with whom the employee has a covered relationship is or represents a party to a particular matter involving specific parties, and the employee determines that the circumstances would cause a reasonable person with knowledge of the relevant facts to question their impartiality in the matter, the employee should not participate in the matter unless the employee has received a determination from the agency designee regarding the

appearance problem in accordance with paragraph (c) of this section or received an authorization from the agency designee in accordance with paragraph (d) of this section.

(3) Employees who are concerned that circumstances other than those specifically described in paragraphs (a)(1) and (2) of this section would raise a question regarding their impartiality should use the process described in this section to determine whether they should not participate in a particular matter.

(b) *Definitions.* For purposes of this section:

(1) An employee has a *covered relationship* with:

(i) A person, other than a prospective employer described in § 2635.603(c), with whom the employee has or seeks a business, contractual, or other financial relationship that involves other than a routine consumer transaction;

**Note 1 to paragraph (b)(1)(i):** An employee who is seeking employment within the meaning of § 2635.603 must comply with subpart F of this part rather than with this section.

(ii) A person who is a member of the employee's household, or who is a relative with whom the employee has a close personal relationship;

(iii) A person for whom the employee's spouse, parent, or child is, to the employee's knowledge, serving or seeking to serve as an officer, director, trustee, general partner, agent, attorney, consultant, contractor, or employee;

(iv) Any person for whom the employee has, within the last year, served as officer, director, trustee, general partner, agent, attorney, consultant, contractor, or employee; or

(v) An organization, other than a political party described in 26 U.S.C. 527(e), in which the employee is an active participant. Participation is active if, for example, it involves service as an official of the organization or in a capacity similar to that of a committee or subcommittee chairperson or spokesperson, or participation in directing the activities of the organization. In other cases, significant time devoted to promoting specific programs of the organization, including coordination of fundraising efforts, is an indication of active participation. Payment of dues or the donation or solicitation of financial support does not, in itself, constitute active participation.

(2) *Direct and predictable effect* has the meaning set forth in § 2635.402(b)(1).

(3) *Particular matter involving specific parties* has the meaning set forth in § 2640.102(l) of this chapter.

*Example 1 to paragraph (b):* An employee of the General Services Administration (GSA) has made an offer to purchase a restaurant owned by a local developer. The developer has submitted an offer in response to a GSA solicitation for the lease of office space. Under the circumstances, the GSA employee would be correct in concluding that a reasonable person would be likely to question their impartiality if they were to participate in evaluating that developer's or its competitor's lease proposal.

*Example 2 to paragraph (b):* An employee of the Department of Labor is providing technical assistance in drafting occupational safety and health legislation that will affect all employers of five or more persons. The employee's spouse is employed as an administrative assistant by a large corporation that will incur additional costs if the proposed legislation is enacted. Because the legislation is not a particular matter involving specific parties, the employee may continue to work on the legislation and need not be concerned that the spouse's employment with an affected corporation would raise a question concerning the employee's impartiality.

*Example 3 to paragraph (b):* An employee of the Bureau of Land Management (BLM) is studying environmental problems created by the use of hazardous substances on a particular section of public land. BLM has a contract with an environmental services company to produce a water quality study of the groundwater under this section of land along with a recommendation about how to remediate any problems that are found. The BLM employee will use the study to help determine the extent of the damage and to recommend a solution to any problems that are revealed. The employee's parent has accepted a job with this environmental services company and will be signing and submitting the report of the company's findings. Under these circumstances, the employee would be correct in concluding that a reasonable person would be likely to question their impartiality if they were to continue participating in the study related to this parcel of public land.

*Example 4 to paragraph (b):* An engineer has just resigned from a position as vice president of an electronics company in order to accept employment with the Federal Aviation Administration (FAA) in a position involving procurement responsibilities. Although the employee did not receive

a covered payment in connection with the resignation and has severed all financial ties with the firm, under the circumstances the employee would be correct in concluding that this former service as an officer of the company would be likely to cause a reasonable person to question their impartiality if they were to participate in the administration of an FAA contract for which the firm is a first-tier subcontractor.

*Example 5 to paragraph (b):* An employee of the Internal Revenue Service (IRS) is a member of a private organization whose purpose is to restore a Victorian-era railroad station, and chairs its annual fundraising drive. Under the circumstances, the employee would be correct in concluding that this active membership in the organization would be likely to cause a reasonable person to question their impartiality if they were to participate in an IRS determination regarding the tax-exempt status of the organization.

*Example 6 to paragraph (b):* An employee of the Department of Defense (DoD) has responsibility for testing avionics produced by a large Air Force contractor. The employee just learned that their adult child accepted a staff position in the human resources division of that contractor. Although the DoD employee has a covered relationship with the contractor that employs their child, the employee could justifiably conclude that a reasonable person would not be likely to question their impartiality because the child's work is unrelated to the avionics contract.

*Example 7 to paragraph (b):* An employee of the Department of Defense (DoD) leads the office that is testing a new type of jet engine produced by a multinational conglomerate's aviation division. The employee's lifelong best friend is the head of the conglomerate's aviation division and is responsible for presenting and promoting the new jet engine. Although the DoD employee does not have a covered relationship under paragraph (b)(1) of this section, the employee is concerned that, under paragraph (a)(3) of this section, questions regarding their impartiality could be raised. Here, the employee could justifiably conclude that a reasonable person would be likely to question their impartiality if they were to continue performing duties related to this jet engine.

(c) *Determination by agency designee.* (1) When the agency designee has information concerning a potential appearance problem arising from either the financial interest of a member of the employee's household in a particular

matter involving specific parties or a particular matter involving specific parties in which a person with whom the employee has a covered relationship is a party or represents a party, the agency designee may make an independent determination as to whether a reasonable person with knowledge of the relevant facts would be likely to question the employee's impartiality in the matter. Ordinarily, the agency designee's determination will be initiated by information provided by the employee pursuant to paragraph (a) of this section. However, at any time, including after an employee has recused from participating in a particular matter pursuant to paragraph (e) of this section, agency designees may make this determination on their own initiative or when requested by the employee's supervisor or any other person responsible for the employee's assignment.

(2) If the agency designee determines that the employee's impartiality is likely to be questioned, the agency designee must then determine, in accordance with paragraph (d) of this section, whether the employee should be authorized to participate in the matter. If the agency designee determines that the employee's participation should not be authorized, the employee must recuse from participating in the particular matter in accordance with paragraph (e) of this section.

(3) If the agency designee determines that the employee's impartiality is not likely to be questioned, the agency designee may advise the employee, including an employee who has reached a contrary conclusion under paragraph (a) of this section, that the employee's participation in the matter would be proper.

(d) *Authorization by agency designee.* When an employee's participation in a particular matter involving specific parties would not violate 18 U.S.C. 208(a), but would raise a question in the mind of a reasonable person about the employee's impartiality, the agency designee may authorize the employee to participate in the matter based on a determination, made in light of all relevant circumstances, that the interest of the Government in the employee's participation outweighs the concern that a reasonable person may question the integrity of the agency's programs and operations.

(1) Factors which may be taken into consideration include:

(i) The nature of the relationship involved;

(ii) The effect that resolution of the matter would have upon the financial

interests of the person involved in the relationship;

(iii) The nature and importance of the employee's role in the matter, including the extent to which the employee is called upon to exercise discretion in the matter;

(iv) The sensitivity of the matter;

(v) The difficulty of reassigning the matter to another employee; and

(vi) Adjustments that may be made in the employee's duties that would reduce or eliminate the likelihood that a reasonable person would question the employee's impartiality.

(2) Authorization by the agency designee will be documented in writing at the agency designee's discretion or when requested by the employee. An employee who has been authorized to participate in a particular matter involving specific parties may not thereafter recuse from participating in the matter on the basis of an appearance problem involving the same circumstances that have been considered by the agency designee.

*Example 1 to paragraph (d):* The Deputy Director of Personnel for the Department of the Treasury and an attorney with the Department's Office of General Counsel are general partners in a real estate partnership. The Deputy Director advises their supervisor, the Director of Personnel, of the relationship upon being assigned to a selection panel for a position for which the partner has applied. If selected, the partner would receive a substantial increase in salary. The agency designee cannot authorize the Deputy Director to participate on the panel under the authority of this section because the Deputy Director is prohibited by criminal statute, 18 U.S.C. 208(a), from participating in a particular matter affecting the financial interest of a person who is their general partner. See § 2635.402.

*Example 2 paragraph (d):* A new employee of the Securities and Exchange Commission is assigned to an investigation of insider trading by the brokerage house where they have recently been employed. Because of the sensitivity of the investigation, the agency designee may be unable to conclude that the Government's interest in the employee's participation in the investigation outweighs the concern that a reasonable person may question the integrity of the investigation, even though the employee has severed all financial ties with the company. Based on consideration of all relevant circumstances, the agency designee might determine, however, that it is in the interest of the Government for the employee to participate in the review of

a routine filing by the particular brokerage house.

*Example 3 paragraph (d):* An Internal Revenue Service employee involved in a long and complex tax audit learns that their child has just accepted an entry-level management position with a corporation whose taxes are the subject of the audit. Because the audit is essentially complete and because the employee is the only one with an intimate knowledge of the case, the agency designee might determine, after considering all relevant circumstances, that it is in the Government's interest for the employee to complete the audit, which is subject to additional levels of review.

(e) *Recusal.* Unless the employee is authorized to participate in the matter under paragraph (d) of this section, an employee may not participate in a particular matter involving specific parties when the employee or the agency designee has concluded, in accordance with paragraph (a) or (c) of this section, that the financial interest of a member of the employee's household, or the role of a person with whom the employee has a covered relationship, is likely to raise a question in the mind of a reasonable person about the employee's impartiality. Recusal is accomplished by not participating in the matter. When the covered relationship is with a former employer, this recusal requirement is for a period of one year after the date of the employee's resignation from the position with the former employer.

(1) *Notification.* Employees who become aware of the need to recuse from participating in a particular matter involving specific parties to which they have been assigned must take whatever steps are necessary to ensure that they do not participate in the matter. Appropriate oral or written notification of their recusal may be made to an agency ethics official, coworkers, or a supervisor to document and help effectuate the recusal.

(2) *Documentation.* Employees need not file written recusal statements unless they are required by part 2634 of this chapter to file written evidence of compliance with an ethics agreement with the Office of Government Ethics or a designated agency ethics official, or are specifically directed by an agency ethics official or the person responsible for their assignments to file written recusal statements. However, it is often prudent for employees to create a record of their actions by providing written notice to an agency ethics official, a supervisor, or other appropriate official.

(f) *Irrelevant considerations.* An employee's reputation for honesty and integrity is not a relevant consideration for purposes of any determination required by this section.

**Note 2 to § 2635.502:** Nothing in this section should be construed to suggest that employees should not participate in a matter because of their political, religious, or moral views.

**§ 2635.503  Covered payments from former employers.**

(a) *Recusal requirement.* Except as provided in paragraph (c) of this section, an employee must recuse for two years from participating in any particular matter involving specific parties in which the employee's former employer is a party or represents a party if the employee received a covered payment from that person. The two-year period of recusal begins to run on the date that the covered payment is received.

*Example 1 to paragraph (a):* Following confirmation hearings and one month before their scheduled swearing in, a nominee to the position of Assistant Secretary of a department received a covered payment from their employer. For one year and 11 months after their swearing in, the Assistant Secretary may not participate in any particular matter to which the former employer is a party.

*Example 2 paragraph (a):* An employee received a covered payment from their former employer, a coal mine operator, prior to entering on duty with the Department of the Interior. For two years thereafter, the employee may not participate in a determination regarding the former employer's obligation to reclaim a particular mining site, because the former employer is a party to the matter. However, the employee may help to draft reclamation legislation affecting all coal mining operations because this legislation does not involve any parties.

*Example 3 to paragraph (a):* An architect accepts a position with the Army Corps of Engineers and resigns from a private architecture partnership. One month after beginning this new position, the architect receives a covered payment from the partnership. The architect may not participate in any particular matter involving specific parties in which the former partnership is a party until two years after receipt of the covered payment, which will be 25 months after beginning service with the Corps. Because the payment was not received before the architect became an executive branch employee, agency ethics officials must also review the payment to determine whether it constituted a supplementation of salary under 18 U.S.C. 209.

(b) *Definitions.* For purposes of this section, the following definitions apply:

(1) *Covered payment* means any item, including cash or an investment interest, with a value in excess of $10,000, which is paid:

(i) On the basis of a determination made after it became known to the former employer that the individual was being considered for or had accepted a Government position; and

(ii) Other than pursuant to a qualifying program.

(2)(i) A *qualifying program* is:

(A) A compensation, partnership, or benefits program that is contained in bylaws, a contract, or other written form, and does not treat individuals entering Government service more favorably than other individuals; or

(B) A program that is not contained in written form, but is demonstrated by a history of similar payments made to others not entering Government service.

(ii) When a program is established in written form, any history of making similar payments to others not entering Government service that is contrary to an express provision of the written plan is not relevant to the evaluation of whether it is a qualifying program.

*Example 1 to paragraph (b)(2):* The vice president of a small corporation is nominated to be an ambassador. In recognition of service to the corporation, the board of directors votes to pay the departing vice president $50,000 upon confirmation in addition to the regular severance payment provided for by the corporate bylaws. The regular severance payment is not a covered payment because it was made pursuant to a qualifying program. The gratuitous payment of $50,000 is a covered payment, because the corporation had not made similar payments to other departing officers.

(3) *Former employer* includes any person which the employee served as an officer, director, trustee, general partner, agent, attorney, consultant, contractor, or employee. Payments from an officer, employee, or agent of a former employer will be considered to be payments from the former employer.

**Note 1 to paragraph (b)(3):** The definition of *former employer* includes former clients for whom an employee may have served as an agent, attorney, consultant, or contractor.

(c) *Waiver of recusal.* The recusal requirement of this section may be waived based on a finding that the amount of the payment was not so substantial as to cause a reasonable person to question the employee's ability to act impartially in a matter in which the former employer is or represents a party. The waiver must be

in writing and may be given only by the head of the agency or, when the recipient of the payment is the head of the agency, by the President or the President's designee. Waiver authority may be delegated by the head of an agency to any person who has been delegated authority to issue individual waivers under 18 U.S.C. 208(b) for the employee who is the recipient of the covered payment.

## Subpart F—Seeking Other Employment

### § 2635.601   Overview.

This subpart contains a recusal requirement that applies to employees when seeking non-Federal employment with persons whose financial interests would be directly and predictably affected by particular matters in which the employees participate personally and substantially. Specifically, it addresses the requirement of 18 U.S.C. 208(a) that an employee not participate personally and substantially in any particular matter that, to the employee's knowledge, will have a direct and predictable effect on the financial interests of a person with whom the employee is negotiating or has any arrangement concerning prospective employment. See § 2635.402 and § 2640.103 of this chapter. Beyond the statutory requirement in 18 U.S.C. 208(a), this subpart also addresses issues of lack of impartiality that require recusal from particular matters affecting the financial interests of a prospective employer when an employee's actions in seeking employment fall short of actual employment negotiations. In addition, this subpart contains the statutory notification requirements that apply to public filers when they negotiate for or have agreements of future employment or compensation. Specifically, it addresses the requirements of section 17 of the Representative Louise McIntosh Slaughter Stop Trading on Congressional Knowledge Act (STOCK Act), Public Law 112–105, 126 Stat. 303, that a public filer must submit a written statement identifying the entity involved in the negotiations or agreement within three business days after commencement of such negotiations or agreement and must submit a notification of recusal whenever there is a conflict of interest or an appearance of a conflict of interest.

### § 2635.602   Applicability and related considerations.

(a) *Applicability.* (1) To ensure that an employee does not violate 18 U.S.C.

208(a), section 17 of the STOCK Act, or the principles of ethical conduct contained in § 2635.101(b), an employee who is seeking employment or who has an arrangement concerning prospective employment must comply with the applicable recusal requirements of §§ 2635.604 and 2635.606 if particular matters in which the employee will be participating personally and substantially would, to the employee's knowledge, directly and predictably affect the financial interests of a prospective employer or of a person with whom the employee has an arrangement concerning prospective employment. Compliance with this subpart also will ensure that the employee does not violate subpart D or E of this part. In addition, a public filer who negotiates for or has an agreement of future employment or compensation must comply with the requirements of § 2635.607.

(2) An employee who is seeking employment with a person whose financial interests are not, to the employee's knowledge, affected directly and predictably by particular matters in which the employee participates personally and substantially has no obligation to recuse under this subpart. In addition, nothing in this subpart requires an employee, other than a public filer, to notify anyone that the employee is seeking employment unless a notification is necessary to implement a recusal pursuant to § 2635.604(b). A public filer who negotiates for or has an agreement of future employment or compensation must comply with the notification requirements in § 2635.607. An employee may, however, be subject to other statutes that impose requirements on employment contacts or discussions, such as 41 U.S.C. 2103, which is applicable to agency officials involved in certain procurement matters. Employees are encouraged to consult with their ethics officials if they have any questions about how this subpart may apply to them. Ethics officials are not obligated by this subpart to inform supervisors that employees are seeking employment.

*Example 1 to paragraph (a):* Recently, an employee of the Department of Education submitted a resume to the University of Delaware for a job opening. The employee has begun seeking employment. However, because the employee is not participating in any particular matters affecting the University of Delaware, there is no requirement that anyone be notified that the employee has begun seeking employment.

*Example 2 to paragraph (a):* The employee in example 1 to this

paragraph (a) has been approached about an employment opportunity at the University of Maryland. Because the University of Maryland has applied for grants on which the employee has been assigned to work in the past, the employee wants to make certain that they do not violate the ethics rules. The employee contacts an ethics official to discuss the matter. The employee informs the ethics official that they are not currently participating in any particular matters affecting the University of Maryland. As a result, the ethics official advises the employee that they will have no notification obligations under this subpart. However, the ethics official cautions the employee that, if the employee is assigned to participate in a particular matter affecting the University of Maryland while they are seeking employment with the University, they must take whatever steps are necessary to avoid working on the grant, in accordance with § 2635.604.

(b) *Related restrictions*—(1) *Outside employment while a Federal employee.* An employee who is contemplating outside employment to be undertaken concurrently with the employee's Federal employment must abide by any limitations applicable to the employee's outside activities under subparts G and H of this part, including any requirements under supplemental agency regulations to obtain prior approval before engaging in outside employment or activities and any prohibitions under supplemental agency regulations related to outside employment or activities. The employee must also comply with any applicable recusal requirement of this subpart, as well as any applicable recusal requirements under subpart D or E of this part as a result of the employee's outside employment activities.

(2) *Post-employment restrictions.* An employee who is contemplating employment to be undertaken following the termination of the employee's Federal employment should consult an agency ethics official to obtain advice regarding any post-employment restrictions that may be applicable. The regulation implementing the Governmentwide post-employment statute, 18 U.S.C. 207, is contained in part 2641 of this chapter. Employees are cautioned that they may be subject to additional statutory prohibitions on post-employment acceptance of compensation from contractors, such as 41 U.S.C. 2104.

(3) *Interview trips and entertainment.* When a prospective employer who is a prohibited source as defined in § 2635.203(d) offers to reimburse an

employee's travel expenses, or provide other reasonable amenities incident to employment discussions, the employee may accept such amenities in accordance with § 2635.204(e)(3). When a prospective employer is a foreign government or international organization, the employee must also comply with the Foreign Gifts and Decorations Act, 5 U.S.C. 7342.

### § 2635.603  Definitions.

For purposes of this subpart:

(a) *Employment* means any form of non-Federal employment or business relationship involving the provision of personal services by the employee, whether to be undertaken at the same time as or subsequent to Federal employment. It includes but is not limited to personal services as an officer, director, employee, agent, attorney, consultant, contractor, general partner, or trustee.

*Example 1 to paragraph (a):* An employee of the Bureau of Indian Affairs who has announced their intention to retire is approached by Tribal representatives concerning a possible consulting contract with the tribe. The contractual relationship the tribe wishes to negotiate is employment for purposes of this subpart.

*Example 2 to paragraph (a):* An employee of the Department of Health and Human Services is invited to a meeting with officials of a nonprofit corporation to discuss the possibility of serving as a member of the corporation's board of directors. Service, with or without compensation, as a member of the board of directors constitutes employment for purposes of this subpart.

*Example 3 to paragraph (a):* An employee at the Department of Energy volunteers without compensation to serve dinners at a homeless shelter each month. The employee's uncompensated volunteer services in this case are not considered an employment or business relationship for purposes of this subpart.

(b) An employee is *seeking employment* once the employee has begun seeking employment within the meaning of paragraph (b)(1) of this section and until the employee is no longer seeking employment within the meaning of paragraph (b)(2) of this section.

(1) An employee has begun seeking employment if the employee has directly or indirectly:

(i) Engaged in negotiations for employment with any person. For purposes of this paragraph (b)(1)(i), as for 18 U.S.C. 208(a) and section 17 of the STOCK Act, the term *negotiations*

means discussion or communication with another person, or such person's agent or intermediary, mutually conducted with a view toward reaching an agreement regarding possible employment with that person. The term is not limited to discussions of specific terms and conditions of employment in a specific position;

(ii) Made an unsolicited communication to any person, or such person's agent or intermediary, regarding possible employment with that person. However, the employee has not begun seeking employment if that communication was for the sole purpose of requesting a job application; or

(iii) Made a response, other than rejection, to an unsolicited communication from any person, or such person's agent or intermediary, regarding possible employment with that person.

(2) An employee is no longer seeking employment when:

(i) The employee or the prospective employer rejects the possibility of employment and all discussions of possible employment have terminated; or

(ii) Two months have transpired after the employee's dispatch of an unsolicited resume or employment proposal, provided the employee has received no indication of interest in employment discussions from the prospective employer.

(3) For purposes of this paragraph (b), a response that defers discussions until the foreseeable future does not constitute rejection of an unsolicited employment overture, proposal, or resume nor rejection of a prospective employment possibility.

*Example 1 to paragraph (b):* A paralegal at the Department of the Army is in the third year of law school. The paralegal's neighbor, a partner in a large law firm in the community, invited the paralegal to the law firm for a visit. The paralegal accepted the offer and met with an associate at the firm. The associate shared with the paralegal their experiences looking for a legal position, discussed what they do in their position at the law firm, and explained why they chose that law firm. There was no discussion of possible employment with the firm. The Army paralegal is not seeking employment at this time. The purpose of the visit was informational only.

*Example 2 to paragraph (b):* An employee of the Defense Contract Audit Agency (DCAA) is auditing the overhead accounts of an Army contractor. While at the contractor's headquarters, the head of the contractor's accounting division tells

the employee that the division is thinking about hiring another accountant and asks whether the employee might be interested in leaving DCAA. The DCAA employee asks what kind of work would be involved. The DCAA employee has begun seeking employment because they made a response other than a rejection to the communication regarding possible employment with the Army contractor, although they have not yet begun negotiating for employment.

*Example 3 to paragraph (b):* The DCAA employee and the head of the contractor's accounting division in example 2 to this paragraph (b) have a meeting to discuss the duties of the position that the accounting division would like to fill and the DCAA employee's qualifications for the position. They also discuss ways the DCAA employee could remedy one of the missing qualifications, and the employee indicates a willingness to obtain the proper qualifications. They do not discuss salary. The employee has engaged in negotiations regarding possible employment with the contractor.

*Example 4 to paragraph (b):* An employee at the Department of Energy (DOE) lists their job duties and employment experience in a profile on an online, business-oriented social networking service. The employee's profile is not targeted at a specific prospective employer. The employee has not begun seeking employment because the posting of a profile or resume is not an unsolicited communication with any prospective employer.

*Example 5 to paragraph (b):* The DOE employee in example 4 to this paragraph (b) was recently notified that a representative of a university has viewed their profile. The employee still has not begun seeking employment with the university. Subsequently, a representative of the university contacts the employee through the online forum to inquire whether the employee would be interested in working for the university, to which the employee makes a response other than rejection. At this point, the employee has begun seeking employment with the university until they reject the possibility of employment and all discussions of possible employment have terminated.

*Example 6 to paragraph (b):* The DOE employee in examples 4 and 5 to this paragraph (b) receives emails from various companies in response to the online profile. The employee does not respond. The employee has not begun seeking employment with the

companies because they have not made a response.

*Example 7 to paragraph (b):* An official of a State Health Department compliments the work of an employee of the Centers for Medicare & Medicaid Services (CMS), and asks the CMS employee to reach out if they are ever interested in leaving Federal service. The employee explains to the State official that they are very happy with their job at CMS and is not interested in another job. The employee thanks the official for the professional compliment, and adds that they'll remember the official's interest if they ever decide to leave the Government. The employee has rejected the unsolicited employment overture and has not begun seeking employment.

*Example 8 to paragraph (b):* The employee in the example 7 to this paragraph (b) responds by stating that they cannot discuss future employment while they are working on a project affecting the State's health care funding but would like to discuss employment with the State when the project is completed. Because the employee has merely deferred employment discussions until the foreseeable future, they have begun seeking employment with the State Health Department.

*Example 9 to paragraph (b):* Three months prior to the end of the current administration, a political appointee at a large department receives a telephone call from the managing partner of an international law firm. The managing partner asks if the official would be interested in joining the law firm. The official says, "I am not talking to anyone about employment until I leave the Government." The official has rejected the unsolicited employment overture and has not begun seeking employment.

*Example 10 to paragraph (b):* A geologist employed by the U.S. Geological Survey sends a resume to an oil company. The geologist has begun seeking employment with that oil company and will be seeking employment for two months from the date the resume was mailed, provided the geologist does not receive a response indicating an interest in employment discussions. A letter merely acknowledging receipt of the resume is not an indication of interest in employment discussions. However, if the geologist withdraws the application or is notified within the two-month period that the resume has been rejected, they will no longer be seeking employment with the oil company as of the date they make such withdrawal or receive such notification.

(c) *Prospective employer* means any person with whom the employee is seeking employment. When contacts that constitute seeking employment are made by or with an agent or other intermediary, the term prospective employer means:

(1) A person who uses that agent or other intermediary for the purpose of seeking to establish an employment relationship with the employee if the agent identifies the prospective employer to the employee; and

(2) A person contacted by the employee's agent or other intermediary for the purpose of seeking to establish an employment relationship if the agent identifies the prospective employer to the employee.

*Example 1 to paragraph (c):* An employee of the Federal Aviation Administration (FAA) has retained an employment search firm to help them find another job. The search firm has just reported to the FAA employee that it has given their resume to and had promising discussions with two airport authorities, which the search firm identifies to the employee. Even though the employee has not personally had employment discussions with either airport authority, each airport authority is their prospective employer. The employee began seeking employment with each airport authority upon learning its identity and that it has been given their resume.

*Example 2 to paragraph (c):* An employee pays for an online resume distribution service, which sends their resume to recruiters that specialize in their field. The online service has just notified the employee that it sent their resume to Software Company A and Software Company B. Even though the employee has not personally had employment discussions with either company, each software company is their prospective employer. The employee began seeking employment with each company upon learning from the online service that Software Company A and Software Company B had been given their resume by the intermediary.

(d) *Direct and predictable effect, particular matter,* and *personal and substantial* have the respective meanings set forth in § 2635.402(b)(1), (3), and (4).

(e) *Public filer* means a person required to file a public financial disclosure report as set forth in § 2634.202 of this chapter.

**§ 2635.604    Recusal while seeking employment.**

(a) *Obligation to recuse.* (1) Except as provided in paragraph (a)(2) of this section or when the employee's participation has been authorized in accordance with § 2635.605, the employee may not participate personally and substantially in a particular matter that, to the employee's knowledge, has a direct and predictable effect on the financial interests of a prospective employer with whom the employee is seeking employment within the meaning of § 2635.603(b). Recusal is accomplished by not participating in the particular matter.

(2) The employee may participate in a particular matter under paragraph (a)(1) of this section when:

(i) The employee's only communication with the prospective employer in connection with the search for employment is the submission of an unsolicited resume or other employment proposal;

(ii) The prospective employer has not responded to the employee's unsolicited communication with a response indicating an interest in employment discussions; and

(iii) The matter is not a particular matter involving specific parties.

*Example 1 to paragraph (a):* A scientist is employed by the National Science Foundation (NSF) as a special Government employee to serve on a panel that reviews grant applications to fund research relating to deterioration of the ozone layer. The scientist is discussing possible employment with a university that received an NSF grant several years ago to study the effect of fluorocarbons but has no current grant applications pending before NSF. The employee is seeking employment, but does not need to recuse because there is no particular matter that would have a direct and predictable effect on the financial interests of the prospective employer. Recusal would be required if the university submits a new application for the panel's review.

*Example 2 to paragraph (a):* An employee of the Food and Drug Administration is developing a regulation on research criteria for approving prescription drugs. They begin discussing possible employment with a pharmaceutical company. The employee may not participate personally and substantially in the development of the regulation because they have begun employment discussions with the pharmaceutical company and the regulation is a particular matter of general applicability which would have a direct and predictable effect on the financial interests of the pharmaceutical company.

*Example 3 to paragraph (a):* A special Government employee of the Federal Deposit Insurance Corporation (FDIC) is assigned to advise the FDIC on rules

applicable to all member banks. The employee mails an unsolicited letter to a member bank offering services as a contract consultant. Although the employee is seeking employment, the employee may participate in this particular matter of general applicability until receipt of some response indicating an interest in discussing the employment proposal. A letter merely acknowledging receipt of the proposal is not an indication of interest in employment discussions.

*Example 4 to paragraph (a):* An employee of the Occupational Safety and Health Administration is conducting an inspection of one of several textile companies to which they sent an unsolicited resume. The employee may not participate personally and substantially in the inspection because they are seeking employment and the inspection is a particular matter involving specific parties that will affect the textile company.

(b) *Notification.* Employees who become aware of the need to recuse from participating in a particular matter to which they have been assigned must take whatever steps are necessary to ensure that they do not participate in the matter. Appropriate oral or written notification of their recusal may be made to an agency ethics official, coworkers, or a supervisor to document and help effectuate the recusal. Public filers must comply with additional notification requirements set forth in § 2635.607.

*Example 1 to paragraph (b):* An employee of the Department of Veterans Affairs (VA) is participating in the audit of a contract for laboratory support services. Before sending a resume to a lab which is a subcontractor under the VA contract, the employee should recuse from participating in the audit. Because the employee cannot withdraw from participating in the contract audit without supervisor approval, the employee should notify the supervisor of the need to recuse for ethics reasons so that appropriate adjustments in work assignments can be made.

*Example 2 to paragraph (b):* An employee of the Food and Drug Administration (FDA) is contacted in writing by a pharmaceutical company concerning possible employment with the company. The employee is reviewing an application from the same pharmaceutical company, which is seeking FDA approval for a new drug product. Once the employee makes a response that is not a rejection to the company's communication concerning possible employment, the employee must recuse from further participation

in the review of the application. When the employee has authority to ask a colleague to assume reviewing responsibilities, they may accomplish recusal by transferring the work to the colleague. However, to ensure that the colleague and others with whom they had been working on the review do not seek their advice regarding the review of the application or otherwise involve them in the matter, it may be necessary for the employee to advise those individuals of the recusal.

(c) *Documentation.* Employees, other than public filers, need not file written recusal statements unless they are required by part 2634 of this chapter to file written evidence of compliance with an ethics agreement with the Office of Government Ethics or a designated agency ethics official, or are specifically directed by an agency ethics official or the person responsible for their assignments to file written recusal statements. However, it is often prudent for employees to create a record of their actions by providing written notice to an agency ethics official, a supervisor, or other appropriate official. Public filers must comply with the documentation requirements set forth in § 2635.607.

*Example 1 to paragraph (c):* The General Counsel of a regulatory agency will be engaging in discussions regarding possible employment as corporate counsel of a regulated entity. Matters directly affecting the financial interests of the regulated entity are pending within the Office of General Counsel, but the General Counsel will not be called upon to act in any such matter because signature authority for that particular class of matters has been delegated to an Assistant General Counsel. Because the General Counsel is responsible for assigning work within the Office of General Counsel, they can, in fact, accomplish recusal by simply avoiding any involvement in matters affecting the regulated entity. However, because it is likely to be assumed by others that the General Counsel is involved in all matters within the cognizance of the Office of General Counsel, they would benefit from filing a written recusal statement with an agency ethics official or the Commissioners of the regulatory agency and providing their subordinates with written notification of the recusal. The General Counsel may also be specifically directed by an agency ethics official or the Commissioners to file a written recusal statement. If the General Counsel is a public filer, they must comply with the documentation requirements set forth in § 2635.607.

(d) *Agency determination of substantial conflict.* When the agency determines that the employee's action in seeking employment with a particular person will require the employee to recuse from matters so central or critical to the performance of the employee's official duties that the employee's ability to perform the duties of the employee's position would be materially impaired, the agency may allow the employee to take annual leave or leave without pay while seeking employment, or may take other appropriate action.

### § 2635.605 Waiver or authorization permitting participation while seeking employment.

(a) *Waiver.* When, as defined in § 2635.603(b)(1)(i), an employee is engaged in employment negotiations for purposes of 18 U.S.C. 208(a), the employee may not participate personally and substantially in a particular matter that, to the employee's knowledge, has a direct and predictable effect on the financial interests of a prospective employer. The employee may participate in such matters only when the employee has received a written waiver issued under the authority of 18 U.S.C. 208(b)(1) or (3). These waivers are described in § 2635.402(d) and part 2640, subpart C, of this chapter. For certain employees, a regulatory exemption under the authority of 18 U.S.C. 208(b)(2) may also apply (see part 2640, subpart B, of this chapter, including § 2640.203(g) and (i)).

*Example 1 to paragraph (a):* An employee of the Department of Agriculture is negotiating for employment within the meaning of 18 U.S.C. 208(a) and § 2635.603(b)(1)(i) with an orange grower. In the absence of a written waiver issued under 18 U.S.C. 208(b)(1), the employee may not take official action on a complaint filed by a competitor alleging that the grower has shipped oranges in violation of applicable quotas.

(b) *Authorization by agency designee.* When an employee is seeking employment within the meaning of § 2635.603(b)(1)(ii) or (iii) and is not negotiating for employment, a reasonable person would be likely to question the employee's impartiality if the employee were to participate personally and substantially in a particular matter that, to the employee's knowledge, has a direct and predictable effect on the financial interests of any such prospective employer. The employee may participate in such matters only when the agency designee has authorized in writing the employee's participation in accordance

with the standards set forth in § 2635.502(d).

*Example 1 to paragraph (b):* Within the past month, an employee of the Department of Education mailed a resume to a university. The employee is thus seeking employment with the university within the meaning of § 2635.603(b)(1)(ii). In the absence of specific authorization by the agency designee in accordance with § 2635.502(d), the employee may not participate personally and substantially in an assignment to review a grant application submitted by the university.

**§ 2635.606 Recusal based on an arrangement concerning prospective employment or otherwise after negotiations.**

(a) *Employment or arrangement concerning employment.* An employee may not participate personally and substantially in a particular matter that, to the employee's knowledge, has a direct and predictable effect on the financial interests of the person by whom the employee is employed or with whom the employee has an arrangement concerning future employment, unless authorized to participate in the matter by a written waiver issued under the authority of 18 U.S.C. 208(b)(1) or (3), or by a regulatory exemption under the authority of 18 U.S.C. 208(b)(2). These waivers and exemptions are described in § 2635.402(d) and part 2640, subparts B and C, of this chapter.

*Example 1 to paragraph (a):* A military officer has accepted a job with a defense contractor that will begin six months after retirement from military service. During the remainder of Government employment, the officer may not participate personally and substantially in the administration of a contract with that particular defense contractor unless a written waiver is issued under the authority of 18 U.S.C. 208(b)(1).

*Example 2 to paragraph (a):* An accountant has just been offered a job with the Office of the Comptroller of the Currency (OCC) which involves a two-year limited appointment. The accountant's private employer, a large corporation, believes the job will enhance their skills and has agreed to give them a two-year unpaid leave of absence at the end of which they have agreed to return to work for the corporation. During the two-year period that the accountant is to be an OCC employee, they will have an arrangement concerning future employment with the corporation that will require recusal from participating personally and substantially in any

particular matter that, to their knowledge, will have a direct and predictable effect on the corporation's financial interests.

(b) *Offer rejected or not made.* The agency designee for the purpose of § 2635.502(c) may, in an appropriate case, determine that an employee not covered by paragraph (a) of this section who has sought but is no longer seeking employment nevertheless will be subject to a period of recusal upon the conclusion of employment negotiations. Any such determination will be based on a consideration of all the relevant factors, including those listed in § 2635.502(d), and a determination that the concern that a reasonable person may question the integrity of the agency's decision-making process outweighs the Government's interest in the employee's participation in the particular matter.

*Example 1 to paragraph (b):* An employee of the Securities and Exchange Commission was relieved of responsibility for an investigation of a broker-dealer while seeking employment with the law firm representing the broker-dealer in that matter. The firm did not offer the partnership position the employee sought. Even though the employee is no longer seeking employment with the firm, they may continue to be recused from participating in the investigation based on a determination by the agency designee that the concern that a reasonable person might question whether, in view of the history of the employment negotiations, they could act impartially in the matter outweighs the Government's interest in their participation.

**§ 2635.607 Notification requirements for public financial disclosure report filers regarding negotiations for or agreement of future employment or compensation.**

(a) *Notification regarding negotiations for or agreement of future employment or compensation.* A public filer who is negotiating for or has an agreement of future employment or compensation with a non-Federal entity must file a statement notifying an agency ethics official of such negotiation or agreement within three business days after commencement of the negotiation or agreement. This notification statement must be in writing, must be signed by the public filer, and must include the name of the non-Federal entity involved in such negotiation or agreement and the date on which the negotiation or agreement commenced. When a public filer has previously complied with the notification requirement in this section regarding the commencement of

negotiations, the filer need not file a separate notification statement when an agreement of future employment or compensation is reached with the previously identified non-Federal entity. There is also no requirement to file another notification when negotiations have been unsuccessful. However, employees may want to do so to facilitate the resumption of their duties.

*Example 1 to paragraph (a):* An employee of the Merit Systems Protection Board who is a public filer was in private practice prior to Government service. The employee receives a telephone call from a partner in a law firm who inquires as to whether they would be interested in returning to private practice. During this initial telephone call with the law firm partner, the employee indicates that they are interested in resuming private practice. The partner and employee discuss generally the types of issues that would need to be agreed upon if the employee were to consider a possible offer to serve as "of counsel" with the firm, such as salary, benefits, and type of work the employee would perform. The employee has begun negotiating for future employment with the law firm. Within three business days after this initial telephone call, the employee must file written notification of the negotiations with the agency ethics official.

*Example 2 to paragraph (a):* The employee in the example 1 to this paragraph (a) also negotiates a possible contract with a publisher to begin writing a textbook after leaving Government service. Within three business days after commencing negotiations, the employee must file written notification with the agency ethics official documenting this engagement in negotiations for future compensation with the book publisher.

(b) *Notification of recusal.* A public filer who files a notification statement pursuant to paragraph (a) of this section must file with an agency ethics official a notification of recusal whenever there is a conflict of interest or appearance of a conflict of interest with the non-Federal entity identified in the notification statement. The notification statement and the recusal statement may be contained in a single document or in separate documents.

(c) *Advance filing of notification and recusal statements.* When a public filer is seeking employment within the meaning of § 2635.603(b)(1)(ii) or (iii) or is considering seeking employment, the public filer may elect to file the notification statement pursuant to paragraph (a) of this section before negotiations have commenced and

before an agreement of future employment or compensation is reached. A public filer may also elect to file the recusal statement pursuant to paragraph (b) of this section before the public filer has a conflict of interest or appearance of a conflict of interest with the non-Federal entity identified in the notification statement. The public filer need not file the document again upon commencing negotiations or reaching an agreement of future employment or compensation. The advance filing of any such document is not construed as a statement that negotiations have or have not commenced or that a conflict of interest does or does not exist. Although the Office of Government Ethics encourages advance filing when a public filer anticipates a realistic possibility of negotiations or an agreement, the failure to make an advance filing does not violate this subpart or the principles of ethical conduct contained in § 2635.101(b).

*Example 1 to paragraph (c):* An employee of the Federal Labor Relations Authority who is a public filer began negotiating for future employment with a law firm. At the time the employee began negotiating for future employment with the law firm, they were not participating personally and substantially in a particular matter that, to their knowledge, had a direct and predictable effect on the financial interest of the law firm. Although the employee was not required to file a recusal statement because they did not have a conflict of interest or appearance of a conflict of interest with the law firm identified in the notification statement, the Office of Government Ethics encourages the employee to submit a notification of recusal at the same time that they file the notification statement regarding the negotiations for future employment in order to ensure that the requirement of paragraph (b) of this section is satisfied if a conflict of interest or an appearance of a conflict of interest later arises. The agency ethics official should counsel the employee on applicable requirements but is under no obligation to notify the employee's supervisor that the employee is negotiating for employment.

*Example 2 to paragraph (c):* An employee of the General Services Administration is contacted by a prospective employer regarding scheduling an interview for the following week to begin discussing the possibility of future employment. The employee discusses the matter with the ethics official and chooses to file a notification and recusal statement prior to the interview. The notification and recusal statement contain the identity of the prospective employer and an estimated date of when the interview will occur. The employee has complied with the notification requirement of section 17 of the STOCK Act.

(d) *Definition of agreement of future employment or compensation. Agreement of future employment or compensation* for the purposes of this section means any arrangement concerning employment that will commence after the termination of Government service. The term also means any arrangement to compensate in exchange for services that will commence after the termination of Government service. The term includes, among other things, an arrangement to compensate for teaching, speaking, or writing that will commence after the termination of Government service.

## Subpart G—Misuse of Position

### § 2635.701  Overview.

This subpart contains provisions relating to the proper use of official time and authority, and of information and resources to which employees have access because of their Federal employment. This subpart sets forth standards relating to:

(a) Use of public office for private gain;

(b) Use of nonpublic information;

(c) Use of Government property; and

(d) Use of official time.

### § 2635.702  Use of public office for private gain.

An employee may not use their public office for their own private gain; for the endorsement of any product, service, or enterprise (except as otherwise permitted by this part or other applicable law or regulation); or for the private gain of friends, relatives, or persons with whom the employee is affiliated in a nongovernmental capacity, including nonprofit organizations of which the employee is an officer or member, and persons with whom the employee has or seeks employment or business relations. The specific prohibitions set forth in paragraphs (a) through (d) of this section apply this general standard, but are not intended to be exclusive or to limit the application of this section.

(a) *Inducement or coercion of benefits.* Employees may not use or permit the use of their Government position or title, or any authority associated with their public office, in a manner that is intended to coerce or induce another person, including a subordinate, to provide any benefit, financial or otherwise, to the employee or to friends, relatives, or persons with whom the employee is affiliated in a nongovernmental capacity.

*Example 1 to paragraph (a):* Offering to pursue a relative's consumer complaint over a household appliance, an employee of the Securities and Exchange Commission called the general counsel of the manufacturer and, in the course of discussing the problem, stated that they worked at the SEC and were responsible for reviewing the company's filings. The employee violated the prohibition against use of public office for private gain by invoking their official authority in an attempt to influence action to benefit the relative.

*Example 2 to paragraph (a):* An employee of the Department of Commerce was asked by a friend to determine why another office within the Department of Commerce had not yet granted an export license to the friend's firm. At a department-level staff meeting, the employee raised as a matter for official inquiry the delay in approval of the particular license and asked that the particular license be expedited. The official used their public office in an attempt to benefit the friend and, in acting as the friend's agent for the purpose of pursuing the export license with the Department of Commerce, may also have violated 18 U.S.C. 205.

(b) *Appearance of governmental sanction.* Except as otherwise provided in this part, employees may not use or permit the use of their Government position or title, or any authority associated with their public office, in a manner that could reasonably be construed to imply that their agency or the Government sanctions or endorses their personal activities or those of another. When teaching, speaking, or writing in a personal capacity, employees may refer to their official title or position only as permitted by § 2635.807(b). When providing a verbal or written recommendation, employees may only use their official title in response to a request for a recommendation or character reference based upon personal knowledge of the ability or character of an individual with whom they have dealt in the course of Federal employment or whom they are recommending for Federal employment.

*Example 1 to paragraph (b):* An employee of the Department of the Treasury who is asked to provide a letter of recommendation for a former subordinate or for an individual who worked for their team under a Government contract may provide the recommendation using official stationery and may sign the letter using their official title. If, however, the

request is for the recommendation of a personal friend with whom they have not dealt in the Government, the employee should not use official stationery or sign the letter of recommendation using their official title, unless the recommendation is for Federal employment. In writing the letter of recommendation for the personal friend, it may be appropriate for the employee to make a reference to their official position in the body of the letter.

*Example 2 to paragraph (b):* An employee of the Environmental Protection Agency (EPA) has a personal social media account. Under "occupation," the employee writes "Analyst at the Environmental Protection Agency." On the same social media account, the EPA employee occasionally discusses topics related to the environment, such as recycling, biking to work, and organic gardening. Even though the employee is discussing matters related to the EPA's mission and lists their position in the area designated for occupation, these facts alone would not reasonably be construed as implying governmental sanction or endorsement. The same employee may not, for example, redesign the social media account so that it prominently features the official EPA seal and make statements that either assert or imply that their opinions on environmental topics are sanctioned or endorsed by the Government.

(c) *Endorsements.* Employees may not use or permit the use of their Government position or title or any authority associated with their public office to endorse any product, service, or enterprise except:

(1) In furtherance of statutory authority to promote products, services, or enterprises; or

(2) As a result of documentation of compliance with agency requirements or standards or as the result of recognition for achievement given under an agency program of recognition for accomplishment in support of the agency's mission.

*Example 1 to paragraph (c):* A Commissioner of the Consumer Product Safety Commission (CPSC) may not appear in a television commercial and endorse an electrical appliance produced by a former employer, stating that it has been found by the CPSC to be safe for residential use.

*Example 2 to paragraph (c):* A Foreign Commercial Service officer from the Department of Commerce is asked by a United States telecommunications company to meet with representatives of the government of Spain, which is in the process of procuring

telecommunications services and equipment. The company is bidding against five European companies, and the statutory mission of the Department of Commerce includes assisting the export activities of U.S. companies. As part of official duty activities, the Foreign Commercial Service officer may meet with Spanish officials and explain the advantages of procurement from the United States company.

*Example 3 to paragraph (c):* The Administrator of the Environmental Protection Agency may sign a letter to an oil company indicating that its refining operations are in compliance with Federal air quality standards even though the Administrator knows that the company has routinely displayed letters of this type in television commercials portraying it as a "trustee of the environment for future generations."

*Example 4 to paragraph (c):* An Assistant Attorney General may not use their official title or refer to their Government position in a book jacket endorsement of a novel about organized crime written by an author whose work they admire. Nor may they do so in a book review published in a newspaper.

(d) *Performance of official duties affecting a private interest.* To ensure that the performance of their official duties does not give rise to an appearance of use of public office for private gain or of giving preferential treatment, employees whose duties would affect the financial interests of a friend, relative, or person with whom they are affiliated in a nongovernmental capacity must comply with any applicable requirements of § 2635.502.

(e) *Use of terms of address and ranks.* Nothing in this section prohibits an employee who is ordinarily addressed using a general term of address, such as "The Honorable" or "Judge," or a rank, such as a military or ambassadorial rank, from using that term of address or rank in connection with a personal activity.

## § 2635.703 Use of nonpublic information.

(a) *Prohibition.* Employees may not engage in financial transactions using nonpublic information, nor allow the improper use of nonpublic information to further their own private interests or those of another, whether through advice or recommendation, or by knowing unauthorized disclosure.

(b) *Definition of nonpublic information.* For purposes of this section, *nonpublic information* is information that the employee gains by reason of Federal employment and that the employee knows or reasonably should know has not been made

available to the general public. It includes information that the employee knows or reasonably should know:

(1) Is routinely exempt from disclosure under 5 U.S.C. 552 or otherwise protected from disclosure by statute, Executive order, or regulation;

(2) Is designated as confidential by an agency; or

(3) Has not actually been disseminated to the general public and is not authorized to be made available to the public on request.

*Example 1 to paragraph (b):* A Navy employee learns in the course of official duties that a small corporation will be awarded a Navy contract for electrical test equipment. The employee may not take any action to purchase stock in the corporation or its suppliers, and may not advise friends or relatives to do so until after public announcement of the award. Such actions could violate Federal securities statutes as well as this section.

*Example 2 to paragraph (b):* A General Services Administration employee involved in evaluating proposals for a construction contract cannot disclose the terms of a competing proposal to a friend employed by a company bidding on the work. Prior to award of the contract, bid or proposal information is nonpublic information specifically protected by 41 U.S.C. 2102.

*Example 3 to paragraph (b):* An employee is a member of a source selection team assigned to review the proposals submitted by several companies in response to an Army solicitation for spare parts. As a member of the evaluation team, the employee has access to proprietary information regarding the production methods of Alpha Corporation, one of the competitors. The employee may not use that information to assist Beta Company in drafting a proposal to compete for a Navy spare parts contract. The Federal Acquisition Regulation in 48 CFR parts 3, 14, and 15 restricts the release of information related to procurements and other contractor information that must be protected under 18 U.S.C. 1905 and 41 U.S.C. 2102.

*Example 4 to paragraph (b):* An employee of the Nuclear Regulatory Commission inadvertently includes a document that is exempt from disclosure with a group of documents released in response to a Freedom of Information Act request. Regardless of whether the document is used improperly, the employee's disclosure does not violate this section because it was not a knowing unauthorized disclosure made for the purpose of furthering a private interest.

*Example 5 to paragraph (b):* An employee of the Army Corps of Engineers is actively involved in the activities of an organization whose goals relate to protection of the environment. The employee may not, other than as permitted by agency procedures, give the organization or a newspaper reporter nonpublic information about long-range plans to build a particular dam.

### § 2635.704   Use of Government property.

(a) *Standard.* Employees have a duty to protect and conserve Government property and may not use such property, or allow its use, for other than authorized purposes.

(b) *Definitions.* For purposes of this section:

(1) *Government property* includes any form of real or personal property in which the Government has an ownership, leasehold, or other property interest as well as any right or other intangible interest that is purchased with Government funds, including the services of contractor personnel. The term includes but is not limited to office supplies, telephone and other telecommunications equipment and services, Government mail, computers and other electronic devices, printing and reproduction facilities, Government records, Government email and social media accounts, and Government vehicles.

(2) *Authorized purposes* are those purposes for which Government property is made available to members of the public or those purposes authorized in accordance with law or regulation. Authorized purposes include but are not limited to those uses of Government property that are in accordance with an agency's limited or *de minimis* personal use policy.

*Example 1 to paragraph (b):* As permitted under their agency's *de minimis* personal use policy, an employee may send an email from a Government email account to a former college roommate to schedule lunch for the following day.

*Example 2 to paragraph (b):* An employee of the Commodity Futures Trading Commission whose office computer provides access to a commercial service providing information for investors may not use that service for personal investment research.

*Example 3 to paragraph (b):* In accordance with Office of Personnel Management regulations at part 251 of this title, an attorney employed by the Department of Justice may be permitted to use their office computer and agency photocopy equipment to prepare a paper to be presented at a conference sponsored by a professional association of which they are a member.

### § 2635.705   Use of official time.

(a) *Use of an employee's own time.* Unless authorized in accordance with law or regulations to use such time for other purposes, employees must use official time in an honest effort to perform official duties. Employees not under a leave system, including Presidential appointees exempted under 5 U.S.C. 6301(2), have an obligation to expend an honest effort and a reasonable proportion of their time in the performance of official duties.

*Example 1 to paragraph (a):* A disability claims examiner of the Social Security Administration may use official time to engage in certain representational activities on behalf of the employee union of which they are a member. Under 5 U.S.C. 7131, this is a proper use of official time even though it does not involve performance of assigned duties as a disability claims examiner.

*Example 2 to paragraph (a):* A pharmacist employed by the Department of Veterans Affairs has been granted an excused absence to participate as a speaker in a conference on drug abuse sponsored by the professional association to which they belong. Even if an excused absence granted by an agency in accordance with Governmentwide personnel guidance would allow employees to be absent from their official duties without charge to their annual leave accounts, such absence would not be on official time.

(b) *Use of a subordinate's time.* Employees may not encourage, direct, coerce, or request a subordinate to use official time to perform activities other than those required in the performance of official duties or authorized in accordance with law or regulation.

*Example 1 to paragraph (b):* A supervisory employee of the Department of Housing and Urban Development may not ask an assistant to run personal errands for the employee during duty hours. Further, directing or coercing a subordinate to perform such activities during nonduty hours constitutes an improper use of public office for private gain in violation of § 2635.702(a). However, when an arrangement is entirely voluntary and appropriate compensation is paid, a subordinate may provide services to the superior during nonduty hours. For example, a subordinate who enjoys calligraphy may prepare invitations for an upcoming party that the superior is organizing with friends and family at home on personal time for appropriate compensation. When the compensation is not adequate, however, the arrangement would involve a gift to the superior in violation of the standards in subpart C of this part.

## Subpart H—Outside Activities

### § 2635.801   Overview.

(a) This subpart contains provisions relating to outside employment, outside activities, and personal financial obligations of employees that are in addition to the principles and standards set forth in other subparts of this part. Several of the provisions in this subpart apply to uncompensated as well as to compensated outside activities.

(b) Employees who wish to engage in outside employment or other outside activities must comply with all relevant provisions of this subpart, including, when applicable:

(1) The prohibition on outside employment or any other outside activity that conflicts with the employee's official duties;

(2) Any agency-specific requirement for prior approval of outside employment or activities;

(3) The limitations on receipt of outside earned income by certain Presidential appointees and other noncareer employees;

(4) The limitations on paid and unpaid service as an expert witness;

(5) The limitations on paid and unpaid teaching, speaking, and writing; and

(6) The limitations on fundraising activities.

(c) Outside employment and other outside activities of an employee must also comply with applicable provisions set forth in other subparts of this part and in supplemental agency regulations. These include the principle that an employee must endeavor to avoid actions creating an appearance of violating any of the ethical standards in this part and the prohibition against use of official position for an employee's private gain or for the private gain of any person with whom the employee has employment or business relations or is otherwise affiliated in a nongovernmental capacity.

*Example 1 to paragraph (c):* An employee of the Occupational Safety and Health Administration (OSHA) who was and is expected again to be instrumental in formulating new OSHA safety standards applicable to manufacturers that use chemical solvents has been offered a consulting contract to provide advice to an affected company in restructuring its manufacturing operations to comply with the OSHA standards. The

employee should not enter into the consulting arrangement even though they are not currently working on OSHA standards affecting this industry and the consulting contract can be expected to be completed before they again work on such standards. Even though the consulting arrangement would not be a conflicting activity within the meaning of § 2635.802, it would create an appearance that the employee had used their official position to obtain the compensated outside business opportunity and it would create the further appearance of using public office for the private gain of the manufacturer.

(d) In addition to the provisions of this subpart and other subparts of this part, an employee who wishes to engage in outside employment or other outside activities must comply with applicable statutes and regulations. Relevant provisions of law, many of which are listed in subpart I of this part, may include:

(1) 18 U.S.C. 201(b), which prohibits a public official from seeking, accepting or agreeing to receive or accept anything of value in return for being influenced in the performance of an official act or for being induced to take or omit to take any action in violation of official duty;

(2) 18 U.S.C. 201(c), which prohibits a public official, otherwise than as provided by law for the proper discharge of official duty, from seeking, accepting, or agreeing to receive or accept anything of value for or because of any official act;

(3) 18 U.S.C. 203(a), which prohibits an individual from seeking, accepting, or agreeing to receive or accept compensation for any representational services, rendered personally or by another at a time when the individual is an employee, in relation to any particular matter in which the United States is a party or has a direct and substantial interest, before any department, agency, or other specified entity. This statute contains several exceptions, as well as standards for special Government employees that limit the scope of the restriction;

(4) 18 U.S.C. 205, which prohibits an employee, whether or not for compensation, from acting as agent or attorney for anyone in a claim against the United States or from acting as agent or attorney for anyone, before any department, agency, or other specified entity, in any particular matter in which the United States is a party or has a direct and substantial interest. It also prohibits receipt of any gratuity, or any share of or interest in a claim against the United States, in consideration for assisting in the prosecution of such claim. This statute contains several

exceptions, as well as standards for special Government employees that limit the scope of the restrictions;

(5) 18 U.S.C. 209, which prohibits an employee, other than a special Government employee, from receiving any salary or any contribution to or supplementation of salary from any source other than the United States as compensation for services as a Government employee. The statute contains several exceptions that limit its applicability;

(6) The Emoluments Clause of the United States Constitution, article I, section 9, clause 8, which prohibits anyone holding an office of profit or trust under the United States from accepting any gift, office, title, or emolument, including salary or compensation, from any foreign government except as authorized by Congress. In addition, 18 U.S.C. 219 generally prohibits any public official from being or acting as an agent of a foreign principal, including a foreign government, corporation, or person, if the employee would be required to register as a foreign agent under 22 U.S.C. 611 *et seq.*;

(7) The Hatch Act Reform Amendments, 5 U.S.C. 7321 through 7326, which govern the political activities of executive branch employees; and

(8) The Ethics in Government Act of 1978 limitations on outside employment, 5 U.S.C. chapter 131, subchapter III, which restrict the amount of outside earned income that a covered noncareer employee may receive, prohibit a covered noncareer employee from receiving compensation for specified activities, and provide that a covered noncareer employee may not allow their name to be used by any firm or other entity that provides professional services involving a fiduciary relationship. Implementing regulations are contained in §§ 2636.305 through 2636.307 of this chapter.

**§ 2635.802 Conflicting outside employment and activities.**

(a) Employees may not engage in outside employment or any other outside activity that conflicts with their official duties. An activity conflicts with an employee's official duties:

(1) If it is prohibited by statute or by an agency supplemental regulation; or

(2) If, under the standards set forth in §§ 2635.402 and 2635.502, it would require the employee's recusal from matters so central or critical to the performance of their official duties that the employee's ability to perform the duties of the Government position would be materially impaired.

(b) Employees are cautioned that even though an outside activity may not be prohibited under this section, it may violate other principles or standards set forth in this part or require the employee to recuse from participating in certain particular matters under either subpart D or E of this part.

*Example 1 to paragraph (b):* A biochemist, who conducts research at the Environmental Protection Agency (EPA), has an outside consulting business providing technical guidance on the handling of hazardous materials. The biochemist would like to apply for a different EPA position, for which the principal duty would be writing regulations on the handling of hazardous materials. If the biochemist gets the position, the work would have a direct and predictable effect on the outside consulting business. Because the biochemist would be required to recuse from duties critical to the performance of official duties on a basis so frequent as to materially impair their ability to perform the duties of the position, they could not continue to operate the outside consulting business.

*Example 2 to paragraph (b):* An employee of the Internal Revenue Service (IRS) reviews applications for recognition of tax-exempt status. Several years ago, the employee became involved with a neighborhood group that transports stray animals to nearby adoption centers. As its activities expanded, the group created a formal organization, and submitted an application for recognition of tax-exempt status by the IRS. Under the circumstances, the employee should be recused from participating in any IRS determination regarding the tax-exempt status of this organization. However, the employee's involvement with the organization would not be prohibited by this section, because the outside activity would have a limited effect on official duties and would not require recusal from matters so central or critical to the performance of official duties that the ability to perform the duties of the position would be materially impaired.

**§ 2635.803 Prior approval for outside employment and activities.**

When required by agency supplemental regulation, employees must obtain prior approval before engaging in outside employment or activities. When it is determined to be necessary or desirable for the purpose of administering its ethics program, an agency may, by supplemental regulation, require employees or any category of employees to obtain prior approval before engaging in specific types of outside activities, including

outside employment. Whether or not prior approval is required by agency supplemental regulations, employees have a continuing responsibility to ensure that their outside activities do not conflict with their official duties.

### § 2635.804 Outside earned income limitations applicable to certain Presidential appointees.

This section implements the outside earned income limitations applicable to certain Presidential appointees. The outside earned income limitations applicable to covered noncareer employees, as defined in § 2636.303(a) of this chapter, are implemented in §§ 2636.301 through 2636.304 of this chapter.

(a) *Presidential appointees to full-time noncareer positions.* A Presidential appointee to a full-time noncareer position may not receive any outside earned income for outside employment, or for any other outside activity, performed during that Presidential appointment.

(b) *Definitions.* For purposes of this section:

(1) *Outside earned income* has the meaning set forth in § 2636.303(b) of this chapter, except that § 2636.303(b)(7) does not apply.

(2) *Presidential appointee to a full-time noncareer position* means any employee who is appointed by the President to a full-time position described in 5 U.S.C. 5312 through 5317 or to a position that, by statute or as a matter of practice, is filled by Presidential appointment, other than:

(i) A position filled under the authority of 3 U.S.C. 105 or 107(a) for which the rate of basic pay is less than that for GS–9, step 1 of the General Schedule;

(ii) A position, within a White House operating unit, that is designated as not normally subject to change as a result of a Presidential transition;

(iii) A position within the uniformed services; or

(iv) A position in which a member of the Foreign Service is serving that does not require advice and consent of the Senate.

*Example 1 to paragraph (b)(2):* A career Department of Justice employee who is detailed to a policy-making position in the White House Office that is ordinarily filled by a noncareer employee is not a Presidential appointee to a full-time noncareer position.

*Example 2 to paragraph (b)(2):* A Department of Energy employee appointed under § 213.3301 of this title to a Schedule C position is appointed by the agency and, thus, is not a Presidential appointee to a full-time noncareer position.

### § 2635.805 Service as an expert witness.

(a) *Restriction.* Employees may not serve, other than on behalf of the United States, as an expert witness, with or without compensation, in any proceeding before a court or agency of the United States in which the United States is a party or has a direct and substantial interest, unless the employee's participation is authorized by the agency under paragraph (c) of this section. Except as provided in paragraph (b) of this section, the restriction in this paragraph (a) applies to special Government employees only if they have participated as an employee or special Government employee in the particular proceeding or in the particular matter that is the subject of the proceeding.

(b) *Additional restriction applicable to certain special Government employees.* (1) In addition to the restriction described in paragraph (a) of this section, special Government employees described in paragraph (b)(2) of this section may not serve, other than on behalf of the United States, as an expert witness, with or without compensation, in any proceeding before a court or agency of the United States in which their employing agency is a party or has a direct and substantial interest, unless the employee's participation is authorized by the agency under paragraph (c) of this section.

(2) The restriction in paragraph (b)(1) of this section applies to special Government employees who:

(i) Are appointed by the President;

(ii) Serve on a commission established by statute; or

(iii) Have served or are expected to serve for more than 60 days in a period of 365 consecutive days.

(c) *Authorization to serve as an expert witness.* Provided that the employee's testimony will not violate any of the principles or standards set forth in this part, authorization to provide expert witness service otherwise prohibited by paragraphs (a) and (b) of this section may be given by the designated agency ethics official of the agency in which the employee serves when:

(1) After consultation with the agency representing the Government in the proceeding or, if the Government is not a party, with the Department of Justice and the agency with the most direct and substantial interest in the matter, the designated agency ethics official determines that the employee's service as an expert witness is in the interest of the Government; or

(2) The designated agency ethics official determines that the subject matter of the testimony does not relate to the employee's official duties within the meaning of § 2635.807(a)(2)(i).

(d) *Fact witness.* Nothing in this section prohibits an employee from serving as a fact witness when subpoenaed by an appropriate authority.

### § 2635.806 [Reserved]

### § 2635.807 Teaching, speaking, and writing.

(a) *Compensation for teaching, speaking, or writing.* Except for teaching certain courses as permitted by paragraph (a)(3) of this section, an employee, including a special Government employee, may not receive compensation from any source other than the Government for teaching, speaking, or writing that occurs while the person is a Government employee and that relates to the employee's official duties.

(1) *Relationship to other limitations on receipt of compensation.* The compensation prohibition contained in this section is in addition to any other limitation on receipt of compensation set forth in this chapter, including:

(i) The requirement contained in § 2636.307 of this chapter that covered noncareer employees obtain advance authorization before engaging in teaching for compensation; and

(ii) The prohibitions and limitations in § 2635.804 and in § 2636.304 of this chapter on receipt of outside earned income applicable to certain Presidential appointees and to other covered noncareer employees.

(2) *Definitions.* For purposes of this paragraph (a):

(i) Teaching, speaking, or writing *relates to the employee's official duties* if:

(A) The activity is undertaken as part of the employee's official duties;

(B) The circumstances indicate that the invitation to engage in the activity was extended to the employee primarily because of their official position rather than their expertise on the particular subject matter;

(C) The invitation to engage in the activity or the offer of compensation for the activity was extended to the employee, directly or indirectly, by a person who has interests that may be affected substantially by performance or nonperformance of the employee's official duties;

(D) The information conveyed through the activity draws substantially on ideas or official data that are nonpublic information as defined in § 2635.703(b); or

(E) Except as provided in paragraph (a)(2)(i)(E)(*4*) of this section, the subject of the activity deals in significant part with:

(*1*) Any matter to which the employee presently is assigned or to which the employee had been assigned during the previous one-year period;

(*2*) Any ongoing or announced policy, program, or operation of the agency; or

(*3*) In the case of a noncareer employee as defined in § 2636.303(a) of this chapter, the general subject matter area, industry, or economic sector primarily affected by the programs and operations of the employee's agency.

(*4*) The restrictions in paragraphs (a)(2)(i)(E)(*2*) and (*3*) of this section do not apply to a special Government employee. The restriction in paragraph (a)(2)(i)(E)(*1*) of this section applies only during the current appointment of a special Government employee; except that if the special Government employee has not served or is not expected to serve for more than 60 days during the first year or any subsequent one-year period of that appointment, the restriction applies only to particular matters involving specific parties in which the special Government employee has participated or is participating personally and substantially.

Note 1 to paragraph (a)(2)(i): Paragraph (a)(2)(i)(E) of this section does not preclude an employee, other than a covered noncareer employee, from receiving compensation for teaching, speaking, or writing on a subject within the employee's discipline or inherent area of expertise based on the employee's educational background or experience even though the teaching, speaking, or writing deals generally with a subject within the agency's areas of responsibility.

*Example 1 to paragraph (a)(2)(i):* The Director of the Division of Enforcement at the Commodity Futures Trading Commission has a keen interest in stamp collecting and has spent years developing a personal collection as well as studying the field generally. The Director is asked by an international society of philatelists to give a series of four lectures on how to assess the value of American stamps. Because the subject does not relate to the Director's official duties, it is permissible for the Director to accept compensation for the lecture series. The Director could not, however, accept a similar invitation from a commodities broker.

*Example 2 to paragraph (a)(2)(i):* A scientist at the National Institutes of Health (NIH), whose principal area of Government research is the molecular basis of the development of cancer, could not be compensated for writing a book which focuses specifically on the research conducted in this position at NIH, which thus relates to the scientist's official duties. However, the scientist could receive compensation for writing or editing a textbook on the treatment of all cancers, provided that the book does not focus on recent research at NIH, but rather conveys scientific knowledge gleaned from the scientific community as a whole. The book might include a chapter, among many other chapters, which discusses the molecular basis of cancer development. Additionally, the book could contain brief discussions of recent developments in cancer treatment, even though some of those developments are derived from NIH research, as long as it is available to the public.

*Example 3 to paragraph (a)(2)(i):* On personal time, a National Highway Traffic Safety Administration (NHTSA) employee prepared a consumer's guide to purchasing a safe automobile that focuses on automobile crash worthiness statistics gathered and made public by NHTSA. The employee may not receive royalties or any other form of compensation for the guide. The guide deals in significant part with the programs or operations of NHTSA and, therefore, relates to the employee's official duties. On the other hand, the employee could receive royalties from the sale of a consumer's guide to values in used automobiles even though it contains a brief, incidental discussion of automobile safety standards developed by NHTSA.

*Example 4 to paragraph (a)(2)(i):* An employee of the Securities and Exchange Commission (SEC) may not receive compensation for a book which focuses specifically on the regulation of the securities industry in the United States, because that subject concerns the regulatory programs or operations of the SEC. The employee may, however, write a book about the advantages of investing in various types of securities as long as the book contains only an incidental discussion of any program or operation of the SEC.

*Example 5 to paragraph (a)(2)(i):* An employee of the Department of Commerce who works in the Department's employee relations office is an acknowledged expert in the field of Federal employee labor relations, and participates in Department negotiations with employee unions. The employee may receive compensation from a private training institute for a series of lectures which describe the decisions of the Federal Labor Relations Authority concerning unfair labor practices, provided that the lectures do not contain any significant discussion of labor relations cases handled at the Department of Commerce, or the Department's labor relations policies. Federal Labor Relations Authority decisions concerning Federal employee unfair labor practices are not a specific program or operation of the Department of Commerce and thus do not relate to the employee's official duties. However, an employee of the FLRA could not give the same presentations for compensation.

*Example 6 to paragraph (a)(2)(i):* A program analyst employed at the Environmental Protection Agency (EPA) may receive royalties and other compensation for a book about the history of the environmental movement in the United States even though it contains brief references to the creation and responsibilities of the EPA. A covered noncareer employee of the EPA, however, could not receive compensation for writing the same book because it deals with the general subject matter area affected by EPA programs and operations. Neither employee could receive compensation for writing a book that focuses on specific EPA regulations or otherwise on its programs and operations.

*Example 7 to paragraph (a)(2)(i):* An attorney in private practice has been given a one-year appointment as a special Government employee to serve on an advisory committee convened for the purpose of surveying and recommending modification of procurement regulations that deter small businesses from competing for Government contracts. Because service under this appointment is not expected to exceed 60 days, the attorney may accept compensation for an article about the anticompetitive effects of certain regulatory certification requirements even though those regulations are being reviewed by the advisory committee. The regulations which are the focus of the advisory committee deliberations are not a particular matter involving specific parties. Because the information is nonpublic, the attorney could not, however, accept compensation for an article which recounts advisory committee deliberations that took place in a meeting closed to the public in order to discuss proprietary information provided by a small business.

*Example 8 to paragraph (a)(2)(i):* A biologist who is an expert in marine life is employed for more than 60 days in a year as a special Government employee by the National Science Foundation (NSF) to assist in developing a program of grants by the NSF for the study of coral reefs. The biologist may continue to receive compensation for speaking, teaching, and writing about marine life generally and coral reefs specifically. However, during the term of the appointment as a special Government employee, the biologist may not receive compensation for an article about the

NSF program being developed. Only the latter would concern a matter to which the special Government employee is assigned.

*Example 9 to paragraph (a)(2)(i):* An expert on international banking transactions has been given a one-year appointment as a special Government employee to assist in analyzing evidence in the Government's fraud prosecution of owners of a failed savings and loan association. It is anticipated that the expert will serve fewer than 60 days under that appointment. Nevertheless, during this appointment, the expert may not accept compensation for an article about the fraud prosecution, even though the article does not reveal nonpublic information. The prosecution is a particular matter that involves specific parties.

(ii) *Agency* has the meaning set forth in § 2635.102(a), except that any component of a department designated as a separate agency under § 2635.203(a) will be considered a separate agency.

(iii) *Compensation,* for purposes of this paragraph (a):

(A) Includes any form of consideration, remuneration, or income, including royalties, given for or in connection with the employee's teaching, speaking, or writing.

(B) *Compensation* does not include:

(*1*) Items offered by any source that could be accepted from a prohibited source under subpart B of this part;

(*2*) Meals or other incidents of attendance such as waiver of attendance fees or course materials furnished as part of the event at which the teaching or speaking takes place;

(*3*) Copies of books or of publications containing articles, reprints of articles, tapes of speeches, and similar items that provide a record of the teaching, speaking, or writing activity; or

(*4*) Travel expenses for certain individuals as described in paragraph (a)(2)(iii)(C) of this section.

(C) For employees other than covered noncareer employees as defined in § 2636.303(a) of this chapter, *compensation* does not include travel expenses, consisting of transportation, lodging or meals, incurred in connection with the teaching, speaking, or writing activity. For covered noncareer employees as defined in § 2636.303(a) of this chapter, *compensation* does include transportation, lodging, and meals, whether provided in kind, by purchase of a ticket, by payment in advance, or by reimbursement after the expense has been incurred, unless such travel expenses are accepted under specific statutory authority, such as 31 U.S.C.

1353, 5 U.S.C. 4111, or 5 U.S.C. 7342, or an agency gift acceptance statute.

**Note 2 to paragraph (a)(2)(iii)(C):** Independent of paragraph (a) of this section, other authorities, including but not limited to 18 U.S.C. 209, in some circumstances may limit or entirely preclude an employee's acceptance of travel expenses. In addition, employees who file financial disclosure reports should be aware that, subject to applicable thresholds and exclusions, travel and travel reimbursements accepted from sources other than the United States Government must be reported on their financial disclosure reports.

*Example 1 to paragraph (a)(2)(iii):* A GS–15 employee of the Forest Service has developed and marketed, in a private capacity, a speed-reading technique for which popular demand is growing. The employee is invited to speak about the technique by a representative of an organization that will be substantially affected by a regulation on land management which the employee is in the process of drafting for the Forest Service. The representative offers to pay the employee a $200 speaker's fee and to reimburse all travel expenses. The employee may accept the travel reimbursements, but not the speaker's fee. The speaking activity is related to official duties under paragraph (a)(2)(i)(C) of this section and the fee is prohibited compensation for such speech; travel expenses incurred in connection with the speaking engagement, on the other hand, are not prohibited compensation for a GS–15 employee.

*Example 2 to paragraph (a)(2)(iii):* Solely because of their recent appointment to a Cabinet-level position, a Government official is invited by the Chief Executive Officer of a major international corporation to attend, in their personal capacity, firm meetings to be held in Aspen for the purpose of addressing senior corporate managers on the importance of recreational activities to a balanced lifestyle. The firm offers to reimburse the official's travel expenses. The official may not accept the offer. The speaking activity is related to official duties under paragraph (a)(2)(i)(B) of this section and, because the official is a covered noncareer employee as defined in § 2636.303(a) of this chapter, the travel expenses are prohibited compensation.

*Example 3 to paragraph (a)(2)(iii):* A GS–14 attorney at the Federal Trade Commission (FTC) who played a lead role in a recently concluded merger case is invited to speak about the case, in a private capacity, at a conference in New York. The attorney has no public speaking responsibilities on behalf of

the FTC apart from the judicial and administrative proceedings to which they are assigned. The sponsors of the conference offer to reimburse the attorney for expenses incurred in connection with the travel to New York. They also offer the attorney, as compensation for time and effort, a free trip to San Francisco. The attorney may accept the travel expenses to New York, but not the expenses to San Francisco. The lecture relates to official duties under paragraphs (a)(2)(i)(E)(*1*) and (*2*) of this section, but because the attorney is not a covered noncareer employee as defined in § 2636.303(a) of this chapter, the expenses associated with the travel to New York are not a prohibited form of compensation. The travel expenses to San Francisco, on the other hand, not incurred in connection with the speaking activity, are a prohibited form of compensation. If the attorney were a covered noncareer employee, the travel expenses to New York as well as the travel expenses to San Francisco would be barred.

*Example 4 to paragraph (a)(2)(iii):* An advocacy group dedicated to improving treatments for severe pain asks the National Institutes of Health (NIH) to provide a conference speaker who can discuss recent advances in the agency's research on pain. The group also offers to pay the employee's travel expenses to attend the conference. After performing the required conflict of interest analysis, NIH authorizes acceptance of the travel expenses under 31 U.S.C. 1353 and the implementing General Services Administration regulation, as codified under 41 CFR chapter 304, and authorizes an employee to undertake the travel. At the conference the advocacy group, as agreed, pays the employee's hotel bill, and provides several of the employee's meals. Subsequently the group reimburses the agency for the cost of the employee's airfare and some additional meals. All of the payments by the advocacy group are permissible. Because the employee is speaking officially and the expense payments are accepted under 31 U.S.C. 1353, they are not prohibited compensation under paragraph (a)(2)(iii) of this section. The same result would obtain with respect to expense payments made by non-Government sources properly authorized under an agency gift acceptance statute, the Government Employees Training Act, 5 U.S.C. 4111, or the Foreign Gifts and Decorations Act, 5 U.S.C. 7342.

(iv) *Receive* means that there is actual or constructive receipt of the compensation by the employee so that the employee has the right to exercise dominion and control over the

compensation and to direct its subsequent use. Receipt of compensation is attributable to the time that the teaching, speaking, or writing occurs when there is actual or constructive receipt of the compensation by the employee. If the employee has an enforceable agreement to receive compensation for writing undertaken during Government service, then compensation is received while the individual is an employee even though actual payment may be deferred until after Government service. Compensation received by an employee includes compensation which is:

(A) Paid to another person, including a charitable organization, on the basis of designation, recommendation, or other specification by the employee; or

(B) Paid with the employee's knowledge and acquiescence to the employee's parent, sibling, spouse, child, or dependent relative.

(v) *Particular matter involving specific parties* has the meaning set forth in § 2640.102(l) of this chapter.

(vi) *Personal and substantial participation* has the meaning set forth in § 2635.402(b)(4).

(3) *Exception for teaching certain courses.* Notwithstanding that the activity would relate to their official duties under paragraph (a)(2)(i)(B) or (E) of this section, employees may accept compensation for teaching a course requiring multiple presentations by the employee if the course is offered as part of:

(i) The regularly established curriculum of:

(A) An institution of higher education as defined at 20 U.S.C. 1001 or from a similar foreign institution of higher education;

**Note 3 to paragraph (a)(3)(i)(A):** When the course is offered as part of the regularly established curriculum of a foreign institution of higher education, the agency may need to make a separate determination as to whether the institution of higher education is a foreign government for purposes of the Emoluments Clause of the U.S. Constitution (U.S. Const., art. I, sec. 9, cl. 8), which forbids employees from accepting emoluments, presents, offices, or titles from foreign governments, without the consent of Congress.

(B) An elementary school as defined at 20 U.S.C. 7801(19); or

(C) A secondary school as defined at 20 U.S.C. 7801(45); or

(ii) A program of education or training sponsored and funded by the Federal Government or by a State or local government which is not offered by an entity described in paragraph (a)(3)(i) of this section.

*Example 1 to paragraph (a)(3):* An employee of the Cost Accounting

Standards Board who teaches an advanced accounting course as part of the regular business school curriculum of an accredited university may receive compensation for teaching the course even though a substantial portion of the course deals with cost accounting principles applicable to contracts with the Government.

*Example 2 to paragraph (a)(3):* An attorney employed by the Equal Employment Opportunity Commission (EEOC) may accept compensation for teaching a course at a state college on the subject of EEOC enforcement of Federal employment discrimination law. The attorney could not accept compensation for teaching the same seminar as part of a continuing education program sponsored by a bar association because the subject of the course is focused on the operations or programs of the EEOC, and the sponsor of the course is not an accredited educational institution.

*Example 3 to paragraph (a)(3):* An employee of the National Endowment for the Humanities (NEH) is invited by a private university to teach a course that is a survey of Government policies in support of artists, poets, and writers. As part of official duty activities, the employee administers a grant that the university has received from the NEH. The employee may not accept compensation for teaching the course because the university has interests that may be substantially affected by the performance or nonperformance of the employee's duties. Likewise, an employee may not receive compensation for any teaching that is undertaken as part of official duties or that involves the use of nonpublic information.

(b) *Reference to official position.* Employees who are engaged in teaching, speaking, or writing as outside employment or as an outside activity may not use or permit the use of their official title or position to identify themselves in connection with a teaching, speaking, or writing activity, or to promote any book, seminar, course, program, or similar undertaking, except that:

(1) Employees may include or permit the inclusion of their title or position as one of several biographical details when such information is given to identify them in connection with their teaching, speaking, or writing, provided that their title or position is given no more prominence than other significant biographical details;

(2) Employees may use or permit the use of their title or position in connection with an article published in a scientific or professional journal,

provided that the title or position is accompanied by a reasonably prominent disclaimer satisfactory to the agency stating that the views expressed in the article do not necessarily represent the views of the agency or the United States; and

(3) Employees who are ordinarily addressed using a general term of address, such as ''The Honorable'' or ''Judge,'' or a rank, such as a military or ambassadorial rank, may use or permit the use of that term of address or rank in connection with their teaching, speaking, or writing.

**Note 4 to paragraph (b):** Reference to official title and position other than in a teaching, speaking, or writing capacity may be made only as permitted by § 2635.702(b). In addition, some agencies may have policies requiring advance agency review, clearance, or approval of certain speeches, books, articles, or similar products to determine whether the product contains an appropriate disclaimer, discloses nonpublic information, or otherwise complies with this section.

*Example 1 to paragraph (b):* A meteorologist employed with the National Oceanic and Atmospheric Administration (NOAA) is asked by a local university to teach a graduate course on hurricanes. The university may include the meteorologist's Government title and position together with other information about the meteorologist's education and previous employment in course materials setting forth biographical data on all teachers involved in the graduate program. However, the meteorologist's title or position may not be used to promote the course, for example, by featuring the meteorologist's Government title, Senior Meteorologist, NOAA, in bold type under their name. In contrast, the meteorologist's title may be used in this manner when NOAA authorized speaking in an official capacity.

*Example 2 to paragraph (b):* A doctor just employed by the Centers for Disease Control (CDC) has written a paper based on earlier independent research into cell structures. Incident to the paper's publication in the Journal of the American Medical Association, the doctor may be given credit for the paper, as Dr. M. Wellbeing, Associate Director, Centers for Disease Control, provided that the article also contains a disclaimer, concurred in by the CDC, indicating that the paper is the result of the doctor's independent research and does not represent the findings of CDC.

*Example 3 to paragraph (b):* An employee of the Federal Deposit Insurance Corporation (FDIC) has been asked to give a speech in a private capacity, without compensation, to the

annual meeting of a committee of the American Bankers Association on the need for banking reform. The employee may be described in an introduction at the meeting as an employee of the FDIC provided that other pertinent biographical details are mentioned as well.

### § 2635.808  Fundraising activities.

Employees may engage in fundraising only in accordance with the restrictions in part 950 of this title on the conduct of charitable fundraising in the Federal workplace and in accordance with paragraphs (b) and (c) of this section. This section addresses fundraising as defined in paragraph (a)(1) of this section, and does not cover all scenarios in which an employee might seek to collect donations from a fellow employee. For example, employees of an office might decide to collect money for a coworker whose family was displaced by a flood; the permissibility of such collections should be analyzed under subpart C of this part, not this section.

(a) *Definitions.* For purposes of this section:

(1) *Fundraising* means the raising of funds for a nonprofit organization, other than a political organization as defined in 26 U.S.C. 527(e), through:

(i) Solicitation of funds or sale of items; or

(ii) Participation in the conduct of an event by an employee when any portion of the cost of attendance or participation may be taken as a charitable tax deduction by a person incurring that cost.

(2) *Participation in the conduct of an event* means active and visible participation in the promotion, production, or presentation of the event and includes serving as honorary chairperson, sitting at a head table during the event, and standing in a reception line. The term does not include mere attendance at an event provided that, to the employee's knowledge, the employee's attendance is not used by the nonprofit organization to promote the event. While the term generally includes any public speaking during the event, it does not include the delivery of an official speech as defined in paragraph (a)(3) of this section or any seating or other participation appropriate to the delivery of such a speech. Waiver of a fee for attendance at an event by a participant in the conduct of that event does not constitute a gift for purposes of subpart B of this part.

*Example 1 to paragraph (a)(2):* The Secretary of Transportation has been asked to serve as master of ceremonies

for an All-Star Gala. Tickets to the event cost $150 and are tax deductible as a charitable donation, with proceeds to be donated to a local hospital. By serving as master of ceremonies, the Secretary would be participating in fundraising.

(3) *Official speech* means a speech given by an employee in an official capacity on a subject matter that relates to the employee's official duties, provided that the employee's agency has determined that the event at which the speech is to be given provides an appropriate forum for the dissemination of the information to be presented and provided that the employee does not request donations or other support for the nonprofit organization. Subject matter relates to an employee's official duties if it focuses specifically on the employee's official duties, on the responsibilities, programs, or operations of the employee's agency as described in § 2635.807(a)(2)(i)(E), or on matters of Administration policy on which the employee has been authorized to speak.

*Example 1 to paragraph (a)(3):* The Secretary of Labor is invited to speak at a banquet honoring a distinguished labor leader, the proceeds of which will benefit a nonprofit organization that assists homeless families. The Secretary devotes a major portion of the speech to the Administration's Points of Light initiative, an effort to encourage citizens to volunteer their time to help solve serious social problems. Because the Secretary is authorized to speak on Administration policy, these remarks at the banquet are an official speech. However, the Secretary would be engaged in fundraising if the official speech concluded with a request for donations to the nonprofit organization.

*Example 2 to paragraph (a)(3):* A charitable organization is sponsoring a two-day tennis tournament at a country club in the Washington, DC, area to raise funds for recreational programs for children with learning disabilities. The organization has invited the Secretary of Education to give a speech on federally funded special education programs at the awards dinner to be held at the conclusion of the tournament, and the agency has determined that the dinner is an appropriate forum for the particular speech. The Secretary may speak at the dinner and, under § 2635.203(b)(8), may partake of the meal provided at the dinner.

(4) *Personally solicit* means to request or otherwise encourage donations or other support either through person-to-person contact or through the use of one's name or identity in correspondence or by permitting its use by others. It does not include the solicitation of funds through the media

or through either oral remarks, or the contemporaneous dispatch of like items of mass-produced correspondence, if such remarks or correspondence are addressed to a group consisting of many persons, unless it is known to the employee that the solicitation is targeted at subordinates or at persons who are prohibited sources within the meaning of § 2635.203(d). It does not include behind-the-scenes assistance in the solicitation of funds, such as drafting correspondence, stuffing envelopes, or accounting for contributions.

*Example 1 to paragraph (a)(4):* An employee of the Department of Energy (DOE) who signs a letter soliciting funds for a local private school does not "personally solicit" funds when 500 copies of the letter, which makes no mention of the employee's DOE position and title, are mailed to members of the local community, even though some individuals who are employed by DOE contractors may receive the letter.

(b) *Fundraising in an official capacity.* Employees may participate in fundraising in an official capacity if, in accordance with a statute, Executive order, regulation, or otherwise as determined by the agency, they are authorized to engage in the fundraising activity as part of their official duties. When authorized to participate in an official capacity, employees may use their official title, position, and authority.

*Example 1 to paragraph (b):* Because participation in an official capacity is authorized under part 950 of this title, the Secretary of the Army may sign a memorandum to all Army personnel encouraging them to donate to the Combined Federal Campaign.

(c) *Fundraising in a personal capacity.* An employee may engage in fundraising in a personal capacity provided that the employee does not:

(1) Personally solicit funds or other support from a subordinate or from any person:

(i) Known to the employee, if the employee is other than a special Government employee, to be a prohibited source within the meaning of § 2635.203(d), unless the circumstances make clear that the solicitation is motivated by a family relationship or personal friendship that would justify the solicitation); or

(ii) Known to the employee, if the employee is a special Government employee, to be a prohibited source within the meaning of § 2635.203(d)(4) that is a person whose interests may be substantially affected by performance or nonperformance of the employee's official duties, unless the circumstances make clear that the solicitation is

motivated by a family relationship or personal friendship that would justify the solicitation;

(2) Use or permit the use of the employee's official title, position, or any authority associated with the employee's public office to further the fundraising effort, except that an employee who is ordinarily addressed using a general term of address, such "The Honorable," or a rank, such as a military or ambassadorial rank, may use or permit the use of that term of address or rank for such purposes; or

(3) Engage in any action that would otherwise violate this part.

**Note 1 to paragraph (c):** This section does not prohibit fundraising for a political party, candidate for partisan political office, or partisan political group. However, there are statutory restrictions that apply to political fundraising. For example, under the Hatch Act Reform Amendments of 1993, at 5 U.S.C. 7323(a), employees may not knowingly solicit, accept, or receive a political contribution from any person, except under limited circumstances. In addition, employees are prohibited by 18 U.S.C. 607 from soliciting or receiving political contributions in Federal offices, and, except as permitted by the Hatch Act Reform Amendments, are prohibited by 18 U.S.C. 602 from knowingly soliciting political contributions from other employees.

*Example 1 to paragraph (c):* A nonprofit organization is sponsoring a golf tournament to raise funds for underprivileged children. The Secretary of the Navy may not enter the tournament with the understanding that the organization intends to attract participants by offering other entrants the opportunity, in exchange for a donation in the form of an entry fee, to spend the day playing 18 holes of golf in a foursome with the Secretary of the Navy.

*Example 2 to paragraph (c):* An employee of the Merit Systems Protection Board may not use the agency's photocopier to reproduce fundraising literature for their child's private school. Such use of the photocopier would violate the standards at § 2635.704 regarding use of Government property.

*Example 3 to paragraph (c):* An Assistant Attorney General may not sign a letter soliciting funds for a homeless shelter as "P.J. Doe, Assistant Attorney General." The Assistant Attorney General also may not sign a letter with just a "P.J. Doe" signature soliciting funds from a prohibited source, unless the letter is one of many identical, mass-produced letters addressed to a large group when the solicitation is not known to the Assistant Attorney General to be targeted at persons who

are either prohibited sources or subordinates.

*Example 4 to paragraph (c):* An employee of the Department of Commerce is running a half marathon to raise money for a nonprofit organization engaged in cancer research, and is looking for people to sponsor the race. The employee plans to target specific individuals they think will want to contribute, including a close friend with whom they regularly meet for dinner. Notwithstanding the fact that the friend is employed by a corporation that is a prohibited source, the employee may ask the friend to sponsor the race because the solicitation is motivated by a personal friendship that would justify the solicitation.

*Example 5 to paragraph (c):* The employee in example 4 to this paragraph (c) knows that a subordinate employee has expressed an interest in this cause and sends the subordinate a direct link to the online sponsorship page. The employee has "personally solicited" a subordinate in violation of paragraph (c)(1) of this section.

*Example 6 to paragraph (c):* The employee in example 4 to this paragraph (c) decides that rather than targeting specific individuals for contributions, it would be preferable to post a general request and a link to information about the race on their personal social media account. Because this request may be viewed by any person with whom the employee is connected through the social media network and does not reference or target any specific individual, it is not considered a personal solicitation of any subordinate or prohibited source that is connected to the employee.

### § 2635.809   Just financial obligations.

Employees must satisfy in good faith their obligations as citizens, including all just financial obligations, especially those such as Federal, State, or local taxes that are imposed by law. For purposes of this section, a just financial obligation includes any financial obligation acknowledged by the employee or reduced to judgment by a court. In good faith means an honest intention to fulfill any just financial obligation in a timely manner. In the event of a dispute between an employee and an alleged creditor, this section does not require an agency to determine the validity or amount of the disputed debt or to collect a debt on the alleged creditor's behalf.

## Subpart I—Related Statutory Authorities

### § 2635.901   General.

In addition to the Standards of Ethical Conduct set forth in subparts A through H of this part, there are a number of statutes that establish standards to which an employee's conduct must conform. The list set forth in § 2635.902 references some of the more significant of those statutes. It is not comprehensive and includes only references to statutes of general applicability. While it includes references to several of the basic conflict of interest statutes whose standards are explained in more detail throughout this part, it does not include references to statutes of more limited applicability, such as statutes that apply only to officers and employees of the Department of Defense.

### § 2635.902   Related statutes.

(a) The prohibition against solicitation or receipt of bribes (18 U.S.C. 201(b)).

(b) The prohibition against solicitation or receipt of illegal gratuities (18 U.S.C. 201(c)).

(c) The prohibition against seeking or receiving compensation for certain representational services before the Government (18 U.S.C. 203).

(d) The prohibition against assisting in the prosecution of claims against the Government or acting as agent or attorney before the Government (18 U.S.C. 205).

(e) The post-employment restrictions applicable to former employees (18 U.S.C. 207 and the regulation at part 2641 of this chapter).

(f) The prohibition on certain former agency officials' acceptance of compensation from a contractor (41 U.S.C. 2104).

(g) The prohibition against participating in matters affecting an employee's own financial interests or the financial interests of other specified persons or organizations (18 U.S.C. 208 and the regulation at part 2640 of this chapter).

(h) The actions required of certain agency officials when they contact, or are contacted by, offerors or bidders regarding non-Federal employment (41 U.S.C. 2103).

(i) The prohibition against receiving salary or any contribution to or supplementation of salary as compensation for Government service from a source other than the United States (18 U.S.C. 209).

(j) The prohibition against gifts to superiors (5 U.S.C. 7351).

(k) The prohibition against solicitation or receipt of gifts from

specified prohibited sources (5 U.S.C. 7353).

(l) The prohibition against fraudulent access and related activity in connection with computers (18 U.S.C. 1030).

(m) The provisions governing receipt and disposition of foreign gifts and decorations (5 U.S.C. 7342).

(n) [Reserved]

(o) The prohibitions against certain political activities (5 U.S.C. 7321 through 7326 and 18 U.S.C. 602, 603, 606, and 607).

(p) The prohibitions against disloyalty and striking (5 U.S.C. 7311 and 18 U.S.C. 1918).

(q) The general prohibition (18 U.S.C. 219) against acting as the agent of a foreign principal required to register under the Foreign Agents Registration Act (22 U.S.C. 611 through 621).

(r) The prohibition against employment of a person convicted of participating in or promoting a riot or civil disorder (5 U.S.C. 7313).

(s) The prohibition against employment of an individual who habitually uses intoxicating beverages to excess (5 U.S.C. 7352).

(t) The prohibition against misuse of a Government vehicle (31 U.S.C. 1344).

(u) The prohibition against misuse of the franking privilege (18 U.S.C. 1719).

(v) The prohibition against fraud or false statements in a Government matter (18 U.S.C. 1001).

(w) The prohibition against concealing, mutilating, or destroying a public record (18 U.S.C. 2071).

(x) The prohibition against counterfeiting or forging transportation requests (18 U.S.C. 508).

(y) The restrictions on disclosure of certain sensitive Government information under the Freedom of Information Act and the Privacy Act (5 U.S.C. 552 and 552a).

(z) The prohibitions against disclosure of classified information (18 U.S.C. 798 and 50 U.S.C. 783(a)).

(aa) The prohibition against disclosure of proprietary information and certain other information of a confidential nature (18 U.S.C. 1905).

(bb) The prohibitions on disclosing and obtaining certain procurement information (41 U.S.C. 2102).

(cc) The prohibition against unauthorized use of documents relating to claims from or by the Government (18 U.S.C. 285).

(dd) The prohibition against certain personnel practices (5 U.S.C. 2302).

(ee) The prohibition against interference with civil service examinations (18 U.S.C. 1917).

(ff) The restrictions on use of public funds for lobbying (18 U.S.C. 1913).

(gg) The prohibition against participation in the appointment or promotion of relatives (5 U.S.C. 3110).

(hh) The prohibition against solicitation or acceptance of anything of value to obtain public office for another (18 U.S.C. 211).

(ii) The prohibition against conspiracy to commit an offense against or to defraud the United States (18 U.S.C. 371).

(jj) The prohibition against embezzlement or conversion of Government money or property (18 U.S.C. 641).

(kk) The prohibition against failing to account for public money (18 U.S.C. 643).

(ll) The prohibition against embezzlement of the money or property of another person that is in the possession of an employee by reason of their employment (18 U.S.C. 654).

[FR Doc. 2024–10339 Filed 5–16–24; 8:45 am]

**BILLING CODE 6345–03–P**

# ATTACHMENT 2

**OFFICE OF GOVERNMENT ETHICS**

**5 CFR Part 2635**

**RIN 3209–AA43**

**Modernization Updates to Standards of Ethical Conduct for Employees of the Executive Branch**

**AGENCY:** Office of Government Ethics.

**ACTION:** Proposed rule.

**SUMMARY:** The U.S. Office of Government Ethics (OGE) requests comments on proposed changes to the Standards of Ethical Conduct for Employees of the Executive Branch (Standards). The proposed amendments seek to update the Standards based on OGE's experience gained from application of the regulation since its inception. The proposed amendments also would incorporate past interpretive guidance, add and update regulatory examples, improve clarity, update citations, and make technical corrections.

**DATES:** Written comments are invited and must be received on or before April 24, 2023.

**ADDRESSES:** You may submit comments in writing to OGE on this proposed rule, identified by RIN 3209–AA43, by any of the following methods:

*Email: 2635modernization@oge.gov.* Include the reference "Proposed Amendments to Standards of Conduct" in the subject line of the message.

*Mail:* Office of Government Ethics, Suite 500, 1201 New York Avenue NW, Washington, DC 20005–3917, Attention: "Proposed Amendments to Standards of Conduct."

*Instructions:* All submissions must include OGE's agency name and the Regulation Identifier Number (RIN), 3209–AA43, for this proposed rulemaking. All comments, including attachments and other supporting materials, will become part of the public record and subject to public disclosure. Comments may be posted on OGE's website, *www.oge.gov.* Sensitive personal information, such as account numbers or Social Security numbers, should not be included. Comments generally will not be edited to remove any identifying or contact information.

**FOR FURTHER INFORMATION CONTACT:** Kimberly L. Sikora Panza, Associate Counsel, or Christine Chung, Assistant Counsel, U.S. Office of Government Ethics, 1201 New York Avenue NW, Suite 500, Washington, DC 20005–3917; Telephone: 202–482–9300; TTY: 800–877–8339; Fax: 202–482–9237.

**SUPPLEMENTARY INFORMATION:**

## I. Rulemaking History

On August 7, 1992, the U.S. Office of Government Ethics (OGE) published the Standards of Ethical Conduct for Employees of the Executive Branch (Standards), which are codified at 5 CFR part 2635. *See* 57 FR 35006 (Aug. 7, 1992), as amended. The Standards serve as the primary regulatory guidance on the standards of ethical conduct for officers and employees of the executive branch of the Federal Government (Government).

Pursuant to a provision of the Ethics in Government Act of 1978, 5 U.S.C. 13122, the Director of OGE is responsible for periodically reviewing, evaluating, and updating the rules and regulations that pertain to ethics in the executive branch. Most recently, in 2016, OGE issued updated regulations in subpart B and subpart F of part 2635 relating to gifts from outside sources and seeking employment. *See* 81 FR 48687 (July 26, 2016); *see also* 81 FR 81641 (Nov. 18, 2016). In accordance with 5 U.S.C. 13122, OGE has reviewed the regulations found in subparts A, C, D, E, G, H, and I of part 2635, and is proposing changes to these provisions in light of OGE's experience gained from application of the Standards since they became effective in February 1993.

In formulating this proposed rule, OGE has consulted with the Department of Justice and the Office of Personnel Management pursuant to section 201(a) of Executive Order 12674, as modified by Executive Order 12731, and the authorities contained in 5 U.S.C. chapter 131, subchapter II. Additionally, OGE has solicited and considered the views of executive branch agency ethics officials.

## II. Analysis of Proposed Amendments

In addition to the specific changes discussed below, OGE is proposing a number of global technical changes to all subparts of the Standards. Among other things, OGE proposes to add appropriate punctuation and modernize language by using consistent capitalization of "Government," removing gendered language and language that unnecessarily focuses on marital status, and updating the words "shall" and "where." OGE also is replacing the terms "disqualification" and "disqualify" with "recusal" and "recuse" to modernize language throughout all subparts of the Standards, consistent with language OGE modernized in subpart F in 2016. As highlighted in further detail below, OGE also proposes to update citations and change agency names throughout this part as appropriate.

### A. General Provisions (Subpart A)

In § 2635.101(b)(13), OGE proposes to clarify that the enumerated list of equal opportunity laws and regulations is not exhaustive, and also proposes to add the words "(including pregnancy, gender identity, and sexual orientation)" after "sex," to change "handicap" to "disability," and to add "genetic information," to incorporate more contemporary terminology and reflect categories covered by the Equal Employment Opportunity Commission. OGE also proposes to incorporate this more contemporary terminology in § 2635.106.

In § 2635.102(a), OGE proposes to replace the words "Postal Rate Commission" with the words "Postal Regulatory Commission," and the words "General Accounting Office" with the words "Government Accountability Office" to reflect the change in the names of these agencies. OGE also proposes to update paragraph § 2635.102(b) to use language more consistent with the defined term "head of an agency" in paragraph (i); a similar language change is made in § 2635.503(c). Former § 2635.102(j) has been removed because OGE modified the language of each subpart to make the regulation gender neutral. As a result, subsequent paragraphs in § 2635.102 have been relabeled.

OGE proposes to revise the title of § 2635.103 to more accurately reflect the contents of the provision by adding "enlisted" before "members of the uniformed services." Section 2635.103 states that the provisions of this part are not applicable to enlisted members of the uniformed services, and OGE proposes to make only minor technical edits to the language of this section for clarity.

In § 2635.105(c)(3), OGE proposes to delete the reference to supplemental regulations issued prior to the Standards and Executive Order 11222 (May 8, 1965), which was revoked by Executive Order 12674 (April 12, 1989).

Finally, OGE proposes to update § 2635.102(c) and (f), as well as § 2635.107 to reference updated citations and language of part 2638 of this chapter, which was most recently revised in 2016.

### B. Gifts From Outside Sources (Subpart B)

In subpart B, OGE proposes a minor revision to Example 1 following § 2635.201(b) to better illustrate the operation of the paragraph. Similarly, OGE also proposes to make minor changes to Example 4 following § 2635.204(a) to clarify the interplay

between 31 U.S.C. 1353 and subpart B. No substantive change is intended.

For the remainder of the subpart, OGE proposes to make only global technical changes that are suggested throughout the Standards. Specifically, OGE proposes to modernize the regulatory text by adding appropriate punctuation and capitalization, updating changed agency names, removing gendered language and language that unnecessarily focuses on marital status, and updating the words "where" and "disqualification/disqualify."

*C. Gifts Between Employees (Subpart C)*

Throughout subpart C, OGE proposes to replace the terms "donating" and "donation" with "contributing" and "contribution" respectively to modernize language and ensure consistency in language in this section. No substantive change is intended.

Proposed § 2635.301—Overview

In 2635.301, OGE proposes to update the overview in recognition of the updates being made to the regulatory restrictions on gifts to superiors, as discussed below. OGE also proposes to add language clarifying that subpart B is the appropriate subpart for analyzing gifts from outside sources. In subpart B, there is a similar reminder pointing to subpart C in the note that follows § 2635.203(e). OGE believes that a parallel note in subpart C would be a helpful clarification, and the proposed language is phrased in a way that tracks the reminder in subpart B.

Proposed § 2635.302—General Standards

In this section, OGE proposes tailored revisions aimed at making the restriction and exceptions regarding gifts to superiors and gifts from employees receiving less pay more logical. OGE believes that the proposed changes are consistent with the underlying statute restricting certain gifts between employees, 5 U.S.C. 7351, as well as OGE's authority in that law to issue regulations that exempt voluntary gifts in appropriate circumstances.

First, OGE has received input over the years that the restriction on gifts to superiors is incongruous with other restrictions on employees accepting gifts because it does not restrict an official superior from accepting a gift from a subordinate, and instead is framed in terms of what a subordinate employee may not do with respect to giving gifts to a superior. The current language is based on the statutory text of 5 U.S.C. 7351, which also articulates the restriction in terms of what a

subordinate employee may not do, as opposed to what an official superior may not do. OGE believes that the regulation should emphasize a superior's responsibility to not accept improper gifts from a subordinate, consistent with how the Standards otherwise focus on an employee's responsibility to not accept other improper gifts. *See, e.g.,* subpart B (restricting employees' ability to accept certain gifts from outside sources); § 2635.302(b) (restricting employees' ability to accept certain gifts from individuals receiving less pay). Therefore, OGE proposes to update the language in § 2635.302(a)(1) to clarify that not only may an employee not directly or indirectly give a gift to an official superior, but also that "an official superior may not knowingly accept such a gift."

OGE also seeks to resolve a peculiarity in the current regulatory language in § 2635.302(b)(1) relating to the circumstances in which an employee may accept a gift from another employee "receiving less pay." The current regulatory text permits an employee to accept a gift from another employee who receives less pay if there is a personal relationship to justify the gift and the two employees are not in a "subordinate-official superior relationship." The quoted language refers expansively to *any* subordinate-official superior relationship, regardless of whether the intended recipient of the gift is the subordinate or the official superior. OGE believes that the current language is worded more broadly than necessary to address the key concern with gift giving between employees at different pay levels—gift giving *from a subordinate to a superior.* Accordingly, OGE proposes to replace the requirement in the exception that the employees not be in a subordinate-official superior relationship with a more precise requirement that *the employee receiving the gift not be the official superior of the employee giving the gift* (proposed § 2635.302(b)(1)). This addition does not modify the existing condition in the exception that there be a personal relationship between the employees that would justify the gift.

Finally, OGE seeks to modernize the exception in § 2635.302(b) in response to changes in the Federal pay system since the rule was first promulgated in 1992. Although at one time it may have been the case that superiors categorically received more pay than their subordinates, under current Federal pay systems, there are situations in which a subordinate may earn more than their official superior. OGE does not believe that 5 U.S.C. 7351, the

statute underlying the restriction articulated in § 2635.302(b), either contemplated or intended that subordinate employees would be restricted from accepting a gift from an official superior who, because of the nature of modern compensation systems, receives less pay. OGE believes that the purpose of 5 U.S.C. 7351, notably titled "Gifts to Superiors," was to prevent an official superior from accepting a gift from a subordinate, not to prevent a gift flowing the other way. OGE therefore proposes to categorically exclude from the restriction in § 2635.302(b) gift-giving situations *where the lower-paid employee giving the gift is the official superior of the employee receiving the gift* (proposed § 2635.302(b)(2)). The proposed language categorically excludes such gifts from the prohibition without the additional "personal relationship" requirement contained in § 2635.302(b)(1).

In addition to those changes, OGE also recommends a new example to § 2635.302 to clarify that even if individuals had a gift-giving relationship prior to being in a subordinate-superior relationship, while there is a subordinate-supervisor relationship, their gift giving must be restricted. The proposed example seeks to highlight that a change in circumstances does not obviate the subpart C restrictions, and that even gift giving between employees with a preexisting relationship still must fit within the exceptions of this subpart.

Proposed § 2635.303—Definitions

OGE proposes to modernize Example 1 after § 2635.303(f) by removing unnecessarily specific geographical language. No substantive change is intended.

Proposed § 2635.304—Exceptions

In paragraph (a), OGE proposes to change "other" to "an" in the first sentence; the current phrasing in § 2635.304(a) presupposes that a subordinate always receives less pay than an official superior, which is not always the case, as discussed above. The word replacement proposed by OGE removes this assumption. OGE also proposes to make a slight modification to the phrasing of the exception in § 2635.304(a)(5), by making the final phrase the beginning phrase of the exception. No substantive change is intended; OGE simply wishes to clarify that this gift exception can be used unless the transferred leave was obtained in violation of 5 CFR 630.912. In addition, OGE proposes to update the language of Example 4 to paragraph (a)

to generally refer to the holidays, instead of a specific religious holiday.

OGE proposes to revise paragraph (b)(1) to add "bereavement" to the non-exhaustive list of special, infrequent occasions covered by this exception. As highlighted by several agencies, questions as to whether such instances constitute a special, infrequent occasion arise at a difficult time when employees are grieving. OGE views such occasions as being appropriately covered by this exception, and explicit reference to them will provide clarity and eliminate uncertainty. In addition, OGE proposes to add Example 4 to paragraph (b) to illustrate that a milestone birthday, such as a 50th birthday, is not an "infrequently occurring occasion of personal significance." The new example would respond to recurring questions regarding whether birthdays ending in zero are an "infrequently occurring occasion of personal significance" under § 2635.304(b), and would reflect OGE's consistent advice that they are not.

OGE also proposes to fix the issue of having an undesignated paragraph in § 2635.304(c) by reorganizing this section and designating the undesignated paragraph. No substantive change is intended.

Finally, OGE proposes to make various ministerial changes to this section. Among other changes, OGE proposes to replace the word "secretary" with the word "assistant" in Example 4 following paragraph (a) and Example 5 to paragraph (c) to modernize these examples. OGE also proposes to replace the word "fee" in Example 1 to paragraph (c) with the words "suggested voluntary contribution," in order to more accurately reflect that the collection for a gift is a voluntary contribution and not a fee. In addition, OGE proposes to replace "The General Counsel" with "An employee" in Example 2 to paragraph (c) to improve the application of the example. Finally, OGE proposes to replace "$3" in Example 3 to paragraph (c) with "a nominal amount," to prevent $3 from being interpreted as a universal definition of "nominal amount" as used in paragraph (c) and to make the example more consistent with Example 1. These modifications are not intended to make any substantive changes.

### D. Conflicting Financial Interests (Subpart D)

In this subpart and subpart E, OGE has added the modifier "particular" before "matter" when the change would provide further clarity regarding the type of matter being discussed. Although in context the word

"particular" had previously been implied, OGE made these adjustments to achieve more precise language.

#### Proposed § 2635.401—Overview

OGE proposes a minor change to the phrasing of § 2635.401 to clarify the relationship of subpart D and 5 CFR part 2640. Part 2640 interprets and is the implementing regulation for 18 U.S.C. 208, and with this change, OGE seeks to guide ethics officials to part 2640 for complete guidance on that law.

#### Proposed § 2635.402—Disqualifying Financial Interests

In this section, OGE proposes to revise various examples. In Example 2 following paragraph (b)(2), OGE proposes to streamline the characterization of the spouse's interest in their employing company by simply stating that the spouse has no stock or other direct or indirect ownership interest in the company. OGE also proposes to modify the language at the conclusion of the example to reference "covered relationship" and otherwise align the text with § 2635.502. No substantive change is intended with this adjustment, which is made to improve the clarity and readability of this example. Finally, in Example 2 following paragraph (b)(3), OGE proposes to replace the words "Interstate Commerce Commission" with the words "Surface Transportation Board" to reflect the change in the name of this agency.

In addition, OGE proposes to update the notification and recusal language in § 2635.402(c)(1) and (2) to align with updated phrasing in subpart F, and also reflect that written notification and recusal statements are required for certain employees under the Representative Louise McIntosh Slaughter Stop Trading on Congressional Knowledge Act (STOCK Act). Finally, OGE proposes to delete the final phrase from § 2635.402(d)(1), which discusses 18 U.S.C. 208(b)(2) regulatory exemptions, and notes that the regulations in subpart B of part 2640 "supersede any preexisting agency regulatory exemptions"; this language may have been relevant when the Standards were first promulgated, but it is superfluous today.

#### Proposed § 2635.403—Prohibited Financial Interests

OGE proposes to delete "issued after February 3, 1993," which currently modifies "agency supplemental regulations" in § 2635.403(a). This language was relevant when the rule was first drafted because there were some pre-existing agency ethics rules,

but at this time, there are no agency supplemental regulations that were issued before February 1993.

In Example 1 following paragraph (b)(2), OGE proposes to add a dollar figure to the amount of stock owned, to make clear that the de minimis regulatory exemption in 5 CFR 2640.202 does not apply in this scenario. OGE also proposes to correct the language in paragraph (c)(1), which appears to incorrectly refer to the employee's "dependent child," not "minor child," which is the relevant term for purposes of the restrictions of 18 U.S.C. 208.

### E. Impartiality in Performing Official Duties (Subpart E)

#### Proposed § 2635.501—Overview

OGE proposes to restructure § 2635.501 to organize the current text and the text of the current Note into new paragraphs. New paragraph (a) explains more fully the scope of subpart E and the distinction between relationships that implicate 18 U.S.C. 208 and those that implicate this subpart. New paragraph (b) explains more fully the distinction between waivers under 18 U.S.C. 208 and authorizations and waivers under subpart E. No substantive change is intended.

OGE also proposes to add a new note following § 2635.501 to remind employees and ethics officials that even though a particular situation may not raise concerns under subpart E, a supervisor or person responsible for assigning work may decide not to assign certain work to an employee for other reasons. The note is not itself a source of authority to either issue or withhold assignments; it merely highlights that agencies have various options relating to work assignments irrespective of subpart E. OGE intends that this note, read together with the other provisions of subpart E, will identify options available to an agency relating to potential concerns regarding impartiality, appearances, and employee work assignments.

#### Proposed § 2635.502—Personal and Business Relationships

OGE proposes to reorganize § 2635.502(a) by redesignating the two substantive provisions currently found in the main body of paragraph (a) and the substantive provision currently found in paragraph (a)(2) as paragraphs (a)(1), (2), and (3), respectively. In these redesignations, current paragraph (a)(1), which encourages employees to seek assistance from relevant officials when considering whether a reasonable person would question their

impartiality, will no longer be designated, and instead will be included at the beginning of § 2635.502(a). As currently written, the two primary prohibitions of § 2635.502 (working on a particular matter involving specific parties in which a member of one's household has a financial interest and working on a particular matter involving specific parties in which someone with whom one has a covered relationship is or represents a party) appear in a single paragraph in § 2635.502(a). Because these two prohibitions are very different, the current textual organization can be confusing, and OGE seeks to make this section clearer through the reorganization. Additionally, under the current regulation, the substantive "catch-all" provision of current § 2635.502(a)(2), which covers "circumstances other than those specifically described" in § 2635.502(a), is not immediately adjacent to the discussion of the two primary substantive provisions of § 2635.502. To more clearly present the various concepts of § 2635.502(a) and highlight that an appearance of impartiality may be triggered in different ways, the proposed revision lists the three potential impartiality scenarios in separate paragraphs, and begins with the text currently found in § 2635.502(a)(1), which reminds employees that they may seek the assistance of a supervisor, ethics official, or agency designee in considering whether any of those scenarios would raise impartiality concerns. No substantive change is intended.

In § 2635.502(b), the current regulation provides that an employee has a covered relationship with "[a] person for whom the employee's spouse, parent or dependent child is, to the employee's knowledge, serving or seeking to serve as an officer, director, trustee, general partner, agent, attorney, consultant, contractor or employee." OGE proposes to remove the qualifier "dependent" before "child" in this paragraph, which will mean that an employee will have a covered relationship with a person for whom *any* child is, to the employee's knowledge, serving or seeking to serve as an officer, director, trustee, general partner, agent, attorney, consultant, contractor, or employee. Removing the "dependent" qualifier acknowledges that there may be impartiality concerns relating to certain business relations of an employee's child regardless of whether that child is a dependent, just as the subpart presently acknowledges that there could be impartiality

concerns relating to certain business relations of an employee's parent, without any dependency predicate.

OGE proposes to update the definition of "particular matter involving specific parties" found at § 2635.502(b)(3) to cross-reference the definition at 5 CFR 2640.102(*l*); the current cross-reference is obsolete, as it refers to part 2637, which is no longer in effect. Like part 2635, the part 2640 regulation applies to current employees; it simply was not in effect at the time the Standards were first published and thus could not serve as the relevant cross-reference.

In addition, OGE proposes to replace current Example 3 following paragraph (b)(3) with a new example. The purpose of changing the example is to illustrate the covered relationship described in paragraph (b)(1)(iii), and to describe a situation in which an employee could justifiably conclude that a reasonable person would be likely to question their impartiality. OGE also proposes to add two new examples following paragraph (b)(3), Examples 6 and 7. The purpose of Example 6 is to illustrate a situation where a covered relationship described in (b)(1)(iii) exists, but the employee could justifiably conclude that a reasonable person would not be likely to question their impartiality. The purpose of Example 7 is to illustrate a situation in which there is no covered relationship under § 2635.502(b)(1), but the employee applies the catch-all provision of proposed § 2635.502(a)(3) because the employee is concerned about appearances, and could justifiably conclude that a reasonable person would be likely to question their impartiality.

In § 2635.502(c), OGE proposes to more clearly state an agency designee's determination authority. To more clearly highlight the situations in which an agency designee may make an independent determination regarding a potential appearance problem, OGE has reorganized the text currently at § 2635.502(c) into new § 2635.502(c)(1), and separated the different potential determination scenarios into new § 2635.502(c)(1)(i) and (ii). As a result of this reorganization, current § 2635.502(c)(1) and (2) have been renumbered as § 2635.502(c)(2) and (3). This reorganization does not substantively change the two situations set forth in the regulation in which an agency designee may make an independent determination as to whether a reasonable person would question an employee's impartiality—appearance problems arising from the financial interests of a member of the employee's household in a particular matter involving specific parties, or

from a particular matter involving specific parties in which a person with whom the employee has a covered relationship is or represents a party.

Finally, OGE proposes minor changes to § 2635.502(d), (e), and (f). In Example 2 to § 2635.502(d), OGE proposes to make a minor revision to resolve potential ambiguity in the final sentence of the example. No substantive change is intended. In § 2635.502(e), OGE proposes to add a sentence explicitly stating that when the covered relationship is with a former employer, the relevant recusal period is for one year after the date of the employee's resignation from the position with the former employer. Currently, the length of the cooling-off period with respect to former employers is embedded in the definition of "covered relationship"; this sentence does not make any substantive change, but is designed to provide greater clarity for employees. Additionally, in § 2635.502(e)(1) and (e)(2), OGE proposes to update the language regarding notification and documentation procedures to align with updated phrasing in § 2635.402(c)(2) and subpart F. Finally, OGE proposes to make the title of § 2635.502(f) more accurate and read "*Irrelevant considerations*" instead of "*Relevant considerations,*" because that paragraph describes what considerations are not relevant for purposes of determinations under § 2635.502. The actual language of § 2635.502(f) remains unchanged.

Proposed § 2635.503—Covered Payments From Former Employers

OGE proposes various updates to § 2635.503. First, OGE proposes to replace the defined term of "extraordinary payment" in § 2635.503(b)(1) (and throughout the regulation) with the term "covered payment." This adjustment brings the terminology in this section in line with the terminology used elsewhere in this subpart, namely the term "covered relationship" in § 2635.502. OGE does not intend any substantive change in replacing the word "extraordinary" with "covered."

OGE also proposes to update § 2635.503(a) to remove the limitation in the current regulation that a relevant payment under this section must be received "prior to entering Government service." In OGE's experience, the potential ethics concerns and issues relating to covered payments from former employers can arise regardless of whether a payment is received before or after an individual begins Government service. A payment received the day after an employee assumes the duties of a Government position is not different

in kind from such a payment received two days prior; in both cases, the payment "raises a legitimate concern, and thus an appearance, that the employee may not act impartially in particular matters to which the former employer is a party or represents a party." *See* 56 FR 33778, 33786 (July 23, 1991). A recusal requirement equally applicable to both scenarios addresses such appearance issues. Of course, any payment received by a current Government employee could raise potential supplementation of salary concerns. Therefore, the new example that OGE proposes to add to § 2635.503(a) to illustrate a covered payment received during Government service makes clear that ethics officials are also required to analyze the payment to determine whether it constituted a supplementation of salary under 18 U.S.C. 209.

To help make the "covered payment" definition easier to understand, OGE also proposes to move the concept of a "qualifying program," which is currently embedded in § 2635.503(b)(1), into a standalone definition. The "qualifying program" definition proposed at § 2635.503(b)(2) retains salient concepts from the current regulatory language—which contemplates that such a program could be contained in written form, or demonstrated by a history of similar payments to others not entering Government service—and also includes two new clarifications regarding what OGE considers to be such a program. First, to be a qualifying written program, the program cannot treat individuals departing from Government service more favorably than other individuals. When OGE first promulgated § 2635.503, OGE thought it was unlikely that employers would offer employment plans or contracts that provided for targeted payments for employees who later serve in Government positions. *See* 57 FR 35006, 35028. However, since 1992, OGE has seen numerous benefit plans where employers have written plans or programs that treat individuals departing from Government service more favorably than other individuals. Because such plans raise the same potential concerns regarding an employee's impartiality to the payor, OGE has determined that it is appropriate to clarify that a written program will not be considered to be a "qualifying program" if individuals entering Government service are treated more favorably than other former employees. This change also brings OGE's treatment of written and non-written plans into alignment. In the

current definition, a qualifying program based on actual practice has to be shown by a history of similar payments *made to persons not entering Government service,* which underscores the importance of the payor not treating employees entering Government more favorably.

Second, OGE proposes to clarify when it is appropriate to consider a history of similar payments made to others not entering Government service. Specifically, OGE proposes to update paragraph (b) to enumerate OGE's longstanding view that when there is a written plan, historical payments contrary to a provision of such a plan should not be considered in determining whether there is a "qualifying program."

Finally, OGE proposes to update the "former employer" definition to make explicit certain details that are implicit in the current definition. First, consistent with the definition of "person" in § 2635.102, OGE proposes to explicitly state that payments from an officer, employee, or agent of a former employer will be considered payments from the former employer. Second, to explicitly indicate that clients are encompassed by the "former employer" definition—*e.g.,* as persons for whom an employee may have served as an agent, attorney, consultant, or contractor—OGE proposes to add a note following § 2635.503(b)(3) to highlight that this defined term encompasses former clients.

### F. Seeking Other Employment (Subpart F)

In subpart F, OGE proposes to make only global technical changes that are suggested throughout the Standards. Among other things, OGE proposes to modernize the regulatory text by removing gendered language and replacing the word "where" with the word "when."

### G. Misuse of Position (Subpart G)

#### Proposed § 2635.702—Use of Public Office for Private Gain

OGE proposes to add a parenthetical to § 2635.702 to clarify the scope of this section and to indicate that some endorsement may be permitted by this subpart or other applicable laws or regulations. Endorsement may be permitted in certain circumstances, and OGE has received questions indicating that there may be confusion about the current phrasing. No substantive change is intended by this addition.

OGE proposes to amend paragraph (b) of § 2635.702 to clarify the limited circumstances in which an employee

may use their official title when making a recommendation. In the current regulation, an employee "may sign a letter of recommendation using [their] official title only in response to a request for an employment recommendation or character reference based upon personal knowledge of the ability or character of an individual with whom [the employee] has dealt in the course of Federal employment or whom [the employee] is recommending for Federal employment." OGE proposes to update § 2635.702(b) to recognize that an official letter is not the only medium through which recommendations are made. The updated language will provide that an employee may use their official title *when making a verbal or written recommendation* described in that paragraph. In addition, OGE proposes to amend this paragraph to clarify that recommendations permitted under § 2635.702(b) are not limited to employment recommendations. Over the years, questions have arisen as to the permissibility of an employee using their official title when signing other types of recommendations, such as character references to accompany graduate school applications. Removing the word "employment" from this phrase will make clear that an employee may use their official title when they have been asked to provide other types of recommendations. These proposed changes would not ease the other constraints on an employee using their title when providing a requested recommendation for an individual: that the employee has "personal knowledge of the ability or character of [the] individual," and the individual must be someone "with whom the employee has dealt in the course of Federal employment or whom the employee is recommending for Federal employment." The proposed changes also would not expand an employee's ability to endorse a business or other kind of entity.

In addition, to provide greater clarity regarding the phrase "with whom [the employee] has dealt in the course of Federal employment," OGE proposes to update Example 1 following § 2635.702(b) to add language indicating that an employee who is asked to provide a letter of recommendation for an individual who worked with the employee under a Government contract may provide the recommendation using official stationery and may sign the letter using their official title. Such a relationship falls within the scope of the phrase "with whom the employee has dealt in the course of Federal employment." The proposed change

should not be read to suggest an expanded ability of the employee to endorse the contracting entity or any other business.

OGE also proposes to add a new example of appearance of governmental sanction that involves the use of social media. The new example is consistent with OGE's Legal Advisory on social media. *See* OGE Legal Advisory LA–15–03 (Apr. 9, 2015).

Finally, although it is non-exhaustive as currently written, OGE proposes to add "Judge" to the list of terms of address and ranks highlighted in paragraph (e) in order to provide additional clarity regarding the use of certain terms of address.

Proposed § 2635.703—Use of Nonpublic Information

In Examples 2 and 3 following § 2635.703(b), OGE proposes to change "41 U.S.C. 423" to "41 U.S.C. 2102" to reflect the change to the citation to this statute.

Proposed § 2635.704—Use of Government Property

OGE proposes to amend § 2635.704(b)(1) by replacing the term "automated data processing capabilities" with the term "computers and other electronic devices" and by adding the words "Government email and social media accounts" to the list of items included in the term "Government property." In updating the list of "Government property" to include more modern types of Government property, OGE does not intend to suggest that older forms of technology and equipment are not also Government property; to avoid such misapprehension, new language has been added to clarify that the term "Government property" is not limited to only those items enumerated in paragraph (b)(1).

OGE proposes to update § 2635.704(b)(2) to clarify that use of Government property in accordance with an agency's limited *de minimis* personal use policy is an "authorized purpose" for which Government property may be used.

Finally, OGE also proposes to make certain changes to some of the examples in § 2635.704. OGE proposes to rewrite Example 1 following § 2635.704(b) because the General Services Administration regulation to which the example refers, 41 CFR 101–35.201, no longer exists and has not been superseded by a different Governmentwide regulation. OGE proposes substituting an example that references an agency's *de minimis* policy relating to the personal use of a

Government email account. Additionally, OGE proposes to amend Example 3 following § 2635.704(b)(2) by replacing the term "word processor" with the word "computer." The reason for the change is to modernize the example; no substantive change is intended.

Proposed § 2635.705—Use of Official Time

OGE proposes to amend Example 1 following § 2635.705(a) by replacing "employee" with "disability claims examiner" in order to make the example clearer. OGE also proposes to revise Example 2 following § 2635.705(a) to remove the reference to the Federal Personnel Manual, which has been abolished, and update the example to more generally refer to such Governmentwide personnel guidance as may be applicable.

OGE proposes to update Example 1 following § 2635.705(b) to remove outdated language referring to the subordinate as a secretary, and also modernize the description of the activities involved. No substantive change is intended.

*H. Outside Activities (Subpart H)*

Proposed § 2635.801—Overview

OGE proposes to delete reference to "the limitations on participation in professional organizations" as one of the provisions of this subpart with which the employee must comply. This language refers to the current title of reserved § 2635.806, which OGE proposes to delete (with § 2635.806 remaining reserved), as discussed below.

OGE also proposes to move Example 2 that is currently found in § 2635.802 to § 2635.801(c), because that example is more appropriate as an illustration of the concept that an employee should avoid creating an appearance of violating ethical standards or using their official position for private gain. No changes were made to the existing example other than relocating it to this paragraph.

Finally, OGE proposes to make more precise the description of certain "other laws" that may apply to employee outside activities, as set forth in § 2635.801(d). Specifically, OGE proposes to explicitly note the application and timing of 18 U.S.C. 203 in § 2635.801(d)(3), and to reference the 15% outside earned income limitation when discussing limitations on outside employment in the Ethics in Government Act in § 2635.801(d)(8).

Proposed § 2635.802—Conflicting Outside Employment and Activities

OGE also proposes a new Example 1 to more accurately reflect a situation where an employee's outside activities would conflict with the employee's job duties, as well as to substitute a new Example 2 in § 2635.802 because current Example 2 has been relocated to § 2635.801(c), as discussed above. The purpose of the substitution is to provide a more appropriate example of when a recusal obligation exists under subpart E, but there is no issue under § 2635.802. OGE proposes no other substantive changes to these examples.

Proposed § 2635.803—Prior Approval for Outside Employment and Activities

In the first paragraph of this section, OGE proposes to add language reminding employees of their responsibility to ensure that outside activities do not conflict with their official duties, regardless of the existence of any agency supplemental regulations regarding prior approval.

Consistent with the goal of removing obsolete references, OGE also proposes to delete the words "issued after February 3, 1993" modifying "agency supplemental regulation" in the current phrasing of this provision. This language was relevant when the rule was first drafted because there were some pre-existing agency rules, but at this time there are no agency supplemental regulations that were issued before February 1993.

Proposed § 2635.804—Outside Earned Income Limitations Applicable to Certain Presidential Appointees

For the reasons explained below, OGE proposes to rename this section by removing the reference to "other noncareer employees" from the title; to add an introductory paragraph explaining that this paragraph implements outside earned income limitations applicable to certain Presidential appointees and that the outside earned income limitation applicable to covered noncareer employees remains at 5 CFR 2636.304; and to remove the discussion of covered noncareer employees at § 2635.804(b) and renumber the remaining paragraphs accordingly.

Currently, the 15% outside earned income limitation for covered noncareer employees is stated in both § 2635.804(b) and 5 CFR 2636.304, and the limitation for Presidential appointees is stated only in § 2635.804(a). To eliminate redundancy and allow each section to focus on a specific category of employees, OGE

proposes to remove the discussion of covered noncareer employees from § 2635.804(b) to allow this section to focus only on the outside earned income limitations applicable to certain Presidential appointees. The reference to 5 CFR 2636.304 for the guidance on the outside earned income limitation applicable to covered noncareer employees will ensure that § 2635.804 still refers to all relevant outside earned income limitations, and that the limitation applicable to covered noncareer employees is not overlooked.

As a ministerial matter, OGE also proposes to revise § 2635.804(a) to remove the reference to outside activities "carried out in satisfaction of the employee's obligation under a contract entered into prior to April 12, 1989" as any contracts before that date, more than 30 years ago, are very unlikely to still be in effect.

Proposed § 2635.806—[Reserved]

OGE proposes to delete the title of reserved § 2635.806, "Participation in professional associations." OGE does not plan to promulgate a Governmentwide rule on participation in professional associations at this time. Accordingly, § 2635.806 will continue to be "Reserved," but its current title would be deleted.

Proposed § 2635.807—Teaching, Speaking, and Writing

OGE is aware that § 2635.807 is one of the most complicated provisions in the Standards. In the course of reviewing potential changes to the Standards, therefore, OGE considered various potential changes, including restructuring § 2635.807 or moving it into § 2635.802; ultimately, however, OGE decided to leave the existing structure of this paragraph. Agencies can obtain additional guidance on rules relating to teaching, speaking, and writing on OGE's website.

Although OGE decided against a comprehensive revision of § 2635.807 at this time, it proposes some minor amendments to this section. First, OGE proposes to amend § 2635.807(a) to: (1) clearly state what activity is permitted under paragraph (a)(3); and (2) emphasize that the prohibition on receiving compensation for teaching, speaking, or writing that relates to the employee's official duties applies only to teaching, speaking, or writing that occurs while the person is a Government employee. Regarding the first change, OGE proposes to explicitly note that paragraph (a)(3) is an exception for teaching certain courses. Regarding the second change, proposed § 2635.807(a) specifies that

compensation is restricted only for teaching, speaking, or writing "that occurs while the person is a Government employee and that relates to the employee's official duties"; this language emphasizes that the prohibition does not apply to teaching, speaking, or writing done either before or after Government service.

Second, OGE proposes to amend the definition of the term "compensation" at § 2635.807(a)(2)(iii) to streamline the definition and clarify that "compensation" includes travel expenses only with respect to a very small group of employees—covered noncareer employees as defined in 5 CFR 2636.303(a). The new structure of this section defines "compensation" in paragraph (A), identifies the applicable exclusions from the definition of "compensation" in a new designated paragraph (B), and in a new designated paragraph (C) describes whether travel expenses are considered "compensation" for different categories of employees. This restructuring is intended to make the compensation definition more logically organized, and makes no substantive changes. Finally, in the existing Note following this discussion, OGE proposes to delete the reference to 18 U.S.C. 209 in the reminder that other authorities in some circumstances may limit or preclude an employee's acceptance of travel expenses; the purpose of this deletion is to avoid unnecessary focus on a single statute to the potential exclusion of other applicable authorities. No substantive change is intended.

Third, OGE proposes to make a slight modification to Example 2 to paragraph (a)(2)(iii) to clarify that the official attended the meeting described in the example in their personal capacity. This modification is meant to make explicit information that OGE believes was implicit in the example as originally written.

Fourth, OGE proposes to amend the definition of the term "receive" at § 2635.807(a)(2)(iv) to clarify that receipt of compensation is attributable to the time that the teaching, speaking, or writing occurs, and to clarify how OGE views the timing of receipt when there is an enforceable agreement to receive compensation for writing. The current definition of "receive" does not directly address the timing of the compensation. The revised language addresses timing and is consistent with OGE's guidance discussing teaching, speaking, and writing as an outside activity.

Fifth, OGE proposes to update the definition of "particular matter involving specific parties" found at

§ 2635.807(a)(2)(v) to cross-reference the definition at 5 CFR 2640.102(*l*); the current cross-reference is obsolete, as it refers to part 2637, which is no longer in effect. Like part 2635, the part 2640 regulation applies to current employees; it simply was not in effect at the time the Standards were first published and thus could not serve as the relevant cross-reference.

Sixth, OGE's revisions to subpart B of the Standards, which were finalized in 2016, expanded the term "institution of higher education" to include "similar foreign institutions of higher education." 80 FR 74004, 74007 (Nov. 27, 2015). OGE proposes a parallel change to § 2635.807(a)(3)(i)(A), along with a corresponding note following § 2635.807(a) reminding agency ethics officials to consider the potential applicability of the Emoluments Clause of the U.S. Constitution when an employee teaches a course for compensation at a foreign institution of higher education. OGE also proposes to update the relevant citations found at § 2635.807(a)(3)(i)(B) and (C).

Seventh, OGE proposes to make a slight modification to Example 2 to paragraph (a)(3) in order to make clear that the content being taught at the state college and the continuing education program is the same. No substantive change is intended.

Eighth, although it is non-exhaustive as currently written, OGE proposes to add "Judge" to the list of terms of address and ranks highlighted in paragraph (b)(3) in order to provide additional clarity regarding the use of certain terms of address in connection with teaching, speaking, or writing.

Finally, OGE proposes to update the note to § 2635.807(b) to cross-reference subpart G to provide a reminder that reference to official title and position other than in a teaching, speaking, or writing capacity can be made only as permitted by § 2635.702(b). This note is parallel to and consistent with the language in § 2635.702 reminding employees that reference to official title and position in connection with teaching, speaking, or writing covered by § 2635.807 must be done consistent with the requirements of § 2635.807.

Proposed § 2635.808—Fundraising Activities

OGE proposes to add language at the beginning of this section designed to resolve continuing confusion about what type of "fundraising" is covered by § 2635.808. OGE frequently receives questions that confuse the restrictions on gifts between employees with the fundraising restrictions. This new language seeks to clarify that § 2635.808

only covers certain specifically-defined fundraising activities and includes a reference to subpart C, which covers other situations where monies might be collected by and between employees. OGE also proposes to move the Note currently located in § 2635.808(a) to § 2635.808(c), for better organizational placement; no changes have been made to the substance of this Note.

OGE proposes to update Example 2 to § 2635.808(a)(3) to update certain citations and make certain ministerial adjustments. No substantive change is intended.

OGE also proposes to amend § 2635.808(c)(1)(i) and (ii) and the restriction imposed on employees fundraising in their personal capacities. Specifically, OGE proposes to add a "personal relationship" exception to the restriction that is similar to the exception for accepting gifts under subparts B and C. Section 2635.808(c) presently prohibits an employee from personally soliciting contributions from anyone the employee knows to be a "prohibited source." For regular Government employees, this encompasses any employee of a company regulated by or who seeks to do business with the employee's agency as defined at § 2635.203(d). For special Government employees, this only covers specific types of prohibited sources, those that would be substantially affected by the performance or nonperformance of the employee's duties, as defined at § 2635.203(d)(4). Because of the definition of "person" in § 2635.102, the result is that an employee can technically run afoul of § 2635.808(c) if the employee asks a relative, neighbor, or someone else with whom they have a personal relationship to make a donation and the employee knows that the person happens to work for a prohibited source. OGE believes that such a result extends beyond the fundamental purpose of this restriction, and therefore proposes to add a personal relationship exception to avoid situations like those described above, and to bring the fundraising rules more in line with other provisions in the Standards. The proposed text tracks other language in the Standards regarding personal relationships, and requires that the circumstances make clear that the solicitation is motivated by a family relationship or personal relationship that would justify the solicitation. A new Example 4 has been added to illustrate this exception.

OGE also proposes to add new Examples 5 and 6, to illustrate fundraising that involves the use of social media; these examples are consistent with OGE's Legal Advisory

on social media. *See* OGE Legal Advisory LA–15–03 (Apr. 9, 2015).

I. Subpart I—Related Statutory Authorities

Proposed § 2635.902—Related Statutes

OGE proposes several technical amendments to § 2635.902 by updating citations and streamlining language.

### III. Matters of Regulatory Procedure

*Regulatory Flexibility Act*

As Director of the Office of Government Ethics, I certify under the Regulatory Flexibility Act (5 U.S.C. chapter 6) that this proposed rule will not have a significant economic impact on a substantial number of small entities because it primarily affects current Federal executive branch employees.

*Paperwork Reduction Act*

The Paperwork Reduction Act (44 U.S.C. chapter 35) does not apply because this regulation does not contain information collection requirements that require approval of the Office of Management and Budget.

*Unfunded Mandates Reform Act*

For purposes of the Unfunded Mandates Reform Act of 1995 (2 U.S.C. chapter 5, subchapter II), this proposed rule will not significantly or uniquely affect small governments and will not result in increased expenditures by State, local, and tribal governments, in the aggregate, or by the private sector, of $100 million or more (as adjusted for inflation) in any one year.

*Executive Order 13563 and Executive Order 12866*

Executive Orders 13563 and 12866 direct agencies to assess all costs and benefits of available regulatory alternatives and, if regulation is necessary, to select the regulatory approaches that maximize net benefits (including economic, environmental, public health and safety effects, distributive impacts, and equity). Executive Order 13563 emphasizes the importance of quantifying both costs and benefits, of reducing costs, of harmonizing rules, and of promoting flexibility.

Although the number of substantive proposed changes to the regulation is not extensive, the benefits of implementing these changes are significant. The existing regulations are not insufficient, but they have not been significantly updated since their issuance in 1992. OGE's proposed revisions address common questions received from ethics officials, incorporate OGE's experience gained

from applying the regulation since its inception, modernize existing examples and add new examples for more useful reference, provide updated citations where regulatory provisions or statutes have changed, and make technical corrections. These revisions will provide greater clarity for executive branch employees and ethics officials. Further, OGE anticipates that this additional clarity will increase compliance and reduce the number of inadvertent violations.

OGE does not anticipate any significant increased costs associated with these changes. However, OGE notes that there may be an increase in the time burden during the first year in which the regulations become effective, particularly for ethics officials, due to necessary updates to training materials and other related ethics briefings, questions regarding the interpretation of revised regulatory provisions, and review of additional OGE guidance.

This proposed rule has been designated as a "significant regulatory action" although not economically significant, under section 3(f) of Executive Order 12866. Accordingly, this rule has been reviewed by the Office of Management and Budget.

*Executive Order 12988*

As Director of the Office of Government Ethics, I have reviewed this proposed rule in light of section 3 of Executive Order 12988, Civil Justice Reform, and certify that it meets the applicable standards provided therein.

*Executive Order 13715*

The Office of Government Ethics has evaluated this proposed rule under the criteria set forth in Executive Order 13175 and determined that tribal consultation is not required as this proposed rule has no substantial direct effect on one or more Indian tribes, on the relationship between the Federal Government and Indian tribes, or on the distribution of power and responsibilities between the Federal Government and Indian tribes.

### List of Subjects in 5 CFR Part 2635

Conflict of interests, Executive Branch standards of ethical conduct, Government employees.

Approved: February 1, 2023.

**Emory Rounds,**

*Director, U.S. Office of Government Ethics.*

■ For the reasons set forth in the preamble, the U.S. Office of Government Ethics proposes to revise 5 CFR part 2635 to read as follows:

## PART 2635—STANDARDS OF ETHICAL CONDUCT FOR EMPLOYEES OF THE EXECUTIVE BRANCH

### Subpart A—General Provisions

Sec.
2635.101   Basic obligation of public service.
2635.102   Definitions.
2635.103   Applicability to enlisted members of the uniformed services.
2635.104   Applicability to employees on detail.
2635.105   Supplemental agency regulations.
2635.106   Disciplinary and corrective action.
2635.107   Ethics advice.

### Subpart B—Gifts From Outside Sources

2635.201   Overview and considerations for declining otherwise permissible gifts.
2635.202   General prohibition on solicitation or acceptance of gifts.
2635.203   Definitions.
2635.204   Exceptions to the prohibition for acceptance of certain gifts.
2635.205   Limitations on use of exceptions.
2635.206   Proper disposition of prohibited gifts.

### Subpart C—Gifts Between Employees

2635.301   Overview.
2635.302   General standards.
2635.303   Definitions.
2635.304   Exceptions.

### Subpart D—Conflicting Financial Interests

2635.401   Overview.
2635.402   Disqualifying financial interests.
2635.403   Prohibited financial interests.

### Subpart E—Impartiality in Performing Official Duties

2635.501   Overview.
2635.502   Personal and business relationships.
2635.503   Covered payments from former employers.

### Subpart F—Seeking Other Employment

2635.601   Overview.
2635.602   Applicability and related considerations.
2635.603   Definitions.
2635.604   Recusal while seeking employment.
2635.605   Waiver or authorization permitting participation while seeking employment.
2635.606   Recusal based on an arrangement concerning prospective employment or otherwise after negotiations.
2635.607   Notification requirements for public financial disclosure report filers regarding negotiations for or agreement of future employment or compensation.

### Subpart G—Misuse of Position

2635.701   Overview.
2635.702   Use of public office for private gain.
2635.703   Use of nonpublic information.
2635.704   Use of Government property.
2635.705   Use of official time.

### Subpart H—Outside Activities

2635.801   Overview.
2635.802   Conflicting outside employment and activities.
2635.803   Prior approval for outside employment and activities.
2635.804   Outside earned income limitations applicable to certain Presidential appointees.
2635.805   Service as an expert witness.
2635.806   [Reserved]
2635.807   Teaching, speaking and writing.
2635.808   Fundraising activities.
2635.809   Just financial obligations.

### Subpart I—Related Statutory Authorities

2635.901   General.
2635.902   Related statutes.

**Authority:** 5 U.S.C. 7301, 7351, 7353; 5 U.S.C. ch. 131; E.O. 12674, 54 FR 15159, 3 CFR, 1989 Comp., p. 215, as modified by E.O. 12731, 55 FR 42547, 3 CFR, 1990 Comp., p. 306.

## Subpart A—General Provisions

### § 2635.101   Basic obligation of public service.

(a) *Public service is a public trust.* Each employee has a responsibility to the United States Government and its citizens to place loyalty to the Constitution, laws, and ethical principles above private gain. To ensure that every citizen can have complete confidence in the integrity of the Federal Government, each employee must respect and adhere to the principles of ethical conduct set forth in this section, as well as the implementing standards contained in this part and in supplemental agency regulations.

(b) *General principles.* The following general principles apply to every employee and may form the basis for the standards contained in this part. When a situation is not covered by the standards set forth in this part, employees must apply the principles set forth in this section in determining whether their conduct is proper.

(1) Public service is a public trust, requiring employees to place loyalty to the Constitution, the laws, and ethical principles above private gain.

(2) Employees shall not hold financial interests that conflict with the conscientious performance of duty.

(3) Employees shall not engage in financial transactions using nonpublic Government information or allow the improper use of such information to further any private interest.

(4) An employee shall not, except as permitted by subpart B of this part, solicit or accept any gift or other item of monetary value from any person or entity seeking official action from, doing business with, or conducting activities regulated by the employee's agency, or whose interests may be substantially affected by the performance or nonperformance of the employee's duties.

(5) Employees shall put forth honest effort in the performance of their duties.

(6) Employees shall not knowingly make unauthorized commitments or promises of any kind purporting to bind the Government.

(7) Employees shall not use public office for private gain.

(8) Employees shall act impartially and not give preferential treatment to any private organization or individual.

(9) Employees shall protect and conserve Federal property and shall not use it for other than authorized activities.

(10) Employees shall not engage in outside employment or activities, including seeking or negotiating for employment, that conflict with official Government duties and responsibilities.

(11) Employees shall disclose waste, fraud, abuse, and corruption to appropriate authorities.

(12) Employees shall satisfy in good faith their obligations as citizens, including all just financial obligations, especially those—such as Federal, State, or local taxes—that are imposed by law.

(13) Employees shall adhere to all laws and regulations that provide equal opportunity for all Americans regardless of, for example, race, color, religion, sex (including pregnancy, gender identity, and sexual orientation), national origin, age, genetic information, or disability.

(14) Employees shall endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards set forth in this part. Whether particular circumstances create an appearance that the law or these standards have been violated shall be determined from the perspective of a reasonable person with knowledge of the relevant facts.

(c) *Related statutes.* In addition to the standards of ethical conduct set forth in this part, there are conflict of interest statutes that prohibit certain conduct. Criminal conflict of interest statutes of general applicability to all employees, 18 U.S.C. 201, 203, 205, 208, and 209, are summarized in the appropriate subparts of this part and must be taken into consideration in determining whether conduct is proper. Citations to other generally applicable statutes relating to employee conduct are set forth in subpart I of this part, and employees are further cautioned that there may be additional statutory and regulatory restrictions applicable to them generally or as employees of their specific agencies. Because an employee is considered to be on notice of the requirements of any statute, an employee should not rely upon any

description or synopsis of a statutory restriction, but should refer to the statute itself and obtain the advice of an agency ethics official as needed.

### § 2635.102   Definitions.

The definitions listed below are used throughout this part. Additional definitions appear in the subparts or sections of subparts to which they apply. For purposes of this part:

(a) *Agency* means an executive agency as defined in 5 U.S.C. 105 and the Postal Service and the Postal Regulatory Commission. It does not include the Government Accountability Office or the government of the District of Columbia.

(b) *Agency designee* refers to any employee who, by agency regulation, instruction, or other issuance, has been delegated authority to make any determination, give any approval, or take any other action required or permitted by this part with respect to another employee. An agency may delegate these authorities to any number of agency designees necessary to ensure that determinations are made, approvals are given, and other actions are taken in a timely and responsible manner. Any provision that requires a determination, approval, or other action by the agency designee will, when the conduct in issue is that of the head of the agency, be deemed to require that such determination, approval, or action be made or taken by the head of the agency in consultation with the designated agency ethics official.

(c) *Agency ethics official* refers to the designated agency ethics official, the alternate designated agency ethics official, any deputy ethics official, and any additional ethics official who has been delegated authority to assist in carrying out the responsibilities of an agency's ethics program. The responsibilities of agency ethics officials are described in § 2638.104 of this chapter.

(d) *Agency programs or operations* refers to any program or function carried out or performed by an agency, whether pursuant to statute, Executive order, or regulation.

(e) *Corrective action* includes any action necessary to remedy a past violation or prevent a continuing violation of this part, including but not limited to restitution, change of assignment, recusal, divestiture, termination of an activity, waiver, the creation of a qualified diversified or blind trust, or counseling.

(f) *Designated agency ethics official* refers to the official designated under § 2638.104(a) of this chapter.

(g) *Disciplinary action* includes those disciplinary actions referred to in Office of Personnel Management regulations and instructions implementing provisions of title 5 of the United States Code or provided for in comparable provisions applicable to employees not subject to title 5, including but not limited to reprimand, suspension, demotion, and removal. In the case of a military officer, comparable provisions may include those in the Uniform Code of Military Justice.

(h) *Employee* means any officer or employee of an agency, including a special Government employee. It includes officers but not enlisted members of the uniformed services. It includes employees of a State or local government or other organization who are serving on detail to an agency, pursuant to 5 U.S.C. 3371, *et seq.* For purposes other than subparts B and C of this part, it does not include the President or Vice President. Status as an employee is unaffected by pay or leave status or, in the case of a special Government employee, by the fact that the individual does not perform official duties on a given day.

(i) *Head of an agency* means, in the case of an agency headed by more than one person, the chair or comparable member of such agency.

(j) *Person* means an individual, corporation and subsidiaries it controls, company, association, firm, partnership, society, joint stock company, or any other organization or institution, including any officer, employee, or agent of such person or entity. For purposes of this part, a corporation will be deemed to control a subsidiary if it owns 50 percent or more of the subsidiary's voting securities. The term is all-inclusive and applies to commercial ventures and nonprofit organizations as well as to foreign, State, and local governments, including the government of the District of Columbia. It does not include any agency or other entity of the Federal Government or any officer or employee thereof when acting in an official capacity on behalf of that agency or entity.

(k) *Special Government employee* means those executive branch officers or employees specified in 18 U.S.C. 202(a). A special Government employee is retained, designated, appointed, or employed to perform temporary duties either on a full-time or intermittent basis, with or without compensation, for a period not to exceed 130 days during any consecutive 365-day period.

(l) *Supplemental agency regulation* means a regulation issued pursuant to § 2635.105.

### § 2635.103   Applicability to enlisted members of the uniformed services.

The provisions of this part are not applicable to enlisted members of the uniformed services. However, each agency with jurisdiction over enlisted members of the uniformed services may issue regulations defining the ethical conduct obligations of enlisted members under its jurisdiction. Such regulations or policies, if issued, should be consistent with Executive Order 12674, April 12, 1989, as modified, and may prescribe the full range of statutory and regulatory sanctions, including those available under the Uniform Code of Military Justice, for failure to comply with such regulations.

### § 2635.104   Applicability to employees on detail.

(a) *Details to other agencies.* Except as provided in paragraph (d) of this section, employees on detail, including uniformed officers on assignment, from their employing agencies to another agency for a period in excess of 30 calendar days will be subject to any supplemental agency regulations of the agency to which they are detailed rather than to any supplemental agency regulations of their employing agencies.

(b) *Details to the legislative or judicial branch.* Employees on detail, including uniformed officers on assignment, from their employing agencies to the legislative or judicial branch for a period in excess of 30 calendar days will be subject to the ethical standards of the branch or entity to which detailed. For the duration of any such detail or assignment, employees will not be subject to the provisions of this part, except this section, or, except as provided in paragraph (d) of this section, to any supplemental agency regulations of their employing agencies, but will remain subject to the conflict of interest prohibitions in title 18 of the United States Code.

(c) *Details to non-Federal entities.* Except to the extent exempted in writing pursuant to this paragraph, an employee detailed to a non-Federal entity remains subject to this part and to any supplemental agency regulation of their employing agency. When an employee is detailed pursuant to statutory authority to an international organization or to a State or local government for a period in excess of six months, the designated agency ethics official may grant a written exemption from subpart B of this part based on their determination that the entity has adopted written ethical standards covering solicitation and acceptance of gifts which will apply to the employee during the detail and which will be

appropriate given the purpose of the detail.

(d) *Applicability of special agency statutes.* Notwithstanding paragraphs (a) and (b) of this section, employees who are subject to an agency statute which restricts their activities or financial holdings specifically because of their status as an employee of that agency will continue to be subject to any provisions in the supplemental agency regulations of the employing agency that implement that statute.

### § 2635.105 Supplemental agency regulations.

In addition to the regulations set forth in this part, employees must comply with any supplemental agency regulations issued by their employing agencies under this section.

(a) An agency that wishes to supplement this part must prepare and submit to the Office of Government Ethics, for its concurrence and joint issuance, any agency regulations that supplement the regulations contained in this part. Supplemental agency regulations which the agency determines are necessary and appropriate, in view of its programs and operations, to fulfill the purposes of this part must be:

(1) In the form of a supplement to the regulations in this part; and

(2) In addition to the substantive provisions of this part.

(b) After concurrence and co-signature by the Office of Government Ethics, the agency must submit its supplemental agency regulations to the **Federal Register** for publication and codification at the expense of the agency in title 5 of the Code of Federal Regulations. Supplemental agency regulations issued under this section are effective only after concurrence and co-signature by the Office of Government Ethics and publication in the **Federal Register**.

(c) This section applies to any supplemental agency regulations or amendments thereof issued under this part. It does not apply to:

(1) A handbook or other issuance intended merely as an explanation of the standards contained in this part or in supplemental agency regulations;

(2) An instruction or other issuance the purpose of which is to:

(i) Delegate to an agency designee authority to make any determination, give any approval or take any other action required or permitted by this part or by supplemental agency regulations; or

(ii) Establish internal agency procedures for documenting or processing any determination, approval or other action required or permitted by

this part or by supplemental agency regulations, or for retaining any such documentation; or

(3) Regulations or instructions that an agency has authority, independent of this part, to issue, such as regulations implementing an agency's gift acceptance statute, protecting categories of nonpublic information, or establishing standards for use of Government vehicles.

(d) Employees of a State or local government or other organization who are serving on detail to an agency, pursuant to 5 U.S.C. 3371, *et seq.,* are subject to any requirements, in addition to those in this part, established by a supplemental agency regulation issued under this section to the extent that such regulation expressly provides.

### § 2635.106 Disciplinary and corrective action.

(a) Except as provided in § 2635.107, a violation of this part or of supplemental agency regulations may be cause for appropriate corrective or disciplinary action to be taken under applicable Governmentwide regulations or agency procedures. Such action may be in addition to any action or penalty prescribed by law.

(b) It is the responsibility of the employing agency to initiate appropriate disciplinary or corrective action in individual cases. However, corrective action may be ordered or disciplinary action recommended by the Director of the Office of Government Ethics under the procedures at part 2638 of this chapter.

(c) A violation of this part or of supplemental agency regulations, as such, does not create any right or benefit, substantive or procedural, enforceable at law by any person against the United States, its agencies, its officers or employees, or any other person. Thus, for example, an individual who alleges that an employee has failed to adhere to laws and regulations that provide equal opportunity regardless of race, color, religion, sex (including pregnancy, gender identity, and sexual orientation), national origin, age, genetic information, or disability is required to follow applicable statutory and regulatory procedures, including those of the Equal Employment Opportunity Commission.

### § 2635.107 Ethics advice.

(a) As required by §§ 2638.104(a) and 2638.104(d) of this chapter, each agency has a designated agency ethics official and an alternate designated agency ethics official; these are the employees who have the primary responsibility for directing the daily activities of an

agency's ethics program. Acting directly or through other officials, the designated agency ethics official is responsible for providing ethics advice and counseling regarding the application of this part.

(b) Employees who have questions about the application of this part or any supplemental agency regulations to particular situations should seek advice from an agency ethics official. Disciplinary action for violating this part or any supplemental agency regulations will not be taken against an employee who has engaged in conduct in good faith reliance upon the advice of an agency ethics official, provided that the employee, in seeking such advice, has made full disclosure of all relevant circumstances. When the employee's conduct violates a criminal statute, reliance on the advice of an agency ethics official cannot ensure that the employee will not be prosecuted under that statute. However, good faith reliance on the advice of an agency ethics official is a factor that may be taken into account by the Department of Justice in the selection of cases for prosecution. Disclosures made by an employee to an agency ethics official are not protected by an attorney-client privilege. Agency ethics officials are required by 28 U.S.C. 535 to report any information they receive relating to a violation of the criminal code, title 18 of the United States Code.

## Subpart B—Gifts From Outside Sources

### § 2635.201 Overview and considerations for declining otherwise permissible gifts.

(a) *Overview.* This subpart contains standards that prohibit an employee from soliciting or accepting any gift from a prohibited source or any gift given because of the employee's official position, unless the item is excluded from the definition of a gift or falls within one of the exceptions set forth in this subpart.

(b) *Considerations for declining otherwise permissible gifts.* (1) Every employee has a fundamental responsibility to the United States and its citizens to place loyalty to the Constitution, laws, and ethical principles above private gain. An employee's actions should promote the public's trust that this responsibility is being met. For this reason, employees should consider declining otherwise permissible gifts if they believe that a reasonable person with knowledge of the relevant facts would question the employee's integrity or impartiality as a result of accepting the gift.

(2) Employees who are considering whether acceptance of a gift would lead

a reasonable person with knowledge of the relevant facts to question their integrity or impartiality may consider, among other relevant factors, whether:

(i) The gift has a high market value;

(ii) The timing of the gift creates the appearance that the donor is seeking to influence an official action;

(iii) The gift was provided by a person who has interests that may be substantially affected by the performance or nonperformance of the employee's official duties; and

(iv) Acceptance of the gift would provide the donor with significantly disproportionate access.

(3) Notwithstanding paragraph (b)(1) of this section, an employee who accepts a gift that qualifies for an exception under § 2635.204 does not violate this subpart or the Principles of Ethical Conduct set forth in § 2635.101(b).

(4) Employees who have questions regarding this subpart, including whether the employee should decline a gift that would otherwise be permitted under an exception found in § 2635.204, should seek advice from an agency ethics official.

*Example 1 to paragraph (b):* An employee of the Peace Corps is in charge of making routine purchases of office supplies. After a promotional presentation to highlight several new products, a vendor offers to buy the employee lunch, which costs less than $20. The employee is concerned that a reasonable person may question their impartiality by accepting the free lunch, as the timing of the offer indicates that the donor may be seeking to influence an official action and the company has interests that may be substantially affected by the performance or nonperformance of the employee's duties. The employee concludes that appearance considerations weigh against accepting the gift.

### § 2635.202  General prohibition on solicitation or acceptance of gifts.

(a) *Prohibition on soliciting gifts.* Except as provided in this subpart, an employee may not, directly or indirectly:

(1) Solicit a gift from a prohibited source; or

(2) Solicit a gift to be given because of the employee's official position.

(b) *Prohibition on accepting gifts.* Except as provided in this subpart, an employee may not, directly or indirectly:

(1) Accept a gift from a prohibited source; or

(2) Accept a gift given because of the employee's official position.

(c) *Relationship to illegal gratuities statute.* A gift accepted pursuant to an exception found in this subpart will not constitute an illegal gratuity otherwise prohibited by 18 U.S.C. 201(c)(1)(B), unless it is accepted in return for being influenced in the performance of an official act. As more fully described in § 2635.205(d)(1), an employee may not solicit or accept a gift if to do so would be prohibited by the Federal bribery statute, 18 U.S.C. 201(b).

*Example 1 to paragraph (c):* A Government contractor who specializes in information technology software has offered an employee of the Department of Energy's information technology acquisition division a $15 gift card to a local restaurant if the employee will recommend to the agency's contracting officer that the agency select the contractor's products during the next acquisition. Even though the gift card is less than $20, the employee may not accept the gift under § 2635.204(a) because it is conditional upon official action by the employee. Pursuant to §§ 2635.202(c) and 2635.205(a), notwithstanding any exception to the rule, an employee may not accept a gift in return for being influenced in the performance of an official act.

### § 2635.203  Definitions.

For purposes of this subpart, the following definitions apply:

(a) *Agency* has the meaning set forth in § 2635.102(a). However, for purposes of this subpart, an executive department, as defined in 5 U.S.C. 101, may, by supplemental agency regulation, designate as a separate agency any component of that department which the department determines exercises distinct and separate functions.

(b) *Gift* includes any gratuity, favor, discount, entertainment, hospitality, loan, forbearance, or other item having monetary value. It includes services as well as gifts of training, transportation, local travel, lodgings, and meals, whether provided in-kind, by purchase of a ticket, payment in advance, or reimbursement after the expense has been incurred. The term excludes the following:

(1) Modest items of food and non-alcoholic refreshments, such as soft drinks, coffee, and donuts, offered other than as part of a meal;

(2) Greeting cards and items with little intrinsic value, such as plaques, certificates, and trophies, which are intended primarily for presentation;

*Example 1 to paragraph (b)(2):* After giving a speech at the facility of a pharmaceutical company, a Government employee is presented with a glass paperweight in the shape of a pill capsule with the name of the company's latest drug and the date of the speech imprinted on the side. The employee may accept the paperweight because it is an item with little intrinsic value which is intended primarily for presentation.

*Example 2 to paragraph (b)(2):* After participating in a panel discussion hosted by an international media company, a Government employee is presented with an inexpensive portable music player emblazoned with the media company's logo. The portable music player has a market value of $25. The employee may not accept the portable music player as it has a significant independent use as a music player rather than being intended primarily for presentation.

*Example 3 to paragraph (b)(2):* After giving a speech at a conference held by a national association of miners, a Department of Commerce employee is presented with a block of granite that is engraved with the association's logo, a picture of the Appalachian Mountains, the date of the speech, and the employee's name. The employee may accept this item because it is similar to a plaque, is designed primarily for presentation, and has little intrinsic value.

(3) Loans from banks and other financial institutions on terms generally available to the public;

(4) Opportunities and benefits, including favorable rates and commercial discounts, available to the public or to a class consisting of all Government employees or all uniformed military personnel, whether or not restricted on the basis of geographic considerations;

(5) Rewards and prizes given to competitors in contests or events, including random drawings, open to the public unless the employee's entry into the contest or event is required as part of the employee's official duties;

*Example 1 to paragraph (b)(5):* A Government employee is attending a free trade show on official time. The trade show is held in a public shopping area adjacent to the employee's office building. The employee voluntarily enters a drawing at an individual vendor's booth, which is open to the public, by filling in an entry form on the vendor's display table and dropping it into the contest box. The employee may accept the resulting prize because entry into the contest was not required by or related to their official duties.

*Example 2 to paragraph (b)(5):* Attendees at a conference, which is not open to the public, are entered in a drawing for a weekend getaway to Bermuda as a result of being registered for the conference. A Government

employee who attends the conference in an official capacity could not accept the prize under paragraph (b)(5) of this section, as the event is not open to the public.

(6) Pension and other benefits resulting from continued participation in an employee welfare and benefits plan maintained by a current or former employer;

(7) Anything which is paid for by the Government or secured by the Government under Government contract;

*Example 1 to paragraph (b)(7):* An employee at the Occupational Safety and Health Administration is assigned to travel away from their duty station to conduct an investigation of a collapse at a construction site. The employee's agency is paying for relevant travel expenses, including airfare. The employee may accept and retain travel promotional items, such as frequent flyer miles, received as a result of this official travel, to the extent permitted by 5 U.S.C. 5702, note, and 41 CFR part 301–53.

(8) Free attendance to an event provided by the sponsor of the event to:

(i) An employee who is assigned to present information on behalf of the agency at the event on any day when the employee is presenting;

(ii) An employee whose presence on any day of the event is deemed to be essential by the agency to the presenting employee's participation in the event, provided that the employee is accompanying the presenting employee; and

(iii) One guest of the presenting employee on any day when the employee is presenting, provided that others in attendance will generally be accompanied by a guest, the offer of free attendance for the guest is unsolicited, and the agency designee, orally or in writing, has authorized the presenting employee to accept;

*Example 1 to paragraph (b)(8):* An employee of the Department of the Treasury who is assigned to participate in a panel discussion of economic issues as part of a one-day conference may accept the sponsor's waiver of the conference fee. Under the separate authority of § 2635.204(a), the employee may accept a token of appreciation that has a market value of $20 or less.

*Example 2 to paragraph (b)(8):* An employee of the Securities and Exchange Commission is assigned to present the agency's views at a roundtable discussion of an ongoing working group. The employee may accept free attendance to the meeting under paragraph (b)(8) of this section because the employee has been assigned

to present information at the meeting on behalf of the agency. If it is determined by the agency that it is essential that another employee accompany the presenting employee to the roundtable discussion, the accompanying employee may also accept free attendance to the meeting under paragraph (b)(8)(ii) of this section.

*Example 3 to paragraph (b)(8):* An employee of the United States Trade and Development Agency is invited to attend a cocktail party hosted by a prohibited source. The employee believes that there will be an opportunity to discuss official matters with other attendees while at the event. Although the employee may voluntarily discuss official matters with other attendees, the employee has not been assigned to present information on behalf of the agency. The employee may not accept free attendance to the event under paragraph (b)(8) of this section.

(9) Any gift accepted by the Government under specific statutory authority, including:

(i) Travel, subsistence, and related expenses accepted by an agency under the authority of 31 U.S.C. 1353 in connection with an employee's attendance at a meeting or similar function relating to the employee's official duties which take place away from the employee's duty station, provided that the agency's acceptance is in accordance with the implementing regulations at 41 CFR chapter 304; and

(ii) Other gifts provided in-kind which have been accepted by an agency under its agency gift acceptance statute; and

(10) Anything for which market value is paid by the employee.

(c) *Market value* means the cost that a member of the general public would reasonably expect to incur to purchase the gift. An employee who cannot ascertain the market value of a gift may estimate its market value by reference to the retail cost of similar items of like quality. The market value of a gift of a ticket entitling the holder to food, refreshments, entertainment, or any other benefit is deemed to be the face value of the ticket.

*Example 1 to paragraph (c):* An employee who has been given a watch inscribed with the corporate logo of a prohibited source may determine its market value based on the observation that a comparable watch, not inscribed with a logo, generally sells for about $50.

*Example 2 to paragraph (c):* During an official visit to a factory operated by a well-known athletic footwear manufacturer, an employee of the Department of Labor is offered a

commemorative pair of athletic shoes manufactured at the factory. Although the cost incurred by the donor to manufacture the shoes was $17, the market value of the shoes would be the $100 that the employee would have to pay for the shoes on the open market.

*Example 3 to paragraph (c):* A prohibited source has offered a Government employee a ticket to a charitable event consisting of a cocktail reception to be followed by an evening of chamber music. Even though the food, refreshments, and entertainment provided at the event may be worth only $20, the market value of the ticket is its $250 face value.

*Example 4 to paragraph (c):* A company offers an employee of the Federal Communication Commission (FCC) free attendance for two to a private skybox at a ballpark to watch a major league baseball game. The skybox is leased annually by the company, which has business pending before the FCC. The skybox tickets provided to the employee do not have a face value. To determine the market value of the tickets, the employee must add the face value of two of the most expensive publicly available tickets to the game and the market value of any food, parking, or other tangible benefits provided in connection with the gift of attendance that are not already included in the cost of the most expensive publicly available tickets.

*Example 5 to paragraph (c):* An employee of the Department of Agriculture is invited to a reception held by a prohibited source. There is no entrance fee to the reception event or to the venue. To determine the market value of the gift, the employee must add the market value of any entertainment, food, beverages, or other tangible benefit provided to attendees in connection with the reception, but need not consider the cost incurred by the sponsor to rent or maintain the venue where the event is held. The employee may rely on a per-person cost estimate provided by the sponsor of the event, unless the employee or an agency designee has determined that a reasonable person would find that the estimate is clearly implausible.

(d) *Prohibited source* means any person who:

(1) Is seeking official action by the employee's agency;

(2) Does business or seeks to do business with the employee's agency;

(3) Conducts activities regulated by the employee's agency;

(4) Has interests that may be substantially affected by the performance or nonperformance of the employee's official duties; or

(5) Is an organization a majority of whose members are described in paragraphs (d)(1) through (4) of this section.

(e) *Given because of the employee's official position.* A gift is given because of the employee's official position if the gift is from a person other than an employee and would not have been given had the employee not held the status, authority, or duties associated with the employee's Federal position.

**Note 1 to paragraph (e):** Gifts between employees are subject to the limitations set forth in subpart C of this part.

*Example 1 to paragraph (e):* When free season tickets are offered by an opera guild to all members of the Cabinet, the gift is offered because of their official positions.

*Example 2 to paragraph (e):* Employees at a regional office of the Department of Justice (DOJ) work in Government-leased space at a private office building, along with various private business tenants. A major fire in the building during normal office hours causes a traumatic experience for all occupants of the building in making their escape, and it is the subject of widespread news coverage. A corporate hotel chain, which does not meet the definition of a prohibited source for DOJ, seizes the moment and announces that it will give a free night's lodging to all building occupants and their families, as a public goodwill gesture. Employees of DOJ may accept, as this gift is not being given because of their Government positions. The donor's motivation for offering this gift is unrelated to the DOJ employees' status, authority, or duties associated with their Federal positions, but instead is based on their mere presence in the building as occupants at the time of the fire.

(f) *Indirectly solicited or accepted.* A gift which is solicited or accepted indirectly includes a gift:

(1) Given with the employee's knowledge and acquiescence to the employee's parent, sibling, spouse, child, dependent relative, or a member of the employee's household because of that person's relationship to the employee; or

(2) Given to any other person, including any charitable organization, on the basis of designation, recommendation, or other specification by the employee, except the employee has not indirectly solicited or accepted a gift by the raising of funds or other support for a charitable organization if done in accordance with § 2635.808.

*Example 1 to paragraph (f)(2):* An employee who must decline a gift of a personal computer pursuant to this subpart may not suggest that the gift be given instead to one of five charitable organizations whose names are provided by the employee.

(g) *Free attendance* includes waiver of all or part of the fee for an event or the provision of food, refreshments, entertainment, instruction, or materials furnished to all attendees as an integral part of the event. It does not include travel expenses, lodgings, or entertainment collateral to the event. It does not include meals taken other than in a group setting with all other attendees, unless the employee is a presenter at the event and is invited to a separate meal for participating presenters that is hosted by the sponsor of the event. When the offer of free attendance has been extended to an accompanying guest, the market value of the gift of free attendance includes the market value of free attendance by both the employee and the guest.

## § 2635.204   Exceptions to the prohibition for acceptance of certain gifts.

Subject to the limitations in § 2635.205, this section establishes exceptions to the prohibitions set forth in § 2635.202(a) and (b). Even though acceptance of a gift may be permitted by one of the exceptions contained in this section, it is never inappropriate and frequently prudent for an employee to decline a gift if acceptance would cause a reasonable person to question the employee's integrity or impartiality. Section 2635.201(b) identifies considerations for declining otherwise permissible gifts.

(a) *Gifts of $20 or less.* An employee may accept unsolicited gifts having an aggregate market value of $20 or less per source per occasion, provided that the aggregate market value of individual gifts received from any one person under the authority of this paragraph (a) does not exceed $50 in a calendar year. This exception does not apply to gifts of cash or of investment interests such as stock, bonds, or certificates of deposit. When the market value of a gift or the aggregate market value of gifts offered on any single occasion exceeds $20, the employee may not pay the excess value over $20 in order to accept that portion of the gift or those gifts worth $20. When the aggregate value of tangible items offered on a single occasion exceeds $20, the employee may decline any distinct and separate item in order to accept those items aggregating $20 or less.

*Example 1 to paragraph (a):* An employee of the Securities and Exchange Commission and their spouse have been invited by a representative of a regulated entity to a community theater production, tickets to which have a face value of $30 each. The aggregate market value of the gifts offered on this single occasion is $60, $40 more than the $20 amount that may be accepted for a single event or presentation. The employee may not accept the gift of the evening of entertainment. The couple may attend the play only if the employee pays the full $60 value of the two tickets.

*Example 2 to paragraph (a):* An employee of the National Geospatial-Intelligence Agency has been invited by an association of cartographers to speak about the agency's role in the evolution of missile technology. At the conclusion of the speech, the association presents the employee a framed map with a market value of $18 and a ceramic mug that has a market value of $15. The employee may accept the map or the mug, but not both, because the aggregate value of these two tangible items exceeds $20.

*Example 3 to paragraph (a):* On four occasions during the calendar year, an employee of the Defense Logistics Agency (DLA) was given gifts worth $10 each by four employees of a corporation that is a DLA contractor. For purposes of applying the yearly $50 limitation on gifts of $20 or less from any one person, the four gifts must be aggregated because a person is defined at § 2635.102(k) to mean not only the corporate entity, but its officers and employees as well. However, for purposes of applying the $50 aggregate limitation, the employee would not have to include the value of a birthday present received from a cousin, who is employed by the same corporation, if the cousin's birthday present can be accepted under the exception at paragraph (b) of this section for gifts based on a personal relationship.

*Example 4 to paragraph (a):* Under the authority of 31 U.S.C. 1353 for agencies to accept payments from non-Federal sources in connection with attendance at certain meetings or similar functions, the Environmental Protection Agency (EPA) has accepted an association's gift of travel expenses and conference fees for an employee to attend a conference on the long-term effect of radon exposure. While at the conference, the employee may accept a gift basket of $20 or less from one of the companies underwriting the event even though it was not approved in advance by the EPA. Although 31 U.S.C. 1353 is the authority under which the EPA accepted the gift to the agency of travel expenses and conference fees, the gift basket is a gift to the employee rather than to the EPA.

*Example 5 to paragraph (a):* During off-duty time, an employee of the Department of Defense (DoD) attends a trade show involving companies that are DoD contractors. The employee is offered software worth $15 at X Company's booth, a calendar worth $12 at Y Company's booth, and a deli lunch worth $8 from Z Company. The employee may accept all three of these items because they do not exceed $20 per source, even though they total more than $20 at this single occasion.

*Example 6 to paragraph (a):* An employee of the Department of Defense (DoD) is being promoted to a higher level position in another DoD office. Six individuals, each employed by a different defense contractor, who have worked with the DoD employee over the years, decide to act in concert to pool their resources to buy the employee a nicer gift than each could buy separately. Each defense contractor employee contributes $20 to buy a desk clock for the DoD employee that has a market value of $120. Although each of the contributions does not exceed the $20 limit, the employee may not accept the $120 gift because it is a single gift that has a market value in excess of $20.

*Example 7 to paragraph (a):* During a holiday party, an employee of the Department of State is given a $15 store gift card to a national coffee chain by an agency contractor. The employee may accept the card as the market value is less than $20. The employee could not, however, accept a gift card that is issued by a credit card company or other financial institution, because such a card is equivalent to a gift of cash.

(b) *Gifts based on a personal relationship.* An employee may accept a gift given by an individual under circumstances which make it clear that the gift is motivated by a family relationship or personal friendship rather than the position of the employee. Relevant factors in making such a determination include the history and nature of the relationship and whether the family member or friend personally pays for the gift.

*Example 1 to paragraph (b):* An employee of the Federal Deposit Insurance Corporation (FDIC) has been dating an accountant employed by a member bank. As part of its ''Work-Life Balance'' program, the bank has given each employee in the accountant's division two tickets to a professional basketball game and has urged each to invite a family member or friend to share the evening of entertainment. Under the circumstances, the FDIC employee may accept the invitation to attend the game. Even though the tickets were initially purchased by the member bank, they were given without reservation to the accountant to use as desired, and the invitation to the employee was motivated by their personal friendship.

*Example 2 to paragraph (b):* Three partners in a law firm that handles corporate mergers have invited an employee of the Federal Trade Commission (FTC) to join them in a golf tournament at a private club at the firm's expense. The entry fee is $500 per foursome. The employee cannot accept the gift of one-quarter of the entry fee even though the employee has developed an amicable relationship with the three partners as a result of the firm's dealings with the FTC. As evidenced in part by the fact that the fees are to be paid by the firm, it is not a personal friendship but a business relationship that is the motivation behind the partners' gift.

*Example 3 to paragraph (b):* A Peace Corps employee enjoys using a social media site on the internet in a personal capacity outside of work. The employee has used the site to keep in touch with friends, neighbors, coworkers, professional contacts, and other individuals they have met over the years through both work and personal activities. One of these individuals works for a contractor that provides language services to the Peace Corps. The employee was acting in an official capacity when they met the individual at a meeting to discuss a matter related to the contract between their respective employers. Thereafter, the two communicated occasionally regarding contract matters, and later also granted one another access to join their social media networks through their respective social media accounts. However, the pair did not communicate further in their personal capacities, carry on extensive personal interactions, or meet socially outside of work. One day, the individual, whose employer continues to serve as a Peace Corps contractor, contacts the employee to offer a pair of concert tickets worth $30 apiece. Although the employee and the individual are connected through social media, the circumstances do not demonstrate that the gift was clearly motivated by a personal relationship, rather than the position of the employee, and therefore the employee may not accept the gift pursuant to paragraph (b) of this section.

(c) *Discounts and similar benefits.* In addition to those opportunities and benefits excluded from the definition of a gift by § 2635.203(b)(4), an employee may accept:

(1) A reduction or waiver of the fees for membership or other fees for participation in organization activities offered to all Government employees or all uniformed military personnel by professional organizations if the only restrictions on membership relate to professional qualifications; and

(2) Opportunities and benefits, including favorable rates, commercial discounts, and free attendance or participation not precluded by paragraph (c)(3) of this section:

(i) Offered to members of a group or class in which membership is unrelated to Government employment;

(ii) Offered to members of an organization, such as an employees' association or agency credit union, in which membership is related to Government employment if the same offer is broadly available to large segments of the public through organizations of similar size; or

(iii) Offered by a person who is not a prohibited source to any group or class that is not defined in a manner that specifically discriminates among Government employees on the basis of type of official responsibility or on a basis that favors those of higher rank or rate of pay.

*Example 1 to paragraph (c)(2):* A computer company offers a discount on the purchase of computer equipment to all public and private sector computer procurement officials who work in organizations with over 300 employees. An employee who works as the computer procurement official for a Government agency could not accept the discount to purchase the personal computer under the exception in paragraph (c)(2)(i) of this section. The employee's membership in the group to which the discount is offered is related to Government employment because membership is based on the employee's status as a procurement official with the Government.

*Example 2 to paragraph (c)(2):* An employee of the Consumer Product Safety Commission (CPSC) may accept a discount of $50 on a microwave oven offered by the manufacturer to all members of the CPSC employees' association. Even though the CPSC is currently conducting studies on the safety of microwave ovens, the $50 discount is a standard offer that the manufacturer has made broadly available through a number of employee associations and similar organizations to large segments of the public.

*Example 3 to paragraph (c)(2):* An Assistant Secretary may not accept a local country club's offer of membership to all members of Department Secretariats which includes a waiver of its $5,000 membership initiation fee. Even though the country club is not a

prohibited source, the offer discriminates in favor of higher ranking officials.

(3) An employee may not accept for personal use any benefit to which the Government is entitled as the result of an expenditure of Government funds, unless authorized by statute or regulation (*e.g.,* 5 U.S.C. 5702, note, regarding frequent flyer miles).

*Example 1 to paragraph (c)(3):* The administrative officer for a field office of U.S. Immigration and Customs Enforcement (ICE) has signed an order to purchase 50 boxes of photocopy paper from a supplier whose literature advertises that it will give a free briefcase to anyone who purchases 50 or more boxes. Because the paper was purchased with ICE funds, the administrative officer cannot keep the briefcase which, if claimed and received, is Government property.

(d) *Awards and honorary degrees*—(1) *Awards.* An employee may accept a bona fide award for meritorious public service or achievement and any item incident to the award, provided that:

(i) The award and any item incident to the award are not from a person who has interests that may be substantially affected by the performance or nonperformance of the employee's official duties, or from an association or other organization if a majority of its members have such interests; and

(ii) If the award or any item incident to the award is in the form of cash or an investment interest, or if the aggregate value of the award and any item incident to the award, other than free attendance to the event provided to the employee and to members of the employee's family by the sponsor of the event, exceeds $200, the agency ethics official has made a written determination that the award is made as part of an established program of recognition.

*Example 1 to paragraph (d)(1):* Based on a written determination by an agency ethics official that the prize meets the criteria set forth in paragraph (d)(2) of this section, an employee of the National Institutes of Health (NIH) may accept the Nobel Prize for Medicine, including the cash award which accompanies the prize, even though the prize was conferred on the basis of laboratory work performed at NIH.

*Example 2 to paragraph (d)(1):* A defense contractor, ABC Systems, has an annual award program for the outstanding public employee of the year. The award includes a cash payment of $1,000. The award program is wholly funded to ensure its continuation on a regular basis for the next twenty years and selection of

award recipients is made pursuant to written standards. An employee of the Department of the Air Force, who has duties that include overseeing contract performance by ABC Systems, is selected to receive the award. The employee may not accept the cash award because ABC Systems has interests that may be substantially affected by the performance or nonperformance of the employee's official duties.

*Example 3 to paragraph (d)(1):* An ambassador selected by a nonprofit organization as a recipient of its annual award for distinguished service in the interest of world peace may, together with their spouse and children, attend the awards ceremony dinner and accept a crystal bowl worth $200 presented during the ceremony. However, if the organization has also offered airline tickets for the ambassador and the family to travel to the city where the awards ceremony is to be held, the aggregate value of the tickets and the crystal bowl exceeds $200, and the ambassador may accept only upon a written determination by the agency ethics official that the award is made as part of an established program of recognition.

(2) *Established program of recognition.* An award and an item incident to the award are made pursuant to an established program of recognition if:

(i) Awards have been made on a regular basis or, if the program is new, there is a reasonable basis for concluding that awards will be made on a regular basis based on funding or funding commitments; and

(ii) Selection of award recipients is made pursuant to written standards.

(3) *Honorary degrees.* An employee may accept an honorary degree from an institution of higher education, as defined at 20 U.S.C. 1001, or from a similar foreign institution of higher education, based on a written determination by an agency ethics official that the timing of the award of the degree would not cause a reasonable person to question the employee's impartiality in a matter affecting the institution.

Note 1 to paragraph (d)(3): When the honorary degree is offered by a foreign institution of higher education, the agency may need to make a separate determination as to whether the institution of higher education is a foreign government for purposes of the Emoluments Clause of the U.S. Constitution (U.S. Const., art. I, sec. 9, cl. 8), which forbids employees from accepting emoluments, presents, offices, or titles from foreign governments, without the consent of Congress. The Foreign Gifts and

Decorations Act, 5 U.S.C. 7342, however, may permit the acceptance of honorary degrees in some circumstances.

*Example 1 to paragraph (d)(3):* A well-known university located in the United States wishes to give an honorary degree to the Secretary of Labor. The Secretary may accept the honorary degree only if an agency ethics official determines in writing that the timing of the award of the degree would not cause a reasonable person to question the Secretary's impartiality in a matter affecting the university.

(4) *Presentation events.* An employee who may accept an award or honorary degree pursuant to paragraph (d)(1) or (3) of this section may also accept free attendance to the event provided to the employee and to members of the employee's family by the sponsor of an event. In addition, the employee may also accept unsolicited offers of travel to and from the event provided to the employee and to members of the employee's family by the sponsor of the event. Travel expenses accepted under this paragraph (d)(4) must be added to the value of the award for purposes of determining whether the aggregate value of the award exceeds $200.

(e) *Gifts based on outside business or employment relationships.* An employee may accept meals, lodgings, transportation, and other benefits:

(1) Resulting from the business or employment activities of an employee's spouse when it is clear that such benefits have not been offered or enhanced because of the employee's official position;

*Example 1 to paragraph (e)(1):* A Department of Agriculture employee whose spouse is a computer programmer employed by a Department of Agriculture contractor may attend the company's annual retreat for all of its employees and their families held at a resort facility. However, under § 2635.502, the employee may need to recuse from performing official duties affecting the spouse's employer.

*Example 2 to paragraph (e)(1):* When the spouses of other clerical personnel have not been invited, an employee of the Defense Contract Audit Agency whose spouse is a clerical worker at a defense contractor may not attend the contractor's annual retreat in Hawaii for corporate officers and members of the board of directors, even though the spouse received a special invitation from the company for them to attend as a couple.

(2) Resulting from the employee's outside business or employment activities when it is clear that such benefits are based on the outside business or employment activities and

have not been offered or enhanced because of the employee's official status;

*Example 1 to paragraph (e)(2):* The members of an Army Corps of Engineers environmental advisory committee that meets six times per year are special Government employees. A member who has a consulting business may accept an invitation to a $50 dinner from a corporate client, an Army construction contractor, unless, for example, the invitation was extended in order to discuss the activities of the advisory committee.

(3) Customarily provided by a prospective employer in connection with bona fide employment discussions. If the prospective employer has interests that could be affected by performance or nonperformance of the employee's duties, acceptance is permitted only if the employee first has complied with the recusal requirements of subpart F of this part applicable when seeking employment; or

*Example 1 to paragraph (e)(3):* An employee of the Federal Communications Commission with responsibility for drafting regulations affecting all cable television companies wishes to apply for a job opening with a cable television holding company. Once the employee has properly recused from further work on the regulations as required by subpart F of this part, the employee may enter into employment discussions with the company and may accept the company's offer to pay for airfare, hotel, and meals in connection with an interview trip.

(4) Provided by a former employer to attend a reception or similar event when other former employees have been invited to attend, the invitation and benefits are based on the former employment relationship, and it is clear that such benefits have not been offered or enhanced because of the employee's official position.

*Example 1 to paragraph (e)(4):* An employee of the Department of the Army is invited by a former employer, an Army contractor, to attend its annual holiday dinner party. The former employer traditionally invites both its current and former employees to the holiday dinner regardless of their current employment activities. Under these circumstances, the employee may attend the dinner because the dinner invitation is a result of the employee's former outside employment activities, other former employees have been asked to attend, and the gift is not offered because of the employee's official position.

(5) For purposes of paragraphs (e)(1) through (4) of this section, "employment" means any form of non-

Federal employment or business relationship involving the provision of personal services.

(f) *Gifts in connection with political activities permitted by the Hatch Act Reform Amendments.* An employee who, in accordance with the Hatch Act Reform Amendments of 1993, at 5 U.S.C. 7323, may take an active part in political management or in political campaigns, may accept meals, lodgings, transportation, and other benefits, including free attendance at events, for the employee and an accompanying guest, when provided, in connection with such active participation, by a political organization described in 26 U.S.C. 527(e). Any other employees, such as a security officers, whose official duties require them to accompany an employee to a political event, may accept meals, free attendance, and entertainment provided at the event by such an organization.

*Example 1 to paragraph (f):* The Secretary of the Department of Health and Human Services may accept an airline ticket and hotel accommodations furnished by the campaign committee of a candidate for the United States Senate in order to give a speech in support of the candidate.

(g) *Gifts of free attendance at widely attended gatherings*—(1) *Authorization.* When authorized in writing by the agency designee pursuant to paragraph (g)(3) of this section, an employee may accept an unsolicited gift of free attendance at all or appropriate parts of a widely attended gathering. For an employee who is subject to a leave system, attendance at the event will be on the employee's own time or, if authorized by the employee's agency, on excused absence pursuant to applicable guidelines for granting such absence, or otherwise without charge to the employee's leave account.

(2) *Widely attended gatherings.* A gathering is widely attended if it is expected that a large number of persons will attend, that persons with a diversity of views or interests will be present, for example, if it is open to members from throughout the interested industry or profession or if those in attendance represent a range of persons interested in a given matter, and that there will be an opportunity to exchange ideas and views among invited persons.

(3) *Written authorization by the agency designee.* The agency designee may authorize an employee or employees to accept a gift of free attendance at all or appropriate parts of a widely attended gathering only if the agency designee issues a written determination after finding that:

(i) The event is a widely attended gathering, as set forth in paragraph (g)(2) of this section;

(ii) The employee's attendance at the event is in the agency's interest because it will further agency programs or operations;

(iii) The agency's interest in the employee's attendance outweighs the concern that the employee may be, or may appear to be, improperly influenced in the performance of official duties; and

(iv) If a person other than the sponsor of the event invites or designates the employee as the recipient of the gift of free attendance and bears the cost of that gift, the event is expected to be attended by more than 100 persons, and the value of the gift of free attendance does not exceed $415.

(4) *Determination of agency interest.* In determining whether the agency's interest in the employee's attendance outweighs the concern that the employee may be, or may appear to be, improperly influenced in the performance of official duties, the agency designee may consider relevant factors including:

(i) The importance of the event to the agency;

(ii) The nature and sensitivity of any pending matter affecting the interests of the person who extended the invitation and the significance of the employee's role in any such matter;

(iii) The purpose of the event;

(iv) The identity of other expected participants;

(v) Whether acceptance would reasonably create the appearance that the donor is receiving preferential treatment;

(vi) Whether the Government is also providing persons with views or interests that differ from those of the donor with access to the Government; and

(vii) The market value of the gift of free attendance.

(5) *Cost provided by person other than the sponsor of the event.* The cost of the employee's attendance will be considered to be provided by a person other than the sponsor of the event when such person designates the employee to be invited and bears the cost of the employee's attendance through a contribution or other payment intended to facilitate the employee's attendance. Payment of dues or a similar assessment to a sponsoring organization does not constitute a payment intended to facilitate a particular employee's attendance.

(6) *Accompanying guest.* When others in attendance will generally be accompanied by a guest of their choice,

and when the invitation is from the same person who has invited the employee, the agency designee may authorize an employee to accept an unsolicited invitation of free attendance to one accompanying guest to participate in all or a portion of the event at which the employee's free attendance is permitted under paragraph (g)(1) this section. The authorization required by this paragraph (g)(6) must be provided in writing.

*Example 1 to paragraph (g):* An aerospace industry association that is a prohibited source sponsors an industry-wide, two-day seminar for which it charges a fee of $800 and anticipates attendance of approximately 400. An Air Force contractor pays $4,000 to the association so that the association can extend free invitations to five Air Force officials designated by the contractor. The Air Force officials may not accept the gifts of free attendance because (a) the contractor, rather than the association, provided the cost of their attendance; (b) the contractor designated the specific employees to receive the gift of free attendance; and (c) the value of the gift exceeds $415 per employee.

*Example 2 to paragraph (g):* An aerospace industry association that is a prohibited source sponsors an industry-wide, two-day seminar for which it charges a fee of $25 and anticipates attendance of approximately 50. An Air Force contractor pays $125 to the association so that the association can extend free invitations to five Air Force officials designated by the contractor. The Air Force officials may not accept the gifts of free attendance because (a) the contractor, rather than the association, provided the cost of their attendance; (b) the contractor designated the specific employees to receive the gift of free attendance; and (c) the event was not expected to be attended by more than 100 persons.

*Example 3 to paragraph (g):* An aerospace industry association that is a prohibited source sponsors an industry-wide, two-day seminar for which it charges a fee of $800 and anticipates attendance of approximately 400. An Air Force contractor pays $4,000 in order that the association might invite any five Federal employees. An Air Force official to whom the sponsoring association, rather than the contractor, extended one of the five invitations could attend if the employee's participation were determined to be in the interest of the agency and the employee received a written authorization.

*Example 4 to paragraph (g):* An employee of the Department of Transportation is invited by a news organization to an annual press dinner sponsored by an association of press organizations. Tickets for the event cost $415 per person and attendance is limited to 400 representatives of press organizations and their guests. If the employee's attendance is determined to be in the interest of the agency and the agency designee provides a written authorization, the employee may accept the invitation from the news organization because more than 100 persons will attend and the cost of the ticket does not exceed $415. However, if the invitation were extended to the employee and an accompanying guest, the employee's guest could not be authorized to attend for free because the market value of the gift of free attendance would exceed $415.

*Example 5 to paragraph (g):* An employee of the Department of Energy (DOE) and their spouse have been invited by a major utility executive to a small dinner party. A few other officials of the utility and their spouses or other guests are also invited, as is a representative of a consumer group concerned with utility rates and their spouse. The DOE official believes the dinner party will provide an opportunity to socialize with and get to know those in attendance. The employee may not accept the free invitation under this exception, even if attendance could be determined to be in the interest of the agency. The small dinner party is not a widely attended gathering. Nor could the employee be authorized to accept even if the event were instead a corporate banquet to which forty company officials and their spouses or other guests were invited. In this second case, notwithstanding the larger number of persons expected (as opposed to the small dinner party just noted) and despite the presence of the consumer group representative and spouse who are not officials of the utility, those in attendance would still not represent a diversity of views or interests. Thus, the company banquet would not qualify as a widely attended gathering under those circumstances either.

*Example 6 to paragraph (g):* An Assistant U.S. Attorney is invited to attend a luncheon meeting of a local bar association to hear a distinguished judge lecture on cross-examining expert witnesses. Although members of the bar association are assessed a $15 fee for the meeting, the Assistant U.S. Attorney may accept the bar association's offer to attend for free, even without a determination of agency interest. The gift can be accepted under the $20 gift exception at paragraph (a) of this section.

*Example 7 to paragraph (g):* An employee of the Department of the Interior authorized to speak on the first day of a four-day conference on endangered species may accept the sponsor's waiver of the conference fee for the first day of the conference under § 2635.203(b)(8). If the conference is widely attended, the employee may be authorized to accept the sponsor's offer to waive the attendance fee for the remainder of the conference if the agency designee has made a written determination that attendance is in the agency's interest.

*Example 8 to paragraph (g):* A military officer has been approved to attend a widely attended gathering, pursuant to paragraph (g) of this section, that will be held in the same city as the officer's duty station. The defense contractor sponsoring the event has offered to transport the officer in a limousine to the event. The officer may not accept the offer of transportation because the definition of "free attendance" set forth in § 2635.203(g) excludes travel, and the market value of the transportation would exceed $20.

(h) *Social invitations.* An employee may accept food, refreshments, and entertainment, not including travel or lodgings, for the employee and an accompanying guest, at a social event attended by several persons if:

(1) The invitation is unsolicited and is from a person who is not a prohibited source;

(2) No fee is charged to any person in attendance; and

(3) If either the sponsor of the event or the person extending the invitation to the employee is not an individual, the agency designee has made a written determination after finding that the employee's attendance would not cause a reasonable person with knowledge of the relevant facts to question the employee's integrity or impartiality, consistent with § 2635.201(b).

*Example 1 to paragraph (h):* An employee of the White House Press Office has been invited to a social dinner for current and former White House Press Officers at the home of an individual who is not a prohibited source. The employee may attend even if the invitation is because of the employee's official position.

(i) *Meals, refreshments, and entertainment in foreign areas.* An employee assigned to duty in, or on official travel to, a foreign area as defined in 41 CFR 300–3.1 may accept unsolicited food, refreshments, or entertainment in the course of a breakfast, luncheon, dinner, or other meeting or event provided:

(1) The market value in the foreign area of the food, refreshments, or entertainment provided at the meeting or event, as converted to U.S. dollars, does not exceed the per diem rate for the foreign area specified in the U.S. Department of State's Maximum Per Diem Allowances for Foreign Areas, Per Diem Supplement Section 925 to the Standardized Regulations (GC–FA), available on the internet at *www.state.gov;*

(2) There is participation in the meeting or event by non-U.S. citizens or by representatives of foreign governments or other foreign entities;

(3) Attendance at the meeting or event is part of the employee's official duties to obtain information, disseminate information, promote the export of U.S. goods and services, represent the United States, or otherwise further programs or operations of the agency or the U.S. mission in the foreign area; and

(4) The gift of meals, refreshments, or entertainment is from a person other than a foreign government as defined in 5 U.S.C. 7342(a)(2).

*Example 1 to paragraph (i):* A number of local business owners in a developing country are eager for a U.S. company to locate a manufacturing facility in their province. An official of the U.S. International Development Finance Corporation may accompany the visiting vice president of the U.S. company to a dinner meeting hosted by the business owners at a province restaurant when the market value of the food and refreshments does not exceed the per diem rate for that country.

*(j) Gifts to the President or Vice President.* Because of considerations relating to the conduct of their offices, including those of protocol and etiquette, the President or the Vice President may accept any gift on their own behalf or on behalf of any family member, provided that such acceptance does not violate § 2635.205(a) or (b), 18 U.S.C. 201(b) or 201(c)(3), or the Constitution of the United States.

*(k) Gifts authorized by supplemental agency regulation.* An employee may accept any gift when acceptance of the gift is specifically authorized by a supplemental agency regulation issued with the concurrence of the Office of Government Ethics, pursuant to § 2635.105.

*(l) Gifts accepted under specific statutory authority.* The prohibitions on acceptance of gifts from outside sources contained in this subpart do not apply to any item which a statute specifically authorizes an employee to accept. Gifts which may be accepted by an employee under the authority of specific statutes include, but are not limited to:

(1) Free attendance, course or meeting materials, transportation, lodgings, food and refreshments, or reimbursements therefor incident to training or meetings when accepted by the employee under the authority of 5 U.S.C. 4111. The employee's acceptance must be approved by the agency in accordance with part 410 of this title; or

(2) Gifts from a foreign government or international or multinational organization, or its representative, when accepted by the employee under the authority of the Foreign Gifts and Decorations Act, 5 U.S.C. 7342. As a condition of acceptance, an employee must comply with requirements imposed by the agency's regulations or procedures implementing that Act.

*(m) Gifts of informational materials.* (1) An employee may accept unsolicited gifts of informational materials, provided that:

(i) The aggregate market value of all informational materials received from any one person does not exceed $100 in a calendar year; or

(ii) If the aggregate market value of all informational materials from the same person exceeds $100 in a calendar year, an agency designee has made a written determination after finding that acceptance by the employee would not be inconsistent with the standard set forth in § 2635.201(b).

*(2) Informational materials* are writings, recordings, documents, records, or other items that:

(i) Are educational or instructive in nature;

(ii) Are not primarily created for entertainment, display, or decoration; and

(iii) Contain information that relates in whole or in part to the following categories:

(A) The employee's official duties or position, profession, or field of study;

(B) A general subject matter area, industry, or economic sector affected by or involved in the programs or operations of the agency; or

(C) Another topic of interest to the agency or its mission.

*Example 1 to paragraph (m):* An analyst at the Agricultural Research Service receives an edition of an agricultural research journal in the mail from a consortium of private farming operations concerned with soil toxicity. The journal edition has a market value of $75. The analyst may accept the gift.

*Example 2 to paragraph (m):* An inspector at the Mine Safety and Health Administration receives a popular novel with a market value of $25 from a mine operator. Because the novel is primarily for entertainment purposes, the inspector may not accept the gift.

*Example 3 to paragraph (m):* An employee at the Department of the Army is offered an encyclopedia on cyberwarfare from a prohibited source. The cost of the encyclopedia is far in excess of $100. The agency designee determines that acceptance of the gift would be inconsistent with the standard set out in § 2635.201(b). The employee may not accept the gift under paragraph (m) of this section.

## § 2635.205   Limitations on use of exceptions.

Notwithstanding any exception provided in this subpart, other than § 2635.204(j), an employee may not:

(a) Accept a gift in return for being influenced in the performance of an official act;

(b) Use, or permit the use of, the employee's Government position, or any authority associated with public office, to solicit or coerce the offering of a gift;

(c) Accept gifts from the same or different sources on a basis so frequent that a reasonable person would be led to believe the employee is using the employee's public office for private gain;

*Example 1 to paragraph (c):* A purchasing agent for a Department of Veterans Affairs medical center routinely deals with representatives of pharmaceutical manufacturers who provide information about new company products. Because of a crowded calendar, the purchasing agent has offered to meet with manufacturer representatives during lunch hours Tuesdays through Thursdays, and the representatives routinely arrive at the employee's office bringing a sandwich and a soft drink for the employee. Even though the market value of each of the lunches is less than $6 and the aggregate value from any one manufacturer does not exceed the $50 aggregate limitation in § 2635.204(a) on gifts of $20 or less, the practice of accepting even these modest gifts on a recurring basis is improper.

(d) Accept a gift in violation of any statute; relevant statutes applicable to all employees include, but are not limited to:

(1) 18 U.S.C. 201(b), which prohibits public officials from, directly or indirectly, corruptly demanding, seeking, receiving, accepting, or agreeing to receive or accept anything of value personally or for any other person or entity in return for being influenced in the performance of an official act; being influenced to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or for being induced to do or

omit to do any action in violation of their official duties. As used in 18 U.S.C. 201(b), the term "public official" is broadly construed and includes regular and special Government employees as well as all other Government officials; and

(2) 18 U.S.C. 209, which prohibits employees, other than special Government employees, from receiving any salary or any contribution to or supplementation of salary from any source other than the United States as compensation for services as a Government employee. The statute contains several specific exceptions to this general prohibition, including an exception for contributions made from the treasury of a State, county, or municipality;

(e) Accept a gift in violation of any Executive order; or

(f) Accept any gift when acceptance of the gift is specifically prohibited by a supplemental agency regulation issued with the concurrence of the Office of Government Ethics, pursuant to § 2635.105.

### § 2635.206  Proper disposition of prohibited gifts.

(a) Unless a gift is accepted by an agency acting under specific statutory authority, an employee who has received a gift that cannot be accepted under this subpart must dispose of the gift in accordance with the procedures set forth in this section. The employee must promptly complete the authorized disposition of the gift. The obligation to dispose of a gift that cannot be accepted under this subpart is independent of an agency's decision regarding corrective or disciplinary action under § 2635.106.

(1) *Gifts of tangible items.* The employee must promptly return any tangible item to the donor or pay the donor its market value; or, in the case of a tangible item with a market value of $100 or less, the employee may destroy the item. An employee who cannot ascertain the actual market value of an item may estimate its market value by reference to the retail cost of similar items of like quality.

*Example 1 to paragraph (a)(1):* A Department of Commerce employee received a $25 T-shirt from a prohibited source after providing training at a conference. Because the gift would not be permissible under an exception to this subpart, the employee must either return or destroy the T-shirt or promptly reimburse the donor $25. Destruction may be carried out by physical destruction or by permanently discarding the T-shirt by placing it in the trash.

*Example 2 to paragraph (a)(1):* To avoid public embarrassment to the seminar sponsor, an employee of the National Park Service did not decline a barometer worth $200 given at the conclusion of a speech on Federal lands policy. To comply with this section, the employee must either promptly return the barometer or pay the donor the market value of the gift. Alternatively, the National Park Service may choose to accept the gift if permitted under specific statutory gift acceptance authority. The employee may not destroy this gift, as the market value is in excess of $100.

(2) *Gifts of perishable items.* When it is not practical to return a tangible item in accordance with paragraph (a)(1) of this section because the item is perishable, the employee may, at the discretion of the employee's supervisor or the agency designee, give the item to an appropriate charity, share the item within the recipient's office, or destroy the item.

*Example 1 to paragraph (a)(2):* With approval by the recipient's supervisor, a floral arrangement sent by a disability claimant to a helpful employee of the Social Security Administration may be placed in the office's reception area.

(3) *Gifts of intangibles.* The employee must promptly reimburse the donor the market value for any entertainment, favor, service, benefit, or other intangible. Subsequent reciprocation by the employee does not constitute reimbursement.

*Example 1 to paragraph (a)(3):* A Department of Defense employee wishes to attend a charitable event for which they were offered a $300 ticket by a prohibited source. Although attendance is not in the interest of the agency under § 2635.204(g), the employee may attend if they reimburse the donor the $300 face value of the ticket.

(4) *Gifts from foreign governments or international organizations.* The employee must dispose of gifts from foreign governments or international organizations in accordance with 41 CFR part 102–42.

(b) An agency may authorize disposition or return of gifts at Government expense. Employees may use penalty mail to forward reimbursements required or permitted by this section.

(c) Employees who, on their own initiative, promptly comply with the requirements of this section will not be deemed to have improperly accepted an unsolicited gift. Employees who promptly consult their agency ethics official to determine whether acceptance of an unsolicited gift is proper and who, upon the advice of the ethics official, return the gift or otherwise dispose of the gift in accordance with this section, will be considered to have complied with the requirements of this section on the employee's own initiative.

(d) Employees are encouraged to record any actions they have taken to properly dispose of gifts that cannot be accepted under this subpart, such as by sending an electronic mail message to the appropriate agency ethics official or the employee's supervisor.

### Subpart C—Gifts Between Employees

### § 2635.301  Overview.

This subpart contains standards that prohibit an employee from giving or contributing to a gift to an official superior, and official superiors are prohibited from knowingly accepting such a gift. Employees also are prohibited from soliciting a contribution from another employee for a gift to an official superior. In addition, employees are prohibited from accepting a gift from an employee who receives less pay. These prohibitions apply unless the item is excluded from the definition of a gift or falls within one of the exceptions set forth in this subpart. Gifts from outside sources are subject to the limitations set forth in subpart B of this part.

### § 2635.302  General standards.

(a) *Gifts to superiors.* Except as provided in this subpart, employees may not:

(1) Directly or indirectly, give a gift to or make a contribution toward a gift for an official superior, and an official superior may not knowingly accept such a gift; or

(2) Solicit a contribution from another employee for a gift to either their own or the other employee's official superior.

(b) *Gifts from employees receiving less pay.* Except as provided in this subpart, employees may not, directly or indirectly, accept a gift from an employee who receives less pay unless:

(1) There is a personal relationship between the two employees that would justify the gift and the employee receiving the gift is not the official superior of the employee giving the gift; or

(2) The employee giving the gift is the official superior of the employee receiving the gift.

*Example 1 to paragraph (b):* A GS–13 Department of Homeland Security (DHS) employee has been close personal friends with a neighbor, a GS–15 employee in another government agency, for many years. During their friendship, the GS–13 employee has

often allowed the neighbor's family to use their vacation house rent-free. The GS–15 employee recently accepted a position at DHS, and in the new position will be the direct supervisor of the GS–13 employee. Although the personal relationship between the two employees justified the gift of free-free use of the vacation home before they were both employed at DHS, for the duration of their supervisor-subordinate relationship the GS–13 employee may not allow the GS–15 neighbor to use the vacation house rent-free or give other gifts, except as permitted by the exceptions contained in this subpart.

(c) *Limitation on use of exceptions.* Notwithstanding any exception provided in this subpart, an official superior may not coerce the offering of a gift from a subordinate.

### § 2635.303  Definitions.

For purposes of this subpart, the following definitions apply:

(a) *Gift* has the meaning set forth in § 2635.203(b). For purposes of that definition an employee will be deemed to have paid market value for any benefit received as a result of participating in a carpool or other such mutual arrangement between employees if the employee bears a fair proportion of the expense or effort involved.

(b) *Indirectly,* for purposes of § 2635.302(b), has the meaning set forth in § 2635.203(f). For purposes of § 2635.302(a), it includes a gift:

(1) Given with the employee's knowledge and acquiescence by the employee's parent, sibling, spouse, child, or dependent relative; or

(2) Given by a person other than the employee when circumstances indicate that the employee has promised or agreed to reimburse that person or to give that person something of value in exchange for giving the gift.

(c) *Market value* has the meaning set forth in § 2635.203(c), subject to paragraph (a) of this section.

(d) *Official superior* means any other employee, other than the President and the Vice President, including but not limited to an immediate supervisor, whose official responsibilities include directing or evaluating the performance of the employee's official duties or those of any other official superior of the employee. For purposes of this subpart, employees are considered to be the subordinates of any of their official superiors.

(e) *Solicit* means to request contributions by personal communication or by general announcement.

(f) *Voluntary contribution* means a contribution given freely, without

pressure or coercion. A contribution is not voluntary unless it is made in an amount determined by the contributing employee, except that when an amount for a gift is included in the cost for a luncheon, reception, or similar event, an employee who freely chooses to pay a proportionate share of the total cost in order to attend will be deemed to have made a voluntary contribution. Except in the case of contributions for a gift included in the cost of a luncheon, reception, or similar event, a statement that an employee may choose to contribute less or not at all must accompany any recommendation of an amount to be contributed for a gift to an official superior.

*Example 1 to paragraph (f):* A supervisory employee of the Agency for International Development has just been reassigned from Washington, DC, to a foreign duty location. As a farewell party, 12 subordinates have decided to take the supervisory employee out to lunch at a restaurant. It is understood that the employees will pay for their own meals and that the cost of the supervisor's lunch will be divided equally among the 12. Even though the amount they will contribute is not determined until the supervisor orders lunch, the contribution made by those who choose to participate in the farewell lunch is voluntary.

### § 2635.304  Exceptions.

The prohibitions set forth in § 2635.302(a) and (b) do not apply to a gift given or accepted under the circumstances described in paragraph (a) or (b) of this section. A contribution or the solicitation of a contribution that would otherwise violate the prohibitions set forth in § 2635.302(a) and (b) may only be made in accordance with paragraph (c) of this section.

(a) *General exceptions.* On an occasional basis, including any occasion on which gifts are traditionally given or exchanged, the following may be given to an official superior or accepted from a subordinate or an employee receiving less pay:

(1) Items, other than cash, with an aggregate market value of $10 or less per occasion;

(2) Items such as food and refreshments to be shared in the office among several employees;

(3) Personal hospitality provided at a residence which is of a type and value customarily provided by the employee to personal friends;

(4) Items given in connection with the receipt of personal hospitality if of a type and value customarily given on such occasions; and

(5) Unless obtained in violation of § 630.912 of this title, leave transferred under subpart I of part 630 of this title to an employee who is not an immediate supervisor.

*Example 1 to paragraph (a):* Upon returning to work following a vacation at the beach, a claims examiner with the Department of Veterans Affairs may give their supervisor, and the supervisor may accept, a bag of saltwater taffy purchased on the boardwalk for $8.

*Example 2 to paragraph (a):* An employee of the Federal Deposit Insurance Corporation whose bank examination responsibilities require frequent travel may not bring their supervisor, and the supervisor may not accept, souvenir coffee mugs from each of the cities the employee visits in the course of performing examination duties, even though each of the mugs costs less than $5. Gifts given on this basis are not occasional.

*Example 3 to paragraph (a):* The Secretary of Labor has invited the agency's General Counsel to a home dinner party. The General Counsel may bring a $15 bottle of wine to the dinner party and the Secretary may accept this customary gift from the subordinate, even though its cost is in excess of $10.

*Example 4 to paragraph (a):* For the holidays, an assistant may give their supervisor, and the supervisor may accept, a small succulent plant purchased for $10 or less. The assistant may also invite the supervisor to a New Year's Eve party in their home and the supervisor may attend.

(b) *Special, infrequent occasions.* A gift appropriate to the occasion may be given to an official superior or accepted from a subordinate or other employee receiving less pay:

(1) In recognition of infrequently occurring occasions of personal significance such as marriage, illness, bereavement, or the birth or adoption of a child; or

(2) Upon occasions that terminate a subordinate-official superior relationship, such as retirement, resignation, or transfer.

*Example 1 to paragraph (b):* The administrative assistant to the personnel director of the Tennessee Valley Authority may send a $30 floral arrangement to the personnel director who is in the hospital recovering from surgery. The personnel director may accept the gift.

*Example 2 to paragraph (b):* A chemist employed by the Food and Drug Administration has been invited to the wedding of the lab director who is an official superior. The chemist may give the lab director and the lab director's spouse, and the couple may accept, a

place setting in the couple's selected china pattern purchased for $70.

*Example 3 to paragraph (b):* Upon the occasion of the supervisor's retirement from Federal service, an employee of the Fish and Wildlife Service may give the supervisor a book of wildlife photographs purchased for $19. The retiring supervisor may accept the book.

*Example 4 to paragraph (b):* An economist at the Consumer Financial Protection Bureau overhears their supervisor talking about their upcoming 50th birthday. Although a 50th birthday may be conventionally seen as a unique "milestone" worthy of additional celebration, the employee may not give their supervisor a $25 bottle of wine as a present because a birthday is not an infrequently occurring occasion.

(c) *Voluntary contributions.* (1) An employee may solicit voluntary contributions of nominal amounts from fellow employees for an appropriate gift to an official superior and an employee may make a voluntary contribution of a nominal amount to an appropriate gift to an official superior:

(i) On a special, infrequent occasion as described in paragraph (b) of this section; or

(ii) On an occasional basis, for items such as food and refreshments to be shared in the office among several employees.

(2) An employee may accept such gifts to which a subordinate or an employee receiving less pay has voluntarily contributed pursuant to paragraph (c)(1) of this section.

*Example 1 to paragraph (c):* To mark the occasion of retirement, members of the immediate staff of the Under Secretary of the Army would like to throw a party and provide the Under Secretary with a gift certificate. They may distribute an announcement of the party and list a nominal amount for a retirement gift as a suggested voluntary contribution for the party.

*Example 2 to paragraph (c):* An employee of the National Endowment for the Arts may not collect contributions for a Christmas gift for the Chairman. Christmas occurs annually and is not an occasion of personal significance.

*Example 3 to paragraph (c):* Subordinates may not take up a collection for a gift to an official superior on the occasion of the superior's swearing in or promotion to a higher grade position within the supervisory chain of that organization. These are not events that mark the termination of the subordinate-official superior relationship, nor are they events of personal significance within the meaning of § 2635.304(b). However,

subordinates may take up a collection and employees may contribute a nominal amount to buy refreshments to be consumed by everyone in the immediate office to mark either such occasion.

*Example 4 to paragraph (c):* Subordinates may each contribute a nominal amount to a fund to give a gift to an official superior upon the occasion of that superior's transfer or promotion to a position outside the organization.

*Example 5 to paragraph (c):* An Assistant Secretary at the Department of the Interior is getting married. The Assistant Secretary's assistant has decided that a microwave oven would be a nice gift from the staff and has informed each of the Assistant Secretary's subordinates that they should contribute $5 for the gift. The assistant's method of collection is improper. Although it is permissible to recommend a $5 contribution, the recommendation must be coupled with a statement that the employee whose contribution is solicited is free to contribute less or nothing at all.

## Subpart D—Conflicting Financial Interests

### § 2635.401    Overview.

Part 2640 of this chapter interprets and is the implementing regulation for 18 U.S.C. 208. This subpart summarizes the relevant statutory restrictions and some of the regulatory guidance found there. Specifically, this subpart contains two provisions relating to financial interests. One is a recusal requirement and the other is a prohibition on acquiring or continuing to hold specific financial interests. An employee may acquire or hold any financial interest not prohibited by § 2635.403. Notwithstanding that the acquisition or holding of a particular interest is proper, an employee is prohibited in accordance with § 2635.402 from participating in an official capacity in any particular matter in which, to the employee's knowledge, the employee or any person whose interests are imputed to the employee has a financial interest, if the particular matter will have a direct and predictable effect on that interest.

### § 2635.402    Disqualifying financial interests.

(a) *Statutory prohibition.* An employee is prohibited by criminal statute, 18 U.S.C. 208(a), from participating personally and substantially in an official capacity in any particular matter in which, to the employee's knowledge, the employee or any person whose interests are imputed to the employee under this statute has

a financial interest, if the particular matter will have a direct and predictable effect on that interest.

Note 1 to paragraph (a): Standards applicable when seeking non-Federal employment are contained in subpart F of this part and, if followed, will ensure that an employee does not violate 18 U.S.C. 208(a) or this section when the employee is negotiating for or has an arrangement concerning future employment. In all other cases when the employee's participation would violate 18 U.S.C. 208(a), an employee must recuse from participating in the particular matter in accordance with paragraph (c) of this section or obtain a waiver or determine that an exemption applies, as described in paragraph (d) of this section.

(b) *Definitions.* For purposes of this section, the following definitions apply:

(1) *Direct and predictable effect.* (i) A particular matter will have a direct effect on a financial interest if there is a close causal link between any decision or action to be taken in the matter and any expected effect of the matter on the financial interest. An effect may be direct even though it does not occur immediately. A particular matter will not have a direct effect on a financial interest, however, if the chain of causation is attenuated or is contingent upon the occurrence of events that are speculative or that are independent of, and unrelated to, the matter. A particular matter that has an effect on a financial interest only as a consequence of its effects on the general economy does not have a direct effect within the meaning of this subpart.

(ii) A particular matter will have a predictable effect if there is a real, as opposed to a speculative possibility that the matter will affect the financial interest. It is not necessary, however, that the magnitude of the gain or loss be known, and the dollar amount of the gain or loss is immaterial.

Note 2 to paragraph (b)(1): If a particular matter involves a specific party or parties, generally the matter will at most only have a direct and predictable effect, for purposes of this subpart, on a financial interest of the employee in or with a party, such as the employee's interest by virtue of owning stock. There may, however, be some situations in which, under the above standards, a particular matter will have a direct and predictable effect on an employee's financial interests in or with a nonparty. For example, if a party is a corporation, a particular matter may also have a direct and predictable effect on an employee's financial interests through ownership of stock in an affiliate, parent, or subsidiary of that party. Similarly, the disposition of a protest against the award of a contract to a particular company may also have a direct and predictable effect on an employee's financial interest in another company listed as a subcontractor in the proposal of one of the competing offerors.

*Example 1 to paragraph (b)(1):* An employee of the National Library of Medicine at the National Institutes of Health has just been asked to serve on the technical evaluation panel to review proposals for a new library computer search system. DEF Computer Corporation, a closely held company in which the employee and their spouse own a majority of the stock, has submitted a proposal. Because award of the systems contract to DEF or to any other offeror will have a direct and predictable effect on the financial interests of both the employee and the spouse, the employee cannot participate on the technical evaluation team unless this disqualification has been waived.

*Example 2 to paragraph (b)(1):* Upon assignment to the technical evaluation panel, the employee in the preceding example finds that DEF Computer Corporation has not submitted a proposal. Rather, LMN Corp., with which DEF competes for private sector business, is one of the six offerors. The employee need not recuse from serving on the technical evaluation panel. Any effect on the employee's financial interests as a result of the agency's decision to award or not award the systems contract to LMN would be at most indirect and speculative.

(2) *Imputed interests.* For purposes of 18 U.S.C. 208(a) and this subpart, the financial interests of the following persons will require the recusal of an employee to the same extent as if they were the employee's own interests:

(i) The employee's spouse;

(ii) The employee's minor child;

(iii) The employee's general partner;

(iv) An organization or entity which the employee serves as officer, director, trustee, general partner, or employee; and

(v) A person with whom the employee is negotiating for or has an arrangement concerning prospective employment. (Employees who are seeking other employment should refer to and comply with the standards in subpart F of this part.)

*Example 1 to paragraph (b)(2):* An employee of the Department of Education serves without compensation on the board of directors of Kinder World, Inc., a nonprofit corporation that engages in good works. Even though the employee's personal financial interests will not be affected, the employee must recuse from participating in the review of a grant application submitted by Kinder World. Award or denial of the grant will affect the financial interests of Kinder World and its financial interests are imputed to the employee as a member of its board of directors.

*Example 2 to paragraph (b)(2):* The spouse of an employee of the Food and Drug Administration has obtained a position with a well-established biomedical research company. The company has developed an artificial limb for which it is seeking FDA approval and the employee would ordinarily be asked to participate in the FDA's review and approval process. The spouse is a salaried employee of the company and has no stock or other direct or indirect ownership interest in the company. The spouse's position with the company is such that the granting or withholding of FDA approval will not have a direct and predictable effect on their salary or continued employment with the company. Because the FDA approval process will not affect the spouse's financial interests, § 2635.402 does not require the employee to recuse from participating in that process. Nevertheless, because the impartiality principle is implicated as a result of the employee's covered relationship with the spouse's employer, as identified at § 2635.502(b)(1)(iii), the employee must follow the procedures established in § 2635.502 before participating in the FDA's review and approval process.

(3) *Particular matter.* The term particular matter encompasses only matters that involve deliberation, decision, or action that is focused upon the interests of specific persons, or a discrete and identifiable class of persons. Such a matter is covered by this subpart even if it does not involve formal parties and may include governmental action such as legislation or policy-making that is narrowly focused on the interests of such a discrete and identifiable class of persons. The term particular matter, however, does not extend to the consideration or adoption of broad policy options that are directed to the interests of a large and diverse group of persons. The particular matters covered by this subpart include a judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, or arrest.

*Example 1 to paragraph (b)(3):* The Internal Revenue Service's amendment of its regulations to change the manner in which depreciation is calculated is not a particular matter, nor is the Social Security Administration's consideration of changes to its appeal procedures for disability claimants.

*Example 2 to paragraph (b)(3):* Consideration by the Surface Transportation Board of regulations establishing safety standards for trucks on interstate highways involves a particular matter.

(4) *Personal and substantial.* To participate personally means to participate directly. It includes the direct and active supervision of the participation of a subordinate in the matter. To participate substantially means that the employee's involvement is of significance to the matter. Participation may be substantial even though it is not determinative of the outcome of a particular matter. However, it requires more than official responsibility, knowledge, perfunctory involvement, or involvement on an administrative or peripheral issue. A finding of substantiality should be based not only on the effort devoted to a matter, but also on the importance of the effort. While a series of peripheral involvements may be insubstantial, the single act of approving or participating in a critical step may be substantial. Personal and substantial participation may occur when, for example, an employee participates through decision, approval, disapproval, recommendation, investigation, or the rendering of advice in a particular matter.

(c) *Recusal.* Unless the employee is authorized to participate in the particular matter by virtue of a waiver or exemption described in paragraph (d) of this section or because the interest has been divested in accordance with paragraph (e) of this section, an employee must recuse from participating in a particular matter in which, to the employee's knowledge, the employee or a person whose interests are imputed to the employee has a financial interest, if the particular matter will have a direct and predictable effect on that interest. Recusal is accomplished by not participating in the particular matter.

(1) *Notification.* Employees who become aware of the need to recuse from participating in a particular matter to which they have been assigned must take whatever steps are necessary to ensure that they do not participate in the matter. Appropriate oral or written notification of their recusal may be made to an agency ethics official, coworkers, or a supervisor to document and help effectuate the recusal. Public filers as defined in subpart F of this part must comply with additional notification requirements set forth in § 2635.607 regarding negotiations for or agreement of future employment or compensation.

(2) *Documentation.* Employees need not file written recusal statements unless they are required by part 2634 of this chapter to file written evidence of compliance with an ethics agreement

with the Office of Government Ethics or a designated agency ethics official, or are specifically directed by an agency ethics official or the person responsible for their assignments to file written recusal statements. However, it is often prudent for employees to create a record of their actions by providing written notice to an agency ethics official, a supervisor, or other appropriate official. In addition, public filers as defined in subpart F of this part must comply with the documentation requirements set forth in § 2635.607 regarding negotiations for or agreement of future employment or compensation.

*Example 1 to paragraph (c):* An Assistant Secretary of the Department of the Interior owns recreational property that borders on land which is being considered for annexation to a national park. Annexation would directly and predictably increase the value of the Assistant Secretary's vacation property and, thus, the Assistant Secretary must recuse from participating in any way in the Department's deliberations or decisions regarding the annexation. Because the Assistant Secretary is responsible for determining their own work assignments, they may accomplish their recusal merely by ensuring that they do not participate in the particular matter. Because of the level of their position, however, the Assistant Secretary might be wise to establish a record that they have acted properly by providing a written recusal statement to an official superior and by providing written notification of the recusal to subordinates to ensure that they do not raise or discuss any issues related to the annexation with the Assistant Secretary.

(d) *Waiver of or exemptions from recusal requirement.* An employee who would otherwise be required to recuse under 18 U.S.C. 208(a) may be permitted to participate in a particular matter if the financial interest that would otherwise require recusal is the subject of a regulatory exemption or individual waiver described in this paragraph, or results from certain Indian birthrights as described in 18 U.S.C. 208(b)(4).

(1) *Regulatory exemptions.* Under 18 U.S.C. 208(b)(2), regulatory exemptions of general applicability have been issued by the Office of Government Ethics, based on its determination that particular interests are too remote or too inconsequential to affect the integrity of the services of employees to whom those exemptions apply. See part 2640, subpart B of this chapter.

(2) *Individual waivers.* An individual waiver enabling the employee to participate in one or more particular matters may be issued under 18 U.S.C.

208(b)(1) if, in advance of the employee's participation:

(i) The employee:

(A) Advises the Government official responsible for the employee's appointment (or other Government official to whom authority to issue such a waiver for the employee has been delegated) about the nature and circumstances of the particular matter or matters; and

(B) Makes full disclosure to such official of the nature and extent of the relevant financial interest; and

(ii) Such official determines, in writing, that the employee's financial interest in the particular matter or matters is not so substantial as to be deemed likely to affect the integrity of the services which the Government may expect from such employee. See part 2640, subpart C of this chapter (providing additional guidance).

(3) *Federal advisory committee member waivers.* An individual waiver may be issued under 18 U.S.C. 208(b)(3) to a special Government employee serving on, or under consideration for appointment to, an advisory committee within the meaning of the Federal Advisory Committee Act if the Government official responsible for the employee's appointment (or other Government official to whom authority to issue such a waiver for the employee has been delegated):

(i) Reviews the financial disclosure report filed by the special Government employee pursuant to 5 U.S.C. chapter 131; and

(ii) Certifies in writing that the need for the individual's services outweighs the potential for a conflict of interest created by the relevant financial interest. See part 2640, subpart C of this chapter (providing additional guidance).

(4) *Consultation and notification regarding waivers.* When practicable, an official is required to consult formally or informally with the Office of Government Ethics prior to granting a waiver referred to in paragraph (d)(2) or (3) of this section. A copy of each such waiver is to be forwarded to the Director of the Office of Government Ethics.

(e) *Divestiture of a disqualifying financial interest.* Upon sale or other divestiture of the asset or other interest that would otherwise require the employee to recuse from participating in a particular matter, 18 U.S.C. 208(a) and paragraph (c) of this section will no longer prohibit the employee's participation in the matter.

(1) *Voluntary divestiture.* An employee who would otherwise be required to recuse from participating in a particular matter may voluntarily sell

or otherwise divest the interest that create the recusal requirement.

(2) *Directed divestiture.* An employee may be required to sell or otherwise divest the disqualifying financial interest if the continued holding of that interest is prohibited by statute or by agency supplemental regulation issued in accordance with § 2635.403(a), or if the agency determines in accordance with § 2635.403(b) that a substantial conflict exists between the financial interest and the employee's duties or accomplishment of the agency's mission.

(3) *Eligibility for special tax treatment.* An employee who is directed to divest an interest may be eligible to defer the tax consequences of divestiture under part 2634, subpart J of this chapter. An employee who divests before obtaining a certificate of divestiture will not be eligible for this special tax treatment.

(f) *Official duties that give rise to potential conflicts.* When their official duties create a substantial likelihood that they may be assigned to a particular matter from which they would be required to recuse, employees should advise their supervisors or other persons responsible for their assignments of that potential so that conflicting assignments can be avoided, consistent with the agency's needs.

### § 2635.403  Prohibited financial interests.

An employee may not acquire or hold any financial interest that agency employees are prohibited from acquiring or holding by statute, by agency regulation issued in accordance with paragraph (a) of this section, or by reason of an agency determination of substantial conflict under paragraph (b) of this section.

Note 1 to § 2635.403: There is no statute of Governmentwide applicability prohibiting employees from holding or acquiring any financial interest. Statutory restrictions, if any, are contained in agency statutes which, in some cases, may be implemented by agency regulations issued independent of this part.

(a) *Agency regulation prohibiting certain financial interests.* An agency may, by supplemental agency regulation, prohibit or restrict the acquisition or holding of a financial interest or a class of financial interests by agency employees, or any category of agency employees, and the spouses and minor children of those employees, based on the agency's determination that the acquisition or holding of such financial interests would cause a reasonable person to question the impartiality and objectivity with which agency programs are administered.

When the agency restricts or prohibits the holding of certain financial interests by its employees' spouses or minor children, any such prohibition or restriction must be based on a determination that there is a direct and appropriate nexus between the prohibition or restriction as applied to spouses and minor children and the efficiency of the service.

(b) *Agency determination of substantial conflict.* An agency may prohibit or restrict an individual employee from acquiring or holding a financial interest or a class of financial interests based upon the agency designee's determination that the holding of such interest or interests will:

(1) Require the employee to recuse from particular matters so central or critical to the performance of the employee's official duties that their ability to perform the duties of their position would be materially impaired; or

(2) Adversely affect the efficient accomplishment of the agency's mission because another employee cannot be readily assigned to perform work from which the employee would be recused by reason of the financial interest.

*Example 1 to paragraph (b):* An Air Force employee who owns $33,778 of stock in a major aircraft engine manufacturer is being considered for promotion to a position that involves responsibility for development of a new fighter airplane. If the agency determined that engineering and other decisions about the Air Force's requirements for the fighter would directly and predictably affect the employee's financial interests, the employee could not, by virtue of 18 U.S.C. 208(a), perform these significant duties of the position while retaining stock in the company. The agency can require the employee to sell the stock as a condition of being selected for the position rather than allowing the employee to recuse from particular matters.

(c) *Definition of financial interest.* For purposes of this section:

(1) Except as provided in paragraph (c)(2) of this section, the term financial interest is limited to financial interests that are owned by the employee or by the employee's spouse or minor children. However, the term is not limited to only those financial interests that would require the employee to recuse under 18 U.S.C. 208(a) and § 2635.402. The term includes any current or contingent ownership, equity, or security interest in real or personal property or a business, and may include an indebtedness or compensated employment relationship. It thus includes, for example, interests in the nature of stocks, bonds, partnership interests, fee and leasehold interests, mineral and other property rights, deeds of trust, and liens, and extends to any right to purchase or acquire any such interest, such as a stock option or commodity future. It does not include a future interest created by someone other than the employee, the employee's spouse, or minor child, or any right as a beneficiary of an estate that has not been settled.

*Example 1 to paragraph (c)(1):* A regulatory agency has concluded that ownership by its employees of stock in entities regulated by the agency would significantly diminish public confidence in the agency's performance of its regulatory functions and thereby interfere with the accomplishment of its mission. In its supplemental agency regulations, the agency may prohibit its employees from acquiring or continuing to hold stock in regulated entities.

*Example 2 to paragraph (c)(1):* An agency that insures bank deposits may, by supplemental agency regulation, prohibit its employees who are bank examiners from obtaining loans from banks they examine. Examination of a member bank could have no effect on an employee's fixed obligation to repay a loan from that bank and, thus, would not affect an employee's financial interests so as to require recusal under § 2635.402. Nevertheless, a loan from a member bank is a discrete financial interest within the meaning of § 2635.403(c) that may, when appropriate, be prohibited by supplemental agency regulation.

(2) The term financial interest includes service, with or without compensation, as an officer, director, trustee, general partner, or employee of any person, including a nonprofit entity, whose financial interests are imputed to the employee under § 2635.402(b)(2)(iii) or (iv).

*Example 1 to paragraph (c)(2):* The Foundation for the Preservation of Wild Horses maintains herds of horses that graze on public and private lands. Because its costs are affected by Federal policies regarding grazing permits, the Foundation routinely comments on all proposed rules governing use of Federal grasslands issued by the Bureau of Land Management (BLM). BLM may require an employee to resign from their uncompensated position as Vice President of the Foundation as a condition of a promotion to a policy-level position within the Bureau rather than allowing the employee to rely on recusal in particular cases.

(d) *Reasonable period to divest or terminate.* Whenever an agency directs divestiture of a financial interest under paragraph (a) or (b) of this section, the employee will be given a reasonable period of time, considering the nature of their particular duties and the nature and marketability of the interest, within which to comply with the agency's direction. Except in cases of unusual hardship, as determined by the agency, a reasonable period must not exceed 90 days from the date divestiture is first directed. However, as long as the employee continues to hold the financial interest, all restrictions imposed by this subpart remain applicable.

(e) *Eligibility for special tax treatment.* Employees required to sell or otherwise divest a financial interest may be eligible to defer the tax consequences of divestiture under part 2634, subpart J of this chapter.

## Subpart E—Impartiality in Performing Official Duties

### § 2635.501 Overview.

(a) *Scope.* This subpart is intended to ensure that employees take appropriate steps to avoid an appearance of loss of impartiality in the performance of their official duties in circumstances other than those covered by the criminal conflict of interest statute, 18 U.S.C. 208(a).

(1) The provisions of § 2635.502 are designed to help employees identify and take appropriate steps regarding their participation in particular matters involving specific parties that may cause a reasonable person with knowledge of the relevant facts to question their impartiality. Employees and agencies should analyze such appearance issues, and employees may receive authorization to participate in such matters, using the procedures in this subpart.

(2) Under § 2635.503, an employee who has received a covered payment from a former employer is subject, in the absence of a waiver pursuant to § 2635.503(c), to a two-year period of recusal from participating in particular matters in which that former employer is or represents a party.

(3) An employee is prohibited by 18 U.S.C. 208(a) from participating personally and substantially in an official capacity in any particular matter in which, to the employee's knowledge, the employee has a personal or imputed financial interest, if the particular matter will have a direct and predictable effect on that interest. Section 208(a), its interpreting and implementing regulations under part 2640 of this chapter, and the regulations at subparts D and F of this part, apply when the

particular matter would affect the financial interests of one of these persons.

(b) *Distinction between authorizations under this subpart and waivers and exemptions under 18 U.S.C. 208.*

(1) When an employee's participation in a particular matter involving specific parties would raise a question in the mind of a reasonable person about the employee's impartiality, but would not violate 18 U.S.C. 208(a), the agency designee may make a determination, as explained in § 2635.502(d), and authorize the employee to participate in the matter.

(2) When the employee's participation in a particular matter would affect any one of the financial interests described in 18 U.S.C. 208(a), only a statutory waiver or exemption, as described in §§ 2635.402(d) and 2635.605(a), will enable the employee to participate in that matter. The specific requirements for regulatory exemptions and statutory waivers are contained in subparts B and C of part 2640 of this chapter.

(3) An applicable waiver or exemption under part 2640 of this chapter also authorizes an employee's participation in particular matters that would otherwise be restricted by § 2635.502. Specifically, if an employee meets all prerequisites for the application of one of the regulatory exemptions set forth in part 2640, subpart B of this chapter, that constitutes a determination that the interest of the Government in the employee's participation in a particular matter outweighs the concern that a reasonable person may question the integrity of agency programs and operations. Similarly, if the employee complies with all terms of a statutory waiver granted pursuant to part 2640, subpart C of this chapter, that also constitutes a determination that the interest of the Government in the employee's participation in a particular matter outweighs the concern that a reasonable person may question the integrity of agency programs and operations. In such cases, the employee is not required to recuse under § 2635.502(e) or request authorization to participate under § 2635.502(d).

**Note 1 to § 2635.501:** Even if the employee or agency designee determines that this subpart is not applicable, the employee's supervisor or other individuals responsible for assigning work to the employee may decide not to assign certain work to the employee for other reasons, including to address appearance and impartiality concerns not covered by this subpart.

## § 2635.502 Personal and business relationships.

(a) *Consideration of appearances by the employee.* In considering whether any of the following would cause a reasonable person to question their impartiality, employees may seek the assistance of their supervisor, an agency ethics official, or the agency designee.

(1) When an employee knows that a particular matter involving specific parties is likely to have a direct and predictable effect on the financial interest of a member of the employee's household, and the employee determines that the circumstances would cause a reasonable person with knowledge of the relevant facts to question the employee's impartiality in the matter, the employee should not participate in the matter unless the employee has received a determination from the agency designee regarding the appearance problem in accordance with paragraph (c) of this section or received an authorization from the agency designee in accordance with paragraph (d) of this section.

(2) When an employee knows that a person with whom the employee has a covered relationship is or represents a party to a particular matter involving specific parties, and the employee determines that the circumstances would cause a reasonable person with knowledge of the relevant facts to question their impartiality in the matter, the employee should not participate in the matter unless the employee has received a determination from the agency designee regarding the appearance problem in accordance with paragraph (c) of this section or received an authorization from the agency designee in accordance with paragraph (d) of this section.

(3) Employees who are concerned that circumstances other than those specifically described in paragraphs (a)(1) and (2) of this section would raise a question regarding their impartiality should use the process described in this section to determine whether they should not participate in a particular matter.

(b) *Definitions.* For purposes of this section:

(1) An employee has a *covered relationship* with:

(i) A person, other than a prospective employer described in § 2635.603(c), with whom the employee has or seeks a business, contractual, or other financial relationship that involves other than a routine consumer transaction;

**Note 1 to paragraph (b)(1)(i):** An employee who is seeking employment within the meaning of § 2635.603 must comply with subpart F of this part rather than with this section.

(ii) A person who is a member of the employee's household, or who is a relative with whom the employee has a close personal relationship;

(iii) A person for whom the employee's spouse, parent, or child is, to the employee's knowledge, serving or seeking to serve as an officer, director, trustee, general partner, agent, attorney, consultant, contractor, or employee;

(iv) Any person for whom the employee has, within the last year, served as officer, director, trustee, general partner, agent, attorney, consultant, contractor, or employee; or

(v) An organization, other than a political party described in 26 U.S.C. 527(e), in which the employee is an active participant. Participation is active if, for example, it involves service as an official of the organization or in a capacity similar to that of a committee or subcommittee chairperson or spokesperson, or participation in directing the activities of the organization. In other cases, significant time devoted to promoting specific programs of the organization, including coordination of fundraising efforts, is an indication of active participation. Payment of dues or the donation or solicitation of financial support does not, in itself, constitute active participation.

**Note 2 to § 2635.502:** Nothing in this section should be construed to suggest that employees should not participate in a matter because of their political, religious, or moral views.

(2) *Direct and predictable effect* has the meaning set forth in § 2635.402(b)(1).

(3) *Particular matter involving specific parties* has the meaning set forth in § 2640.102(*l*) of this chapter.

*Example 1 to paragraph (b):* An employee of the General Services Administration (GSA) has made an offer to purchase a restaurant owned by a local developer. The developer has submitted an offer in response to a GSA solicitation for the lease of office space. Under the circumstances, the GSA employee would be correct in concluding that a reasonable person would be likely to question their impartiality if they were to participate in evaluating that developer's or its competitor's lease proposal.

*Example 2 to paragraph (b):* An employee of the Department of Labor is providing technical assistance in drafting occupational safety and health legislation that will affect all employers of five or more persons. The employee's

spouse is employed as an administrative assistant by a large corporation that will incur additional costs if the proposed legislation is enacted. Because the legislation is not a particular matter involving specific parties, the employee may continue to work on the legislation and need not be concerned that the spouse's employment with an affected corporation would raise a question concerning the employee's impartiality.

*Example 3 paragraph (b):* An employee of the Bureau of Land Management (BLM) is studying environmental problems created by the use of hazardous substances on a particular section of public land. BLM has a contract with an environmental services company to produce a water quality study of the groundwater under this section of land along with a recommendation about how to remediate any problems that are found. The BLM employee will use the study to help determine the extent of the damage and to recommend a solution to any problems that are revealed. The employee's parent has accepted a job with this environmental services company, and will be signing and submitting the report of the company's findings. Under these circumstances, the employee would be correct in concluding that a reasonable person would be likely to question their impartiality if they were to continue participating in the study related to this parcel of public land.

*Example 4 to paragraph (b):* An engineer has just resigned from a position as vice president of an electronics company in order to accept employment with the Federal Aviation Administration (FAA) in a position involving procurement responsibilities. Although the employee did not receive a covered payment in connection with the resignation and has severed all financial ties with the firm, under the circumstances the employee would be correct in concluding that this former service as an officer of the company would be likely to cause a reasonable person to question their impartiality if they were to participate in the administration of an FAA contract for which the firm is a first-tier subcontractor.

*Example 5 to paragraph (b):* An employee of the Internal Revenue Service (IRS) is a member of a private organization whose purpose is to restore a Victorian-era railroad station, and chairs its annual fundraising drive. Under the circumstances, the employee would be correct in concluding that this active membership in the organization would be likely to cause a reasonable person to question their impartiality if

they were to participate in an IRS determination regarding the tax-exempt status of the organization.

*Example 6 to paragraph (b):* An employee of the Department of Defense (DoD) has responsibility for testing avionics produced by a large Air Force contractor. The employee just learned that their parent accepted a staff position in the human resources division of that contractor. Although the DoD employee has a covered relationship with the contractor that employs their parent, the employee could justifiably conclude that a reasonable person would not be likely to question their impartiality because the parent's work is unrelated to the avionics contract.

*Example 7 to paragraph (b):* An employee of the Department of Defense (DoD) leads the office that is testing a new type of jet engine produced by a multinational conglomerate's aviation division. The employee's lifelong best friend is the head of the conglomerate's aviation division, and is responsible for presenting and promoting the new jet engine. Although the DoD employee does not have a covered relationship under § 2635.502(b)(1), the employee is concerned that, under § 2635.502(a)(3), questions regarding their impartiality could be raised. Here, the employee could justifiably conclude that a reasonable person would be likely to question their impartiality if they were to continue performing duties related to this jet engine.

(c) *Determination by agency designee.* (1) When the agency designee has information concerning a potential appearance problem arising from: (i) the financial interest of a member of the employee's household in a particular matter involving specific parties or (ii) a particular matter involving specific parties in which a person with whom the employee has a covered relationship is a party or represents a party, the agency designee may make an independent determination as to whether a reasonable person with knowledge of the relevant facts would be likely to question the employee's impartiality in the matter. Ordinarily, the agency designee's determination will be initiated by information provided by the employee pursuant to paragraph (a) of this section. However, at any time, including after an employee has recused from participating in a particular matter pursuant to paragraph (e) of this section, agency designees may make this determination on their own initiative or when requested by the employee's supervisor or any other person responsible for the employee's assignment.

(2) If the agency designee determines that the employee's impartiality is likely to be questioned, the agency designee must then determine, in accordance with paragraph (d) of this section, whether the employee should be authorized to participate in the matter. If the agency designee determines that the employee's participation should not be authorized, the employee must recuse from participating in the particular matter in accordance with paragraph (e) of this section.

(3) If the agency designee determines that the employee's impartiality is not likely to be questioned, the agency designee may advise the employee, including an employee who has reached a contrary conclusion under paragraph (a) of this section, that the employee's participation in the matter would be proper.

(d) *Authorization by agency designee.* When an employee's participation in a particular matter involving specific parties would not violate 18 U.S.C. 208(a), but would raise a question in the mind of a reasonable person about the employee's impartiality, the agency designee may authorize the employee to participate in the matter based on a determination, made in light of all relevant circumstances, that the interest of the Government in the employee's participation outweighs the concern that a reasonable person may question the integrity of the agency's programs and operations.

(1) Factors which may be taken into consideration include:

(i) The nature of the relationship involved;

(ii) The effect that resolution of the matter would have upon the financial interests of the person involved in the relationship;

(iii) The nature and importance of the employee's role in the matter, including the extent to which the employee is called upon to exercise discretion in the matter;

(iv) The sensitivity of the matter;

(v) The difficulty of reassigning the matter to another employee; and

(vi) Adjustments that may be made in the employee's duties that would reduce or eliminate the likelihood that a reasonable person would question the employee's impartiality.

(2) Authorization by the agency designee will be documented in writing at the agency designee's discretion or when requested by the employee. An employee who has been authorized to participate in a particular matter involving specific parties may not thereafter recuse from participating in the matter on the basis of an appearance problem involving the same

circumstances that have been considered by the agency designee.

*Example 1 to paragraph (d):* The Deputy Director of Personnel for the Department of the Treasury and an attorney with the Department's Office of General Counsel are general partners in a real estate partnership. The Deputy Director advises their supervisor, the Director of Personnel, of the relationship upon being assigned to a selection panel for a position for which the partner has applied. If selected, the partner would receive a substantial increase in salary. The agency designee cannot authorize the Deputy Director to participate on the panel under the authority of this section because the Deputy Director is prohibited by criminal statute, 18 U.S.C. 208(a), from participating in a particular matter affecting the financial interest of a person who is their general partner. See § 2635.402.

*Example 2 paragraph (d):* A new employee of the Securities and Exchange Commission is assigned to an investigation of insider trading by the brokerage house where they have recently been employed. Because of the sensitivity of the investigation, the agency designee may be unable to conclude that the Government's interest in the employee's participation in the investigation outweighs the concern that a reasonable person may question the integrity of the investigation, even though the employee has severed all financial ties with the company. Based on consideration of all relevant circumstances, the agency designee might determine, however, that it is in the interest of the Government for the employee to participate in the review of a routine filing by the particular brokerage house.

*Example 3 paragraph (d):* An Internal Revenue Service employee involved in a long and complex tax audit learns that their child has just accepted an entry-level management position with a corporation whose taxes are the subject of the audit. Because the audit is essentially complete and because the employee is the only one with an intimate knowledge of the case, the agency designee might determine, after considering all relevant circumstances, that it is in the Government's interest for the employee to complete the audit, which is subject to additional levels of review.

(e) *Recusal.* Unless the employee is authorized to participate in the matter under paragraph (d) of this section, an employee may not participate in a particular matter involving specific parties when the employee or the agency designee has concluded, in

accordance with paragraph (a) or (c) of this section, that the financial interest of a member of the employee's household, or the role of a person with whom the employee has a covered relationship, is likely to raise a question in the mind of a reasonable person about the employee's impartiality. Recusal is accomplished by not participating in the matter. When the covered relationship is with a former employer, this recusal requirement is for a period of one year after the date of the employee's resignation from the position with the former employer.

(1) *Notification.* Employees who become aware of the need to recuse from participating in a particular matter involving specific parties to which they have been assigned must take whatever steps are necessary to ensure that they do not participate in the matter. Appropriate oral or written notification of their recusal may be made to an agency ethics official, coworkers, or a supervisor to document and help effectuate the recusal.

(2) *Documentation.* Employees need not file written recusal statements unless they are required by part 2634 of this chapter to file written evidence of compliance with an ethics agreement with the Office of Government Ethics or a designated agency ethics official, or are specifically directed by an agency ethics official or the person responsible for their assignments to file written recusal statements. However, it is often prudent for employees to create a record of their actions by providing written notice to an agency ethics official, a supervisor, or other appropriate official.

(f) *Irrelevant considerations.* An employee's reputation for honesty and integrity is not a relevant consideration for purposes of any determination required by this section.

## § 2635.503 Covered payments from former employers.

(a) *Recusal requirement.* Except as provided in paragraph (c) of this section, an employee must recuse for two years from participating in any particular matter involving specific parties in which the employee's former employer is a party or represents a party if the employee received a covered payment from that person. The two-year period of recusal begins to run on the date that the covered payment is received.

*Example 1 to paragraph (a):* Following confirmation hearings and one month before their scheduled swearing in, a nominee to the position of Assistant Secretary of a department received a covered payment from their employer. For one year and 11 months

after their swearing in, the Assistant Secretary may not participate in any particular matter to which the former employer is a party.

*Example 2 paragraph (a):* An employee received a covered payment from their former employer, a coal mine operator, prior to entering on duty with the Department of the Interior. For two years thereafter, the employee may not participate in a determination regarding the former employer's obligation to reclaim a particular mining site, because the former employer is a party to the matter. However, the employee may help to draft reclamation legislation affecting all coal mining operations because this legislation does not involve any parties.

*Example 3 to paragraph (a):* An architect accepts a position with the Army Corps of Engineers and resigns from a private architecture partnership. One month after beginning this new position, the architect receives a covered payment from the partnership. The architect may not participate in any particular matter involving specific parties in which the former partnership is a party until two years after receipt of the covered payment, which will be 25 months after beginning service with the Corps. Because the payment was not received before the architect became an Executive Branch employee, agency ethics officials must also review the payment to determine whether it constituted a supplementation of salary under 18 U.S.C. 209.

(b) *Definitions.* For purposes of this section, the following definitions apply:

(1) *Covered payment* means any item, including cash or an investment interest, with a value in excess of $10,000, which is paid:

(i) On the basis of a determination made after it became known to the former employer that the individual was being considered for or had accepted a Government position; and

(ii) Other than pursuant to a qualifying program.

(2) *Qualifying program.*

(i) A qualifying program is:

(A) A compensation, partnership, or benefits program that is contained in bylaws, a contract, or other written form, and does not treat individuals entering Government service more favorably than other individuals; or

(B) A program that is not contained in written form, but is demonstrated by a history of similar payments made to others not entering Government service.

(ii)When a program is established in written form, any history of making similar payments to others not entering Government service that is contrary to an express provision of the written plan

is not relevant to the evaluation of whether it is a qualifying program.

*Example 1 to paragraph (b)(2):* The vice president of a small corporation is nominated to be an ambassador. In recognition of service to the corporation, the board of directors votes to pay the departing vice president $50,000 upon confirmation in addition to the regular severance payment provided for by the corporate bylaws. The regular severance payment is not a covered payment. The gratuitous payment of $50,000 is a covered payment, because the corporation had not made similar payments to other departing officers.

(3) *Former employer* includes any person which the employee served as an officer, director, general partner, agent, attorney, consultant, contractor, or employee. Payments from an officer, employee, or agent of a former employer will be considered to be payments from the former employer.

**Note 1 to paragraph (b)(3):** The definition of former employer includes former clients for whom an employee may have served as an agent, attorney, consultant, or contractor.

(c) *Waiver of recusal.* The recusal requirement of this section may be waived based on a finding that the amount of the payment was not so substantial as to cause a reasonable person to question the employee's ability to act impartially in a matter in which the former employer is or represents a party. The waiver must be in writing and may be given only by the head of the agency or, when the recipient of the payment is the head of the agency, by the President or the President's designee. Waiver authority may be delegated by the head of an agency to any person who has been delegated authority to issue individual waivers under 18 U.S.C. 208(b) for the employee who is the recipient of the covered payment.

## Subpart F—Seeking Other Employment

### § 2635.601 Overview.

This subpart contains a recusal requirement that applies to employees when seeking non-Federal employment with persons whose financial interests would be directly and predictably affected by particular matters in which the employees participate personally and substantially. Specifically, it addresses the requirement of 18 U.S.C. 208(a) that an employee not participate personally and substantially in any particular matter that, to the employee's knowledge, will have a direct and predictable effect on the financial interests of a person ''with whom the employee is negotiating or has any

arrangement concerning prospective employment.'' See §§ 2635.402 and 2640.103 of this chapter. Beyond this statutory requirement, this subpart also addresses issues of lack of impartiality that require recusal from particular matters affecting the financial interests of a prospective employer when an employee's actions in seeking employment fall short of actual employment negotiations. In addition, this subpart contains the statutory notification requirements that apply to public filers when they negotiate for or have agreements of future employment or compensation. Specifically, it addresses the requirements of section 17 of the Representative Louise McIntosh Slaughter Stop Trading on Congressional Knowledge Act (STOCK Act), Public Law 112–105, 126 Stat. 303, that a public filer must submit a written statement identifying the entity involved in the negotiations or agreement within three business days after commencement of such negotiations or agreement and must submit a notification of recusal whenever there is a conflict of interest or an appearance of a conflict of interest.

### § 2635.602 Applicability and related considerations.

(a) *Applicability.* (1) To ensure that an employee does not violate 18 U.S.C. 208(a), section 17 of the STOCK Act, or the principles of ethical conduct contained in § 2635.101(b), an employee who is seeking employment or who has an arrangement concerning prospective employment must comply with the applicable recusal requirements of §§ 2635.604 and 2635.606 if particular matters in which the employee will be participating personally and substantially would, to the employee's knowledge, directly and predictably affect the financial interests of a prospective employer or of a person with whom the employee has an arrangement concerning prospective employment. Compliance with this subpart also will ensure that the employee does not violate subpart D or E of this part. In addition, a public filer who negotiates for or has an agreement of future employment or compensation must comply with the requirements of § 2635.607.

(2) An employee who is seeking employment with a person whose financial interests are not, to the employee's knowledge, affected directly and predictably by particular matters in which the employee participates personally and substantially has no obligation to recuse under this subpart. In addition, nothing in this subpart

requires an employee, other than a public filer, to notify anyone that the employee is seeking employment unless a notification is necessary to implement a recusal pursuant to § 2635.604(b). A public filer who negotiates for or has an agreement of future employment or compensation must comply with the notification requirements in § 2635.607. An employee may, however, be subject to other statutes that impose requirements on employment contacts or discussions, such as 41 U.S.C. 2103, which is applicable to agency officials involved in certain procurement matters. Employees are encouraged to consult with their ethics officials if they have any questions about how this subpart may apply to them. Ethics officials are not obligated by this subpart to inform supervisors that employees are seeking employment.

*Example 1 to paragraph (a):* Recently, an employee of the Department of Education submitted a resume to the University of Delaware for a job opening. The employee has begun seeking employment. However, because the employee is not participating in any particular matters affecting the University of Delaware, there is no requirement that anyone be notified that the employee has begun seeking employment.

*Example 2 to paragraph (a):* The employee in the preceding example has been approached about an employment opportunity at the University of Maryland. Because the University of Maryland has applied for grants on which the employee has been assigned to work in the past, the employee wants to make certain that they do not violate the ethics rules. The employee contacts an ethics official to discuss the matter. The employee informs the ethics official that they are not currently participating in any particular matters affecting the University of Maryland. As a result, the ethics official advises the employee that they will have no notification obligations under this subpart. However, the ethics official cautions the employee that, if the employee is assigned to participate in a particular matter affecting the University of Maryland while they are seeking employment with the University, they must take whatever steps are necessary to avoid working on the grant, in accordance with § 2635.604.

(b) *Related restrictions—*(1) *Outside employment while a Federal employee.* An employee who is contemplating outside employment to be undertaken concurrently with the employee's Federal employment must abide by any limitations applicable to the employee's outside activities under subparts G and

H of this part, including any requirements under supplemental agency regulations to obtain prior approval before engaging in outside employment or activities and any prohibitions under supplemental agency regulations related to outside employment or activities. The employee must also comply with any applicable recusal requirement of this subpart, as well as any applicable recusal requirements under subpart D or E of this part as a result of the employee's outside employment activities.

(2) *Post-employment restrictions.* An employee who is contemplating employment to be undertaken following the termination of the employee's Federal employment should consult an agency ethics official to obtain advice regarding any post-employment restrictions that may be applicable. The regulation implementing the Governmentwide post-employment statute, 18 U.S.C. 207, is contained in part 2641 of this chapter. Employees are cautioned that they may be subject to additional statutory prohibitions on post-employment acceptance of compensation from contractors, such as 41 U.S.C. 2104.

(3) *Interview trips and entertainment.* When a prospective employer who is a prohibited source as defined in § 2635.203(d) offers to reimburse an employee's travel expenses, or provide other reasonable amenities incident to employment discussions, the employee may accept such amenities in accordance with § 2635.204(e)(3). When a prospective employer is a foreign government or international organization, the employee must also comply with the Foreign Gifts and Decorations Act, 5 U.S.C. 7342.

### § 2635.603   Definitions.

For purposes of this subpart:

(a) *Employment* means any form of non-Federal employment or business relationship involving the provision of personal services by the employee, whether to be undertaken at the same time as or subsequent to Federal employment. It includes but is not limited to personal services as an officer, director, employee, agent, attorney, consultant, contractor, general partner, or trustee.

*Example 1 to paragraph (a):* An employee of the Bureau of Indian Affairs who has announced their intention to retire is approached by tribal representatives concerning a possible consulting contract with the tribe. The contractual relationship the tribe wishes to negotiate is employment for purposes of this subpart.

*Example 2 to paragraph (a):* An employee of the Department of Health and Human Services is invited to a meeting with officials of a nonprofit corporation to discuss the possibility of serving as a member of the corporation's board of directors. Service, with or without compensation, as a member of the board of directors constitutes employment for purposes of this subpart.

*Example 3 to paragraph (a):* An employee at the Department of Energy volunteers without compensation to serve dinners at a homeless shelter each month. The employee's uncompensated volunteer services in this case are not considered an employment or business relationship for purposes of this subpart.

(b) An employee is *seeking employment* once the employee has begun seeking employment within the meaning of paragraph (b)(1) of this section and until there is no longer seeking employment within the meaning of paragraph (b)(2) of this section.

(1) An employee has begun seeking employment if the employee has directly or indirectly:

(i) Engaged in negotiations for employment with any person. For these purposes, as for 18 U.S.C. 208(a) and section 17 of the STOCK Act, the term *negotiations* means discussion or communication with another person, or such person's agent or intermediary, mutually conducted with a view toward reaching an agreement regarding possible employment with that person. The term is not limited to discussions of specific terms and conditions of employment in a specific position;

(ii) Made an unsolicited communication to any person, or such person's agent or intermediary, regarding possible employment with that person. However, the employee has not begun seeking employment if that communication was for the sole purpose of requesting a job application; or

(iii) Made a response, other than rejection, to an unsolicited communication from any person, or such person's agent or intermediary, regarding possible employment with that person.

(2) An employee is no longer seeking employment when:

(i) The employee or the prospective employer rejects the possibility of employment and all discussions of possible employment have terminated; or

(ii) Two months have transpired after the employee's dispatch of an unsolicited resume or employment proposal, provided the employee has received no indication of interest in employment discussions from the prospective employer.

(3) For purposes of this definition, a response that defers discussions until the foreseeable future does not constitute rejection of an unsolicited employment overture, proposal, or resume nor rejection of a prospective employment possibility.

*Example 1 to paragraph (b):* A paralegal at the Department of the Army is in the third year of law school. The paralegal's neighbor, a partner in a large law firm in the community, invited the paralegal to the law firm for a visit. The paralegal accepted the offer and met with an associate at the firm. The associate shared with the paralegal their experiences looking for a legal position, discussed what they do in their position at the law firm, and explained why they chose that law firm. There was no discussion of possible employment with the firm. The Army paralegal is not seeking employment at this time. The purpose of the visit was informational only.

*Example 2 to paragraph (b):* An employee of the Defense Contract Audit Agency (DCAA) is auditing the overhead accounts of an Army contractor. While at the contractor's headquarters, the head of the contractor's accounting division tells the employee that the division is thinking about hiring another accountant and asks whether the employee might be interested in leaving DCAA. The DCAA employee asks what kind of work would be involved. The DCAA employee has begun seeking employment because they made a response other than a rejection to the communication regarding possible employment with the Army contractor, although they have not yet begun negotiating for employment.

*Example 3 to paragraph (b):* The DCAA employee and the head of the contractor's accounting division in the previous example have a meeting to discuss the duties of the position that the accounting division would like to fill and the DCAA employee's qualifications for the position. They also discuss ways the DCAA employee could remedy one of the missing qualifications, and the employee indicates a willingness to obtain the proper qualifications. They do not discuss salary. The employee has been engaged in negotiations regarding possible employment with the contractor.

*Example 4 to paragraph (b):* An employee at the Department of Energy (DOE) lists their job duties and employment experience in a profile on

an online, business-oriented social networking service. The employee's profile is not targeted at a specific prospective employer. The employee has not begun seeking employment because the posting of a profile or resume is not an unsolicited communication with any prospective employer.

*Example 5 to paragraph (b):* The DOE employee in the previous example was recently notified that a representative of a university has viewed their profile. The employee still has not begun seeking employment with the university. Subsequently, a representative of the university contacts the employee through the online forum to inquire whether the employee would be interested in working for the university, to which the employee makes a response other than rejection. At this point, the employee has begun seeking employment with the university until they reject the possibility of employment and all discussions of possible employment have terminated.

*Example 6 to paragraph (b):* The DOE employee in the previous two examples receives emails from various companies in response to the online profile. The employee does not respond. The employee has not begun seeking employment with the companies because they have not made a response.

*Example 7 to paragraph (b):* An official of a State Health Department compliments the work of an employee of the Centers for Medicare & Medicaid Services (CMS), and asks the CMS employee to reach out if they are ever interested in leaving Federal service. The employee explains to the State official that they are very happy with their job at CMS and is not interested in another job. The employee thanks the official for the professional compliment, and adds that they'll remember the official's interest if they ever decide to leave the Government. The employee has rejected the unsolicited employment overture and has not begun seeking employment.

*Example 8 to paragraph (b):* The employee in the preceding example responds by stating that they cannot discuss future employment while they are working on a project affecting the State's health care funding but would like to discuss employment with the State when the project is completed. Because the employee has merely deferred employment discussions until the foreseeable future, they have begun seeking employment with the State Health Department.

*Example 9 to paragraph (b):* Three months prior to the end of the current administration, a political appointee at a large department receives a telephone call from the managing partner of an international law firm. The managing partner asks if the official would be interested in joining the law firm. The official says, "I am not talking to anyone about employment until I leave the Government." The official has rejected the unsolicited employment overture and has not begun seeking employment.

*Example 10 to paragraph (b):* A geologist employed by the U.S. Geological Survey sends a resume to an oil company. The geologist has begun seeking employment with that oil company and will be seeking employment for two months from the date the resume was mailed, provided the geologist does not receive a response indicating an interest in employment discussions. A letter merely acknowledging receipt of the resume is not an indication of interest in employment discussions. However, if the geologist withdraws the application or is notified within the two-month period that the resume has been rejected, they will no longer be seeking employment with the oil company as of the date they make such withdrawal or receives such notification.

(c) *Prospective employer* means any person with whom the employee is seeking employment. When contacts that constitute seeking employment are made by or with an agent or other intermediary, the term prospective employer means:

(1) A person who uses that agent or other intermediary for the purpose of seeking to establish an employment relationship with the employee if the agent identifies the prospective employer to the employee; and

(2) A person contacted by the employee's agent or other intermediary for the purpose of seeking to establish an employment relationship if the agent identifies the prospective employer to the employee.

*Example 1 to paragraph (c):* An employee of the Federal Aviation Administration (FAA) has retained an employment search firm to help them find another job. The search firm has just reported to the FAA employee that it has given their resume to and had promising discussions with two airport authorities, which the search firm identifies to the employee. Even though the employee has not personally had employment discussions with either airport authority, each airport authority is their prospective employer. The employee began seeking employment with each airport authority upon learning its identity and that it has been given their resume.

*Example 2 to paragraph (c):* An employee pays for an online resume distribution service, which sends their resume to recruiters that specialize in their field. The online service has just notified the employee that it sent their resume to Software Company A and Software Company B. Even though the employee has not personally had employment discussions with either company, each software company is their prospective employer. The employee began seeking employment with each company upon learning from the online service that Software Company A and Software Company B had been given their resume by the intermediary.

(d) *Direct and predictable effect,* *particular matter,* and *personal and substantial* have the respective meanings set forth in § 2635.402(b)(1), (3), and (4).

(e) *Public filer* means a person required to file a public financial disclosure report as set forth in § 2634.202 of this chapter.

**§ 2635.604   Recusal while seeking employment.**

(a) *Obligation to recuse.* (1) Except as provided in paragraph (a)(2) of this section or when the employee's participation has been authorized in accordance with § 2635.605, the employee may not participate personally and substantially in a particular matter that, to the employee's knowledge, has a direct and predictable effect on the financial interests of a prospective employer with whom the employee is seeking employment within the meaning of § 2635.603(b). Recusal is accomplished by not participating in the particular matter.

(2) The employee may participate in a particular matter under paragraph (a)(1) of this section when:

(i) The employee's only communication with the prospective employer in connection with the search for employment is the submission of an unsolicited resume or other employment proposal;

(ii) The prospective employer has not responded to the employee's unsolicited communication with a response indicating an interest in employment discussions; and

(iii) The matter is not a particular matter involving specific parties.

*Example 1 to paragraph (a):* A scientist is employed by the National Science Foundation (NSF) as a special Government employee to serve on a panel that reviews grant applications to fund research relating to deterioration of the ozone layer. The scientist is discussing possible employment with a

university that received an NSF grant several years ago to study the effect of fluorocarbons but has no current grant applications pending before NSF. The employee is seeking employment, but does not need to recuse because there is no particular matter that would have a direct and predictable effect on the financial interests of the prospective employer. Recusal would be required if the university submits a new application for the panel's review.

*Example 2 to paragraph (a):* An employee of the Food and Drug Administration is developing a regulation on research criteria for approving prescription drugs. They begin discussing possible employment with a pharmaceutical company. The employee may not participate personally and substantially in the development of the regulation because they have begun employment discussions with the pharmaceutical company and the regulation is a particular matter of general applicability which would have a direct and predictable effect on the financial interests of the pharmaceutical company.

*Example 3 to paragraph (a):* A special Government employee of the Federal Deposit Insurance Corporation (FDIC) is assigned to advise the FDIC on rules applicable to all member banks. The employee mails an unsolicited letter to a member bank offering services as a contract consultant. Although the employee is seeking employment, the employee may participate in this particular matter of general applicability until receipt of some response indicating an interest in discussing the employment proposal. A letter merely acknowledging receipt of the proposal is not an indication of interest in employment discussions.

*Example 4 to paragraph (a):* An employee of the Occupational Safety and Health Administration is conducting an inspection of one of several textile companies to which they sent an unsolicited resume. The employee may not participate personally and substantially in the inspection because they are seeking employment and the inspection is a particular matter involving specific parties that will affect the textile company.

(b) *Notification.* Employees who become aware of the need to recuse from participating in a particular matter to which they have been assigned must take whatever steps are necessary to ensure that they do not participate in the matter. Appropriate oral or written notification of their recusal may be made to an agency ethics official,

coworkers, or a supervisor to document and help effectuate the recusal. Public filers must comply with additional notification requirements set forth in § 2635.607.

*Example 1 to paragraph (b):* An employee of the Department of Veterans Affairs (VA) is participating in the audit of a contract for laboratory support services. Before sending a resume to a lab which is a subcontractor under the VA contract, the employee should recuse from participating in the audit. Because the employee cannot withdraw from participating in the contract audit without supervisor approval, the employee should notify the supervisor of the need to recuse for ethics reasons so that appropriate adjustments in work assignments can be made.

*Example 2 to paragraph (b):* An employee of the Food and Drug Administration (FDA) is contacted in writing by a pharmaceutical company concerning possible employment with the company. The employee is reviewing an application from the same pharmaceutical company, which is seeking FDA approval for a new drug product. Once the employee makes a response that is not a rejection to the company's communication concerning possible employment, the employee must recuse from further participation in the review of the application. When the employee has authority to ask a colleague to assume reviewing responsibilities, they may accomplish recusal by transferring the work to the colleague. However, to ensure that the colleague and others with whom they had been working on the review do not seek their advice regarding the review of the application or otherwise involve them in the matter, it may be necessary for the employee to advise those individuals of the recusal.

(c) *Documentation.* Employees, other than public filers, need not file written recusal statements unless they are required by part 2634 of this chapter to file written evidence of compliance with an ethics agreement with the Office of Government Ethics or a designated agency ethics official, or are specifically directed by an agency ethics official or the person responsible for their assignments to file written recusal statements. However, it is often prudent for employees to create a record of their actions by providing written notice to an agency ethics official, a supervisor, or other appropriate official. Public filers must comply with the documentation requirements set forth in § 2635.607.

*Example 1 to paragraph (c):* The General Counsel of a regulatory agency will be engaging in discussions

regarding possible employment as corporate counsel of a regulated entity. Matters directly affecting the financial interests of the regulated entity are pending within the Office of General Counsel, but the General Counsel will not be called upon to act in any such matter because signature authority for that particular class of matters has been delegated to an Assistant General Counsel. Because the General Counsel is responsible for assigning work within the Office of General Counsel, they can, in fact, accomplish recusal by simply avoiding any involvement in matters affecting the regulated entity. However, because it is likely to be assumed by others that the General Counsel is involved in all matters within the cognizance of the Office of General Counsel, they would benefit from filing a written recusal statement with an agency ethics official or the Commissioners of the regulatory agency and providing their subordinates with written notification of the recusal. The General Counsel may also be specifically directed by an agency ethics official or the Commissioners to file a written recusal statement. If the General Counsel is a public filer, they must comply with the documentation requirements set forth in § 2635.607.

(d) *Agency determination of substantial conflict.* When the agency determines that the employee's action in seeking employment with a particular person will require the employee to recuse from matters so central or critical to the performance of the employee's official duties that the employee's ability to perform the duties of the employee's position would be materially impaired, the agency may allow the employee to take annual leave or leave without pay while seeking employment, or may take other appropriate action.

## § 2635.605 Waiver or authorization permitting participation while seeking employment.

(a) *Waiver.* When, as defined in § 2635.603(b)(1)(i), an employee is engaged in employment negotiations for purposes of 18 U.S.C. 208(a), the employee may not participate personally and substantially in a particular matter that, to the employee's knowledge, has a direct and predictable effect on the financial interests of a prospective employer. The employee may participate in such matters only when the employee has received a written waiver issued under the authority of 18 U.S.C. 208(b)(1) or (3). These waivers are described in § 2635.402(d) and part 2640, subpart C of this chapter. For certain employees,

a regulatory exemption under the authority of 18 U.S.C. 208(b)(2) may also apply (see part 2640, subpart B of this chapter), including § 2640.203(g) and (i).

*Example 1 to paragraph (a):* An employee of the Department of Agriculture is negotiating for employment within the meaning of 18 U.S.C. 208(a) and § 2635.603(b)(1)(i) with an orange grower. In the absence of a written waiver issued under 18 U.S.C. 208(b)(1), the employee may not take official action on a complaint filed by a competitor alleging that the grower has shipped oranges in violation of applicable quotas.

(b) *Authorization by agency designee.* When an employee is seeking employment within the meaning of § 2635.603(b)(1)(ii) or (iii) and is not negotiating for employment, a reasonable person would be likely to question the employee's impartiality if the employee were to participate personally and substantially in a particular matter that, to the employee's knowledge, has a direct and predictable effect on the financial interests of any such prospective employer. The employee may participate in such matters only when the agency designee has authorized in writing the employee's participation in accordance with the standards set forth in § 2635.502(d).

*Example 1 to paragraph (b):* Within the past month, an employee of the Department of Education mailed a resume to a university. The employee is thus seeking employment with the university within the meaning of § 2635.603(b)(1)(ii). In the absence of specific authorization by the agency designee in accordance with § 2635.502(d), the employee may not participate personally and substantially in an assignment to review a grant application submitted by the university.

§ **2635.606   Recusal based on an arrangement concerning prospective employment or otherwise after negotiations.**

(a) *Employment or arrangement concerning employment.* An employee may not participate personally and substantially in a particular matter that, to the employee's knowledge, has a direct and predictable effect on the financial interests of the person by whom the employee is employed or with whom the employee has an arrangement concerning future employment, unless authorized to participate in the matter by a written waiver issued under the authority of 18 U.S.C. 208(b)(1) or (3), or by a regulatory exemption under the authority of 18 U.S.C. 208(b)(2). These waivers and

exemptions are described in § 2635.402(d) and part 2640, subparts B and C of this chapter.

*Example 1 to paragraph (a):* A military officer has accepted a job with a defense contractor that will begin six months after retirement from military service. During the remainder of Government employment, the officer may not participate personally and substantially in the administration of a contract with that particular defense contractor unless a written waiver is issued under the authority of 18 U.S.C. 208(b)(1).

*Example 2 to paragraph (a):* An accountant has just been offered a job with the Office of the Comptroller of the Currency (OCC) which involves a two-year limited appointment. The accountant's private employer, a large corporation, believes the job will enhance their skills and has agreed to give them a two-year unpaid leave of absence at the end of which they have agreed to return to work for the corporation. During the two-year period that the accountant is to be an OCC employee, they will have an arrangement concerning future employment with the corporation that will require recusal from participating personally and substantially in any particular matter that, to their knowledge, will have a direct and predictable effect on the corporation's financial interests.

(b) *Offer rejected or not made.* The agency designee for the purpose of § 2635.502(c) may, in an appropriate case, determine that an employee not covered by the preceding paragraph who has sought but is no longer seeking employment nevertheless will be subject to a period of recusal upon the conclusion of employment negotiations. Any such determination will be based on a consideration of all the relevant factors, including those listed in § 2635.502(d), and a determination that the concern that a reasonable person may question the integrity of the agency's decision-making process outweighs the Government's interest in the employee's participation in the particular matter.

*Example 1 to paragraph (b):* An employee of the Securities and Exchange Commission was relieved of responsibility for an investigation of a broker-dealer while seeking employment with the law firm representing the broker-dealer in that matter. The firm did not offer the partnership position the employee sought. Even though the employee is no longer seeking employment with the firm, they may continue to be recused from participating in the investigation

based on a determination by the agency designee that the concern that a reasonable person might question whether, in view of the history of the employment negotiations, they could act impartially in the matter outweighs the Government's interest in their participation.

§ **2635.607   Notification requirements for public financial disclosure report filers regarding negotiations for or agreement of future employment or compensation.**

(a) *Notification regarding negotiations for or agreement of future employment or compensation.* A public filer who is negotiating for or has an agreement of future employment or compensation with a non-Federal entity must file a statement notifying an agency ethics official of such negotiation or agreement within three business days after commencement of the negotiation or agreement. This notification statement must be in writing, must be signed by the public filer, and must include the name of the non-Federal entity involved in such negotiation or agreement and the date on which the negotiation or agreement commenced. When a public filer has previously complied with the notification requirement in this section regarding the commencement of negotiations, the filer need not file a separate notification statement when an agreement of future employment or compensation is reached with the previously identified non-Federal entity. There is also no requirement to file another notification when negotiations have been unsuccessful. However, employees may want to do so to facilitate the resumption of their duties.

*Example 1 to paragraph (a):* An employee of the Merit Systems Protection Board who is a public filer was in private practice prior to Government service. The employee receives a telephone call from a partner in a law firm who inquires as to whether they would be interested in returning to private practice. During this initial telephone call with the law firm partner, the employee indicates that they are interested in resuming private practice. The partner and employee discuss generally the types of issues that would need to be agreed upon if the employee were to consider a possible offer to serve as "of counsel" with the firm, such as salary, benefits, and type of work the employee would perform. The employee has begun negotiating for future employment with the law firm. Within three business days after this initial telephone call, the employee must file written notification of the negotiations with the agency ethics official.

*Example 2 to paragraph (a):* The employee in the previous example also negotiates a possible contract with a publisher to begin writing a textbook after leaving Government service. Within three business days after commencing negotiations, the employee must file written notification with the agency ethics official documenting this engagement in negotiations for future compensation with the book publisher.

(b) *Notification of recusal.* A public filer who files a notification statement pursuant to paragraph (a) of this section must file with an agency ethics official a notification of recusal whenever there is a conflict of interest or appearance of a conflict of interest with the non-Federal entity identified in the notification statement. The notification statement and the recusal statement may be contained in a single document or in separate documents.

(c) *Advance filing of notification and recusal statements.* When a public filer is seeking employment within the meaning of § 2635.603(b)(1)(ii) or (iii) or is considering seeking employment, the public filer may elect to file the notification statement pursuant to paragraph (a) of this section before negotiations have commenced and before an agreement of future employment or compensation is reached. A public filer may also elect to file the recusal statement pursuant to paragraph (b) of this section before the public filer has a conflict of interest or appearance of a conflict of interest with the non-Federal entity identified in the notification statement. The public filer need not file the document again upon commencing negotiations or reaching an agreement of future employment or compensation. The advance filing of any such document is not construed as a statement that negotiations have or have not commenced or that a conflict of interest does or does not exist. Although the Office of Government Ethics encourages advance filing when a public filer anticipates a realistic possibility of negotiations or an agreement, the failure to make an advance filing does not violate this subpart or the principles of ethical conduct contained in § 2635.101(b).

*Example 1 to paragraph (c):* An employee of the Federal Labor Relations Authority who is a public filer began negotiating for future employment with a law firm. At the time the employee began negotiating for future employment with the law firm, they were not participating personally and substantially in a particular matter that, to their knowledge, had a direct and predictable effect on the financial interest of the law firm. Although the

employee was not required to file a recusal statement because they did not have a conflict of interest or appearance of a conflict of interest with the law firm identified in the notification statement, the Office of Government Ethics encourages the employee to submit a notification of recusal at the same time that they file the notification statement regarding the negotiations for future employment in order to ensure that the requirement of paragraph (b) of this section is satisfied if a conflict of interest or an appearance of a conflict of interest later arises. The agency ethics official should counsel the employee on applicable requirements but is under no obligation to notify the employee's supervisor that the employee is negotiating for employment.

*Example 2 to paragraph (c):* An employee of the General Services Administration is contacted by a prospective employer regarding scheduling an interview for the following week to begin discussing the possibility of future employment. The employee discusses the matter with the ethics official and chooses to file a notification and recusal statement prior to the interview. The notification and recusal statement contain the identity of the prospective employer and an estimated date of when the interview will occur. The employee has complied with the notification requirement of section 17 of the STOCK Act.

(d) *Agreement of future employment or compensation* for the purposes of § 2635.607 means any arrangement concerning employment that will commence after the termination of Government service. The term also means any arrangement to compensate in exchange for services that will commence after the termination of Government service. The term includes, among other things, an arrangement to compensate for teaching, speaking, or writing that will commence after the termination of Government service.

## Subpart G—Misuse of Position

### § 2635.701   Overview.

This subpart contains provisions relating to the proper use of official time and authority, and of information and resources to which employees have access because of their Federal employment. This subpart sets forth standards relating to:

(a) Use of public office for private gain;

(b) Use of nonpublic information;

(c) Use of Government property; and

(d) Use of official time.

### § 2635.702   Use of public office for private gain.

An employee may not use their public office for their own private gain; for the endorsement of any product, service, or enterprise (except as otherwise permitted by this part or other applicable law or regulation); or for the private gain of friends, relatives, or persons with whom the employee is affiliated in a nongovernmental capacity, including nonprofit organizations of which the employee is an officer or member, and persons with whom the employee has or seeks employment or business relations. The specific prohibitions set forth in paragraphs (a) through (d) of this section apply this general standard, but are not intended to be exclusive or to limit the application of this section.

(a) *Inducement or coercion of benefits.* Employees may not use or permit the use of their Government position or title or any authority associated with their public office in a manner that is intended to coerce or induce another person, including a subordinate, to provide any benefit, financial or otherwise, to the employee or to friends, relatives, or persons with whom the employee is affiliated in a nongovernmental capacity.

*Example 1 to paragraph (a):* Offering to pursue a relative's consumer complaint over a household appliance, an employee of the Securities and Exchange Commission called the general counsel of the manufacturer and, in the course of discussing the problem, stated that they worked at the SEC and were responsible for reviewing the company's filings. The employee violated the prohibition against use of public office for private gain by invoking their official authority in an attempt to influence action to benefit the relative.

*Example 2 to paragraph (a):* An employee of the Department of Commerce was asked by a friend to determine why another office within the Department of Commerce had not yet granted an export license to the friend's firm. At a department-level staff meeting, the employee raised as a matter for official inquiry the delay in approval of the particular license and asked that the particular license be expedited. The official used their public office in an attempt to benefit the friend and, in acting as the friend's agent for the purpose of pursuing the export license with the Department of Commerce, may also have violated 18 U.S.C. 205.

(b) *Appearance of governmental sanction.* Except as otherwise provided in this part, employees may not use or permit the use of their Government

position or title or any authority associated with their public office in a manner that could reasonably be construed to imply that their agency or the Government sanctions or endorses their personal activities or those of another. When teaching, speaking, or writing in a personal capacity, employees may refer to their official title or position only as permitted by § 2635.807(b). When providing a verbal or written recommendation, employees may only use their official title in response to a request for a recommendation or character reference based upon personal knowledge of the ability or character of an individual with whom they have dealt in the course of Federal employment or whom they are recommending for Federal employment.

*Example 1 to paragraph (b):* An employee of the Department of the Treasury who is asked to provide a letter of recommendation for a former subordinate or for an individual who worked for their team under a Government contract may provide the recommendation using official stationery and may sign the letter using their official title. If, however, the request is for the recommendation of a personal friend with whom they have not dealt in the Government, the employee should not use official stationery or sign the letter of recommendation using their official title, unless the recommendation is for Federal employment. In writing the letter of recommendation for the personal friend, it may be appropriate for the employee to make a reference to their official position in the body of the letter.

*Example 2 to paragraph (b):* An employee of the Environmental Protection Agency (EPA) has a personal social media account. Under "occupation," the employee writes "Analyst at the Environmental Protection Agency." On the same social media account, the EPA employee occasionally discusses topics related to the environment, such as recycling, biking to work, and organic gardening. Even though the employee is discussing matters related to the EPA's mission and lists their position in the area designated for occupation, these facts alone would not reasonably be construed as implying Governmental sanction or endorsement. The same employee may not, for example, redesign the social media account so that it prominently features the official EPA seal and make statements that either assert or imply that their opinions on environmental topics are sanctioned or endorsed by the Government.

(c) *Endorsements.* Employees may not use or permit the use of their Government position or title or any authority associated with their public office to endorse any product, service, or enterprise except:

(1) In furtherance of statutory authority to promote products, services, or enterprises; or

(2) As a result of documentation of compliance with agency requirements or standards or as the result of recognition for achievement given under an agency program of recognition for accomplishment in support of the agency's mission.

*Example 1 to paragraph (c):* A Commissioner of the Consumer Product Safety Commission (CPSC) may not appear in a television commercial and endorse an electrical appliance produced by a former employer, stating that it has been found by the CPSC to be safe for residential use.

*Example 2 to paragraph (c):* A Foreign Commercial Service officer from the Department of Commerce is asked by a United States telecommunications company to meet with representatives of the government of Spain, which is in the process of procuring telecommunications services and equipment. The company is bidding against five European companies, and the statutory mission of the Department of Commerce includes assisting the export activities of U.S. companies. As part of official duty activities, the Foreign Commercial Service officer may meet with Spanish officials and explain the advantages of procurement from the United States company.

*Example 3 to paragraph (c):* The Administrator of the Environmental Protection Agency may sign a letter to an oil company indicating that its refining operations are in compliance with Federal air quality standards even though the Administrator knows that the company has routinely displayed letters of this type in television commercials portraying it as a "trustee of the environment for future generations."

*Example 4 to paragraph (c):* An Assistant Attorney General may not use their official title or refer to their Government position in a book jacket endorsement of a novel about organized crime written by an author whose work they admire. Nor may they do so in a book review published in a newspaper.

(d) *Performance of official duties affecting a private interest.* To ensure that the performance of their official duties does not give rise to an appearance of use of public office for private gain or of giving preferential treatment, employees whose duties would affect the financial interests of a friend, relative, or person with whom they are affiliated in a nongovernmental capacity must comply with any applicable requirements of § 2635.502.

(e) *Use of terms of address and ranks.* Nothing in this section prohibits an employee who is ordinarily addressed using a general term of address, such as "The Honorable" or "Judge," or a rank, such as a military or ambassadorial rank, from using that term of address or rank in connection with a personal activity.

### § 2635.703  Use of nonpublic information.

(a) *Prohibition.* Employees may not engage in financial transactions using nonpublic information, nor allow the improper use of nonpublic information to further their own private interests or those of another, whether through advice or recommendation, or by knowing unauthorized disclosure.

(b) *Definition of nonpublic information.* For purposes of this section, *nonpublic information* is information that the employee gains by reason of Federal employment and that the employee knows or reasonably should know has not been made available to the general public. It includes information that the employee knows or reasonably should know:

(1) Is routinely exempt from disclosure under 5 U.S.C. 552 or otherwise protected from disclosure by statute, Executive order, or regulation;

(2) Is designated as confidential by an agency; or

(3) Has not actually been disseminated to the general public and is not authorized to be made available to the public on request.

*Example 1 to paragraph (b):* A Navy employee learns in the course of official duties that a small corporation will be awarded a Navy contract for electrical test equipment. The employee may not take any action to purchase stock in the corporation or its suppliers, and may not advise friends or relatives to do so until after public announcement of the award. Such actions could violate Federal securities statutes as well as this section.

*Example 2 to paragraph (b):* A General Services Administration employee involved in evaluating proposals for a construction contract cannot disclose the terms of a competing proposal to a friend employed by a company bidding on the work. Prior to award of the contract, bid or proposal information is nonpublic information specifically protected by 41 U.S.C. 2102.

*Example 3 to paragraph (b):* An employee is a member of a source

selection team assigned to review the proposals submitted by several companies in response to an Army solicitation for spare parts. As a member of the evaluation team, the employee has access to proprietary information regarding the production methods of Alpha Corporation, one of the competitors. The employee may not use that information to assist Beta Company in drafting a proposal to compete for a Navy spare parts contract. The Federal Acquisition Regulation in 48 CFR parts 3, 14, and 15 restricts the release of information related to procurements and other contractor information that must be protected under 18 U.S.C. 1905 and 41 U.S.C. 2102.

*Example 4 to paragraph (b):* An employee of the Nuclear Regulatory Commission inadvertently includes a document that is exempt from disclosure with a group of documents released in response to a Freedom of Information Act request. Regardless of whether the document is used improperly, the employee's disclosure does not violate this section because it was not a knowing unauthorized disclosure made for the purpose of furthering a private interest.

*Example 5 to paragraph (b):* An employee of the Army Corps of Engineers is actively involved in the activities of an organization whose goals relate to protection of the environment. The employee may not, other than as permitted by agency procedures, give the organization or a newspaper reporter nonpublic information about long-range plans to build a particular dam.

## § 2635.704   Use of Government property.

(a) *Standard.* Employees have a duty to protect and conserve Government property and may not use such property, or allow its use, for other than authorized purposes.

(b) *Definitions.* For purposes of this section:

(1) *Government property* includes any form of real or personal property in which the Government has an ownership, leasehold, or other property interest as well as any right or other intangible interest that is purchased with Government funds, including the services of contractor personnel. The term includes but is not limited to office supplies, telephone and other telecommunications equipment and services, Government mail, computers and other electronic devices, printing and reproduction facilities, Government records, Government email and social media accounts, and Government vehicles.

(2) *Authorized purposes* are those purposes for which Government property is made available to members of the public or those purposes authorized in accordance with law or regulation. Authorized purposes include but are not limited to those uses of Government property that are in accordance with an agency's limited or *de minimis* personal use policy.

*Example 1 to paragraph (b):* As permitted under their agency's *de minimis* personal use policy, an employee may send an email from a Government email account to a former college roommate to schedule lunch for the following day.

*Example 2 to paragraph (b):* An employee of the Commodity Futures Trading Commission whose office computer provides access to a commercial service providing information for investors may not use that service for personal investment research.

*Example 3 to paragraph (b):* In accordance with Office of Personnel Management regulations at part 251 of this title, an attorney employed by the Department of Justice may be permitted to use their office computer and agency photocopy equipment to prepare a paper to be presented at a conference sponsored by a professional association of which they are a member.

## § 2635.705   Use of official time.

(a) *Use of an employee's own time.* Unless authorized in accordance with law or regulations to use such time for other purposes, employees must use official time in an honest effort to perform official duties. Employees not under a leave system, including Presidential appointees exempted under 5 U.S.C. 6301(2), have an obligation to expend an honest effort and a reasonable proportion of their time in the performance of official duties.

*Example 1 to paragraph (a):* A disability claims examiner of the Social Security Administration may use official time to engage in certain representational activities on behalf of the employee union of which they are a member. Under 5 U.S.C. 7131, this is a proper use of official time even though it does not involve performance of assigned duties as a disability claims examiner.

*Example 2 to paragraph (a):* A pharmacist employed by the Department of Veterans Affairs has been granted an excused absence to participate as a speaker in a conference on drug abuse sponsored by the professional association to which they belong. Even if an excused absence granted by an agency in accordance with Governmentwide personnel guidance would allow employees to be absent from their official duties without charge to their annual leave accounts, such absence would not be on official time.

(b) *Use of a subordinate's time.* Employees may not encourage, direct, coerce, or request a subordinate to use official time to perform activities other than those required in the performance of official duties or authorized in accordance with law or regulation.

*Example 1 to paragraph (b):* A supervisory employee of the Department of Housing and Urban Development may not ask an assistant to run personal errands for the employee during duty hours. Further, directing or coercing a subordinate to perform such activities during nonduty hours constitutes an improper use of public office for private gain in violation of § 2635.702(a). However, when an arrangement is entirely voluntary and appropriate compensation is paid, a subordinate may provide services to the superior during nonduty hours. For example, a subordinate who enjoys calligraphy may prepare invitations for an upcoming party that the superior is organizing with friends and family at home on personal time for appropriate compensation. When the compensation is not adequate, however, the arrangement would involve a gift to the superior in violation of the standards in subpart C of this part.

## Subpart H—Outside Activities

### § 2635.801   Overview.

(a) This subpart contains provisions relating to outside employment, outside activities, and personal financial obligations of employees that are in addition to the principles and standards set forth in other subparts of this part. Several of these provisions apply to uncompensated as well as to compensated outside activities.

(b) Employees who wish to engage in outside employment or other outside activities must comply with all relevant provisions of this subpart, including, when applicable:

(1) The prohibition on outside employment or any other outside activity that conflicts with the employee's official duties;

(2) Any agency-specific requirement for prior approval of outside employment or activities;

(3) The limitations on receipt of outside earned income by certain Presidential appointees and other noncareer employees;

(4) The limitations on paid and unpaid service as an expert witness;

(5) The limitations on paid and unpaid teaching, speaking, and writing; and

(6) The limitations on fundraising activities.

(c) Outside employment and other outside activities of an employee must also comply with applicable provisions set forth in other subparts of this part and in supplemental agency regulations. These include the principle that an employee must endeavor to avoid actions creating an appearance of violating any of the ethical standards in this part and the prohibition against use of official position for an employee's private gain or for the private gain of any person with whom the employee has employment or business relations or is otherwise affiliated in a nongovernmental capacity.

*Example 1 to paragraph (c):* An employee of the Occupational Safety and Health Administration (OSHA) who was and is expected again to be instrumental in formulating new OSHA safety standards applicable to manufacturers that use chemical solvents has been offered a consulting contract to provide advice to an affected company in restructuring its manufacturing operations to comply with the OSHA standards. The employee should not enter into the consulting arrangement even though they are not currently working on OSHA standards affecting this industry and the consulting contract can be expected to be completed before they again work on such standards. Even though the consulting arrangement would not be a conflicting activity within the meaning of § 2635.802, it would create an appearance that the employee had used their official position to obtain the compensated outside business opportunity and it would create the further appearance of using public office for the private gain of the manufacturer.

(d) In addition to the provisions of this and other subparts of this part, an employee who wishes to engage in outside employment or other outside activities must comply with applicable statutes and regulations. Relevant provisions of law, many of which are listed in subpart I of this part, may include:

(1) 18 U.S.C. 201(b), which prohibits a public official from seeking, accepting or agreeing to receive or accept anything of value in return for being influenced in the performance of an official act or for being induced to take or omit to take any action in violation of official duty;

(2) 18 U.S.C. 201(c), which prohibits a public official, otherwise than as provided by law for the proper discharge of official duty, from seeking,

accepting, or agreeing to receive or accept anything of value for or because of any official act;

(3) 18 U.S.C. 203(a), which prohibits an individual from seeking, accepting, or agreeing to receive or accept compensation for any representational services, rendered personally or by another at a time when the individual is an employee, in relation to any particular matter in which the United States is a party or has a direct and substantial interest, before any department, agency, or other specified entity. This statute contains several exceptions, as well as standards for special Government employees that limit the scope of the restriction;

(4) 18 U.S.C. 205, which prohibits an employee, whether or not for compensation, from acting as agent or attorney for anyone in a claim against the United States or from acting as agent or attorney for anyone, before any department, agency, or other specified entity, in any particular matter in which the United States is a party or has a direct and substantial interest. It also prohibits receipt of any gratuity, or any share of or interest in a claim against the United States, in consideration for assisting in the prosecution of such claim. This statute contains several exceptions, as well as standards for special Government employees that limit the scope of the restrictions;

(5) 18 U.S.C. 209, which prohibits an employee, other than a special Government employee, from receiving any salary or any contribution to or supplementation of salary from any source other than the United States as compensation for services as a Government employee. The statute contains several exceptions that limit its applicability;

(6) The Emoluments Clause of the United States Constitution, article I, section 9, clause 8, which prohibits anyone holding an office of profit or trust under the United States from accepting any gift, office, title, or emolument, including salary or compensation, from any foreign government except as authorized by Congress. In addition, 18 U.S.C. 219 generally prohibits any public official from being or acting as an agent of a foreign principal, including a foreign government, corporation, or person, if the employee would be required to register as a foreign agent under 22 U.S.C. 611 *et seq.;*

(7) The Hatch Act Reform Amendments, 5 U.S.C. 7321 through 7326, which govern the political activities of executive branch employees; and

(8) The Ethics in Government Act of 1978 limitations on outside employment, 5 U.S.C. chapter 131, subchapter III, which restrict the amount of outside earned income that a covered noncareer employee may receive, prohibit a covered noncareer employee from receiving compensation for specified activities, and provide that a covered noncareer employee may not allow their name to be used by any firm or other entity that provides professional services involving a fiduciary relationship. Implementing regulations are contained in §§ 2636.305 through 2636.307 of this chapter.

### § 2635.802  Conflicting outside employment and activities.

(a) Employees may not engage in outside employment or any other outside activity that conflicts with their official duties. An activity conflicts with an employee's official duties:

(1) If it is prohibited by statute or by an agency supplemental regulation; or

(2) If, under the standards set forth in §§ 2635.402 and 2635.502, it would require the employee's recusal from matters so central or critical to the performance of their official duties that the employee's ability to perform the duties of the Government position would be materially impaired.

(b) Employees are cautioned that even though an outside activity may not be prohibited under this section, it may violate other principles or standards set forth in this part or require the employee to recuse from participating in certain particular matters under either subpart D or subpart E of this part.

*Example 1 to paragraph (b):* A biochemist, who conducts research at the Environmental Protection Agency (EPA), has an outside consulting business providing technical guidance on the handling of hazardous materials. The biochemist would like to apply for a different EPA position, for which the principal duty would be writing regulations on the handling of hazardous materials. If the biochemist gets the position, the work would have a direct and predictable effect on the outside consulting business. Because the biochemist would be required to recuse from duties critical to the performance of official duties on a basis so frequent as to materially impair their ability to perform the duties of the position, they could not continue to operate the outside consulting business.

*Example 2 to paragraph (b):* An employee of the Internal Revenue Service (IRS) reviews applications for recognition of tax-exempt status. Several years ago, the employee became involved with a neighborhood group

that transports stray animals to nearby adoption centers. As its activities expanded, the group created a formal organization, and submitted an application for recognition of tax exempt status by the IRS. Under the circumstances, the employee should be recused from participating in any IRS determination regarding the tax-exempt status of this organization. However, the employee's involvement with the organization would not be prohibited by § 2635.802, because the outside activity would have a limited effect on official duties and would not require recusal from matters so central or critical to the performance of official duties that the ability to perform the duties of the position would be materially impaired.

## § 2635.803 Prior approval for outside employment and activities.

When required by agency supplemental regulation, employees must obtain prior approval before engaging in outside employment or activities. When it is determined to be necessary or desirable for the purpose of administering its ethics program, an agency may, by supplemental regulation, require employees or any category of employees to obtain prior approval before engaging in specific types of outside activities, including outside employment. Whether or not prior approval is required by agency supplemental regulations, employees have a continuing responsibility to ensure that their outside activities do not conflict with their official duties.

## § 2635.804 Outside earned income limitations applicable to certain Presidential appointees.

This section implements the outside earned income limitations applicable to certain Presidential appointees. The outside earned income limitations applicable to covered noncareer employees, as defined in § 2636.303(a) of this chapter, are implemented in §§ 2636.301 through 2636.304 of this chapter.

(a) *Presidential appointees to full-time noncareer positions.* A Presidential appointee to a full-time noncareer position may not receive any outside earned income for outside employment, or for any other outside activity, performed during that Presidential appointment.

(b) *Definitions.* For purposes of this section:

(1) *Outside earned income* has the meaning set forth in § 2636.303(b) of this chapter, except that § 2636.303(b)(7) does not apply.

(2) *Presidential appointee to a full-time noncareer position* means any

employee who is appointed by the President to a full-time position described in 5 U.S.C. 5312 through 5317 or to a position that, by statute or as a matter of practice, is filled by Presidential appointment, other than:

(i) A position filled under the authority of 3 U.S.C. 105 or 3 U.S.C. 107(a) for which the rate of basic pay is less than that for GS–9, step 1 of the General Schedule;

(ii) A position, within a White House operating unit, that is designated as not normally subject to change as a result of a Presidential transition;

(iii) A position within the uniformed services; or

(iv) A position in which a member of the Foreign Service is serving that does not require advice and consent of the Senate.

*Example 1 to paragraph (b)(2):* A career Department of Justice employee who is detailed to a policy-making position in the White House Office that is ordinarily filled by a noncareer employee is not a Presidential appointee to a full-time noncareer position.

*Example 2 to paragraph (b)(2):* A Department of Energy employee appointed under § 213.3301 of this title to a Schedule C position is appointed by the agency and, thus, is not a Presidential appointee to a full-time noncareer position.

## § 2635.805 Service as an expert witness.

(a) *Restriction.* Employees may not serve, other than on behalf of the United States, as an expert witness, with or without compensation, in any proceeding before a court or agency of the United States in which the United States is a party or has a direct and substantial interest, unless the employee's participation is authorized by the agency under paragraph (c) of this section. Except as provided in paragraph (b) of this section, this restriction applies to special Government employees only if they have participated as an employee or special Government employee in the particular proceeding or in the particular matter that is the subject of the proceeding.

(b) *Additional restriction applicable to certain special Government employees.* (1) In addition to the restriction described in paragraph (a) of this section, special Government employees described in paragraph (b)(2) of this section may not serve, other than on behalf of the United States, as an expert witness, with or without compensation, in any proceeding before a court or agency of the United States in which their employing agency is a party or has a direct and substantial

interest, unless the employee's participation is authorized by the agency under paragraph (c) of this section.

(2) The restriction in paragraph (b)(1) of this section applies to special Government employees who:

(i) Are appointed by the President;

(ii) Serve on a commission established by statute; or

(iii) Have served or are expected to serve for more than 60 days in a period of 365 consecutive days.

(c) *Authorization to serve as an expert witness.* Provided that the employee's testimony will not violate any of the principles or standards set forth in this part, authorization to provide expert witness service otherwise prohibited by paragraphs (a) and (b) of this section may be given by the designated agency ethics official of the agency in which the employee serves when:

(1) After consultation with the agency representing the Government in the proceeding or, if the Government is not a party, with the Department of Justice and the agency with the most direct and substantial interest in the matter, the designated agency ethics official determines that the employee's service as an expert witness is in the interest of the Government; or

(2) The designated agency ethics official determines that the subject matter of the testimony does not relate to the employee's official duties within the meaning of § 2635.807(a)(2)(i).

(d) Nothing in this section prohibits an employee from serving as a fact witness when subpoenaed by an appropriate authority.

## § 2635.806 [Reserved]

## § 2635.807 Teaching, speaking, and writing.

(a) *Compensation for teaching, speaking, or writing.* Except for teaching certain courses as permitted by paragraph (a)(3) of this section, an employee, including a special Government employee, may not receive compensation from any source other than the Government for teaching, speaking, or writing that occurs while the person is a Government employee and that relates to the employee's official duties.

(1) *Relationship to other limitations on receipt of compensation.* The compensation prohibition contained in this section is in addition to any other limitation on receipt of compensation set forth in this chapter, including:

(i) The requirement contained in § 2636.307 of this chapter that covered noncareer employees obtain advance authorization before engaging in teaching for compensation; and

(ii) The prohibitions and limitations in §§ 2635.804 and in 2636.304 of this chapter on receipt of outside earned income applicable to certain Presidential appointees and to other covered noncareer employees.

(2) *Definitions.* For purposes of this paragraph:

(i) Teaching, speaking, or writing relates to the employee's official duties if:

(A) The activity is undertaken as part of the employee's official duties;

(B) The circumstances indicate that the invitation to engage in the activity was extended to the employee primarily because of their official position rather than their expertise on the particular subject matter;

(C) The invitation to engage in the activity or the offer of compensation for the activity was extended to the employee, directly or indirectly, by a person who has interests that may be affected substantially by performance or nonperformance of the employee's official duties;

(D) The information conveyed through the activity draws substantially on ideas or official data that are nonpublic information as defined in § 2635.703(b); or

(E) Except as provided in paragraph (a)(2)(i)(E)(*4*) of this section, the subject of the activity deals in significant part with:

(*1*) Any matter to which the employee presently is assigned or to which the employee had been assigned during the previous one-year period;

(*2*) Any ongoing or announced policy, program, or operation of the agency; or

(*3*) In the case of a noncareer employee as defined in § 2636.303(a) of this chapter, the general subject matter area, industry, or economic sector primarily affected by the programs and operations of the employee's agency.

(*4*) The restrictions in paragraphs (a)(2)(i)(E) (*2*) and (*3*) of this section do not apply to a special Government employee. The restriction in paragraph (a)(2)(i)(E)(*1*) of this section applies only during the current appointment of a special Government employee; except that if the special Government employee has not served or is not expected to serve for more than 60 days during the first year or any subsequent one year period of that appointment, the restriction applies only to particular matters involving specific parties in which the special Government employee has participated or is participating personally and substantially.

**Note 1 to paragraph (a)(2)(i):** Section 2635.807(a)(2)(i)(E) does not preclude an employee, other than a covered noncareer employee, from receiving compensation for teaching, speaking, or writing on a subject within the employee's discipline or inherent area of expertise based on the employee's educational background or experience even though the teaching, speaking, or writing deals generally with a subject within the agency's areas of responsibility.

*Example 1 to paragraph (a)(2)(i):* The Director of the Division of Enforcement at the Commodity Futures Trading Commission has a keen interest in stamp collecting and has spent years developing a personal collection as well as studying the field generally. The Director is asked by an international society of philatelists to give a series of four lectures on how to assess the value of American stamps. Because the subject does not relate to the Director's official duties, it is permissible for the Director to accept compensation for the lecture series. The Director could not, however, accept a similar invitation from a commodities broker.

*Example 2 to paragraph (a)(2)(i):* A scientist at the National Institutes of Health (NIH), whose principal area of Government research is the molecular basis of the development of cancer, could not be compensated for writing a book which focuses specifically on the research conducted in this position at NIH, which thus relates to the scientist's official duties. However, the scientist could receive compensation for writing or editing a textbook on the treatment of all cancers, provided that the book does not focus on recent research at NIH, but rather conveys scientific knowledge gleaned from the scientific community as a whole. The book might include a chapter, among many other chapters, which discusses the molecular basis of cancer development. Additionally, the book could contain brief discussions of recent developments in cancer treatment, even though some of those developments are derived from NIH research, as long as it is available to the public.

*Example 3 to paragraph (a)(2)(i):* On personal time, a National Highway Traffic Safety Administration (NHTSA) employee prepared a consumer's guide to purchasing a safe automobile that focuses on automobile crash worthiness statistics gathered and made public by NHTSA. The employee may not receive royalties or any other form of compensation for the guide. The guide deals in significant part with the programs or operations of NHTSA and, therefore, relates to the employee's official duties. On the other hand, the employee could receive royalties from the sale of a consumer's guide to values in used automobiles even though it contains a brief, incidental discussion of automobile safety standards developed by NHTSA.

*Example 4 to paragraph (a)(2)(i):* An employee of the Securities and Exchange Commission (SEC) may not receive compensation for a book which focuses specifically on the regulation of the securities industry in the United States, because that subject concerns the regulatory programs or operations of the SEC. The employee may, however, write a book about the advantages of investing in various types of securities as long as the book contains only an incidental discussion of any program or operation of the SEC.

*Example 5 to paragraph (a)(2)(i):* An employee of the Department of Commerce who works in the Department's employee relations office is an acknowledged expert in the field of Federal employee labor relations, and participates in Department negotiations with employee unions. The employee may receive compensation from a private training institute for a series of lectures which describe the decisions of the Federal Labor Relations Authority concerning unfair labor practices, provided that the lectures do not contain any significant discussion of labor relations cases handled at the Department of Commerce, or the Department's labor relations policies. Federal Labor Relations Authority decisions concerning Federal employee unfair labor practices are not a specific program or operation of the Department of Commerce and thus do not relate to the employee's official duties. However, an employee of the FLRA could not give the same presentations for compensation.

*Example 6 to paragraph (a)(2)(i):* A program analyst employed at the Environmental Protection Agency (EPA) may receive royalties and other compensation for a book about the history of the environmental movement in the United States even though it contains brief references to the creation and responsibilities of the EPA. A covered noncareer employee of the EPA, however, could not receive compensation for writing the same book because it deals with the general subject matter area affected by EPA programs and operations. Neither employee could receive compensation for writing a book that focuses on specific EPA regulations or otherwise on its programs and operations.

*Example 7 to paragraph (a)(2)(i):* An attorney in private practice has been given a one year appointment as a special Government employee to serve on an advisory committee convened for the purpose of surveying and

recommending modification of procurement regulations that deter small businesses from competing for Government contracts. Because service under this appointment is not expected to exceed 60 days, the attorney may accept compensation for an article about the anticompetitive effects of certain regulatory certification requirements even though those regulations are being reviewed by the advisory committee. The regulations which are the focus of the advisory committee deliberations are not a particular matter involving specific parties. Because the information is nonpublic, the attorney could not, however, accept compensation for an article which recounts advisory committee deliberations that took place in a meeting closed to the public in order to discuss proprietary information provided by a small business.

*Example 8 to paragraph (a)(2)(i):* A biologist who is an expert in marine life is employed for more than 60 days in a year as a special Government employee by the National Science Foundation (NSF) to assist in developing a program of grants by the NSF for the study of coral reefs. The biologist may continue to receive compensation for speaking, teaching, and writing about marine life generally and coral reefs specifically. However, during the term of the appointment as a special Government employee, the biologist may not receive compensation for an article about the NSF program being developed. Only the latter would concern a matter to which the special Government employee is assigned.

*Example 9 to paragraph (a)(2)(i):* An expert on international banking transactions has been given a one-year appointment as a special Government employee to assist in analyzing evidence in the Government's fraud prosecution of owners of a failed savings and loan association. It is anticipated that the expert will serve fewer than 60 days under that appointment. Nevertheless, during this appointment, the expert may not accept compensation for an article about the fraud prosecution, even though the article does not reveal nonpublic information. The prosecution is a particular matter that involves specific parties.

(ii) *Agency* has the meaning set forth in § 2635.102(a), except that any component of a department designated as a separate agency under § 2635.203(a) will be considered a separate agency.

(iii) *Compensation.*

(A) *Definition.* Compensation includes any form of consideration, remuneration, or income, including royalties, given for or in connection with the employee's teaching, speaking, or writing.

(B) *Exclusions.* Compensation does not include:

(1) Items offered by any source that could be accepted from a prohibited source under subpart B of this part;

(2) Meals or other incidents of attendance such as waiver of attendance fees or course materials furnished as part of the event at which the teaching or speaking takes place; or

(3) Copies of books or of publications containing articles, reprints of articles, tapes of speeches, and similar items that provide a record of the teaching, speaking, or writing activity.

(C) *Travel expenses.* For employees other than covered noncareer employees as defined in § 2636.303(a) of this chapter, ''compensation'' does not include travel expenses, consisting of transportation, lodging or meals, incurred in connection with the teaching, speaking or writing activity. For covered noncareer employees as defined in § 2636.303(a) of this chapter, ''compensation'' does include transportation, lodging, and meals, whether provided in kind, by purchase of a ticket, by payment in advance, or by reimbursement after the expense has been incurred, unless such travel expenses are accepted under specific statutory authority, such as 31 U.S.C. 1353, 5 U.S.C. 4111, or 5 U.S.C. 7342, or an agency gift acceptance statute.

**Note 2 to paragraph (a)(2)(iii)(C):** Independent of § 2635.807(a), other authorities in some circumstances may limit or entirely preclude an employee's acceptance of travel expenses. In addition, employees who file financial disclosure reports should be aware that, subject to applicable thresholds and exclusions, travel and travel reimbursements accepted from sources other than the United States Government must be reported on their financial disclosure reports.

*Example 1 to paragraph (a)(2)(iii):* A GS–15 employee of the Forest Service has developed and marketed, in a private capacity, a speed reading technique for which popular demand is growing. The employee is invited to speak about the technique by a representative of an organization that will be substantially affected by a regulation on land management which the employee is in the process of drafting for the Forest Service. The representative offers to pay the employee a $200 speaker's fee and to reimburse all travel expenses. The employee may accept the travel reimbursements, but not the speaker's fee. The speaking activity is related to official duties under § 2635.807(a)(2)(i)(C) and the fee is

prohibited compensation for such speech; travel expenses incurred in connection with the speaking engagement, on the other hand, are not prohibited compensation for a GS–15 employee.

*Example 2 to paragraph (a)(2)(iii):* Solely because of their recent appointment to a Cabinet-level position, a Government official is invited by the Chief Executive Officer of a major international corporation to attend, in their personal capacity, firm meetings to be held in Aspen for the purpose of addressing senior corporate managers on the importance of recreational activities to a balanced lifestyle. The firm offers to reimburse the official's travel expenses. The official may not accept the offer. The speaking activity is related to official duties under § 2635.807(a)(2)(i)(B) and, because the official is a covered noncareer employee as defined in § 2636.303(a) of this chapter, the travel expenses are prohibited compensation.

*Example 3 to paragraph (a)(2)(iii):* A GS–14 attorney at the Federal Trade Commission (FTC) who played a lead role in a recently concluded merger case is invited to speak about the case, in a private capacity, at a conference in New York. The attorney has no public speaking responsibilities on behalf of the FTC apart from the judicial and administrative proceedings to which they are assigned. The sponsors of the conference offer to reimburse the attorney for expenses incurred in connection with the travel to New York. They also offer the attorney, as compensation for time and effort, a free trip to San Francisco. The attorney may accept the travel expenses to New York, but not the expenses to San Francisco. The lecture relates to official duties under paragraphs (a)(2)(i)(E)(1) and (a)(2)(i)(E)(2) of § 2635.807, but because the attorney is not a covered noncareer employee as defined in § 2636.303(a) of this chapter, the expenses associated with the travel to New York are not a prohibited form of compensation. The travel expenses to San Francisco, on the other hand, not incurred in connection with the speaking activity, are a prohibited form of compensation. If the attorney were a covered noncareer employee, the travel expenses to New York as well as the travel expenses to San Francisco would be barred.

*Example 4 to paragraph (a)(2)(iii):* An advocacy group dedicated to improving treatments for severe pain asks the National Institutes of Health (NIH) to provide a conference speaker who can discuss recent advances in the agency's research on pain. The group also offers to pay the employee's travel expenses to

attend the conference. After performing the required conflict of interest analysis, NIH authorizes acceptance of the travel expenses under 31 U.S.C. 1353 and the implementing General Services Administration regulation, as codified under 41 CFR chapter 304, and authorizes an employee to undertake the travel. At the conference the advocacy group, as agreed, pays the employee's hotel bill and provides several of the employee's meals. Subsequently the group reimburses the agency for the cost of the employee's airfare and some additional meals. All of the payments by the advocacy group are permissible. Because the employee is speaking officially and the expense payments are accepted under 31 U.S.C. 1353, they are not prohibited compensation under § 2635.807(a)(2)(iii). The same result would obtain with respect to expense payments made by non-Government sources properly authorized under an agency gift acceptance statute, the Government Employees Training Act, 5 U.S.C. 4111, or the foreign gifts law, 5 U.S.C. 7342.

(iv) *Receive* means that there is actual or constructive receipt of the compensation by the employee so that the employee has the right to exercise dominion and control over the compensation and to direct its subsequent use. Receipt of compensation is attributable to the time that the teaching, speaking, or writing occurs when there is actual or constructive receipt of the compensation by the employee. If the employee has an enforceable agreement to receive compensation for writing undertaken during Government service, then compensation is received while the individual is an employee even though actual payment may be deferred until after Government service. Compensation received by an employee includes compensation which is:

(A) Paid to another person, including a charitable organization, on the basis of designation, recommendation, or other specification by the employee; or

(B) Paid with the employee's knowledge and acquiescence to the employee's parent, sibling, spouse, child, or dependent relative.

(v) *Particular matter involving specific parties* has the meaning set forth in § 2640.102(*l*) of this chapter.

(vi) *Personal and substantial participation* has the meaning set forth in § 2635.402(b)(4).

(3) *Exception for teaching certain courses.* Notwithstanding that the activity would relate to their official duties under paragraphs (a)(2)(i) (B) or (E) of this section, employees may accept compensation for teaching a

course requiring multiple presentations by the employee if the course is offered as part of:

(i) The regularly established curriculum of:

(A) An institution of higher education as defined at 20 U.S.C. 1001 or from a similar foreign institution of higher education;

(B) An elementary school as defined at 20 U.S.C. 7801(19); or

(C) A secondary school as defined at 20 U.S.C. 7801(45); or

(ii) A program of education or training sponsored and funded by the Federal Government or by a State or local government which is not offered by an entity described in paragraph (a)(3)(i) of this section.

**Note 3 to paragraph (a)(3)(i)(A):** When the course is offered as part of the regularly established curriculum of a foreign institution of higher education, the agency may need to make a separate determination as to whether the institution of higher education is a foreign government for purposes of the Emoluments Clause of the U.S. Constitution (U.S. Const., art. I, sec. 9, cl. 8), which forbids employees from accepting emoluments, presents, offices, or titles from foreign governments, without the consent of Congress.

*Example 1 to paragraph (a)(3):* An employee of the Cost Accounting Standards Board who teaches an advanced accounting course as part of the regular business school curriculum of an accredited university may receive compensation for teaching the course even though a substantial portion of the course deals with cost accounting principles applicable to contracts with the Government.

*Example 2 to paragraph (a)(3):* An attorney employed by the Equal Employment Opportunity Commission (EEOC) may accept compensation for teaching a course at a state college on the subject of EEOC enforcement of Federal employment discrimination law. The attorney could not accept compensation for teaching the same seminar as part of a continuing education program sponsored by a bar association because the subject of the course is focused on the operations or programs of the EEOC and the sponsor of the course is not an accredited educational institution.

*Example 3 to paragraph (a)(3):* An employee of the National Endowment for the Humanities (NEH) is invited by a private university to teach a course that is a survey of Government policies in support of artists, poets, and writers. As part of official duty activities, the employee administers a grant that the university has received from the NEH. The employee may not accept

compensation for teaching the course because the university has interests that may be substantially affected by the performance or nonperformance of the employee's duties. Likewise, an employee may not receive compensation for any teaching that is undertaken as part of official duties or that involves the use of nonpublic information.

(b) *Reference to official position.* Employees who are engaged in teaching, speaking, or writing as outside employment or as an outside activity may not use or permit the use of their official title or position to identify themselves in connection with a teaching, speaking, or writing activity, or to promote any book, seminar, course, program, or similar undertaking, except that:

(1) Employees may include or permit the inclusion of their title or position as one of several biographical details when such information is given to identify them in connection with their teaching, speaking, or writing, provided that their title or position is given no more prominence than other significant biographical details;

(2) Employees may use or permit the use of their title or position in connection with an article published in a scientific or professional journal, provided that the title or position is accompanied by a reasonably prominent disclaimer satisfactory to the agency stating that the views expressed in the article do not necessarily represent the views of the agency or the United States; and

(3) Employees who are ordinarily addressed using a general term of address, such as ''The Honorable'' or ''Judge,'' or a rank, such as a military or ambassadorial rank, may use or permit the use of that term of address or rank in connection with their teaching, speaking, or writing.

**Note 4 to paragraph (b):** Reference to official title and position other than in a teaching, speaking, or writing capacity may be made only as permitted by § 2635.702(b). In addition, some agencies may have policies requiring advance agency review, clearance, or approval of certain speeches, books, articles, or similar products to determine whether the product contains an appropriate disclaimer, discloses nonpublic information, or otherwise complies with this section.

*Example 1 to paragraph (b):* A meteorologist employed with the National Oceanic and Atmospheric Administration (NOAA) is asked by a local university to teach a graduate course on hurricanes. The university may include the meteorologist's Government title and position together with other information about the

meteorologist's education and previous employment in course materials setting forth biographical data on all teachers involved in the graduate program. However, the meteorologist's title or position may not be used to promote the course, for example, by featuring the meteorologist's Government title, Senior Meteorologist, NOAA, in bold type under their name. In contrast, the meteorologist's title may be used in this manner when NOAA authorized speaking in an official capacity.

*Example 2 to paragraph (b):* A doctor just employed by the Centers for Disease Control (CDC) has written a paper based on earlier independent research into cell structures. Incident to the paper's publication in the Journal of the American Medical Association, the doctor may be given credit for the paper, as Dr. M. Wellbeing, Associate Director, Centers for Disease Control, provided that the article also contains a disclaimer, concurred in by the CDC, indicating that the paper is the result of the doctor's independent research and does not represent the findings of CDC.

*Example 3 to paragraph (b):* An employee of the Federal Deposit Insurance Corporation (FDIC) has been asked to give a speech in a private capacity, without compensation, to the annual meeting of a committee of the American Bankers Association on the need for banking reform. The employee may be described in an introduction at the meeting as an employee of the FDIC provided that other pertinent biographical details are mentioned as well.

### § 2635.808   Fundraising activities.

Employees may engage in fundraising only in accordance with the restrictions in part 950 of this title on the conduct of charitable fundraising in the Federal workplace and in accordance with paragraphs (b) and (c) of this section. This section addresses fundraising as defined in § 2635.808(a)(1), and does not cover all scenarios in which an employee might seek to collect donations from a fellow employee. For example, employees of an office might decide to collect money for a coworker whose family was displaced by a flood; the permissibility of such collections should be analyzed under subpart C of this part, not this section.

(a) *Definitions.* For purposes of this section: (1) *Fundraising* means the raising of funds for a nonprofit organization, other than a political organization as defined in 26 U.S.C. 527(e), through:

(i) Solicitation of funds or sale of items; or

(ii) Participation in the conduct of an event by an employee when any portion of the cost of attendance or participation may be taken as a charitable tax deduction by a person incurring that cost.

(2) *Participation in the conduct of an event* means active and visible participation in the promotion, production, or presentation of the event and includes serving as honorary chairperson, sitting at a head table during the event, and standing in a reception line. The term does not include mere attendance at an event provided that, to the employee's knowledge, the employee's attendance is not used by the nonprofit organization to promote the event. While the term generally includes any public speaking during the event, it does not include the delivery of an official speech as defined in paragraph (a)(3) of this section or any seating or other participation appropriate to the delivery of such a speech. Waiver of a fee for attendance at an event by a participant in the conduct of that event does not constitute a gift for purposes of subpart B of this part.

*Example 1 to paragraph (a)(2):* The Secretary of Transportation has been asked to serve as master of ceremonies for an All-Star Gala. Tickets to the event cost $150 and are tax deductible as a charitable donation, with proceeds to be donated to a local hospital. By serving as master of ceremonies, the Secretary would be participating in fundraising.

(3) *Official speech* means a speech given by an employee in an official capacity on a subject matter that relates to the employee's official duties, provided that the employee's agency has determined that the event at which the speech is to be given provides an appropriate forum for the dissemination of the information to be presented and provided that the employee does not request donations or other support for the nonprofit organization. Subject matter relates to an employee's official duties if it focuses specifically on the employee's official duties, on the responsibilities, programs, or operations of the employee's agency as described in § 2635.807(a)(2)(i)(E), or on matters of Administration policy on which the employee has been authorized to speak.

*Example 1 to paragraph (a)(3):* The Secretary of Labor is invited to speak at a banquet honoring a distinguished labor leader, the proceeds of which will benefit a nonprofit organization that assists homeless families. The Secretary devotes a major portion of the speech to the Administration's Points of Light initiative, an effort to encourage citizens to volunteer their time to help solve serious social problems. Because the Secretary is authorized to speak on Administration policy, these remarks at the banquet are an official speech. However, the Secretary would be engaged in fundraising if the official speech concluded with a request for donations to the nonprofit organization.

*Example 2 to paragraph (a)(3):* A charitable organization is sponsoring a two-day tennis tournament at a country club in the Washington, DC, area to raise funds for recreational programs for children with learning disabilities. The organization has invited the Secretary of Education to give a speech on federally funded special education programs at the awards dinner to be held at the conclusion of the tournament, and the agency has determined that the dinner is an appropriate forum for the particular speech. The Secretary may speak at the dinner and, under § 2635.203(b)(8), may partake of the meal provided at the dinner.

(4) *Personally solicit* means to request or otherwise encourage donations or other support either through person-to-person contact or through the use of one's name or identity in correspondence or by permitting its use by others. It does not include the solicitation of funds through the media or through either oral remarks, or the contemporaneous dispatch of like items of mass-produced correspondence, if such remarks or correspondence are addressed to a group consisting of many persons, unless it is known to the employee that the solicitation is targeted at subordinates or at persons who are prohibited sources within the meaning of § 2635.203(d). It does not include behind-the-scenes assistance in the solicitation of funds, such as drafting correspondence, stuffing envelopes, or accounting for contributions.

*Example 1 to paragraph (a)(4):* An employee of the Department of Energy (DOE) who signs a letter soliciting funds for a local private school does not ''personally solicit'' funds when 500 copies of the letter, which makes no mention of the employee's DOE position and title, are mailed to members of the local community, even though some individuals who are employed by DOE contractors may receive the letter.

(b) *Fundraising in an official capacity.* Employees may participate in fundraising in an official capacity if, in accordance with a statute, Executive order, regulation, or otherwise as determined by the agency, they are authorized to engage in the fundraising activity as part of their official duties. When authorized to participate in an official capacity, employees may use

their official title, position, and authority.

*Example 1 to paragraph (b):* Because participation in an official capacity is authorized under part 950 of this title, the Secretary of the Army may sign a memorandum to all Army personnel encouraging them to donate to the Combined Federal Campaign.

(c) *Fundraising in a personal capacity.* An employee may engage in fundraising in a personal capacity provided that the employee does not:

(1) Personally solicit funds or other support from a subordinate or from any person:

(i) Known to the employee, if the employee is other than a special Government employee, to be a prohibited source within the meaning of § 2635.203(d), unless the circumstances make clear that the solicitation is motivated by a family relationship or personal friendship that would justify the solicitation; or

(ii) Known to the employee, if the employee is a special Government employee, to be a prohibited source within the meaning of § 2635.203(d)(4) that is a person whose interests may be substantially affected by performance or nonperformance of the employee's official duties, unless the circumstances make clear that the solicitation is motivated by a family relationship or personal friendship that would justify the solicitation;

(2) Use or permit the use of the employee's official title, position, or any authority associated with the employee's public office to further the fundraising effort, except that an employee who is ordinarily addressed using a general term of address, such "The Honorable," or a rank, such as a military or ambassadorial rank, may use or permit the use of that term of address or rank for such purposes; or

(3) Engage in any action that would otherwise violate this part.

**Note 1 to paragraph (c):** This section does not prohibit fundraising for a political party, candidate for partisan political office, or partisan political group. However, there are statutory restrictions that apply to political fundraising. For example, under the Hatch Act Reform Amendments of 1993, at 5 U.S.C. 7323(a), employees may not knowingly solicit, accept, or receive a political contribution from any person, except under limited circumstances. In addition, employees are prohibited by 18 U.S.C. 607 from soliciting or receiving political contributions in Federal offices, and, except as permitted by the Hatch Act Reform Amendments, are prohibited by 18 U.S.C. 602 from knowingly soliciting political contributions from other employees.

*Example 1 to paragraph (c):* A nonprofit organization is sponsoring a golf tournament to raise funds for underprivileged children. The Secretary of the Navy may not enter the tournament with the understanding that the organization intends to attract participants by offering other entrants the opportunity, in exchange for a donation in the form of an entry fee, to spend the day playing 18 holes of golf in a foursome with the Secretary of the Navy.

*Example 2 to paragraph (c)* An employee of the Merit Systems Protection Board may not use the agency's photocopier to reproduce fundraising literature for their child's private school. Such use of the photocopier would violate the standards at § 2635.704 regarding use of Government property.

*Example 3 to paragraph (c):* An Assistant Attorney General may not sign a letter soliciting funds for a homeless shelter as "P.J. Doe, Assistant Attorney General." The Assistant Attorney General also may not sign a letter with just a "P.J. Doe" signature soliciting funds from a prohibited source, unless the letter is one of many identical, mass-produced letters addressed to a large group when the solicitation is not known to the Assistant Attorney General to be targeted at persons who are either prohibited sources or subordinates.

*Example 4 to paragraph (c):* An employee of the Department of Commerce is running a half marathon to raise money for a nonprofit organization engaged in cancer research, and is looking for people to sponsor the race. The employee plans to target specific individuals they think will want to contribute, including a close friend with whom they regularly meet for dinner. Notwithstanding the fact that the friend is employed by a corporation that is a prohibited source, the employee may ask the friend to sponsor the race because the solicitation is motivated by a personal friendship that would justify the solicitation.

*Example 5 to paragraph (c):* The employee in the previous example knows that a subordinate employee has expressed an interest in this cause and sends the subordinate a direct link to the online sponsorship page. The employee has "personally solicited" a subordinate in violation of § 2635.808(c)(1).

*Example 6 to paragraph (c):* The employee in Example 4 decides that rather than targeting specific individuals for contributions, it would be preferable to post a general request and a link to information about the race on their personal social media account. Because this request may be viewed by any person with whom the employee is connected through the social media network and does not reference or target any specific individual, it is not considered a personal solicitation of any subordinate or prohibited source that is connected to the employee.

### § 2635.809 Just financial obligations.

Employees must satisfy in good faith their obligations as citizens, including all just financial obligations, especially those such as Federal, State, or local taxes that are imposed by law. For purposes of this section, a just financial obligation includes any financial obligation acknowledged by the employee or reduced to judgment by a court. In good faith means an honest intention to fulfill any just financial obligation in a timely manner. In the event of a dispute between an employee and an alleged creditor, this section does not require an agency to determine the validity or amount of the disputed debt or to collect a debt on the alleged creditor's behalf.

## Subpart I—Related Statutory Authorities

### § 2635.901 General.

In addition to the Standards of Ethical Conduct set forth in subparts A through H of this part, there are a number of statutes that establish standards to which an employee's conduct must conform. The list set forth in § 2635.902 references some of the more significant of those statutes. It is not comprehensive and includes only references to statutes of general applicability. While it includes references to several of the basic conflict of interest statutes whose standards are explained in more detail throughout this part, it does not include references to statutes of more limited applicability, such as statutes that apply only to officers and employees of the Department of Defense.

### § 2635.902 Related statutes.

(a) The prohibition against solicitation or receipt of bribes (18 U.S.C. 201(b)).

(b) The prohibition against solicitation or receipt of illegal gratuities (18 U.S.C. 201(c)).

(c) The prohibition against seeking or receiving compensation for certain representational services before the Government (18 U.S.C. 203).

(d) The prohibition against assisting in the prosecution of claims against the Government or acting as agent or attorney before the Government (18 U.S.C. 205).

(e) The post-employment restrictions applicable to former employees (18

U.S.C. 207 and the regulation at part 2641 of this chapter).

(f) The prohibition on certain former agency officials' acceptance of compensation from a contractor (41 U.S.C. 2104).

(g) The prohibition against participating in matters affecting an employee's own financial interests or the financial interests of other specified persons or organizations (18 U.S.C. 208 and the regulation at part 2640 of this chapter).

(h) The actions required of certain agency officials when they contact, or are contacted by, offerors or bidders regarding non-Federal employment (41 U.S.C. 2103).

(i) The prohibition against receiving salary or any contribution to or supplementation of salary as compensation for Government service from a source other than the United States (18 U.S.C. 209).

(j) The prohibition against gifts to superiors (5 U.S.C. 7351).

(k) The prohibition against solicitation or receipt of gifts from specified prohibited sources (5 U.S.C. 7353).

(l) The prohibition against fraudulent access and related activity in connection with computers (18 U.S.C. 1030).

(m) The provisions governing receipt and disposition of foreign gifts and decorations (5 U.S.C. 7342).

(n) [Reserved]

(o) The prohibitions against certain political activities (5 U.S.C. 7321 through 7326 and 18 U.S.C. 602, 603, 606, and 607).

(p) The prohibitions against disloyalty and striking (5 U.S.C. 7311 and 18 U.S.C. 1918).

(q) The general prohibition (18 U.S.C. 219) against acting as the agent of a foreign principal required to register under the Foreign Agents Registration Act (22 U.S.C. 611 through 621).

(r) The prohibition against employment of a person convicted of participating in or promoting a riot or civil disorder (5 U.S.C. 7313).

(s) The prohibition against employment of an individual who habitually uses intoxicating beverages to excess (5 U.S.C. 7352).

(t) The prohibition against misuse of a Government vehicle (31 U.S.C. 1344).

(u) The prohibition against misuse of the franking privilege (18 U.S.C. 1719).

(v) The prohibition against fraud or false statements in a Government matter (18 U.S.C. 1001).

(w) The prohibition against concealing, mutilating, or destroying a public record (18 U.S.C. 2071).

(x) The prohibition against counterfeiting or forging transportation requests (18 U.S.C. 508).

(y) The restrictions on disclosure of certain sensitive Government information under the Freedom of Information Act and the Privacy Act (5 U.S.C. 552 and 552a).

(z) The prohibitions against disclosure of classified information (18 U.S.C. 798 and 50 U.S.C. 783(a)).

(aa) The prohibition against disclosure of proprietary information and certain other information of a confidential nature (18 U.S.C. 1905).

(bb) The prohibitions on disclosing and obtaining certain procurement information (41 U.S.C. 2102).

(cc) The prohibition against unauthorized use of documents relating to claims from or by the Government (18 U.S.C. 285).

(dd) The prohibition against certain personnel practices (5 U.S.C. 2302).

(ee) The prohibition against interference with civil service examinations (18 U.S.C. 1917).

(ff) The restrictions on use of public funds for lobbying (18 U.S.C. 1913).

(gg) The prohibition against participation in the appointment or promotion of relatives (5 U.S.C. 3110).

(hh) The prohibition against solicitation or acceptance of anything of value to obtain public office for another (18 U.S.C. 211).

(ii) The prohibition against conspiracy to commit an offense against or to defraud the United States (18 U.S.C. 371).

(jj) The prohibition against embezzlement or conversion of Government money or property (18 U.S.C. 641).

(kk) The prohibition against failing to account for public money (18 U.S.C. 643).

(ll) The prohibition against embezzlement of the money or property of another person that is in the possession of an employee by reason of their employment (18 U.S.C. 654).

[FR Doc. 2023–02440 Filed 2–17–23; 8:45 am]

**BILLING CODE 6345–03–P**